STARN • O'TOOLE • MARCUS & FISHER
A Law Corporation

SHARON V. LOVEJOY          5083-0
STEPHANIE THOMPSON      8399-0
Pacific Guardian Center, Makai Tower
733 Bishop Street, Suite 1900
Honolulu, Hawaii 96813
Telephone No. (808) 537-6100
Facsimile No. (808) 537-5434
slovejoy@starnlaw.com
sthompson@starnlaw.com

Attorneys for Defendant
WILLIAM A. EVSLIN, M.D. aka LEE A. EVSLIN, M.D.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. JAMES LOCKYER, M.D., STATE OF HAWAII, ex rel. JAMES LOCKYER, M.D. and JAMES LOCKYER, M.D., in his own behalf;<br><br>Plaintiffs,<br><br>vs.<br><br>HAWAII PACIFIC HEALTH; KAUAI MEDICAL CLINIC; WILCOX MEMORIAL HOSPITAL; WILCOX HEALTH SYSTEM; and WILLIAM A. EVSLIN, M.D. aka LEE A. EVSLIN, M.D.;<br><br>Defendants. | CIVIL NO. CV 04-00596 ACK LEK<br>(Federal and State – Qui Tam)<br><br>**DECLARATION OF DEE KNUDSEN** |

61148

## DECLARATION OF DEE KNUDSEN

I, DEE KNUDSEN, declare that:

1. I am over the age of twenty-one (21) years and am fully competent in all respects to make this Declaration. I have personal knowledge of all such facts stated herein, except as otherwise noted.

2. I have been employed by Hawaii Pacific Health ("HPH") since March 2001 to the present. I serve as the Vice President of Operations, Human Resources for all HPH entities, including, but not limited to, Kauai Medical Clinic ("KMC").

3. As V.P. of Human Resources, I have charge over all recruitment, compensation and benefits functions at all entities, including physician employment at KMC. I have been at this position for the past one and a half years.

4. I have known Dr. Bill Evslin since March 2001 and have always found him to be a caring and committed administrator.

5. From 1996 until September 2005, Dr. Evslin served as President/CEO of KMC.

6. Dr. Evslin served as President/CEO of Wilcox Memorial Hospital ("Wilcox") from January 2003 until he resigned in September 2005.

7. Attached hereto as **Exhibits 1** and **2** are true and correct copies of excerpts of the 1998 and 2001 Amended and Restated By-Laws of the Kauai Medical Clinic. These By-Laws are maintained in the ordinary course of business at KMC.

8. Attached hereto as **Exhibit 7** is a true and correct copy of Dr. Lockyer's Employment Offer ("Offer"), which record is maintained in the ordinary course of business at KMC.

9. Attached hereto as **Exhibit 9** is a true and correct copy of Dr. Lockyer's Employment Agreement ("Agreement") with KMC, effective March 1, 2000. This record is maintained in the ordinary course of business at KMC.

10. At KMC, each clinic-based physician's salary is determined pursuant to the salary formula set forth in the employment agreement, and the physicians are paid according to the process set forth in the employment agreement.

11. Exhibit A to the Agreement gives KMC the right to: (1) adjust the physician's salary draw and reduce the payment made to the physician on a monthly basis; (2) raise the salary draw on a quarterly basis, and (3)

perform a full reconciliation of amounts due to the physicians or owed by the physicians every six months.

12. To my knowledge, each physician employed at KMC entered into an employment agreement with KMC similar to Dr. Lockyer's Agreement.

13. To my knowledge, the salary formula was applied across the board to every clinic-based physician at KMC. Only the salaries of physicians in their first year of employment, and physicians serving as officers in the corporation, were excluded from the salary formula calculations.

14. Dr. James Lockyer began his employment with KMC in December 1999.

15. To my knowledge, pursuant to the Offer and Agreement, Dr. Lockyer's salary for the first year of employment was set at $125,000 and thereafter subsequently reviewed and adjusted based on the salary formula.

16. On December 19, 2001, the Agreement was amended to provide that a physician would be paid 45% of all receipts over $350,000, rather than 45% of receipts over $350,000 and 40% of receipts over $500,000. Attached hereto as **Exhibit 17** is a true and correct copy of the amendment to Dr.

Lockyer's Agreement. This record is maintained in the ordinary course of business at KMC.

17. To my knowledge, at all times relevant to Dr. Lockyer's employment at KMC, Ken Shimonishi served as Financial Planning Manager at KMC. Each month Mr. Shimonishi calculated the salary draw for each physician based on his/her receipts, costs and base salary information for the previous twelve months for each physician. Prior to December 2001, the Salary and Finance Committee reviewed the spreadsheet on a monthly basis. After 2001, the Salary and Finance Committee reviewed the physicians' salary draws twice a year.

18. In March 2002, the process was amended to allow the President/CEO, Ms. Gail Lerch, Senior Vice President of Human Resources and Organizational Effectiveness at HPH, Mr. Shimonishi, and Dr. Thomas Williamson, then Medical Director of KMC, to review the physicians' salary draws on a monthly basis. Attached hereto as **Exhibit 3** is a sample, to the best of my knowledge, of two months of the spreadsheet that Mr. Shimonishi created which reflects the salary draws, based on the formula, of the internal medicine ("IM") doctors at KMC for the months of January and March 2001. This record is maintained in the ordinary course of business at KMC.

19. Attached hereto as **Exhibit 58** is a true and correct copy of the Minutes of a Joint Meeting of the Executive and Salary & Finance Committees (collectively, "Committees") held May 28, 2002 which is maintained in the ordinary course of business at KMC.

20. Attached hereto as **Exhibits 4 – 6** are true and correct copies of payroll forms which reflect that at least ten different physicians' salaries were reduced between February 2001 and November 2002. These records are maintained in the ordinary course of business at KMC.

21. Attached hereto as **Exhibit 10** is a true and correct copy of the notice sent to Dr. Lockyer by the Executive and Salary & Finance Committees in January 2001 alerting him of the change in his salary draw based on the formula. This record is maintained in the ordinary course of business at KMC.

22. Attached hereto as **Exhibit 11** is a true and correct copy of the Minutes of a Joint Meeting of the Committees, held on January 30, 2001 which record is maintained in the ordinary course of business at KMC.

23. Attached hereto as **Exhibit 13** is a true and correct copy of the Mins. of the Joint Committees, held February 27, 2001, which record is maintained in the ordinary course of business at KMC.

24. Attached hereto as **Exhibit 14** is a true and correct copy of the Mins. of the Joint Committees, held May 29, 2001, which record is maintained in the ordinary course of business at KMC.

25. Attached hereto as **Exhibit 15** is a true and correct copy of the Mins. of the Joint Committees, held June 26, 2001, which record is maintained in the ordinary course of business at KMC.

26. Attached hereto as **Exhibit 55** is, to the best of my knowledge, a true and correct copy of Lockyer's Charges, RVU's, and Receipts 1999-2001, which record is maintained in the ordinary course of business at KMC.

27. Attached hereto as **Exhibit 18** is a true and correct copy of the Mins. of the Joint Committees, held December 28, 2001, which record is maintained in the ordinary course of business at KMC.

28. Attached hereto as **Exhibit 56** is a true and correct copy of the January 7, 2002 payroll form reflecting that Dr. Lockyer's salary would be reduced to $115,000.

29. Attached hereto as **Exhibit 19** is a true and correct copy of the Mins. of the Joint Committees, held March 26, 2002, which record is maintained in the ordinary course of business at KMC.

30. **Exhibit 21,** attached hereto, is a true and correct copy of the Mins. of the Joint Meeting of the Committees and the IM Department held on April 4, 2002, which record is maintained in the ordinary course of business at KMC.

31. Attached hereto as **Exhibit 22** is a true and correct copy of the work plan letter, drafted by Gail Lerch, signed by Dr. Evslin, and sent to Dr. Lockyer, dated April 9, 2002, which record is maintained in the ordinary course of business at KMC.

32. Attached hereto as **Exhibit 24** is a true and correct copy of the revised work plan letter, dated May 1, 2002, sent to Dr. Lockyer, which record is maintained in the ordinary course of business at KMC.

33. Attached as **Exhibit 28** of Dr. Lockyer's July 8, 2002 demand for arbitration pursuant to ¶ 16 of the Agreement regarding disputed income under the compensation formula. This record is maintained in the ordinary course of business at KMC.

34. **Exhibit 29**, attached hereto, is a notice received from Dispute, Prevention and Reconciliation ("DPR"), dated July 12, 2002, evidencing Dr. Lockyer's request for arbitration. This record is maintained in the ordinary course of business at KMC.

35. Attached hereto as **Exhibit 30** is a true and correct copy of the Mins. of the Executive Committee, held July 26, 2002 which record is maintained in the ordinary course of business at KMC.

36. Attached hereto as **Exhibit 33** is a true and correct copy of the payroll form, entitled *Wilcox Associate Change of Status Form*, drafted on November 29, 2002 by KMC administration and maintained in the ordinary course of business at KMC. This form notified Dr. Lockyer of a reduction in his salary draw from $115,000 to $90,000.

37. At least three other physicians' salaries were reduced pursuant to the November monthly review. Attached hereto as **Exhibit 6** are true and correct copies of the payroll forms, maintained in the ordinary course of business at KMC, and reflecting a reduction of salary for three different physicians. To my knowledge, these reviews and reductions in November 2002 were done as part of the regular monthly review of all physicians' salaries.

38. Attached hereto as **Exhibit 34** is a true and correct copy of the payroll form, dated February 26, 2003, which is maintained in the ordinary course of business at KMC.

39.   In April 2003, in an effort to bring KMC's compensation and billing practices more in line with those of HPH, KMC proposed changes in the salary formula. It was decided that all KMC doctors taking IM call would receive a yearly stipend of $12,500. Attached hereto as **Exhibit 36** is a true and correct copy of the payroll form dated April 3, 2002 which reflects the addition of a $12,500 stipend to Dr. Lockyer's monthly salary draw. To my understanding, this amount was discovered to be in error and was later revised to $12,000. Attached hereto as **Exhibit 37** is a true and correct copy of a revised payroll form, dated April 14, 2003, reflecting the addition of the $12,000 stipend. These records are maintained in the ordinary course of business at KMC.

40.   KMC also implemented a new cost accounting formula for physicians. Under this formula, a physician's salary would equal his receipts less his costs. Attached hereto as **Exhibit 38** is a true and correct copy of the *notice to physicians* dated September 30, 2003 which details the accounting methods and options for implementation. To my knowledge, this record amended the prior formulas attached to Lockyer's Agreement and became effective January 2005. This record is maintained in the ordinary course of business at KMC.

41. Attached hereto as **Exhibit 44** is a true and correct copy of a letter written by Dr. Eric Yee, Medical Director of the Long-term Care Unit ("LTCU") at Wilcox, dated April 26, 2004, reassigning Dr. Lockyer's LTCU patients to other doctors. This record is maintained in the ordinary course of business at KMC.

42. In January 2003, Dr. Thomas Williamson became Medical Director of KMC.

43. On or about June 24, 2004, Dr. Lockyer resigned from KMC. Attached hereto as **Exhibit 8** is a true and correct copy of Dr. Lockyer's resignation letter dated June 28, 2004 which is maintained in the ordinary course of business at KMC.

44. Attached hereto as **Exhibit 57** is a true and correct copy of a letter signed by Mary Pixler, M.D., Chair of the IM Department, dated May 15, 2001 and addressed to Dr. Lockyer. This record is maintained in the ordinary course of business at KMC.

45. Attached hereto as **Exhibit 50** is a true and correct copy of a final invoice and refund check, dated January 18, 2005, sent from DPR to Mr. Patrick Jones, Esq.. This record is maintained in the ordinary course of business at KMC.

46.  Attached hereto as **Exhibit 47** is a true and correct copy of a letter from Malia Kakos, Esq. to Dr. Lockyer's attorneys, dated January 29, 2003, describing the production of documents in response to Lockyer's request for records made pursuant to his arbitration demand. Ms. Kakos represented KMC in the arbitration matter along with Mr. Patrick Jones. This record is maintained in the ordinary course of business at KMC.

47.  Attached hereto as **Exhibit 46** is a true and correct copy of a letter from Patrick Jones, Esq. to Dr. Lockyer's attorneys, dated April 11, 2003, explaining the over-300-page document production made in response to Lockyer's request for records of his billings to his arbitration demand. This record is maintained in the ordinary course of business at KMC.

48.  **Exhibit 48**, attached hereto, is a true and correct copy of Malia Kakos' letter, dated December 12, 2003, to Dr. Lockyer's counsel explaining portions of the documents produced through the arbitration process. This record is maintained in the ordinary course of business at KMC.

49.  Attached hereto as **Exhibit 49** is a true and correct copy of a letter sent from Ms. Jouxson-Meyers to Mr. Jones, dated August 27, 2003, acknowledging receipt of the report and posing questions regarding some of

the documents. This record is maintained in the ordinary course of business at KMC.

50.  To my knowledge, throughout Dr. Lockyer's employ at KMC, KMC compensated Dr. Lockyer either above or at the salary draw based on the formula.

DATED:  Honolulu, Hawaii, December 21, 2006.

_____
Dee Knudsen