## AFFIDAVIT OF KEN SHIMONISHI

STATE OF HAWAII            )
                           )  SS.
CITY AND COUNTY OF LIHUE   )

KEN SHIMONISHI, being first duly sworn upon oath, deposes and says as follows:

1.  I am currently employed by Hawaii Pacific Health as the Financial Planning Manager at Kauai Medical Clinic ("KMC"). I have been employed by Hawaii Pacific Health since December 2001, when it merged with Kauai Medical Clinic. From May 1, 1996 to December 2001, I was employed as the head of the Accounting Department for KMC. In my position, among other duties, I am responsible for compiling physician billing and salary information, including physician's charges for services provided, the amount of payment received by KMC for the physician's services, the physician's salary pursuant to the salary formula, the salary amount used to determine the physician's last paycheck and other relevant information needed to determine the physician's salary. I create spreadsheets that reflect all of the above information and provide the information on a monthly basis to Dr. Lee Evslin, President/CEO of KMC and Gail Lerch, Vice President of Human Resources for Hawaii Pacific Health for their review. I make this affidavit based on my personal knowledge except as otherwise noted.

2.  Dr. James Lockyer entered into an employment agreement with KMC on March 1, 2000 ("Employment Agreement"), which sets forth a salary formula and a process by which Dr. Lockyer's salary will be paid.

49092.1/276.010 (WORD)

3.  The Employment Agreement also provides that since the physician's receipts fluctuate, KMC has the right to adjust the physician's salary and reduce the payment made to the physician on a monthly basis.

4.  As the Financial Planning Manager, I create a spreadsheet each month that contains receipt, cost and salary information for the previous twelve months for each physician. I provide this spreadsheet to Dr. Evslin and Ms. Lerch on a monthly basis. Prior to the merger of KMC with Hawaii Pacific Health, I gave the spreadsheet to the Salary and Finance Committee at KMC on a monthly basis for their review. Attached hereto as Exhibit 3 is a true and correct sample of two different months of the spreadsheet that I created and gave to the Salary and Finance Committee to review. Exhibit 3 reflects information for all of the physicians in Dr. Lockyer's Internal Medicine Department at the Clinic for the twelve month period ending January 31, 2001 and the twelve month period ending March 31, 2001.

5.  The first column of the spreadsheet in Exhibit 3 lists the physicians by name. The physicians' names, except for Dr. Lockyer, have been redacted from Exhibit 3 and replaced with letters for confidentiality purposes.

6.  The second column of the spreadsheet (Exhibit 3), Column A, reflects the total amount of receipts actually collected by KMC over the last 12 months ending January 31, 2001 and March 31, 2001, for the professional services rendered to patients by each physician. That amount has three components: first "fee for service" payments for professional services provided by the physician; second, an allocation of capitated payments received from managed care organizations; and third, amounts received for items and services "incident to" the physician's services, including chemotherapy drugs and their administration. (the "Actual Receipts").

7. The next column on Exhibit 3 is entitled "Less Additional Costs." Each physician is allocated a certain level of support (e.g., one nurse). A positive number in the column represents charges to a physician for certain overhead expenses that are above and beyond those provided by KMC and attributable to the way the physician practices and consumes resources. A negative number in the column (demonstrated by parenthesis around the number) represents payment received by KMC based on facility fee charged to a patient in relation to a certain procedure performed by that physician. Since the Less Additional Costs column represents overhead costs charged to the physician or revenue from the physician's services, KMC subtracts or adds the amount in the Less Additional Costs column from or to the physician's Actual Receipts.

8. Column C entitled "Less Chemo Receipts," subtracts the full amount of receipts for chemotherapy drugs and their administration. That is appropriate because the clinic incurs significant costs in obtaining and administering those drugs; it would not be appropriate to ignore those costs in calculating a physician's compensation.

9. Column D is the sum of Columns A through C and represents the gross receipts that are then multiplied by the physician's percentage of receipts identified in Exhibit A to the Employment Agreement. KMC takes 50% of the Receipts Less Cost pursuant to the salary formula (if the Actual Receipts were less than $350,000) and adds to that number the Chemo Share to determine the "Salary Per Scale," which is set forth in Column F. The "Salary per Scale" represents the physician's annual salary based upon the last twelve months of receipts.

10. Column E is a small portion of the chemotherapy drug and administration receipts. Under a strict reading of the Employment Agreement, Column E should not be included in the calculation because it is not received "on account of professional services

3

rendered" by the physician. It customarily is included, however, and was included in Dr. Lockyer's case. The amount represents an attempt to identify and allocate the acquisition and overhead costs associated with the chemotherapy unit, with a fraction of what remains going to the physician.

11. Pursuant to the employment agreement, KMC pays its physicians based on 95% of the amount derived from the salary formula. Thus, KMC calculates 95% of the Salary Per Scale amount, which is identified in the spreadsheet on Exhibit 3 in Column G as "Salary per Formula 95%."

12. Column H in the spreadsheet on Exhibit 3 for January 31, 2001 is entitled "Salary @ PPE 01/27," and for March 31, 2001 is entitled "Salary @ PPE 04/07." This column represents the annual salary that the physician's most recent paycheck was based upon.

13. Column I on Exhibit 3 entitled "Adj. to 95th percentile" sets forth any overpayment or underpayment that will be made to the physician if KMC continued to pay the physician at the Salary @ PPE amount rather than the Salary Per Scale amount and that physician's receipts remained the same. In other words, the "Adj. to 95th percentile" column represents the difference between the Salary per Scale (the physicians annual salary based on the most recent 12 months of receipts) and the Salary @ PPE (the amount the physician's last paycheck was based upon). If a negative number appears in the "Adj. to 95th percentile" column (demonstrated by parenthesis around the number) it means that the physician will be overpaid if KMC continues to pay the physician at the previous salary amount rather than the new salary calculation and that physician's actual receipts do not increase. Pursuant to the employment contract, the physician's salary (and paycheck) is reduced the next month to compensate for the overpayment.

14. A positive number in the in the "Adj. to 95th percentile" represents that the physician was underpaid. If a physician was underpaid and continues to be underpaid, pursuant to the employment contract, the physician's salary would be adjusted upwards the next calendar quarter.

15. If no number appears in the "Adj. to 95th percentile" column, it means that the Salary @ PPE amount (the physician's rate of pay at the last pay period) falls within the Salary per Scale amount (the physician's current annual salary) and the Salary per Formula 95% amount (the amount the physician should be being paid by KMC per the employment agreement). No adjustment to the salary or paycheck is required when no number appears in the "Adj. to 95th percentile" column.

16. Exhibit 3 reflects that KMC collected a total of $382,375 in Actual Receipts for Dr. A by the end of January 2001, including receipts from the chemotherapy suite. Dr. A had no additional overhead costs or facility fees charged to patients. Dr. A had a total amount of $6,052 in chemotherapy receipts. Thus, KMC subtracted the $6,052 in chemotherapy receipts from Dr.A's Actual Receipts, resulting in an amount of $376,323, which is reflected in the Receipts Less Cost column. Again, the Receipts Less Cost column, represents the amount of receipts available for the salary formula. Pursuant to the salary formula, KMC divided $350,000 in half, resulting in an amount of $175,000, and added 45% of $26,323, resulting in $186,845.[5] KMC then added the $204 of Dr. A's Chemo Share to $186,845, which results in a Salary Per Scale of $187,049. Accordingly, as of the end of January 2001, Dr. A's annual salary pursuant to the salary formula was $187,049.

---

[5] Since Dr. A had over $350,000 in receipts, the first two steps of the salary formula applied.

17. Pursuant to the employment agreement, KMC calculated that 95% of Dr. A's Salary per Scale was $177,697. Therefore, Dr. A should be getting paid based on an annual salary amount that falls within $177,697 and $187,049. However, based upon the pay period ending January 27, 2001, Dr. A's last paycheck was paid as if his or her annual salary was $189,322. This number was noted in the Salary @ PPE 01/27 Column. Since Dr. A's last paycheck was based on an annual salary which was more than his or her current Salary per Scale (e.g. $189,322 instead of $187,049), Dr. A will be overpaid in an amount of $2,273 over the next 12 months if KMC continued to pay Dr. A at the rate of $189,322 and his receipts did not increase. This overpayment amount is noted in the "Adj to 95th Percentile" column of Exhibit 3.

18. Therefore, in order to prevent overpayment, KMC reduced Dr. A's next paycheck. Attached as Exhibit 4 is a true and correct copy of the payroll form notifying Dr. A that his or her salary would be reduced from $187,049 to $189,322.

19. Similarly, Dr. A's salary was reduced again in March 2001 since Dr. A's salary based on the most recent paycheck was at $187,034 (see "Salary @ PPE 04/07" column of Ex. 3) but his or her salary based on the previous twelve months of receipts available for the salary formula was only $182,547 (see Salary per Scale column of Ex. 3). Again, Dr. A was sent a payroll form regarding the reduction of salary. Attached as Exhibit 5 is a true and correct copy of the payroll form notifying Dr. A that his or her salary would be reduced from $187,049 to $182,547.

20. Exhibit 3 also reflects that Dr. C's salary was reduced pursuant to this formula and the employment agreements both in January and in March 2001. Exhibit 6 attached hereto includes the payroll forms sent to Dr. C reflecting that his or her salary would be reduced.

21. Every six months, the amount of salary actually paid to the physician is reconciled with the amount of salary actually due to the physician pursuant to the salary formula.

22. KMC has used this salary formula since at least 1996 and has reduced physician's salaries pursuant to this formula since that time.

Further affiant sayeth naught.

_____
KEN SHIMONISHI

Subscribed and sworn to before me
this ___ day of January, 2003.

_____
Notary Public, State of Hawaii

Print Name: Nelly Bautista

My commission expires: January 04, 2007