# Jouxson-Meyers
# & del Castillo
Attorneys at Law
a Limited Liability Law Company

June 28, 2004

Via facsimile and 1st class mail

Thomas Williamson, M.D.
Chairman
Kauai Medical Clinic
3-34208 Kuhio Highway
Lihue, Hawai'i 96766

Re:   James Lockyer, M.D.'s resignation from employment with Kauai Medical Clinic

Dear Dr. Williamson:

      We represent James Lockyer, M.D. Dr. Lockyer has asked us to submit his resignation from employment with Kauai Medical Clinic, pursuant to section 11.d. of his employment contract. Dr. Lockyer is unable to continue his employment due to the fact that Dr. Evslin and Kauai Medical Clinic have created working conditions that no reasonable person would accept, including reducing his compensation so substantially that it is impossible for him to support his family while serving his patients, constituting a material breach of Dr. Lockyer's employment contract. Dr. Lockyer has previously raised all of the issues discussed herein numerous times with the result that Dr. Evslin has wrongfully intensified his efforts to damage Dr. Lockyer. Based upon information from KMC, Dr. Lockyer believes that his salary will be reduced to $1,000 per month effective July, 1, 2004, which is patently absurd. As you know, Dr. Lockyer is presently on an unpaid leave of absence because he is unable to afford to pay for child care while he is at work during the summer months, and KMC has breached Dr. Evslin's promise to assist Dr. Lockyer with child care. Dr. Lockyer's last day of service to KMC will therefore be June 30, 2004.

      Based upon facts Dr. Lockyer has learned during the course of his employment, KMC has, through various means, actively pursued the termination of his KMC employment since May 2002 because he questioned KMC's finances and requested an audit of his compensation as a result of suspicions arising from his knowledge that a number of physicians had resigned form KMC due to their disputes over their compensation and KMC's refusal to provide information that would permit them to independently evaluate whether KMC was reporting their billings and collections truthfully or correctly.

      KMC's refusal to frankly disclose data pertaining to Dr. Lockyer's billings and collections, and its extreme sensitivity concerning his inquiry, only increased his suspicions that KMC's representations concerning his compensation were materially false. The documents and

302 California Ave.
Suite 209
Wahiawa, Hawai'i 96786
Phone: (808) 621-8806
Fax:   (808) 422-6772
Email Arlette: bowman@pixi.zzy.net
Email Rafael: Rafa@hawaii.rr.com

Rafael G. del Castillo, Member

Thomas Williamson, M.D.
June 28, 2004
Re: James Lockyer, M.D.'s resignation from employment with Kauai Medical Clinic
Page 2

information that Dr. Lockyer forced KMC to disclose in arbitration confirmed his suspicions and revealed deficiencies and facts constituting evidence that Dr. Lockyer has been subjected to disparate treatment, and of conduct by KMC violating laws, rules, ordinances, regulations, and contracts. Dr. Evslin and KMC's conduct strongly implies a fear that Dr. Lockyer would report the deficiencies and facts to appropriate authorities. It is also common knowledge that Dr. Lockyer got off on the wrong foot with Dr. Evslin because Dr. Lockyer bought his home through a probate sale and did not employ Dr. Evslin's wife as his realtor as all newly recruited doctors are expected to do.

Dr. Evslin has repeatedly disparaged Dr. Lockyer's practice to the QA committee and to Dr. Lockyer's colleagues in an effort to turn them against him. Dr. Evslin has also misrepresented comments Dr. Lockyer's patients have made against Dr. Evslin's administration before the QA committee and to Dr. Lockyer's colleagues to make them appear to be complaints against Dr. Lockyer. Dr. Lockyer's patients are prepared to, and interested in, rebutting such misrepresentations.

Dr. Evslin and KMC have wrongfully interfered with Dr. Lockyer's practice by failing to provide competent and adequate assistance and support. Dr. Evslin has attempted to require nurses assigned to Dr. Lockyer's clinic to sign allegations against him, and those that refused were harassed and fired. Dr. Evslin and KMC attempted to coerce Dr. Lockyer's nurse, Geraldine Miguel, to be reassigned against her wishes or be subjected to a longer than customary probation period if she chose to stay with Dr. Lockyer. Nurse Miguel later resigned and then KMC caused Dr. Lockyer to be deprived of a competent replacement by failing to promptly place an advertisement for her replacement or otherwise recruit a permanent nurse to assist Dr. Lockyer in his clinic.

Dr. Evslin has repeatedly interfered with Dr. Lockyer's appointment template, and caused patients asking to become one of Dr. Lockyer's patients to be told "Dr. Lockyer no longer sees new patients" despite Dr. Lockyer's unwavering policy of accepting new patients. KMC has caused deliberate delays or ineptitude in processing medical referral appointments and ordering clinical tests for his patients, with the result that Dr. Lockyer has lost some patients who have become concerned about continuing as Dr. Lockyer's patient because it is common knowledge that he has been targeted for harassment, and the patients are fearful that services will be withheld from them or that they will suffer from delays or errors arising from the harassment.

In response to the specific concerns about child care Dr. Lockyer raised when Dr. Evslin recruited him, Dr. Evslin promised Dr. Lockyer that KMC would always assist him in resolving any child care issues and assured him that he would never have to concern himself with those issues. KMC has failed to provide Dr. Lockyer with such assistance and support, and Dr. Evslin has wrongfully used Dr. Lockyer's child care issues to further harass him into terminating his employment. When Dr. Lockyer made reasonable attempts to resolve his inability to afford child care by having his children stay with him from time-to-time at his clinic, Dr. Evslin banned Dr. Lockyer's children from the clinic, despite the fact that it is common knowledge that many other doctors, including Dr. Wolfgramm, and Dr. Rovinsky all bring their children to the clinic regularly.

Johnson-Meyers
& del Castillo

Rafael G. del Castillo, Member

Thomas Williamson, M.D.
June 28, 2004
Re: James Lockyer, M.D.'s resignation from employment with Kauai Medical Clinic
Page 3

Out of loyalty to KMC and his patients, Dr. Lockyer has struggled for the past 2 years to continue his employment and to respond to Dr. Evslin's attacks. None of Dr. Evslin's attempts to discredit Dr. Lockyer and his practice have amounted to anything. Dr. Evslin's financial attacks on Dr. Lockyer are another story. Dr. Lockyer has suffered extraordinary financial hardship as a result of Dr. Evslin's and KMC's wrongful conduct. KMC has failed to fully and fairly compensate Dr. Lockyer for over two years. KMC has withheld compensation Dr. Lockyer was told he was entitled to receive for keeping his clinic open for charity care and has failed to correct or compensate Dr. Lockyer for the charity cases and unwanted patients other physicians have diverted to Dr. Lockyer's clinic. KMC has also consistently understated collections for services Dr. Lockyer has provided and has failed to provide billing services of sufficient quality and timeliness to achieve acceptable levels of collections for such services, with the result that Dr. Lockyer has been grossly underpaid. Subsequent to the change in the KMC compensation method to an unfair and unmanageable independent contractor-like system, Dr. Lockyer discovered that Dr. Evslin had instructed the billing department to hold billings for Dr. Lockyer's services without justification and without advising Dr. Lockyer. Dr. Evslin's action plainly had the effect of decreasing Dr. Lockyer's collections with a resulting adverse effect on his compensation.

Dr. Lockyer is entitled to be paid any collections KMC receives after June 30, 2004, in connection with billings for services he has provided prior to July 1, 2004, less practice costs or expenses, none of which should be incurred if Dr. Lockyer is no longer practicing at KMC. Obviously a portion of said collections are attributable to Dr. Evslin's wrongful interference with the submission of claims for Dr. Lockyer's services and inefficiencies in KMC's billing administration.

In an e-mail dated December 1, 2003, Dr. Evslin admitted that Dr. Lockyer does not enjoy the fruits of any increases in his production for several months, and that a reconciliation is performed every 6 months to determine whether KMC owes Dr. Lockyer any money. Accordingly, Dr. Lockyer requests a verified statement of collections in connection with his services during the months January through June 2004, by July 31, 2004. With respect to payments KMC receives on account of Dr. Lockyer's services subsequent to June 30, Dr. Lockyer is agreeable to allowing KMC assess a 5% administration and handling fee upon such collections at the time it remits them to him. KMC must make such remittances at least once a month. KMC must make all remittances and reports to Dr. Lockyer in care of our offices, to the attention of Arleen Jouxson-Meyers.

Please contact the undersigned should you have any questions.

Very truly yours,

Rafael G. del Castillo

cc: Michael S. Braun, M.D. (via hand delivery)
James Lockyer, M.D.

Jouxson-Meyers
& del Castillo

Rafael G. del Castillo, Member