## EMPLOYMENT AGREEMENT

THIS AGREEMENT is entered into between Kauai Medical Clinic, a Hawaii nonprofit corporation ("the Clinic"), and _____James R. Lockyer, M.D.,_____ ("Physician") and is effective as of _____March 1, 2000_____ The parties do hereby agree as follows:

1. **Employment**. The Clinic agrees to employ the Physician and Physician accepts employment with the Clinic pursuant to the terms of this Agreement. Physician agrees to devote full time to the practice of medicine at the Clinic unless employed in a part-time capacity. If Physician is employed in a part time capacity, the compensation and benefits will be adjusted by agreement between the Clinic and Physician, or, if agreement is not reached, in accord with Clinic policy. Physician further agrees to perform in a professional and cooperative manner such professional services at such times and places and in such manner as may be assigned by the Clinic. In addition to the performance of professional duties, Physician shall also perform administrative duties, including actively supporting and participating in (1) the health care mission, goals and objectives of Clinic; (2) department and committee activities; (3) quality assurance and utilization review, protocols, programs and procedures to further Clinic's ongoing participation in managed care programs; (4) supervision of non-physician personnel; (5) supervision of filing and retention of medical reports and records; (6) research and education; (7) required continuing medical education requirements; and (8) such other administrative activities that assist in the delivery of medical care.

   Physician's employment is expressly conditioned upon: (i) Physician's continuous maintenance of an unrestricted and unconditional license to practice medicine in the State of Hawaii; (ii) Physician's continuous maintenance of an unrestricted and unconditional legal authorization to prescribe and administer controlled substances; (iii) Physician's approval by the Clinic and Parent Boards of Directors; and (iv) Physician's continued maintenance of authorized provider status with contracted insurance payors.

2. **Application of Standards**. Physician shall perform all duties under this Agreement in compliance with: (i) all applicable standards, rulings, regulations and requirements of the United States Department of Health and Human Services, the Hawaii Department of Health, and any federal, state, or local government agency, third party payor or accrediting body having jurisdiction over or providing reimbursement for any programs and services offered by the Clinic; and (ii) the bylaws, policies, rules and regulations of the Clinic (including those of the departments, sections or divisions thereof), of the Kauai hospital medical staff of which Physician is a member, and of managed care programs in which such Kauai hospital participates, as the same may be amended and in effect from time to time. Physician shall not refuse to treat any patient because of lack of insurance, type of reimbursement or inability to pay.

3. **Duties of Clinic.** The Clinic shall provide practice facilities, equipment and personnel that is reasonably necessary for the proper and efficient operation of the Clinic. The Clinic shall also provide salary payments to Physician within 15 (fifteen) days of the due date.

4. **Compensation.** The Clinic agrees to pay Physician in accord with the formula attached as Exhibit A. The formula may be adjusted as authorized by the Clinic Board of Directors; provided, however, that in no event shall Physician's Base Annual Compensation be in excess of amounts customarily paid in Physician's practice area by clinics of similar size and composition, based on data published by the Medical Group Management Association ("MGMA") or other similar data that is accurately compiled and regularly published; provided, further, that in no event shall Physician's total compensation (i.e. Base Annual Compensation and any additional compensation) be in excess of what is considered "reasonable" within the meaning of the tax laws.

The Clinic strives to provide compensation and benefits to physicians that, in the aggregate, are 100% of the aggregate median compensation and benefits for median productivity payable to physicians based on current MGMA data ("the Goal"). The Clinic agrees to provide compensation and benefits that are at least 90% of the Goal. "Aggregate", for purposes of this paragraph, means the total compensation paid to all physicians and recognizes that individual physicians may receive compensation and benefits that are either greater or less than 90% the Goal. The present compensation system may be substituted for an alternative system provided: (1) the alternative system is approved and adopted by the Clinic Board of Directors; (2) 90-days written notice is given to Physician; and (3) Physician may appeal his compensation as set forth below.

In the event of a change in the compensation formula which results in reducing Physician's compensation by more than twenty percent (20%), Physician shall have the right to appear before the Board to protest such change, provided Physician requests [for] such an appearance in writing within ten (10) days of the notice of such change and provided further that Physician complies with the procedures established by the Board. Physician also has the right to meet with Clinic Administration to discuss in confidence Physician's actual or proposed compensation.

5. **Professional Liability.** The Clinic will provide professional liability coverage for services rendered in accord with the terms of this Agreement on a "modified occurrence" basis in the amount of not less than Two Million Dollars ($2,000,000.00) per claim and Five Million Dollars ($5,000,000.00) in the aggregate. Any deductible payable in connection with a claim covered by such policy or plan shall be paid by Clinic. Physician agrees to (1) fulfill all requirements and conditions necessary to remain insurable; (2) provide prompt notice to the Clinic of any claim involving professional liability; (3) tender the defense of the claim to the Clinic; and (4) fully cooperate in the defense of the claim. Failure to comply with any of these conditions permits the Clinic, in its sole discretion, to rescind coverage of the defense and/or liability of the claim.

Coverage is not provided by the Clinic for services performed outside the terms of this Agreement or outside Physician's employment with the Clinic except if written permission has been obtained from Clinic Administration for such service, coverage will be provided. The Clinic reserves the right not to defend Physician against personal misconduct.

6. **Employment Benefits**. The Clinic agrees to provide to Physician all employment benefits that are authorized by the Clinic Board of Directors. These benefits may be revised from time to time in the sole discretion of the Clinic Board of Directors. The Clinic agrees to provide the same employment benefits that are provided to other physicians in the same classification of employment. Benefits are prorated for part-time employment. Copies of the applicable benefit policies and plans are available for review at the Clinic administrative office. The current benefits are described in Exhibit B. In the event the current benefits are changed during the term of this Agreement, Physician shall have the right to appeal such change to the Clinic Board of Directors provided such appeal is made within 10 (ten) days of the notice of the change.

7. **Quality Improvement**. The Clinic subscribes to the philosophy of continuous quality improvement. Physician agrees to participate in the quality process, including peer review for quality of care, understanding and use of clinical practice guidelines, effective resource use, and improving service provided to patients and colleagues. Physician agrees to abide by Quality Management policies and procedures of the Clinic and of Wilcox Memorial Hospital and Wilcox Health Systems ("the entities") and further agrees to make available to the entities all records and information deemed necessary by them for quality reviews and quality assurance.

8. **Confidentiality**. Physician agrees to maintain the confidentiality of all patient medical records and related information as required under applicable federal, state and local laws, and the policies of the Clinic, Wilcox Memorial Hospital and Wilcox Health System. Physician agrees that all medical records are the property of the Clinic and may be accessed and used only in accord with Clinic policy.

9. **Certifications**. Physician certifies that the information on Physician's employment application is true and correct as of the date this Agreement is signed and that Physician will notify the Clinic in writing of any change in that information. Physician also agrees to notify the Clinic immediately of any changes in health status or any other circumstances that might affect Physician's ability to perform services as a physician under this Agreement.

10. **Suspension**. The Clinic may summarily suspend Physician upon determination that immediate action must be taken to protect the health, safety or welfare or any patient or if there is evidence of substandard professional care or unprofessional conduct. Written notice of the suspension to the Physician shall constitute sufficient notice provided that if Physician is suspended for fourteen (14) days or more under this Section, Physician shall be provided with the notice and hearing rights in effect at the same time of the suspension.

11. **Term and Termination.**

    a. This Agreement shall be effective for a term of one year unless terminated sooner pursuant to the terms of this section. Thereafter, this Agreement will be renewed for successive one year terms unless terminated by either party with 90-days notice.

    b. This Agreement may be terminated at any time by mutual agreement of the parties in writing.

    c. This Agreement may be terminated by a majority of the Executive Committee at any time for cause. Cause may include, but is not limited to:

        (1) Any restriction or limitation on Physician's right or ability to perform services under this Agreement; or

        (2) Professional or personal misconduct, violation of the Canons of Professional Ethics, or misrepresentation of facts;

        (3) Violation of the Clinic's bylaws, written policies, the lawful directives of the Clinic Board of Directors or violation of any term of this Agreement;

        (4) Significant problems with medical care and/or patient service, and/or cooperation with the Clinic;

        (5) The determination by 75% of the members voting of the Board of Directors' that the conduct in question constitutes cause for termination.

    d. This Agreement may be terminated by Physician for a material breach of this Employment Agreement.

    e. In the event this Agreement is terminated, Physician shall have the following rights:

        (1) The Parties agree that all Clinic and patient records are the property of the Clinic and upon termination Physician will return to Clinic all Clinic and patient records and all copies of such records. In the event Physician requires access to or copies of patient records for a legally or professionally required purpose, Clinic agrees to respond to reasonable requests provided Physician bears all costs associated therewith and provided further that the access or copies will not conflict with professional, ethical or confidentiality guidelines or requirements.

        (2) Physician agrees that prior to Physician's termination that Physician will not engage in any conduct or communication that is intended to solicit patients of the Clinic to another medical practice that Physician intends to

become associated with. After termination, Clinic agrees that Physician may make general announcements published in local newspapers of general circulation or broadcasted on radio and television informing the general public of Physician's new practice location and circumstances.

12. **Violations of Policy.** KMC, through its administrative officers, may take corrective action to address violations of KMC policies, procedures, values or mission statement. This action may include counseling, adjustments in compensation, disciplinary memos, suspension or termination. In the event of any disciplinary action, Physician shall have the right to appear before the Board to request that such action be modified or rescinded.

13. **Covenant Not To Compete.** Physician shall not engage in the practice of medicine other than as an employee of the Clinic hereunder during the term of this Agreement unless permission is given to the contrary by Clinic Administration. During the twelve (12) month period immediately following the termination of this Agreement, Physician shall not engage in the practice of medicine, within a five (5) mile radius of the Kauai Medical Clinic in Lihue, Kauai, Hawaii or any office operated by the Clinic, without the written authorization of the Board of Directors of the Clinic.

14. **Confidentiality Covenant.** Physician may acquire and make use of confidential information and trade secrets (the "**Confidential Information**") of the Clinic, including financial statements, internal memoranda, reports, patient lists, and other materials or records of a proprietary nature provided such information is necessary or helpful to physician's employment. Physician agrees not to use such information except in connection with employment by the Clinic or divulge the Confidential Information to any third party, unless the Clinic consents in writing or Physician is under a clear legal duty and Physician informs the Clinic of such duty prior to such use or divulgence.

15. **Nonsolicitation Covenant.** Physician agrees that the patients treated by Physician during the Physician's employment with the Clinic are the patients of the Clinic and that all fees and work product from work covered by this Agreement belong to the Clinic. During the term of this Agreement and for the twelve (12) month period immediately thereafter, Physician shall not directly or indirectly solicit any Patient who has received professional medical services from the Clinic at any time during the last two (2) years of Physician's employment with the Clinic, to become a patient of Physician's own medical practice or the medical practice of another.

16. **Resolution of Disputes.** Physician agrees that any disputes arising out of: (1) the terms and conditions of this Agreement; (2) Physician's employment or termination from employment with the Clinic; and (3) disagreements between those associated with the Clinic shall be subject to final and binding arbitration in accordance with the applicable procedures of Dispute, Prevention and Resolution, Inc. by a single arbitrator. The Arbitrator shall be required to abide by the provisions of this Agreement and the lawfully adopted policies of the Clinic. This provision will survive the termination of this Agreement.

17. **Special Terms**. This Agreement supersedes all prior negotiations, representations, and agreements, written or oral, made between the Clinic and Physician. The rights and obligations of each party under this Agreement are not assignable by either party. Except as set forth in sections 3 and 5, any subsequent modifications to this Agreement must be in writing and executed by both Physician and the Clinic.

**IN WITNESS WHEREOF,** the parties have caused this Agreement to be executed on the day and year first above written.

THE CLINIC:                                           PHYSICIAN

KAUAI MEDICAL CLINIC,
a Hawaii nonprofit corporation

By: _____                  Name: James R. Lockyer, M.D.
Its: CEO                                                         Date: 2/24/00

Date: 2/24/00

By: _____
Its: Chairman

Date: 2/29/00

PARENT:

WILCOX HEALTH SYSTEM,
a Hawaii nonprofit corporation

By: David W. Patton, Ph.D
Its: CEO

Date: FEB 2 4 2000

By: Paul Dohrman
Its: CHAIRMAN

Date: FEB 2 4 2000

Effective: 7/00

EXHIBIT A

# COMPENSATION
# FOR FULL-TIME PHYSICIAN
## (Non-Hospital Based)

(Regular Part-Time is Prorated)

1. The salary for the first year will be _____. This is based on _____ employment.

2. Following the first year anniversary date, the physician will be paid according to the formula presented below.

    2.1    <u>Method of Calculating Annual Compensation</u>.

        (a)    Clinic shall pay Physician and Physician agrees to accept as payment in full for all duties and obligations of Physician under the Agreement base annual compensation ("Base Annual Compensation") according to the following formula (the "Base Annual Compensation Formula"):

- Fifty percent (50%) of Physician's receipts actually collected and received by Clinic on account of professional services rendered by Physician ("Physician's Receipts") up to $350,000.00; plus

- Forty-five percent (45%) of Physician's Receipts which are in excess of $350,000.00 but do not exceed $500,000.00; plus

- Forty percent (40%) of Physician's Receipts which are in excess of $500,000.00.

        (b)    Base Target

- If a physician has receipts less than $350,000 and RVU's less than MGMA median for his or her specialty, that physician will earn a salary based on 45% of receipts rather than 50%.

- If a physician has receipts less than $350,000 but RVU's which are equal to or greater than the median for his or her specialty, formula will continue to use 50% of receipts.

1

Effective: 7/00

(c) Stretch Target

- If a physician has receipts over $350,000 and such receipts exceeds the previous year's receipts, the physician will receive 50% of receipts for the portion of receipts in excess of last year's receipts. This stretch target will be set at the start of each fiscal year. This stretch target will not be in effect until the second year a physician is paid according to the Base Annual Compensation Formula.

(d) Payment of Base Annual Compensation. Base Annual Compensation shall be paid to Physician as follows:

- An approximation of ninety-five percent (95%) of Physician's anticipated compensation, based on Physician's performance over the immediately preceding twelve (12) month period, shall be paid to Physician in equal bi-weekly installments, on or before the 15th and last day of each month.

- If anticipated annual compensation is less than $120,000 physician will receive an approximation of 100% of the anticipated compensation.

- The amount paid for each six (6) month period of the Term shall be adjusted at the end of the sixth (6th) and twelfth (12th) months of such Term based on the application of the Base Annual Compensation Formula for the immediately preceding six (6) month period; provided, however, that Clinic shall have the right to adjust the Base Annual Compensation amount and the amount paid at more frequent intervals (which intervals will be no more frequent than monthly for downward adjustments and no more frequent than quarterly for upward adjustments) if, in Clinic's sole judgment, the anticipated Base Annual Compensation for Physician and the amount paid is more or less than Physician's anticipated compensation, based on Physician's current performance, and Physician is likely to be underpaid or overpaid, as the case might be. If, by reason of Physician's actual performance during any six (6) month period, the amount computed in accordance with the Base Annual Compensation Formula for such six (6) month period exceeds the amount actually paid to such Physician during such six (6) month period, the excess amount shall be paid to Physician at the end of such six (6) month period. If, by reason of Physician's actual performance during any six (6) month period, the amount computed in accordance with the Base Annual Compensation Formula for such six (6) month period is less than the amount actually paid to such Physician during such six (6) month period, Clinic shall deduct the amount of the difference

2

Effective: 7/00

from the amount to be paid to Physician during the following six (6) month period in order to recover the overpaid amount.

(e) Physician covenants and agrees to code correctly. The Clinic shall have the right to audit the coding recorded by Physician and to make adjustments for billing and recording inaccuracies, discrepancies or abnormal billing profiles of Physician.

(f) The Clinic Board will periodically reexamine the compensation formula in consultation with the Clinic's Executive Committee to ensure that such compensation is reasonable and not inconsistent with group practice industry standards. The intention of the Base Annual Compensation Formula shall be to provide median compensation for median productivity, with increases or decreases in compensation related to individual productivity relative to median productivity. Median productivity shall be based on data published by the Medical Group Management Association ("MGMA") or similar data that is accurately compiled and regularly published. Standards for productivity, in recognition of anticipated changes in fee-for-service compensation, will also be periodically reexamined by the Clinic Board in consultation with the Executive Committee.

(g) On the termination of this Agreement, Physician's Base Annual Compensation shall be computed through the date of termination in accordance with the Base Annual Compensation Formula and Physician shall receive, or there shall be deducted from Physician's final payment, as the case might be, the amount of any excess or deficiency, as the case might be, between the amounts computed in accordance with the Base Annual Compensation Formula and the amounts paid to Physician in accordance with this Agreement through the date of termination. If the amount of any excess payments exceeds the amount of Physician's final payment, Physician shall pay the balance to Clinic within 30 days; if the amount of payments made to Physician are deficient, Clinic shall pay such deficiency to Physician with Physician's final payment.

2.2 **General Terms**.

(a) If the Agreement is terminated prior to the end of any year during the Term, only the pro rata portion of the compensation due Physician for such fiscal year shall be due and payable to Physician.

(b) Subject to Section 1.1(d) above, Physician's Base Annual Compensation will be based on a rolling twelve (12) month average and will be readjusted periodically. In no event shall Physician's Base Annual Compensation exceed one hundred twenty percent (120%) of Physician's Base Annual Compensation for the prior year. Notwithstanding the foregoing, in the case of a Physician who is newly employed by the Clinic after July 1, 1997 (a "New Physician"), the foregoing limitation shall apply only to the New Physician's compensation beginning on the third (3rd) year of the New Physician's employment with Clinic.

3

<u>Effective: 7/00</u>

(c) Physician Base Annual Compensation may be reduced by the Clinic in the event that overhead costs (i.e., number of nurses, receptionists, supplies, special equipment and space cost) for Physician is greater than the average overhead cost for the practice area of Physician.

(d) The salary formulas set forth above are premised upon the full-time employment of Physician by Clinic. In the event a Physician is allowed to work on a part-time basis, readjustment of such Physician's Base Annual Compensation will be made by the Clinic at that time. Correspondingly, if a part-time Physician is allowed to work on a full-time basis, readjustment of such Physician's Base Annual Compensation will be made by the Clinic at that time.

(e) The salary formulas set forth above shall terminate on the earlier of: (i) termination of the Agreement; or (ii) adoption of a new salary formula by Clinic. Upon the adoption of a new salary formula by Clinic, all receipts collected after the adoption of the new salary formula shall be applied to the new formula. Physician shall <u>not</u> be entitled to receive a "tail" for receipts collected after termination of employment except as outlined in Exhibit B-1.

(f) If a Physician takes a leave of absence without pay which is approved by the Clinic, all receipts collected during that leave will be tracked. When this Physician returns to practice in the clinic, such receipts will be used to set the base compensation for this Physician.

(g) Subject to the provisions of Section 1.1(a) above, the Clinic shall have the right to adopt a new salary formula on not less than three (3) months' prior notice to Physician;

(h) Modifications and adjustments made by Clinic to the amount of Base Annual Compensation paid to Physician and to the method of calculating Physician's Base Annual Compensation permitted or authorized under this Exhibit A shall be evidenced by a payroll form which shall be executed by Clinic and Physician or a revised exhibit A.

(i) All formulas are and will be based on the underlying concept that no patient may be turned away by any physician for reasons based on ability to pay or type of insurance and that the providing of charity care by Physician will be fully encouraged. The policies and procedures of the Clinic for charity care shall comply with Statement No. 15 of the Principles and Practices Board of the Healthcare Financial Management Association, "Valuation and Financial Statement Presentation of Charity Service and Bad Debt by Institutional Healthcare Providers".

(j) The salary and compensation provided for above does not preclude Clinic and Physician from contracting for additional services to be separately provided to Clinic by Physician, if such services are outside the scope of Physician's customary duties and responsibilities and are separately agreed to in writing by Physician and Clinic; provided, however, that Physician shall in no event receive compensation which is in excess of

4

Effective: 7/00

reasonable and fair compensation for such services. For example, Clinic and Physician shall have the right to agree that Physician shall, on a voluntary basis, provide, during Physician's free time, additional physician services for the Clinic's urgent care unit.

5

# EXHIBIT B

## EMPLOYMENT BENEFITS
## FOR
## FULL-TIME PHYSICIAN
### (Non-Hospital Based)

### (Regular Part-Time Is Prorated)

The current employment benefits provided by the Clinic are set forth below for the eligible physician. As described in Section 5 of the Employment Agreement, these benefits are subject to revision or modification by action of the Clinic Board of Directors.

a. **Qualified Retirement Plan.** The Clinic provides a qualified 401(k) plan for the eligible Physician. Physician's participation in and benefits under the plan are subject to the conditions and eligibility requirements described in the plan.

b. **Health Insurance.** Effective upon employment, the Clinic provides to the eligible Physician and the Physician's dependents medical, drug and vision, and dental insurance coverage upon the terms and conditions described in the plans.

c. **Group-Term Life Insurance.** The Clinic provides to the eligible Physician group term life insurance. Coverage is an amount equal to two and one-half (2-1/2) times Physician's Base Annual Compensation for the twelve (12) months immediately preceding Physician's death, but in no event to exceed $500,000.

d. **Vacation.** Up to four (4) weeks of vacation (20 work days) in accordance with the terms of the Clinic's vacation policy.

e. **Extended Sick Time ("EST").** Effective upon employment, the eligible Physician is enrolled in Clinic's EST program. Physician's participation in and benefits under the EST program are subject to the conditions and eligibility requirements specified in the program.

f. **Disability.** The Clinic provides for the eligible Physician short-term disability coverage and long-term disability coverage upon the terms and conditions outlined in the plans.

g. **Continuing Medical Education.** Physician is entitled to reimbursement of reasonable expenses incurred by the Physician in connection with the Physician's participation in continuing medical education for Class I and Class II continuing medical education credits. The Clinic has established policies governing reimbursement, including a maximum amount which the Clinic will reimburse Physician in any fiscal year. Maximum amount is $4,000.00. Physician is allowed up to a maximum of ten (10) days per fiscal year for participation in continuing medical education for Class I or Class II continuing medical education

credits subject to leave approval based on operational needs. CME days and reimbursable stipends are only for the fiscal year granted.

h. **Other Business Expenses.** Physician is entitled to reimbursement for reasonable business expenses incurred by Physician in connection with Physician's employment by the Clinic, which reasonable business expense are budgeted for and approved by the Clinic Board. The Clinic has established policies governing reimbursement, including identification of the types of expenses, which will be borne in whole or in part by the Clinic.

i. **Dues.** Effective upon employment, Physician is entitled to reimbursement for Physician's State of Hawaii medical license fee, State of Hawaii drug license fee and the Federal drug license fee. In addition, Physician's Hawaii Medical Association and Kauai Medical Society membership dues (if applicable) shall be paid for by the Clinic or reimbursed to Physician.

j. **Family and Medical Leave.** The Clinic will provide leave in accordance with the Family and Medical Leave Act if Physician is eligible for such leave. Information about family and medical leave is available at the Clinic's administrative office.

# EXHIBIT B-1

## VACATION / SICK LEAVE / EXTENDED SICK TIME POLICY
## FOR
## FULL-TIME PHYSICIAN
## (Non-Hospital Based)

### (Regular Part-Time Is Prorated)

The current guidelines for vacation time are set forth below.

A. **Vacation**

1. **Eligibility.** Clinic physician working full-time shall be eligible for four (4) weeks vacation annually (20 working days).

2. **Use.** Physician will request such time off from their Department Chairperson in writing. Time off for departments will be granted on an earliest request basis and shall follow department specific guidelines for number of physicians off and locums coverage. To minimize inconveniences to patients, such request should be in writing thirty (30) days prior to the time requested.

3. Chairpersons requesting time off shall submit such requests to the Clinic's Medical Director or CEO.

4. **Accrual**

    a. Only hours that have already accrued can be utilized. No physician will be able to utilize vacation time that has not been earned without administrative approval.

    b. A regular full-time physician will accrue four (4) weeks or one hundred sixty (160) hours of vacation per year. The accrual will be done on a pay period basis of 6.15 hours per pay period. The maximum accrual will be sixty-six (66) days or five hundred twenty eight (528) hours. Once the maximum accrual is reached, the physician will not accrue more vacation hours.

B. **Sick Leave**

1. When a physician is sick, it will be the responsibility of the individual physician to contact his or her Department Chairperson and Nurse so as to allow rescheduling of patients. For illnesses greater than five (5) working days, extended sick time (EST) may be used. It will be calculated from day one of such prolonged illnesses.

H:\CONTRACT\EMPAGREE\2000\Non-Hospital Based\EXHIBIT B-1 2033000.doc

C.   **Extended Sick Time (EST)**

    1.    **Eligibility.** A regular full-time physician is eligible for EST and begins accruing EST from their start date.

    2.    **Use.** Accrued EST is utilized from the forty-first (41st) hour in a given occasion of absence due to illness or injury, which may require proof of illness or injury. When a physician is eligible for EST, EST will be retro back to day one (1) of the illness or injury and their vacation or PTO accrual will be credited for the five (5) days, forty (40) hours taken to access EST.

    3.    **Accrual**

        a.    Only hours that have been accrued can be utilized.

        b.    A regular full-time physician will accrue 8.308 hours per pay period. The accrual will be done on a pay period basis. The maximum accrual will be seventy two and one-half (72.5) days or five hundred eighty (580) hours.

D.   **Termination**

    1.    Upon termination of employment with the Clinic, the following procedure will be used:

        a.    The departing physician will be formally terminated on the agreed to date. The physician shall be entitled to receive a lump sum payment for his or her portion of receipts (according to the salary formula then in place), which are collected over the time period remaining in the departing physician's vacation bank. Such payment shall be made within sixty (60) days of the last day that receipts are calculated as due to the departing physician. As noted in section 1.1 of Exhibit A, such final payments are net of amounts due the Clinic.