

**Kaua'i Medical Clinic**

3420B Kuhio Highway • Lihue, HI 96766          (808) 245-1500 • wilcoxhealth.org

May 1, 2002

James Lockyer, M.D.
3-3420 Kuhio Hwy. Suite B
Lihue, HI

Dear Dr. Lockyer,

Thank you for your written response dated April 20, 2002. I appreciate the opportunity to discuss this further with you. The detailed plan presented in the letter dated April 9th 2002 was offered as a method to continue for three more months a salary subsidy while trying to insure that the need for that subsidy was eliminated by the end of the time period. It also served to detail allegations about slowness in completion of paperwork, a lack of organization in your office practice and slowness in responding to hospital paging. We do understand that you disagree with some of the allegations particularly those concerning responding to pages.

In order to move forward in a fashion which is mutually beneficial and addresses the concerns of all parties. We are replacing the letter and work plan dated April 9th, 2002 in its entirety by this letter and the following work plan:

1. We accept your request to rescind our notice of termination.

2. Any future complaint involving your practice will be documented and presented to you for your written response. The complaint and your response will be presented to the Clinic QA committee for their review and objectivity.

3. Effective as soon as possible (but before May 15th) you will be relieved from seeing patients for 1 day. You have that time to accurately complete all patient documentation and charting and get your office in general order as well as meet with Julie Ako, me, Sandi and Chris to discuss general work flow. At the end of this day, your office should be cleaned of all charts and they will be returned to the medical records department for filing.

4. For all charts going forward, all documentation should be completed no later than 24 hours from the time you have seen the patient and charts should not remain overnight in your office.

5. You should attend a session with Boyd Murayama to review the appropriateness of your coding and documentation. This session should occur by May 15th.

6. We will remove all debt due to KMC (as calculated by the salary formula) through April 1st 2001.

*An affiliate of Hawaii Pacific Health*

7. We agree to hold your annual salary draw at $115,000 until July 1, 2002. This salary is based on full time work and full time availability to patients. As of July 1st your salary draw will become equal to an estimation of the amounts due to you by the calculation of the salary formula. We will estimate this amount by evaluation of your productivity between April 1, 2002 and July 1, 2002. *

8. There will be no further notices of this potential salary draw change other than a new salary draw sheet.

Jim, the group would very much like your practice on Kauai to be successful, and you and your peers have spoken quite clearly about what steps will be necessary to make that happen. I hope that you will continue to view this matter in the way that you presented to the Executive Committee and that you will produce the changes that you proposed to the group.

Sincerely,

Lee A. Evslin, M.D.
CEO

\* If we use Mary Pixler's practice as an equivalent type of practice it would seem that monthly charges of at least $37,500, monthly RVUs of 220 and outpatient visits in excess of 250 per month should come close to an annual salary of $115,000. (Median number of outpatient visits for a general internist is 307 per month according to national data.)

Please note that the salary draw is always an estimation of your future earnings. Please see Exhibit A of your contract for a more complete explanation.