# Jouxson-Meyers
# & del Castillo
Attorneys at Law
a Limited Liability Law Company

May 24, 2002

Lee A. Evslin, M.D.  
President & CEO  
Kauai Medical Clinic  
3-34208 Kuhio Highway  
Lihue, HI 96766

Subject to Hawai`i Rules of Evidence Rule 408

Re:   James Lockyer, M.D.'s employment with Kauai Medical Clinic.

Dear Dr. Evslin:

      Dr. Lockyer has retained our law firm to assist him with resolving the issues you recently raised regarding his employment by KMC. The several letters Dr. Lockyer has received from KMC in April and May 2002 contain a number of misstatements about the dates of certain occurrences in that period. Exhibit A, which we have attached to this letter, addresses those misstatements. Please advise us if you do not agree with any of the facts we have restated in Exhibit A.

      It is Dr. Lockyer's understanding that KMC presently plans to cut his annual salary by approximately 25% effective July 1. You represented in your first letter dated April 9, 2002, that the cut is based upon Dr. Lockyer's "lack of productivity and difficulties in managing [his] practice." Dr. Lockyer strongly believes that KMC's assumptions about his actual productivity and practice management are incorrect. Dr. Lockyer believes that the actual census figures will show that he has actually nearly always exceeded the monthly median, in which case he may have been underpaid.

      In your second letter, also dated April 9, you stated that 250 outpatient visits a month should provide sufficient patient revenue to support Dr. Lockyer's base annual salary of $125,000.[1] Thus, it appears that it would be a material breach of Dr. Lockyer's Employment Agreement if KMC reduced his compensation if he is averaging 250 or more outpatient visits per month. It is therefore essential that KMC provide Dr. Lockyer with a proper accounting before it takes the very drastic step of substantially reducing his salary.

      We feel certain you recognize that fundamental to Dr. Lockyer's employment agreement is the understanding that if his average production is at or above the national median, KMC's collections will generate sufficient revenues to support his base salary of $125,000. In

---

[1] We have not mentioned RVUs because it appears you believe that a sufficiently reliable relationship exists between outpatient visits and RVUs that you can predict 220 RVUs will result from 250 patient visits.

Arleen Jouxson-Meyers, M.D., M.P.H.  
Rafael G. del Castillo  
Century Square  
Suite 2304  
1188 Bishop Street  

Phone: 808-621-8806  
Fax: 808-422-8772  
Email Arleen: bosman@prodigy.net

Lee A. Evslin, M.D.
May 24, 2002
Re: Dr. Lockyer's Employement with Kauai Medical Clinic
Page 2

fact, the Agreement expressly states KMC's duty to provide the resources necessary to effectuate that implied covenant. Additional provisions in the Agreement, such as the requirement that Dr. Lockyer treat all comers regardless of their ability to pay, indicate that KMC assumed the risks associated with below par collections.

Based on the foregoing, it is essential that KMC provide the information necessary to determine where the fault actually lies. Absent reliable evidence that Dr. Lockyer's production averages about 190 outpatient visits per month, Dr. Lockyer's compensation should not be reduced below the agreed base annual salary. Dr. Lockyer therefore requests that you provide the following information, and such other information as he may reasonably require to satisfy himself whether KMC has proper grounds for reducing his salary, and that the issue is his production and not some other, possibly improper, ground:

1. A complete record of all charges submitted by Dr. Lockyer for billing by KMC since his employment commenced until the present, indicating the service codes billed and insurance coverage (including no insurance) and whether the particular charge is under a fee-for-service or capitation contract.

2. A complete record of reimbursements received on account of professional services rendered by Dr. Lockyer.

3. An explanation of how KMC credits Dr. Lockyer for professional services he renders patients covered by capitation contracts, and documentation of such credits.

4. Dr. Lockyer's total monthly patient census.

Dr. Lockyer's request and his concerns are well-justified and deserving of your immediate attention. Based on KMC's representations during his recruitment and interviews, Dr. Lockyer made a very substantial commitment, moving his family here from Kentucky, with the intention of making Kauai his permanent home. Since moving to Kauai, Dr. Lockyer has dedicated his practice to improving the quality and delivery of health care available to the Island's residents, and he strongly believes that the facts will show that he has more than fulfilled his obligations to the community and to KMC. Furthermore, Dr. Lockyer is very concerned that he has been characterized to his colleagues as under-productive, and that his professional standing with them has been damaged. Dr. Lockyer is determined to be vindicated on these issues.

We are presently studying the additional issues you raised in your letters that you appear to consider potential justifications for taking adverse action against Dr. Lockyer. It appears that those allegations are wholly without merit and one or more of them may be actionable violations of Dr. Lockyer's fundamental rights. These matters must be addressed in due course. Accordingly, Dr. Lockyer reserves all rights concerning them until KMC has responded to the foregoing requests for information.

We would appreciate your confirming in writing that KMC is able to provide the requested information by the end of business on Friday May 24, 2002, and advising us whether we may receive the information prior to that. We would also appreciate your cooperation in

Lee A. Evslin, M.D.
May 24, 2002
Re: Dr. Lockyer's Employement with Kauai Medical Clinic
Page 3

directing all future correspondence in this matter to us. You may provide a copy of such correspondence to Dr. Lockyer if you wish.

Thank you for your attention and cooperation in this matter. Please contact me if you have any questions.

Sincerely,

*Arleen Jouxson-Meyers*

Arleen Jouxson-Meyers

cc:  James Lockyer, M.D.

EXHIBIT A
(CORRECTED CHRONOLOGY)

1. Dr. Lockyer signed an Employment Agreement with Kauai Medical Clinic (KMC) on February 24, 2000, which became effective on March 1, 2000. ("Employment Agreement")

2. KMC promised to pay Dr. Lockyer as his "Base Annual Compensation" 50% of the first $350,000 collected on account of professional services he rendered; and 45% of receipts greater than $350,000 but less than $500,000; and 40% of receipts in excess of $500,000. After being taken over by Hawaii Pacific Health, KMC amended the Employment Agreement on December 19, 2001 to delete the section regarding 40% of receipts in excess of $500,000. (Amendment to the Employment Agreement signed on 12/19/01)

3. In December 2001, KMC warned Dr. Lockyer that his pay would be cut because his production was allegedly insufficient.

4. You informed Dr. Lockyer that the Salary and Finance Committee discussed his practice at its April 2, 2002 meeting and it was decided to cut his salary approximately 25% and terminate his employment, effective July 1, 2002.[2] Dr. Lockyer was not invited to be present at the meeting, and in fact, when he went into your office at about noon hoping to speak with Dr. Roger Netzer, the Committee Chair, before the meeting, he found that the meeting had already taken place. You recommended to Dr. Lockyer that he appeal the Committee's decision, which he did.

5. On April 11, Dr. Lockyer met with the Salary and Finance Committee to appeal its decision to terminate his employment and to cut his salary.[3] On April 16, you hand delivered to Dr. Lockyer a letter dated April 9, 2002, in which you set forth a "work improvement plan," and told him that he was required to sign indicating his acceptance in order to possibly avoid termination. Over the next several days, you insisted that Dr. Lockyer must sign the work improvement plan.[4] Dr. Lockyer told you that he wanted to consider the contents of the letter and consult with an attorney carefully before signing.

6. On April 20, 2002, Dr. Lockyer hand-delivered a letter to you expressing the hope that he would be permitted to continue his work as a member of KMC. Strangely enough, even though you had already received Dr. Lockyer's April 20th letter, you wrote Dr. Lockyer on April 24, 2002, indicating that you had not yet received a written response from him, and that KMC was planning to move forward on his termination effective July 1, 2002.

7. Your second work improvement plan letter, also dated April 9, acknowledged receipt of Dr. Lockyer's April 20 letter. It also stated that KMC accepted Dr. Lockyer's request to rescind its notice of termination.[5]

---

[2] Your letter dated April 24, 2002, states that you gave Dr. Lockyer a written notice of termination, but that is in error.
[3] Your letter dated April 24, 2002, states that the appeal was held on April 6, but that is also in error.
[4] Your letter dated April 24, 2002, states that you delivered the work plan to Dr. Lockyer on April 9, but that is also in error.
[5] You apparently misdated that letter April 9, 2002, but have now delivered a replacement to Dr. Lockyer dated May 1, 2002.