# Exhibit 8

Of Counsel:
ROBBINS & ASSOCIATES
Attorneys at Law
A Law Corporation

KENNETH S. ROBBINS        1000-0
LEIGHTON M. HARA    7826-0
WENDY M. YAMAMOTO      8049-0
2200 Davies Pacific Center
841 Bishop Street
Honolulu, Hawaii 96813
Telephone: (808) 524-2355
Facsimile: (808) 526-0290
Email: defend@robbinsandassociates.net

PATTON BOGGS LLP
Attorneys at Law

HARRY R. SILVER
2550 M Street, NW
Washington, D.C. 20037
Telephone: (202) 457-6453
Facsimile: (202) 457-6315
Email: hsilver@pattonboggs.com


Attorneys for Defendants
HAWAI'I PACIFIC HEALTH,
KAUAI MEDICAL CLINIC, WILCOX MEMORIAL
HOSPITAL AND WILCOX HEALTH SYSTEM

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>ex rel. JAMES LOCKYER, M.D., )<br>STATE OF HAWAII, ex rel. JAMES )<br>LOCKYER, M.D., and JAMES )<br>LOCKYER, M.D., in his own behalf )<br>) | CIVIL NO. 04-00596 ACK LEK<br>(Federal and State – Qui Tam) |

|                            |   |
|----------------------------|---|
| Plaintiffs,                | ) |
|                            | ) |
| v.                         | ) |
|                            | ) |
| HAWAI'I PACIFIC HEALTH, et al. | ) |
|                            | ) |
| Defendants.                | ) |
|                            | ) |

## DECLARATION OF BERNARD W. D. FONG, M.D.

I, Bernard W.D. Fong, M.D., do hereby declare that the following information is based on personal knowledge, that I am competent to so testify and that it is both true and correct.

1. I received my medical degree from Jefferson Medical College in Philadelphia, Pennsylvania in 1952. I was a practicing physician, licensed in the state of Hawaii, specializing in Internal Medicine and Cardiology, for 50 years. I held an academic appointment at the John A. Burns School of Medicine from 1958 through 2004.

2. From 2000 through 2004, I served as the Carrier Medical Director for Noridian Administrative Services, LLC, the Part B Medicare Administrative Contractor serving eleven states including Hawaii, as well as Guam and American Samoa.

3. As the Carrier Medical Director, my paramount responsibility was to interact with the medical community of Hawaii as well as all other Carrier Medical Directors nationally, and the Centers for Medicare and Medicaid Services (CMS),

the agency that administers Medicare, to assist in the formulation of CMS regulations and to discuss the interpretation and application of those regulations. Based on those discussions, I, along with the other seven Noridian medical directors educated the Noridian staff on how those regulations were to be applied in the processing and adjudication of medical services claims submitted to the states under the Noridian jurisdiction.

4. As the Carrier Medical Director, I was, and still am, familiar with the "incident to" rules. I was responsible for interpreting and applying these rules to claims submitted by providers to Noridian both in Hawaii as well as, from time to time, in the other states under the jurisdiction of Noridian.

5. Under the "incident to" rules, a medical service must be performed under the direction of a physician, meaning that the physician must conduct an initial evaluation and prepare a plan of care. He may then direct others to perform services for the condition evaluated under his overall supervision.

6. For chemotherapy, the "incident to" rules allow an oncologist to make an assessment of the patient, establish a treatment protocol, and advise an oncology nurse (the "incident to" person) on administering appropriate chemotherapy. If the oncologist is unavailable on the day chemotherapy is administered, another physician must be available to "supervise." In the chemotherapy context, this means there must be a physician immediately available to render assistance to the

chemotherapy nurse if needed. In a physician-run clinic, like KMC, where all of the physicians and nurses are employed by the clinic, it is not necessary that the physician who is covering while the oncologist is unavailable also be an oncologist. Any licensed physician, employed by the clinic, can "cover" and be deemed the "supervising" physician under the "incident to" rules. Unless the "supervising" physician is called upon to render assistance by treating the patient, it is highly unlikely that the "supervising" physician would ever even see the patient.

7. In the case of chemotherapy administered when the oncologist is not present, the "incident to" rules designate the oncologist as the "ordering" physician and the covering doctor as the "supervising" physician. Under such circumstances, the regulations require that the chemotherapy be billed to Medicare under the "supervising" physician's provider number.

8. During the 2000-2004 period, while I served as the Carrier Medical Director for Noridian, I had the opportunity to review KMC's Medicare billings in general and for chemotherapy in particular. KMC's Medicare billings were in the manner as described in paragraphs 5, 6 and 7 above, which was entirely consistent with applicable CMS regulations and manuals.

9. If the "ordering" physician is not immediately available, the covering physician may be any other physician in the group who is immediately available

and to whom such duties have been either assigned or agreed upon as part of the group practice agreement to qualify as the "supervising" physician for purposes of the "incident to" rules.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 11, 2006.

_____
Bernard W. D. Fong, M.D.