EDWARD H. KUBO, JR.  2499
United States Attorney
District of Hawaii
HARRY YEE  3790
Assistant U.S. Attorney
300 Ala Moana Boulevard
Room 6-100
Honolulu, Hawaii  96850
Telephone:  (808) 541-2850
Facsimile:  (808) 541-3752
Email:  Harry.Yee@usdoj.gov

JANICE P. KIM  3436
Kaimuki Business Plaza
3615 Harding Avenue, #206
Honolulu, Hawaii 96816
Telephone No. (808) 732-0522
Facsimile No. (808) 735-0459
kimj054@hawaii.rr.com

ARLEEN D. JOUXSON 7223-0
RAFAEL G. DEL CASTILLO 6909-0
JOUXSON-MEYERS & DEL CASTILLO
Attorneys at Law, A Limited Liability Law Company
302 California Avenue, Suite 209
Wahiawa, Hawaii 96786
Telephone: (808) 621-8806
Fax: (808) 422-8772
rafa@hawaii.rr.com

Co-Counsel for Qui Tam for Plaintiff
and the State of Hawaii

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. JAMES LOCKYER, M.D., STATE OF HAWAII, ex rel. JAMES LOCKYER, M.D. and JAMES LOCKYER, M.D., in his own behalf;<br><br>    Plaintiffs,<br><br>vs.<br><br>HAWAI'I PACIFIC HEALTH; KAUAI MEDICAL CLINIC; WILCOX MEMORIAL HOSPITAL; WILCOX HEALTH SYSTEM; and WILLIAM A. EVSLIN, M.D. aka LEE A. EVSLIN, M.D. | CIVIL NO. CV04 00596 ACK/LEK (Federal and State - Qui Tam)<br><br>FIRST AMENDED COMPLAINT; DEMAND FOR JURY TRIAL; SUMMONS IN A CIVIL ACTION |

Exhibit "B"

)

Defendants.    )

_____)

FIRST AMENDED COMPLAINT

Qui Tam Plaintiff JAMES LOCKYER, M.D., on behalf of the United States and individually, through their attorneys, JANICE P. KIM, ARLEEN D. JOUXSON and RAFAEL G. DEL CASTILLO, hereby file their Complaint against Defendants HAWAI'I PACIFIC HEALTH; KAUAI MEDICAL CLINIC; WILCOX MEMORIAL HOSPITAL; WILCOX HEALTH SYSTEMS; and WILLIAM A. EVSLIN, M.D. aka LEE A. EVSLIN, M.D. and allege and aver as follows:

This is an action for violation of the Federal False Claims Act, 31 U.S.C. §3729, et seq. and Hawaii Revised Statutes Chapter 661. Qui Tam Plaintiff LOCKYER alleges that Defendants, providers of health care through the Medicare and Medicaid programs, made false claims for payment and made and used false records and statements in support of their false claims for payment from those programs. Additionally, Qui Tam Plaintiff JAMES LOCKYER, M.D. avers that he was retaliated against in his employment with Defendants HAWAI'I PACIFIC HEALTH; KAUAI MEDICAL CLINIC; WILCOX MEMORIAL HOSPITAL; WILCOX HEALTH SYSTEM; and WILLIAM A. EVSLIN, M.D. AKA LEE A. EVSLIN, M.D., for opposing and reporting such improper practices.

PARTIES

1.    Plaintiff JAMES LOCKYER, M.D. (hereafter

2

"Que Tam Plaintiff LOCKYER") is a resident of the State of Hawaii and brings this action on behalf of the United States of America and the State of Hawaii, and on his own behalf.

2.    On information and belief, Defendant HAWAII PACIFIC HEALTH (hereafter "Defendant HPH"), is a not for profit Hawaii corporation, doing business in the State of Hawaii and having its principal place of business in the State of Hawaii. On December 17, 2001, Defendant HPH was informed as a result of a merger between Kapi'olani Health, Straub Clinic and Hospital, and Wilcox Health System.

3.    On information and belief, Defendant KAUAI MEDICAL CLINIC (hereafter "Defendant KMC") is a not for profit Hawaii corporation, doing business in the State of Hawaii and having its principal place of business in the State of Hawaii.  On information and belief, this entity was merged with Defendant WILCOX MEMORIAL HOSPITAL to create Wilcox Health System.

4.    On information and belief, Defendant WILCOX MEMORIAL HOSPITAL (hereafter "Defendant WMH") and Kauai Medical Clinic were merged and became WILCOX HEALTH SYSTEM (hereafter "Defendant WHS ") are Hawaii corporations.

5.    Defendant WILLIAM A. EVSLIN, M.D. AKA LEE A. EVSLIN, M.D. (hereafter "Defendant DR. EVSLIN") is a resident of the State of Hawaii and is a physician licensed to practice medicine in the State of Hawaii.

JURISDICTION AND VENUE

This Court has jurisdiction of the claims presented herein, pursuant to 28 U.S.C. § 1331 and/or 1337.

6.    This action is brought to remedy Defendants' submission of false claims to the Medicare, Medicaid and other programs in violation of the Federal False Claims Act, 31 U.S.C. §3729-33, pursuant to the Qui Tam provisions of that Act and the Hawaii False Claims Act, inter alia H.R.S. §661-21 et seq. (2000 Supp.) Pursuant to the Qui Tam provisions of that Act.

7.    This Court has subject matter jurisdiction to hear the claims in this Complaint pursuant to the Federal False Claims Act, 31 U.S.C. §3729-33, and H.R.S. §603-21.5, personal jurisdiction over Defendants pursuant to H.R.S. §634-35 and venue over the claims in this Complaint pursuant to H.R.S. §603-36. This Court has subject matter jurisdiction over the state claims alleged herein pursuant to the principles of supplemental jurisdiction.

SUBSTANTIVE ALLEGATIONS

FIRST CLAIM FOR RELIEF
(VIOLATIONS OF FEDERAL AND STATE  FALSE CLAIMS ACTS, inter alia, 31 U.S.C. § 3729, et seq. H.R.S. §661-21)

8.    Qui Tam Plaintiff LOCKYER realleges and incorporate herein by reference the allegations contained in Paragraphs 1 - 7 of the Complaint and further alleges as follows:

9.    Defendants are jointly and severally liable for violations under inter alia 31 U.S.C. §3729, et seq. and H.R.S. §661-21, et seq. and as described below.

10.   This is a civil action brought by Qui Tam Plaintiff LOCKYER on behalf of the U.S. under the Federal False Claims Act 31 U.S.C. §3729(a)(1),(2) and (3) and on behalf of the State of Hawaii and against Defendants under the Hawaii False Claims Act, inter alia, H.R.S. § 661-21(a)(1), (2) and (3).

11.   Qui Tam Plaintiff LOCKYER brings this claim pursuant to 31 U.S.C. §3729, et seq., acting as a dutiful citizens regarding matters of public concern, and as the original source of the information upon which the allegations set forth herein are based.

12.   At all times relevant to this Complaint, it was a violation of inter alia, 31 U.S.C. §3729(a)(1) and H.R.S. §661-21(a)(1) to submit, or cause to be submitted, a false or fraudulent claim for payments or approval by Medicare, Medicaid, Tri-CARE or other State and Federal programs.

13.   At all times relevant to this Complaint, it was a violation of inter alia, 31 U.S.C. §3729(a)(2) and H.R.S. §661-21(a)(2)  to make, or cause to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by Medicare, Medicaid, Tri-CARE or other State or Federal  programs.

14.   At all times relevant to this Complaint, it was a violation of inter alia, 31 U.S.C. §3729(a)(3) and H.R.S. §661-21(a)(3) to conspire to defraud Medicare, Medicaid, Tri-CARE or other State or Federal program by causing a false or fraudulent claim to be allowed or paid.

15.    Defendants HPH, KMC, WMH, WHS, and DR. EVSLIN own and operate health care services and/or hospital facilities that are authorized participants in the Medicare Program of the Social Security Act, arising out of 42 U.S.C. §1395, et seq., and in the State of Hawaii's Medicaid Program, arising out of 42 U.S.C. §1396, et seq. (hereafter "the Medicare/Medicaid programs"). As such participants, Defendants have agreed to observe, satisfy, and comply with all federal and state laws, regulations, rules, and instructions pertaining to the administration of the Medicare/Medicaid programs.

16.    Defendant DR. EVSLIN is a participant physician in the Medicare/Medicaid programs, and has agreed to observe, satisfy, and comply with all federal and state laws, regulations, rules, and instructions pertaining to the administration of the Medicare/Medicaid programs.

17.    Defendants bill for and receive payments from the Medicare/Medicaid programs for the patients in their care.

18.    Qui Tam Plaintiff LOCKYER is informed and believes, and upon such basis alleges, that Defendants HPH, KMC, WMH, WHS are wholly and/or partially owned subsidiaries of a common parent corporation and/or are operated under a common scheme and/or merged and/or operated pursuant to common policies, procedures, or practices and/or are governed by interlocking boards of directors.

19.    Defendants HPH, KMC, WMH, WHS and DR. EVSLIN have purposefully and/or knowingly and/or recklessly engaged in and

6

continue to engage in a pattern and practice of falsifying
patient records, concealing noncompliance with federal and state
requirements for participation in the Medicare/Medicaid programs,
making fraudulent claims for services, treatment, and
medications, and submitting requests for payments that failed to
satisfy the federally and state-mandated conditions for
Medicare/Medicaid participation.  Defendants engaged in such
practices for the purpose of obtaining greater compensation from
the Medicare/Medicaid programs than that to which Defendants were
legally entitled.

<u>Fraudulent Medical Record Keeping</u>

20.  Qui Tam Plaintiff LOCKYER was recruited by
Defendants DR. EVSLIN and KMC to become a Defendant KMC employee-
physician in its internal medicine department.

21.  As a result of a dispute over compensation, Qui
Tam Plaintiff LOCKYER forced Defendant KMC, in arbitration, to
disgorge to him all documents and information regarding his
compensation which included billings under his provider number
from December, 1999 to September, 2003.

22.  Qui Tam Plaintiff LOCKYER, upon his analysis of
billings submitted by Defendant KMC under his provider number
provided, discovered that Defendant KMC was charging and
receiving thousand of dollars of reimbursements from the
Medicare/Medicaid programs for services to patients which Qui Tam
Plaintiff LOCKYER never ordered to be provided, and believes may
never have been provided or if provided, failed to meet the

7

standard of care required for coverage by the Medicare/Medicaid programs.

### Billing for Services Not Provided

23.   In the claims journal reports Defendants produced in compliance with the Arbitrator's orders, Qui Tam Plaintiff LOCKYER discovered Defendants had submitted approximately 378 claims during the period from December, 1999 to September, 2003, in the total approximate amount of $102,000 for chemotherapy and other injectable drugs allegedly provided to patients, many of whom Qui Tam Plaintiff LOCKYER had never seen in his practice.

24.   Qui Tam Plaintiff LOCKYER learned that none of the other members of the internal medicine department were aware that Defendant KMC was submitting chemotherapy claims under their provider numbers.

25.   Qui Tam Plaintiff LOCKYER also noted that the reports indicated Defendants were crediting his provider number in their internal accounting system with the charges of up to $18,000 for chemotherapy, and then reversing the credit to him.

26.   After Qui Tam Plaintiff LOCKYER requested an explanation of charges for chemotherapy under his provider number, he noted that the chemotherapy charges stopped appearing on his reports.  Defendants never explained the charges.

27.   During approximately a one month period in May, 2002, Defendants KMC and DR. EVSLIN attempted to require the Defendant KMC internal medicine department physicians to sign off on chemotherapy when no oncologist was present on Kauai.  The

8

internal medicine department physicians objected when they were asked to sign off on charts where no patient lab test results were available, indicating that chemotherapy had been administered even before lab results were obtained and considered; or when the lab tests they were shown were grossly abnormal because they had insufficient knowledge of the patients' cases to make determination that the results were acceptable under the circumstances, and the circumstances did not require review by the oncologist.  Defendant DR. EVSLIN responded b telling the internal medicine department physicians that he would sign off on the abnormal lab results or on charts where no lab results were present.

28.  Qui Tam Plaintiff LOCKYER believes that in all cases in which no lab results were in the chart at the time of the review, lab tests were ordered as they should have been prior to the administration of the chemotherapy, the lab reports served no purpose because they were not read by the physician ordering the chemotherapy, and thus, must be deemed to be not medically necessary.

29.  Defendants did not cease the practice of having non-oncologists sign off on chemotherapy charts after the internal medicine department physicians objected in May, 2002.  On October 2, 2003, one of the nurses in the chemotherapy clinic came to Qui Tam Plaintiff LOCKYER's office and requested that he come into the chemotherapy clinic at the end of the day and "sign

off" on chemotherapy administered that day, because the oncology physicians were off-island.

30.   When Qui Tam Plaintiff LOCKYER requested that Defendant KMC's medical director confirm that it was lawful for him to comply with the nurse's request, the medical director sent Qui Tam Plaintiff LOCKYER an e-mail explaining that the issue had been "taken care of" and relieving him from the duty.

31.   Qui Tam Plaintiff LOCKYER subsequently heard that Defendants were changing their practices with respect to chemotherapy.

32.   Defendants HPH, KMC, WMH, WHS and DR. EVSLIN knowingly, willfully, and/or recklessly presented or caused to be presented false or fraudulent claims to the Medicare/Medicaid programs for payment or approval, and knowingly, willfully, and/or recklessly made or caused to be made a false record or statement to get false or fraudulent claims paid or approved by the Medicare/Medicaid programs, in violation of inter alia, 31 U.S.C. §3729, et seq. and H.R.S. §661-21.   Such Defendants received the full amount of their false claims.   Defendants HPH, KMC, WMH, WHS and DR. EVSLIN conspired to defraud the Medicare/Medicaid programs by getting false or fraudulent claims allowed or paid, in violation of inter alia, 31 U.S.C. §3729, et seq. and H.R.S. §661-21.

33.   Qui Tam Plaintiff LOCKYER is informed and believes and upon such basis alleges that Defendant HPH, KMC, WMH, WHS and DR. EVSLIN engage in the same or similar pattern and

practice of conduct for the purpose of knowingly, willfully, and/or recklessly presenting or causing to be presented false or fraudulent claims to the Medicare/Medicaid programs for payment or approval and knowingly, willfully, and/or recklessly making or causing to be made a false record or statement to get false or fraudulent claims paid or approved by the Medicare/Medicaid programs, in violation of inter alia, 31 U.S.C. §3729, et seq. and H.R.S. §661-21.  Such Defendants received the full amount of their false claims.

34.  Qui Tam Plaintiff LOCKYER is informed and believes and upon such basis alleges that Defendants HPH, KMC, WMH, WHS and DR. EVSLIN conspired with each other to defraud the Medicare/Medicaid programs by getting false or fraudulent claims allowed or paid in violation of inter alia, 31 U.S.C. §3729, et seq. and H.R.S. §661-21, and have received the full amount of their false claims.

<u>SECOND CLAIM FOR RELIEF</u>
(WRONGFUL TERMINATION AND RETALIATION)

35.  Qui Tam Plaintiff LOCKYER realleges and incorporates herein by reference the allegations contained in Paragraphs 1 to 34, of the Complaint and further alleges as follows:

36.  It is the public policy of the State of Hawaii to prohibit the submission of false and fraudulent claims for payment to government assistance programs.  It is also the public policy of the State of Hawaii to guarantee an appropriate level

11

of care to recipients of federal and state funds through the
Medicare/Medicaid programs.  Such public policies are embodied in
H.R.S. Chapter 661; H.R.S. §28-91; H.R.S. §346-14; Title 17,
Chapter 1704 and Title 11, Chapter 94 of the Hawaii
Administrative Rules; and the like statutes and/or regulations.

     37.  Qui Tam Plaintiff LOCKYER requested an audit of
Defendant KMC's finances.  Qui Tam Plaintiff LOCKYER knew that a
number of physicians had resigned from Defendant KMC unhappy with
their compensation and that a majority of Defendant KMC's
employee-physicians believed that their compensation was not
truthfully or correctly reported.  Qui Tam Plaintiff LOCKYER was
also aware that Defendant KMC had brought in a number of outside
consultants to review its administration.  Qui Tam Plaintiff
LOCKYER suspected deficiencies in patient records and billing
records, including but not limited to the deficiencies described
above.  Such deficiencies became directly related to Defendants
noncompliance with Medicare/Medicaid program requirements.

     38.  Such questioning by Qui Tam Plaintiff LOCKYER
angered Defendant DR. EVSLIN, who actively pursued the
termination of Qui Tam Plaintiff LOCKYER's employment contract
and retaliated against him by reducing his compensation by
approximately 20% on the unsupported contention that receipts
from claims submitted under his provider number were insufficient
to support his salary.

39.  Qui Tam Plaintiff LOCKYER demanded access to the records of billings and receipts by Defendant KMC under his provider number.

40.  Defendants refused to allow Qui Tam Plaintiff LOCKYER access to the records, so he was forced to demand arbitration under his contract and seek an order compelling Defendants to produce said records.  In that proceeding, the arbitrator order that Defendants to provide the information which, thereafter, substantiated the illegal practices complained of above.

41.  Defendants further retaliated against Qui Tam Plaintiff LOCKYER while the case was in arbitration by further reducing his compensation repeatedly.

42.  Qui Tam Plaintiff LOCKYER was forced to take unpaid leave from his employment with Defendants when his children were released from school for summer vacation because his income was insufficient for him to be able to afford child care.

43.  Qui Tam Plaintiff LOCKYER was forced to resign from his employment with Defendants on June 30, 2004 because they notified him that, effectively July 1, 2004, his compensation would be reduced to the absurd level of approximately $1,000.00 per month for full time employment as an internal medicine specialist, constituting constructive discharge from his employment.

44.  The action of the each of the Defendants was undertaken as the agent, representative, and/or alter ego of all other Defendants, for which all said Defendants are liable.  Such actions were reflective of and consistent with Defendants' pattern and practice of attempting to circumvent the requirement of the Medicare/Medicaid programs, and of making and using false records and statements in support of their false claims for payment from those programs.

45.  Defendants wrongfully retaliated against Qui Tam Plaintiff LOCKYER in violation of the above-stated public policies of the State of Hawaii.

46.  As a direct and proximate result of the foregoing unlawful retaliatory employment practice, Qui Tam Plaintiff LOCKYER has lost and will continue to lose substantial income, including but not limited to, wages, social security, fringe benefits, pension and seniority benefits, and other benefits due him, and has been forced to subdivide and sell a portion of his valuable residential property.

47.  As a further direct and proximate result of this unlawful employment practice, Qui Tam Plaintiff LOCKYER has suffered and will continue to suffer mental anguish, outrage, embarrassment, and humiliation, harm to his employability and earning capacity, disruption of his personal life, and loss of enjoyment of the ordinary pleasures of everyday life.

48.  By reason of the foregoing, Qui Tam Plaintiff LOCKYER has sustained special and general damages in an amount to

14

be shown at trial in excess of the minimum jurisdictional limits of this Court.

<u>THIRD CLAIM FOR RELIEF</u>
(WHISTLEBLOWER PROTECTION)
(31 U.S.C. §3730(h) AND H.R.S. §378-61)

49. Qui Tam Plaintiff LOCKYER realleges and incorporates herein by reference the allegations contained in Paragraphs 1 to 48, of the Complaint and further alleges as follows:

50. The conduct of Defendants HPH, KMC, WMH, WHS and DR. EVSLIN, violated the whistleblower protection provisions of both 31 U.S.C. §3730(h) and H.R.S. §378-61.

FOURTH CLAIM FOR RELIEF
<u>PUNITIVE DAMAGES</u>

51. Qui Tam Plaintiff LOCKYER realleges and incorporates herein by reference the allegations contained in Paragraphs 1 to 51, of the Complaint and further alleges as follows:

52. The conduct of Defendants HPH, KMC, WMH, WHS and DR. EVSLIN was willful, wanton, and oppressive or was carried out with such malice or reckless indifference to the protected rights of Qui Tam Plaintiff LOCKYER as to imply a spirit of mischief or criminal difference in civil obligations or was performed with that entire want of care which would raise the presumption of a conscious indifference to consequences and warrants the imposition of punitive damages.

53. In order to deter such conduct in the future and prevent repetition of such conduct as a practice, Qui Tam

15

Plaintiff LOCKYER requests that punitive damages be assessed against Defendants in an amount to be determined at trial sufficient to punish or set an example and deter such conduct in the future.

### FIFTH CLAIM FOR RELIEF
(VIOLATIONS OF FEDERAL FALSE CLAIMS ACT, inter alia,
31 U.S.C. § 3729)

During the period from approximately 2000-2004, Defendants HPH and KMG submitted false billings and/or statements for office visits for multiple patients, which duplicated previously identified false billings by physicians for medical services rendered by nurses.  These false billings and/or false statements were in violation of 31 U.S.C. § 3729, the False Claims Act.

### SIXTH CLAIM FOR RELIEF
(VIOLATIONS OF FEDERAL FALSE CLAIMS ACT,
31 U.S.C. § 3729, et seq.)

During the period from approximately 2000-2004, Defendants HPH and KMG submitted false statements and/or billings for office visits for multiple patients with physicians for medical services rendered by nurses.  These false billings and/or false statements were in violation of 31 U.S.C. § 3729, the False Claims Act.

WHEREFORE, Qui Tam Plaintiff LOCKYER prays for judgment against Defendants, and each of them, jointly and severally, in favor of the United States, the State of Hawaii, and Plaintiff JAMES LOCKYER, M.D. as follows:

16

A.    That Qui Tam Plaintiff be awarded the maximum amount allowed pursuant to 31 U.S.C. §3730(b) and H.R.S. §661-27.

B.    That judgment be granted for Qui Tam Plaintiff LOCKYER and the State of Hawaii and against Defendants and for any costs, including, but not limited to, court costs, expert fees, investigative expenses and all attorneys' fees incurred by Qui Tam Plaintiff LOCKYER in the prosecution of this suit.

C.  On behalf of the United States, for civil penalties of not less than $5,500.00 and not more than $11,000.00 for each violation, plus three times the amount of damages which the United States sustained, pursuant to 31 U.S.C. §§ 3729 and 3730 or as allowed by law.

D.    On behalf of the State of Hawaii, for civil penalties of not less than $5,000.00 and not more than $10,000.00 for each violation, plus three times the amount of damages which the State of Hawaii sustained, pursuant to H.R.S. Chapter 661 or as allowed by law.

E.  On behalf of the United States, the State of Hawaii, and Plaintiff JAMES LOCKYER, M.D., the award of interest, including but not limited to, prejudgment interest, at the legal rate.

F.    On behalf of Plaintiff JAMES LOCKYER, M.D., the award of general, special, and punitive damages, plus his reasonable attorney's fees and costs.

//

//

17

G.   For such other and further relief as the Court deems just in the premises.

DATED:   January 8, 2007, at Honolulu, Hawaii.

EDWARD H. KUBO, JR.
United States Attorney
District of Hawaii


By_____
    HARRY YEE
    Assistant U.S. Attorney

Attorneys for United States
    of America

18

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. JAMES LOCKYER, M.D., STATE OF HAWAII, ex rel. JAMES LOCKYER, M.D. and JAMES LOCKYER, M.D., in his own behalf;<br><br>                    Plaintiffs,<br><br>vs.<br><br>HAWAI'I PACIFIC HEALTH; KAUAI MEDICAL CLINIC; WILCOX MEMORIAL HOSPITAL; WILCOX HEALTH SYSTEM; and WILLIAM A. EVSLIN, M.D. AKA LEE A. EVSLIN, M.D.;<br><br>                    Defendants. | CIVIL NO. 04-00596 ACK LEK (Federal and State - Qui Tam)<br><br>DEMAND FOR JURY TRIAL |

DEMAND FOR JURY TRIAL

Qui Tam Plaintiff JAMES LOCKYER, M.D., on behalf of the United States and individually, hereby demands a trial by jury of all issues raised in the Amended Complaint.

DATED:  January 8, 2007, at Honolulu, Hawaii.

EDWARD H. KUBO, JR.
United States Attorney
District of Hawaii


By_____
  HARRY YEE
  Assistant U.S. Attorney

Attorneys for United States
  of America

✎AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

District of Hawaii

UNITED STATES OF AMERICA, ex rel
JAMES LOCKYER, M.D., etc.

**SUMMONS IN A CIVIL ACTION**

V.

HAWAI'I PACIFIC HEALTH; et al.

CASE NUMBER:    04-00596 ACK LEK

TO: (Name and address of Defendant)

All Named Defendants

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

HARRY YEE
Assistant U.S. Attorney
300 Ala Moana Boulevard
Room 6-100
Honolulu, Haaii 96850

an answer to the complaint which is served on you with this summons, within _____ 20 _____ days after service
of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you
for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the
Clerk of this Court within a reasonable period of time after service.

SUE BEITIA                                                    1/8/2007

CLERK                                                        DATE

(By) DEPUTY CLERK

AO 440 (Rev. 8/01) Summons in a Civil Action

| RETURN OF SERVICE | | |
|---|---|---|
| Service of the Summons and complaint was made by me[1] | DATE | |
| NAME OF SERVER *(PRINT)* | TITLE | |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant. Place where served:

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

　Name of person with whom the summons and complaint were left:

☐ Returned unexecuted:

☐ Other (specify):

| STATEMENT OF SERVICE FEES | | |
|---|---|---|
| TRAVEL | SERVICES | TOTAL $0.00 |

## DECLARATION OF SERVER

　　　　I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____　　_____
　　　　　　　　　　　Date　　　　　　　　　　*Signature of Server*


　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　*Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.