EDWARD H. KUBO, JR.   2499
United States Attorney
District of Hawaii

HARRY YEE   3790
Assistant U.S. Attorney
300 Ala Moana Boulevard
Room 6-100
Honolulu, Hawaii 96850
Telephone:  (808) 541-2850
Facsimile:  (808) 541-3752
Email: Harry.Yee@usdoj.gov

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. JAMES LOCKYER, M.D., STATE OF HAWAII, ex rel. JAMES LOCKYER, M.D. and JAMES LOCKYER, M.D., in his own behalf;<br><br>          Plaintiffs,<br>     vs.<br>HAWAI'I PACIFIC HEALTH; KAUAI MEDICAL CLINIC; WILCOX MEMORIAL HOSPITAL; WILCOX HEALTH SYSTEM; and WILLIAM A. EVSLIN, M.D. AKA LEE A. EVSLIN, M.D.,<br><br>          Defendants. | CIVIL NO. 04 00596 ACK KSC<br>(Federal and State - Qui Tam)<br><br>PLAINTIFF UNITED STATES OF AMERICA'S MEMORANDUM IN OPPOSITION TO DEFENDANTS HAWAI'I PACIFIC HEALTH, KAUAI MEDICAL CLINIC, WILCOX MEMORIAL HOSPITAL AND WILCOX HEALTH SYSTEM'S MOTION FOR SUMMARY JUDGMENT; DECLARATION OF HARRY YEE; DECLARATION OF TERRENCE L. KAY; EXHIBIT "A"; DECLARATION OF DOROTHY SHANNON EXHIBIT "A"; CERTIFICATE OF SERVICE<br><br>HONORABLE ALAN C. KAY<br>DATE:  March 27, 2007<br>TIME:  10:30 a.m. |

PLAINTIFF UNITED STATES OF AMERICA'S
MEMORANDUM IN OPPOSITION TO DEFENDANTS HAWAI'I
PACIFIC HEALTH, KAUAI MEDICAL CLINIC, WILCOX MEMORIAL
HOSPITAL AND WILCOX HEALTH SYSTEM'S MOTION FOR SUMMARY JUDGMENT

I.  INTRODUCTION

This is a Qui Tam action for violation of the Federal False Claims Act, 31 U.S.C. §3729, et seq.[1] and Hawaii Revised Statutes Chapter 661.  Qui Tam Plaintiff LOCKYER alleges that Defendants, providers of health care through the Medicare and Medicaid programs, made false claims for payment and made and used false records and statements in support of their false claims for payment from those programs.

The United States is seeking damages, losses, and statutory penalties for hundreds of false billings and/or statements by Defendants Kauai Medical Clinic ("KMC") and Evslin and later Defendant Hawaii Pacific Health ("HPH") made between 1999 and 2004.  These false billings and/or statements by physicians were based on medical services provided to cancer patients by nurses unsupervised and unqualified to provided chemotherapy treatment at the KMC/HPH "chemotherapy suite".

II.  STANDARD OF REVIEW FOR DEFENDANT'S MOTION FOR

---

[1] 31 U.S.C. § 3729.  False claims
  (a) Liability for certain acts. --Any person who--
  (1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval;
  (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government;
  (3) conspires to defraud the Government by getting a false or fraudulent claim allowed or paid[.]

SUMMARY JUDGMENT

Defendants bear the initial burden of directing the district court to the determinative issues and the available evidence that pertains to each. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (holding, "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."). The HPH-Entity Defendants do not bear the burden of proof at trial and thus they must demonstrate that there is an absence of evidence to support Plaintiffs' case. United States v. Idaho Falls Assocs., 81 F. Supp. 2d 1033, 1038 (D. Idaho 1999) (citing Celotex Corp., 477 U.S. at 325).

Further, Summary Judgment is proper if no factual issues exist for trial. The party opposing summary judgment must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Lindahl v. Air France, 930 F.2d 1434, 1436-37 (9th Cir. 1991) (quoting, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 048-49,106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the fact placed

before the court must be drawn in the light most favorable to the nonmoving party.  Id. (quoting, Anderson, 930 U.S. at 255, 106 S.Ct. at 2513).

III. INTRODUCTION

The United States will not re-argue the material facts in dispute between the parties and Defendants' obstreporous tactics preventing the discovery and disclosure of relevant evidence, which have been adequately addressed in Plaintiff/Relator's Memorandum in Opposition to the Defendant HPH's Motion for Summary.  Instead, the United States addresses the violation of Hawaii Rules of Professional Conduct Rules 4.2 and 8.4 (a) and (c) by Defendant HPH's counsel.

IV. DEFENDANTS MISINTERPRETATION AND MISAPPLICATION OF STATUTES AND REGULATIONS DO NOT ALLOW "UNSUPERVISED" NURSES TO BILL FOR CHEMOTHERAPY SERVICES TO CANCER PATIENTS.

Defendant HPH's motion is built upon factual admissions against their own interests.

First, that nurses, not the physicians, had in fact provided chemotherapy services to cancer patients.  Defendants KMC and then Defendant HPH listed the physicians on the bill/claim form. (Page 20 of Defendant HPH's Memorandum in Support of the Motion for Summary Judgment)  But according to Defendant HPH these nurses were "qualified" since they received "on the job training" from presumably each other since they were unsupervised on the job.  (Pages 20 and 26 of Defendant HPH's Memorandum in Support of the Motion for Summary Judgment)

Second, Defendant HPH billed the unsupervised nurses' chemotherapy services under numerous doctors' Medicare/Medicaid billing identifications, including the Plaintiff/Relator, who was not qualified in oncology.  (Page 16 of Defendant HPH's Memorandum in Support of the Motion for Summary Judgment.)

Third, the physicians whose billing identification were used, including the Plaintiff/Relator, had not seen these cancer patients and nurses reviewed blood tests prior to administration of chemotherapy and then provided the services billed.  (Page 25 and 28 of Defendant HPH's Memorandum in Support of the Motion for Summary Judgment)

Fourth, the physicians who Defendant HPH identified in the bill/claim form were told that they were "covering" the chemo-therapy suite but not told that they were responsible to supervise the nurses providing chemotherapy treatment.  (Pages 20-22 of Defendant HPH's Memorandum in Support of the Motion for Summary Judgment)

Fifth, there are no contemporaneous statements[2] or evidence presented in the moving papers from the 1999-2004 time period from any inquiries by Defendants KMC and HPH, which show that they were aware of, concerned about, or intended to rely on their

---

[2] The supporting declarations filed in support of the Defendant HPH motion for Summary Judgment constitute present day rationalizations and baseless speculation by the declarants as to what Defendant HPH had intended and how these hundreds of false billings would have been viewed had someone questioned them about the propriety of these false billings during 1999-2004.

misinterpretation of the term "incident to" in the regulations. Instead, Defendant HPH has produced an improperly obtained ex-post facto statement of Dorothy Shannon from May 2006 as their explanation. (Page 23 of Defendant HPH's Memorandum in Support of the Motion for Summary Judgment)

According to Defendant HPH however, none of these admitted facts should concern anyone because their misinterpretation of the applicable regulations allows unaware unqualified KMC/HPH physicians to be deemed "supervising" by implication the chemotherapy treatment of dozens of patients per day "incident to" their care from 1999-2004.  (Page 10 of Defendant HPH's Memorandum in Support of the Motion for Summary Judgment) Defendant HPH supports this argument with statements[3] obtained in violation of Hawaii Rules of Professional Conduct Rules 4.2 and 8.4 (a) and (c).

V.  DEFENDANTS HPH's COUNSEL HAVE VIOLATED HAWAII RULES OF PROFESSIONAL CONDUCT RULES 4.2 and 8.4 (a) and (c)

The sole and determinative basis for Defendants' legal conclusion that the 42 C.F.R. § 410.26 allows billing for unsupervised administration of chemotherapy by nurses as part of "incident to" services is their interpretation of an e-mail from Dorothy Shannon of Centers for Medicare and Medicaid Services ("CMS").  This e-mail should be stricken and excluded from

---

[3] Declaration of Edwin D. Rauzi is Exhibit "7" to the Declaration of Kenneth Robbins filed on December 29, 2006 in support of this motion. Mr. Rauzi's unauthorized e-mail communication with Terrence L. Kay and Dorothy Shannon are Exhibits "A" and "B" to his declaration.

consideration in this motion since is was obtained in violation of Hawaii Rules of Professional Conduct Rule 4.2 which states *"RULE 4.2. COMMUNICATION WITH PERSON REPRESENTED BY COUNSEL. **In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.***" The purpose of the rule, that "an attorney shall not communicate about the subject of the representation with a party the attorney knows to be represented by another attorney in the matter unless the attorney has the consent of the party's attorney" . . ., "is to prevent situations in which a represented party is taken advantage of by adverse counsel." In re Disciplinary Proceeding Against Carmick, 48 P.3d 311, 319 (Wash. 2002). See also Askins v. Colon, 608 S.E.2d 6 (Ga. Ct. App. 2004).

Edwin D. Rauzi (attorney for Defendant HPH) communicated with two employees of CMS (a represented party in this action) about the subject of the representation without the knowledge and approval of CMS' counsel, which Defendant HPH acknowledges at p. 10 of their memo in support ***"To place in concrete terms, an attorney for HPH Defendants pose, as a hypothetical, the facts of this case to the individuals within the Centers for Medicare and Medicaid Services ("CMS"), the agency that wrote and administers the "incident to" regulations - the U.S. Attorney's Office's "client" in this case.***" [Emphasis Added.] It is now clear

through Defendant's own words and continued reliance on this communication in their prior negotiations and this motion for summary judgment that Mr. Rauzi's communications were intentional violations of HRPC Rule 4.2. ***"Professional responsibility anticontact rule is more than common courtesy; it is professional requirement imposed to protect client, other parties, and indeed, very integrity of adversary system."*** In re News America Pub., Inc., 974 S.W.2d 97 (Tex. App. San Antonio 1998), reh'g overruled, (July 9, 1998).

    Further on February 23, 2006, the United States and Plaintiff Relator met with Defendant HPH counsel Mr. Rauzi and Mr. Robbins (senior management from Defendant HPH was also present) in a disclosure meeting to discuss the claims in this action.  Then on or before April 21, 2006, Mr. Rauzi contacted Mr. Kay by telephone and followed up the unauthorized communication with several e-mails. (See Exhibits "A" and "B" to Declaration of Edwin D. Rauzi.)  All of this communication by Mr. Rauzi occurred without the approval of U.S. Attorney's Office for the District of Hawaii and were not disclosed until a subsequent meeting on May 16, 2006.  (See Declaration of Harry Yee.)

    Terrence L. Kay and Dorothy Shannon would not have communicated with Mr. Rauzi without advice and approval of CMS counsel had Mr. Rauzi not disguised his inquiry.  (See Attached Declarations of Terrence L. Kay and Dorothy Shannon.)  Instead, Mr. Rauzi misrepresented in his initial contact with Mr. Kay (Ms. Shannon's supervisor) that he was seeking information based on a

hypothetical scenario **"Pursuant to our call today, I seek policy guidance from CMS concerning the "incident to" rules in the context of providing chemotherapy.  <u>My request deals with general policies, and not as applied in a particular case.</u>".** (Rauzi's email of 4/21/06 to Terrence L. Kay attached as Exhibit "A" to Rauzi's Declaration.)  Further, Mr. Kay and Ms. Shannon were not told by Mr. Rauzi that he was an attorney representing Defendant HPH and that the United States was an opposing party in litigation filed in Hawaii.  (See Declarations of Terrence L. Kay and Dorothy Shannon.)  Nor did Mr. Rauzi tell Mr. Kay or Ms. Shannon that as employees of a represented party they should contact CMS counsel or the U.S. Attorney's Office in the District of Hawaii before communicating with him.  (See Exhibits "A" and "B" to Rauzi Declaration.)

   Defendant HPH and Mr. Rauzi had a proper avenue to obtain any information through the discovery process.  By noticing a FRCP Rule 30(b)(6) deposition of the U.S. Department of Health and Human Services, the United States would be compelled to produce a witness competent to testify on this subject matter, which would not necessarily have been Mr. Kay or Ms. Shannon. Also in the context of a Rule 30(b)(6) deposition, any witness would have been represented by counsel and the United States would have opportunities to prepare the witness and interpose objections at the deposition.

   It was well established in the case of <u>Mitton v State Bar of California</u> (1969) 455 P2d 753, infra § 4, while disciplining

counsel for violating the rule prohibiting lawyers from communicating with a party represented by counsel in the absence and without the consent of such counsel, the court explained that such "rule is necessary to the preservation of the attorney-client relationship and the proper functioning of the administration of justice."  **The rule shields the opposing party not only from an attorney's approaches which are intentionally improper, but, in addition, from approaches which are well intended but misguided," observed the court; for example, "if a party's counsel is present when an opposing attorney communicates with the party, counsel can easily correct any element of error in communication or correct the effect of the communication by calling attention to counteracting elements which may exist.**"  In this case, the United States was denied this important protection by deception, which interfered with the attorney/client privilege.

In addition, Mr. Rauzi's communications were replete with dishonesty, fraud, deceit, and misrepresentation in violation of HRPC Rule 8.4(c).  Further, Mr. Rauzi's fraud and deception are now being perpetuated before this Court by his co-counsel Kenneth S. Robbins and Pro Hac Vice counsel Harry L. Silver and Larry Freedman (Patton Boggs LLP of Washington, D.C.), and joined by Defendant Evslin's counsel, in violation of Rules 8.4(a) and (c), which state *"RULE 8.4 MISCONDUCT **It is professional misconduct for a lawyer to: (a) violate or attempt to violate the rules of***

***professional conduct, knowingly assist or induce another to do so, or do so through the acts of another;***

***(c) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation[.]***

Mr. Rauzi and Mr. Robbins presented the CMS e-mail from Ms. Shannon for the first time on May 16, 2006, at a second meeting with the U.S. Attorney's Office in an attempt to explain away the false claims as a difference of interpretation over the term "incident to" in the applicable regulations.[4]  Their actions in communicating with CMS employees under the false pretense of a "hypothetical" situation and then presenting that as evidence to the United States constitute violations of HRPC Rule 8.4 (c) as conduct "involving dishonesty, fraud, deceit, or misrepresentation".[5]  At the time Mr. Rauzi and Mr. Robbins were cautioned that there would be inquiry about Mr. Rauzi's contact with CMS employees.[6]  Not only have Mr. Rauzi and Mr. Robbins ignored their ethical obligations in violation of the HRPC Rule

---

[4]  See paragraph 4 of the Declaration of Harry Yee

[5]  Another disciplinary rule that has been cited in connection with assessing the propriety of an attorney's contact with a represented adverse party is HRPC Rule 8.4 (c), which provides in effect that a lawyer shall not engage in any conduct-other than elsewhere prohibited conduct which violates some other specific disciplinary rule, which involves illegality, dishonesty, fraud, deceit, or misrepresentation, or which is prejudicial to the administration of justice-that adversely reflects on the lawyer's fitness to practice law.  For an illustrative decision applying such a disciplinary rule, see Columbus Bar Assn. v Riebel 432 NE2d 165 (1982); 26 ALR4th 99, infra § 6[a].

[6]  See paragraph 4 of the declaration of Harry Yee

4.2, but they along with Mr. Silver and Mr. Freedman, have now perpetuated ethical violation and magnified fraud by presenting these e-mails as evidence in support of this motion belying the true intention of the contact with employees of CMS.  In face of this deception on the court, it is appropriate that a violation of HRPC Rule 8.4 (a) should be found to have occurred because they all *"knowingly assist or induce another to do so, or do so through the acts of another"* in assisting Mr. Rauzi to present improper and unethical communication as evidence to the Court.

VI.   CONCLUSION

An appropriate sanction for the Court's consideration is that Defendants' counsel should be disqualified from representing HPH and KMC any further in this matter for perpetrating this fraud, violating the HRPC Rules 4.2, 8.4(a), and 8.4(c), and adopting these improperly obtained statements as their basis for summary judgment.[7]  Further, the CMS e-mails should be stricken from the record as statements tainted and obtained by fraud.[8]  Finally, the United States respectfully requests that this Motion for Summary Judgment should be denied and any further relief this Court deems appropriate.

DATED:  March 9, 2007, at Honolulu, Hawaii.

EDWARD H. KUBO, JR.
United States Attorney
District of Hawaii

---

[7] See Camden v. State of Maryland, 910 F. Supp. 1115, 1123 (1996)

[8] Id.

```
                              /s/ Harry Yee
                         By_____
                            HARRY YEE, Asst. U.S. Attorney
                            Attorney for Plaintiff
                            United States of America
```

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

```
UNITED STATES OF AMERICA, ex   )   CIVIL NO. 04 00596 ACK KSC
rel. JAMES LOCKYER, M.D.,      )   (Federal and State - Qui Tam)
STATE OF HAWAII, ex rel.       )
JAMES LOCKYER, M.D. and JAMES  )
LOCKYER, M.D., in his own      )   CERTIFICATE OF SERVICE
behalf;                        )
                               )
           Plaintiffs,         )
      vs.                      )
HAWAI'I PACIFIC HEALTH;        )
KAUAI MEDICAL CLINIC; WILCOX   )
MEMORIAL HOSPITAL; WILCOX      )
HEALTH SYSTEM; and WILLIAM     )
A. EVSLIN, M.D. AKA LEE A.     )
EVSLIN, M.D.,                  )
                               )
           Defendants.         )
_____)
```

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on the date and by the method of service noted below, a true and correct copy of the foregoing was served on the following at their last known addresses:

Served Electronically through CM/ECF:

| | |
|---|---|
| Janice P. Kim | kimj054@hawaii.rr.com |
| Sharon V. Lovejoy | slovejoy@starnlaw.com |
| Kenneth S. Robbins | krobbins@robbinsandassociates.net |
| Harry R. Silver | hsilver@pattonboggs.com |
| Stephanie E.W. Thompson | sthompson@starnlaw.com |

Rafael G. del Castillo    rafa@hawaii.rr.com

2

Rafael G. del Castillo    rafa@hawaii.rr.com

<u>Served by First Class Mail</u>:

Edwin D. Rauzi
Davies Wright Tremaine LLP
1501 4th Avenue, Suite 2600
Seattle, WA  98101

Arleen P. Jouxson, Esq.
Jouxson-Meyers & del Castillo LLLC
302 California Avenue, Suite 209
Wahiawa, Hawaii  96786

  DATED:  March 9, 2007, at Honolulu, Hawaii.

           EDWARD H. KUBO, JR.
           United States Attorney
           District of Hawaii


           /s/ Harry Yee
           By _____
            HARRY YEE
            Assistant U.S. Attorney