Message Page 1 of 3

### Rauzi, Edwin

**From:** Kay, Terrence L. (CMS/CMM) [Terrence.Kay@cms.hhs.gov]
**Sent:** Wednesday, May 10, 2006 6:10 AM
**To:** Rauzi, Edwin
**Subject:** RE: Request for guidance

I'll ask Dorothy Shannon, on his staff, to reply. Should hear from her today.

---

**From:** Rauzi, Edwin [mailto:edrauzi@dwt.com]
**Sent:** Tuesday, May 09, 2006 12:03 PM
**To:** Kay, Terrence L. (CMS/CMM)
**Subject:** RE: Request for guidance
**Importance:** High

John Warren did not get back to me and is out of the office until May 15th. Unfortunately, that is the date when I need the advice.

Is there anything else that can be done?

-----Original Message-----
**From:** Kay, Terrence L. (CMS/CMM) [mailto:Terrence.Kay@cms.hhs.gov]
**Sent:** Thursday, May 04, 2006 8:52 AM
**To:** Rauzi, Edwin
**Subject:** RE: Request for guidance

I spoke with John Warren yesterday. He is the Acting Director of the Division of Practitioner Services. Perhaps you have already heard from him but if not, he will be providing a summary of the CMS general policy very soon.

---

**From:** Rauzi, Edwin [mailto:edrauzi@dwt.com]
**Sent:** Monday, May 01, 2006 11:55 AM
**To:** Kay, Terrence L. (CMS/CMM)
**Subject:** RE: Request for guidance

Just thought I would check in to see about the status of the review.

Thanks.

-----Original Message-----
**From:** Kay, Terrence L. (CMS/CMM) [mailto:Terrence.Kay@cms.hhs.gov]
**Sent:** Friday, April 21, 2006 2:48 PM
**To:** Rauzi, Edwin
**Subject:** RE: Request for guidance

received your message.

---

**From:** Rauzi, Edwin [mailto:edrauzi@dwt.com]
**Sent:** Friday, April 21, 2006 2:39 PM
**To:** Kay, Terrence L. (CMS/CMM)
**Subject:** Request for guidance



EXHIBIT A

Message

Pursuant to our call today, I seek policy guidance from CMS concerning the "incident to" rules in the context of providing chemotherapy. My request deals with general policies, and not as applied in a particular case.

The context in which my questions arise include the following characteristics:

1. A group medical practice (the "Group") provides chemotherapy items and services to oncology patients
2. the Group is in a rural location
3. for the past several years, there has not been more than one oncologist in the Group or the rural location on a full-time basis
4. the one oncologist is occasionally out of the area (e.g., for vacation, continuing medical education, family obligations, etc.)
5. the Group employs nurses who are experienced in providing chemotherapy
6. on a day when the oncologist is out of the area, a chemotherapy patient may have been scheduled to receive chemotherapy
7. the chemotherapy is part of an ongoing regimen (e.g., week 4 of a six week series of treatments)
8. the Group employs physicians
9. the Group either asks an employed general practitioner in internal medicine (who agrees) or assigns/instructs an employed general practitioner to "cover" or "be on call" for the chemotherapy suite on a day when the oncologist is out of the area. The internal medicine practitioner does not protest
10. the internal medicine suite is located adjacent to the chemotherapy suite on the same floor of the group's office
11. on a day when the oncologist is out of the area and the internal medicine physician/employee is "covering" or "on call" for the chemotherapy suite and is physically located in the internal medicine suite next door, the following happens

- the oncology patient comes to the Group's clinic
- the oncology patient is not a patient of the internal medicine physician
- pursuant to either a protocol or an order in the patient's medical record, the nurse orders a complete blood count (CBC) from a diagnostic laboratory. The order includes the UPIN of the oncologist
- the nurse reviews the results of the CBC, which show a white blood count that is high enough for chemotherapy to proceed based on the standards of the chemotherapy suite
- the nurse does not consult the internal medicine physician who is next door
- the nurse proceeds with the chemotherapy regimen prescribed by the oncologist
- the patient finishes the chemotherapy without incident and departs the clinic
- after the patient leaves, the internal medicine physician reviews the oncology nurse's notes describing the chemotherapy, and signs his/her first initial and last name
- for this chemotherapy encounter, there has been no face to face contact between the oncology patient and the internal medicine physician
- for other chemotherapy episodes that were delivered while the oncologist was out of the area and the internal medicine physician was in the adjacent suite, the oncology nurses did consult the internal medicine physician (e.g., the patient complained of a rash and the internal medicine physician directed the oncology nurse to provide the patient with drug samples)

On some later date, the Group submits claims to Medicare for the chemotherapy with the following characteristics--

- the Group uses a CMS-1500 form
- in field 31 of the CMS-1500 form, the Group's billing office inserts the UPIN of the internal medicine physician/employee
- the signature of the physician is indicated to be "on file"
- the form includes claims for chemotherapy drugs (e.g., the J code for rituximab), chemotherapy administration (e.g., CPT 96410) and, occasionally, a CPT 99211 for something "extra" done by the

      oncology nurse. For the purpose of our discussion, you should assume that the items and services were delivered and the codes were appropriate
- Medicare pays for the items and services provided to the oncology patient on the day that the oncologist was out of the area
- the payment is made to the Group

Could you please advise me whether there is anything problematic with the scenario described or the claims that were submitted under Medicare's policies? In particular--

- do the items and services provided by the oncology nurses while the internal medicine physician was in the adjacent suite and available to assist in the event of an emergency satisfy the "incident to" rules
- Does Medicare require that the "supervising physician" for chemotherapy services be an oncologist?
- Does Medicare require the supervising physician to review the results of the CBC prior to the oncology nurses initiating chemotherapy?

For the purpose of researching this matter in advance of seeking your guidance, the authorities that appeared to be most on point to were sections 2050 and 15400 of the Medicare Carrier's Manual (as it existed prior to the creation of the Internet Only Manuals). If there is other guidance that needs to be considered, I would appreciate it if you could point them out to me.

Thank you in advance for any guidance and assistance that you can provide with respect to this scenario. Your assistance is much appreciated. If there are any ambiguities or variables that I have failed to identify that could affect the outcome (or if you have any additional questions), please let me know.

P.S. Does the answer change if the internal medicine physician goes to lunch in the cafeteria of the adjoining hospital during a chemotherapy session that extends over several hours? Does it help that there is "always" one of the Group's employed physicians in the building where the chemotherapy suite is located?