IN THE UNITED STATED DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. JAMES LOCKYER, M.D. AND JAMES LOCKYER, M.D., in his own behalf,<br><br>        Plaintiffs,<br>vs.<br><br>HAWAI'I PACIFIC HEALTH; KAUAI MEDICAL CLINIC; WILCOX MEMORIAL HOSPITAL; WILCOX HEALTH SYSTEM; AND WILLIAM A. EVSLIN, M.D. AKA LEE A. EVSLIN, M.D.<br>        Defendants. | CIVIL NO. CV 04-00596 ACK LEK<br>(Federal and State - Qui Tam)<br><br>DECLARATION OF LAWRENCE R. RAITHAUS, M.D.; EXHIBIT R1<br><br><br><br>HEARING<br><br>Date:   March 27, 2007<br>Time:   10:30 A.M.<br><br>Trial Date:   September 18, 2007<br>Judge:   Honorable Alan C. Kay |

DECLARATION OF LAWRENCE R. RAITHAUS, M.D.

      I, LAWRENCE R. RAITHAUS, M.D., do hereby declare that the following facts are based on personal knowledge, and that I am competent to so testify:

      1.    I am a physician licensed to practice medicine in the State of Hawai`i, and am over 18 years of age.

      2.    I am a resident of the Island of Kauai.

      3.    I am board certified in the subspecialty of urology.

4. I was employed by Kauai Medical Clinic ("KMC") from November, 1990 to August 30, 2000, as the only surgical subspecialist in the field of Urology.

5. It was my perception during my employment by KMC, and since that time, that Dr. Evslin, the then acting CEO of the Kauai Medical Clinic, had prime influence over or controlled in all matters related to hiring and firing physicians and non-physician staff, and in directing the actions and activities of the standing committees having to do with business and administrative decisions.

6. Often the decisions that appeared to be that of those of a committee, in fact reflected the direct will of Dr. Evslin.

7. Dr. Evslin called meetings of the doctors for various issues, but Dr. Evslin dominated the meetings. He was in charge of the agenda, and blocked any actions that did not come out the way he wanted.

8. I became increasingly suspicious that Dr. Evslin and KMC were misdirecting revenues from claims submitted for my services or not crediting me with all of the claims KMC submitted for my services, to reduce the compensation I was due.

9. Several other KMC-employed doctors held substantially similar suspicions about their compensation.

10. The doctors collectively believed that there was little we could do to compel Dr. Evslin to allow us access to the financial and claims data because he dominated decisions and held sway over the Wilcox Board. In desperation, we turned as a group to Dave Patton, then CEO of Wilcox Memorial Hospital, for support for our position that we should be allowed to review the claims and financial information. From my personal files, I have attached as Exhibit R1 a true and correct copy of a letter we sent to Mr. Patton, which we all signed and copied to Dr. Evslin.

I, LAWRENCE R. RAITHAUS, M.D., do declare under penalty of law that the forgoing is true and correct.

DATED: ~~Honolulu,~~ Lawai, Hawai'i, March 8, 2007

_____
LAWRENCE R. RAITHAUS, M.D.

October 18, 1999

David Patton, PhD
CEO Wilcox Hospital

Dear David:

We would like to express our grievance over our salaries for we feel it is unfair towards us and to many other physicians in Kauai Medical Clinic. For going on three years now many physicians have been paid below their market value while many others have been overpaid according to MGMA. We believe our contract has not been honored and are asking you, David, to help us resolve this issue.

The contract signed by all of the physician partners of Kauai Medical Group intended to ensure that physicians were paid a fair salary according to the most up-to-date MGMA physician compensation schedules. In fact this was the great inducement for the Group to merge with Wilcox Health Systems, as we then became Kauai Medical Clinic.

Other inducements for the Group shareholders in the merger with Wilcox Health System included a cash buy-out and a safety valve divorce clause which could be invoked unilaterally by either side. After the merger, the divorce clause was omitted from the contract at the insistence of the IRS so that the new KMC would qualify as a not-for-profit institution and thus enjoy the associated tax benefits therein. Unfortunately this occurred after the cash from the buy-out had already been dispersed and, in some cases, spent. Thus as a group we were left with no other choice but to go along with the merger without the divorce clause, although several of us individuals felt then and now that this was not in our best interest.

All along, several of us voiced serious concerns over the fairness of the proposed compensation formula that, as a strong disincentive, taxed the highest earners through an inverted salary scale. Our Clinic administrators repeatedly assured us that the proposed formula was just, commonplace and representative of other large multi-specialty clinics on the mainland. Now, three years later, we have learned that that same compensation formula we still have today is in fact highly irregular such that one industry compensation specialist said that such a formula was "unusual".

**EXHIBIT R1**

Last year we were reassured when administration recognized that a new compensation formula was needed and that the Camden Group consultants, brought in by you, would help with the process. As you are aware, the Clinic's Salary and Finance and Professional Activities committees recently declined the consultant's recommendations and the same faulty compensation formula is still in place. The procedural delays and passive stalling on this critical finance issue continue to adversely effect our just livelihood.

An employment contract represents essential obligations and at its core is the compensation structure. We feel the Clinic management has unmet fiduciary obligations to us physicians and that over the past few years they have treated our voiced concerns with disregard and neglect. We are at this point in time where we feel we need to turn to you, David, to assist in mediating a fair agreement between the Clinic and us employees.

Respectfully yours,

_____   _____   _____
BJORNSKOV            MCELENEY             POTTER

_____   _____   _____
HAYWARD              DENICRIS             JACKSON

_____   _____
MURRAY               RAITHAUS

Cc:   Pam Dorman, RN
      Bill Evslin, MD

*Please note that this is a confidential letter on a sensitive topic and is intended to for the addressees only and not for open distribution.*

Declaration of Lawrence R. Raithaus, M.D.

I, Lawrence R. Raithaus, M.D. was employed by the Kauai Medical Clinic from November, 1990 to August 30, 2000 as the only surgical sub-specialist in the field of Urology. It was my perception during that time and currently that Lee Evslin, the then acting CEO of the Kauai Medical Clinic, had prime influence in all matters related to hiring and firing, and in directing the actions and activities of most standing committees. Often the decisions that appeared to be that of those committees, were in fact reflecting the direct will of the CEO, Mr. Evslin.

*Lawrence R. Raithaus, MD*