IN THE UNITED STATED DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. JAMES LOCKYER, M.D. AND JAMES LOCKYER, M.D., in his own behalf,<br><br>        Plaintiffs,<br>vs.<br><br>HAWAI'I PACIFIC HEALTH; KAUAI MEDICAL CLINIC; WILCOX MEMORIAL HOSPITAL; WILCOX HEALTH SYSTEM; AND WILLIAM A. EVSLIN, M.D. AKA LEE A. EVSLIN, M.D.<br>        Defendants. | CIVIL NO. CV 04-00596 ACK LEK<br>(Federal and State - Qui Tam)<br><br>DECLARATION OF NANCY BOOKBINDER<br><br><br><br><br>HEARING<br><br>Date:   March 27, 2007<br>Time:   10:30 A.M.<br><br>Trial Date:   September 18, 2007<br>Judge:   Honorable Alan C. Kay |

DECLARATION OF NANCY BOOKBINDER

I, NANCY BOOKBINDER, do hereby declare that the following information is based on personal knowledge, that I am competent to so testify:

1.      I am the President and principal of Oncology Resource Consultants, Inc., 5125 MacArthur Blvd., NW, Washington, DC 20016.

2.      I have been an oncology consultant since 1983, specializing in oncology coding and payment issues, including assessment of billing, coding and payment issues for hospitals, medical oncologists, radiation oncologists, pediatric oncologists and surgical subspecialists in oncologic specialties. In addition to provision of services for these parties, I have supported attorneys in their due

diligence activities for physician practice acquisition and mergers and with investigations of billing issues arising from compliance concerns.

       3.     I reside in San Francisco, California.

       4.     I have been asked to provide opinions in this matter concerning the appropriateness of billings and claims to Government health care benefit programs, principal among which is Medicare, whether the personnel administering chemotherapy and providing other oncology services were properly qualified, whether the institution's protocols or policies and procedures met applicable standards and were adhered to, and whether the services were provided in accordance with the oncologist's orders. It is my understanding that Defendants will be producing the documents and information I require.

       5.     For this Declaration, I have been asked to review the information Defendants provided with their Motion for Summary Judgment concerning the training of the nurses assigned to the KMC Oncology Department, some of whom it appears were allegedly involved in administering chemotherapy in the KMC office-based chemotherapy room.

       6.     I have thus read and considered Defense Exhibits 1, 2, 3, and 5. Exhibit 1 comprises a Declaration by Lynn Joseph with Exhibit A, a summary table her declaration states that she prepared from personnel files which I have not had the opportunity to review as I have been advised they have not been produced.

Exhibits 2, 3, and 5 the Declarations of Beth Carlozzi, Beth Carter, and Sally Diana. I have also read and considered the Declarations of Jonathon K. Cho, M.D., Bernard W.D. Fong, M.D., and George P. Gelmann, M.D., Exhibits 21, 8, and 9, respectively.

7. The following facts, which are consistent with the statements declared by Drs. Cho and Fong, are relevant to the appropriateness of billings and claims to Government health care benefit programs in this case:

    a. It is the standard of care in treating cancer patients for them to be initially evaluated and a treatment plan devised by a board certified or board eligible medical oncologist.

    b. If the treatment plan includes a course of chemotherapy, a specially trained and qualified oncology nurse may administer the chemotherapy under the supervision of the oncologist or another physician.

    c. Supervision means that the supervising physician must be present in the same office suite where the items and services are being provided, and immediately available to render assistance and direction throughout the performance of the procedure.

    d. The standard of care requires that the nurse administering chemotherapy has received special training and is appropriately qualified.

 8. The following facts provide the basis for determining whether an oncology nurse is qualified to administer chemotherapy "incident to" a physician's services, under the meaning of the Medicare billing regulations:

    a. An RN license signifies that a nurse has entry-level knowledge to provide care for patients, and is the minimum requirement for professional nurses.  An RN license does not indicate whether a nurse has acquired knowledge beyond the required minimum, but certification does.

    b. Certification by the Oncology Nursing Certification Corporation (ONCC) indicates appropriate educational qualification. Certification assures the public that the nurse has completed all eligibility criteria to earn the credential, and establishes minimum competency standards.

    c. A four-year degree is a prerequisite to certification, based upon my understanding of HRS § 457-7 requiring graduation from a registered nursing program at an educational institution.

    d. Certification is not a simple matter of mixing drugs and facilitating their delivery to the patient's system.  Certification includes learning the principles of cancer chemotherapy and biotherapy, knowing the types and classifications of chemotherapy and biotherapy, studying pharmacology of cytotoxic and immunologic agents in cancer care, and being familiar with the chemotherapy and biotherapy indications in cancer care and chemotherapy and radiotherapy protectants.  It assures competency in the principles of safe preparation, storage, labeling, and disposal of chemotherapeutic and biologic agents, and the proper use of personal protective equipment.  It also assures proper training to follow administration procedures, including administration schedule, dosage and route, as well as entering correct documentation in patient charts.  A certificate indicates competency to monitor patients receiving chemotherapy and biotherapy, and to provide appropriate patient education on chemotherapy and biotherapy side effects and related symptom management.

    e. The Oncology Nursing Society (ONS) Chemotherapy and Biotherapy Course after successful completion of which the nurse is eligible to receive an ONS Chemotherapy Provider Card, indicates

the nurse has been given the didactic knowledge to care for patients receiving chemotherapy. It is not a competency or certification course. It is the responsibility of the employing agency to determine competency.

9. The information Defendants provided in their Exhibits 1, 2, 3, and 5 indicates the following:

   a. Exhibit A (table) provided with Exhibit 1 disagrees in several respects with the declarations, and thus I based the following on the declarations where they disagree with Exhibit A (table).

   b. The Exhibits show only one ONCC certified nurse assigned to the KMC Oncology Department between January 2000 and December 2001, and that nurse's Declaration, Exhibit 2, is silent with regard to whether she prepared chemotherapy agents for administration to patients;

   c. The Exhibits allege that Nurse Debra Dannog became certified in October 2003, but no declaration was provided to support the allegations made in Exhibit A (table), or to describe Nurse Dannog's duties. She was the only nurse allegedly assigned to the Department between October 2003 and September 2005 who could have been certified and mixing and administering chemotherapy

6

agents, but that cannot be determined from the supporting information Defendants submitted with their Motion.

   d. It is impossible to determine, based upon the information Defendants submitted with their Motion, whether the nurses who possessed only a Chemotherapy Provider Card were qualified to mix and administer chemotherapy agents without a physician present and supervising.

  10. Medicare's "incident to" regulation is not the governing billing regulation in cases in which no qualified nurse is mixing and administering the chemotherapy agents to cancer patients. It thus appears from Defendants' submissions with their Motion, because it is not possible to determine whether the nurses were properly qualified, that there was a substantial period of time from January 2002 until at least October 2003, and possibly even until April 2004 or later, during which chemotherapy was mixed by staff without appropriate certification.

  11. It is not possible to determine from Defendants' submissions with their Motion whether chemotherapy was administered when the only certified nurse was absent from the oncology suite.

12. Further discovery must be conducted to determine who was initially evaluating cancer patients at KMC, developing the care plan, and writing the associated orders for chemotherapy treatment when there was no oncologist.

13. I expect to provide an authoritative opinion regarding these issues in my expert report after discovery is completed.

I, NANCY BOOKBINDER, do declare under penalty of law that the forgoing is true and correct.

DATED: Honolulu, Hawai`i, March 9, 2007

_____
NANCY BOOKBINDER