Home Page > Executive Branch > Code of Federal Regulations > Electronic Code of Federal Regulations

# Electronic Code of Federal Regulations (e-CFR)

# e-CFR Data is current as of February 21, 2007

**Title 42: Public Health**
PART 410—SUPPLEMENTARY MEDICAL INSURANCE (SMI) BENEFITS
Subpart B—Medical and Other Health Services

Browse Previous | Browse Next

**§ 410.26   Services and supplies incident to a physician's professional services: Conditions.**

(a) *Definitions.* For purposes of this section, the following definitions apply:

(1) *Auxiliary personnel* means any individual who is acting under the supervision of a physician (or other practitioner), regardless of whether the individual is an employee, leased employee, or independent contractor of the physician (or other practitioner) or of the same entity that employs or contracts with the physician (or other practitioner).

(2) *Direct supervision* means the level of supervision by the physician (or other practitioner) of auxiliary personnel as defined in §410.32(b)(3)(ii).

(3) *Independent contractor* means an individual (or an entity that has hired such an individual) who performs part-time or full-time work for which the individual (or the entity that has hired such an individual) receives an IRS–1099 form.

(4) *Leased employment* means an employment relationship that is recognized by applicable State law and that is established by two employers by a contract such that one employer hires the services of an employee of the other employer.

(5) *Noninstitutional setting* means all settings other than a hospital or skilled nursing facility.

(6) *Practitioner* means a non-physician practitioner who is authorized by the Act to receive payment for services incident to his or her own services.

(7) *Services and supplies* means any services or supplies (including drugs or biologicals that are not usually self-administered) that are included in section 1861(s)(2)(A) of the Act and are not specifically listed in the Act as a separate benefit included in the Medicare program.

(b) Medicare Part B pays for services and supplies incident to the service of a physician (or other practitioner).

(1) Services and supplies must be furnished in a noninstitutional setting to noninstitutional patients.

(2) Services and supplies must be an integral, though incidental, part of the service of a physician (or other practitioner) in the course of diagnosis or treatment of an injury or illness.

(3) Services and supplies must be commonly furnished without charge or included in the bill of a physician (or other practitioner).

(4) Services and supplies must be of a type that are commonly furnished in the office or clinic of a physician (or other practitioner).

EX. 1

(5) Services and supplies must be furnished under the direct supervision of the physician (or other practitioner). The physician (or other practitioner) directly supervising the auxiliary personnel need not be the same physician (or other practitioner) upon whose professional service the incident to service is based.

(6) Services and supplies must be furnished by the physician, practitioner with an incident to benefit, or auxiliary personnel.

(7) A physician (or other practitioner) may be an employee or an independent contractor.

(c) *Limitations.* (1) Drugs and biologicals are also subject to the limitations specified in §410.29.

(2) Physical therapy, occupational therapy and speech-language pathology services provided incident to a physician's professional services are subject to the provisions established in §410.59(a)(3)(iii), §410.60(a)(3)(iii), and §410.62(a)(3)(ii).

[51 FR 41339, Nov. 14, 1986, as amended at 66 FR 55328, Nov. 1, 2001; 67 FR 20684, Apr. 26, 2002; 69 FR 66421, Nov. 15, 2004]

Browse Previous | Browse Next

---

For questions or comments regarding e-CFR editorial content, features, or design, email ecfr@nara.gov.

For questions concerning e-CFR programming and delivery issues, email webteam@gpo.gov.

Section 508 / Accessibility

Last updated: February 19, 2007

Home Page > Executive Branch > Code of Federal Regulations > Electronic Code of Federal Regulations

# Electronic Code of Federal Regulations (e-CFR)

# e-CFR Data is current as of February 21, 2007

## Title 42: Public Health
PART 410—SUPPLEMENTARY MEDICAL INSURANCE (SMI) BENEFITS
Subpart B—Medical and Other Health Services

Browse Previous | Browse Next

### § 410.32   Diagnostic x-ray tests, diagnostic laboratory tests, and other diagnostic tests: Conditions.

(a) *Ordering diagnostic tests.* All diagnostic x-ray tests, diagnostic laboratory tests, and other diagnostic tests must be ordered by the physician who is treating the beneficiary, that is, the physician who furnishes a consultation or treats a beneficiary for a specific medical problem and who uses the results in the management of the beneficiary's specific medical problem. Tests not ordered by the physician who is treating the beneficiary are not reasonable and necessary (see §411.15(k)(1) of this chapter).

(1) *Chiropractic exception.* A physician may order an x-ray to be used by a chiropractor to demonstrate the subluxation of the spine that is the basis for a beneficiary to receive manual manipulation treatments even though the physician does not treat the beneficiary.

(2) *Mammography exception.* A physician who meets the qualification requirements for an interpreting physician under section 354 of the Public Health Service Act as provided in §410.34(a)(7) may order a diagnostic mammogram based on the findings of a screening mammogram even though the physician does not treat the beneficiary.

(3) *Application to nonphysician practitioners.* Nonphysician practitioners (that is, clinical nurse specialists, clinical psychologists, clinical social workers, nurse-midwives, nurse practitioners, and physician assistants) who furnish services that would be physician services if furnished by a physician, and who are operating within the scope of their authority under State law and within the scope of their Medicare statutory benefit, may be treated the same as physicians treating beneficiaries for the purpose of this paragraph.

(b) *Diagnostic x-ray and other diagnostic tests* —(1) *Basic rule.* Except as indicated in paragraph (b)(2) of this section, all diagnostic x-ray and other diagnostic tests covered under section 1861(s)(3) of the Act and payable under the physician fee schedule must be furnished under the appropriate level of supervision by a physician as defined in section 1861(r) of the Act. Services furnished without the required level of supervision are not reasonable and necessary (see §411.15(k)(1) of this chapter).

(2) *Exceptions.* The following diagnostic tests payable under the physician fee schedule are excluded from the basic rule set forth in paragraph (b)(1) of this section:

(i) Diagnostic mammography procedures, which are regulated by the Food and Drug Administration.

(ii) Diagnostic tests personally furnished by a qualified audiologist as defined in section 1861(ll)(3) of the Act.

(iii) Diagnostic psychological testing services when—

(A) Personally furnished by a clinical psychologist or an independently practicing psychologist as defined in program instructions; or

(B) Furnished under the general supervision of a physician or a clinical psychologist.

EX. 2

(iv) Diagnostic tests (as established through program instructions) personally performed by a physical therapist who is certified by the American Board of Physical Therapy Specialties as a qualified electrophysiologic clinical specialist and permitted to provide the service under State law.

(v) Diagnostic tests performed by a nurse practitioner or clinical nurse specialist authorized to perform the tests under applicable State laws.

(vi) Pathology and laboratory procedures listed in the 80000 series of the Current Procedural Terminology published by the American Medical Association.

(3) *Levels of supervision.* Except where otherwise indicated, all diagnostic x-ray and other diagnostic tests subject to this provision and payable under the physician fee schedule must be furnished under at least a general level of physician supervision as defined in paragraph (b)(3)(i) of this section. In addition, some of these tests also require either direct or personal supervision as defined in paragraphs (b)(3)(ii) or (b)(3)(iii) of this section, respectively. (However, diagnostic tests performed by a physician assistant (PA) that the PA is legally authorized to perform under State law require only a general level of physician supervision.) When direct or personal supervision is required, physician supervision at the specified level is required throughout the performance of the test.

(i) *General supervision* means the procedure is furnished under the physician's overall direction and control, but the physician's presence is not required during the performance of the procedure. Under general supervision, the training of the nonphysician personnel who actually perform the diagnostic procedure and the maintenance of the necessary equipment and supplies are the continuing responsibility of the physician.

(ii) *Direct supervision* in the office setting means the physician must be present in the office suite and immediately available to furnish assistance and direction throughout the performance of the procedure. It does not mean that the physician must be present in the room when the procedure is performed.

(iii) *Personal supervision* means a physician must be in attendance in the room during the performance of the procedure.

(c) *Portable x-ray services.* Portable x-ray services furnished in a place of residence used as the patient's home are covered if the following conditions are met:

(1) These services are furnished under the general supervision of a physician, as defined in paragraph (b)(3)(i) of this section.

(2) The supplier of these services meets the requirements set forth in part 486, subpart C of this chapter, concerning conditions for coverage for portable x-ray services.

(3) The procedures are limited to—

(i) Skeletal films involving the extremities, pelvis, vertebral column, or skull;

(ii) Chest or abdominal films that do not involve the use of contrast media; and

(iii) Diagnostic mammograms if the approved portable x-ray supplier, as defined in subpart C of part 486 of this chapter, meets the certification requirements of section 354 of the Public Health Service Act, as implemented by 21 CFR part 900, subpart B.

(d) *Diagnostic laboratory tests* —(1) *Who may furnish services.* Medicare Part B pays for covered diagnostic laboratory tests that are furnished by any of the following:

(i) A participating hospital or participating RPCH.

(ii) A nonparticipating hospital that meets the requirements for emergency outpatient services specified in subpart G of part 424 of this chapter and the laboratory requirements specified in part 493 of this chapter.

(iii) The office of the patient's attending or consulting physician if that physician is a doctor of medicine, osteopathy, podiatric medicine, dental surgery, or dental medicine.

(iv) An RHC.

(v) A laboratory, if it meets the applicable requirements for laboratories of part 493 of this chapter, including the laboratory of a nonparticipating hospital that does not meet the requirements for emergency outpatient services in subpart G of part 424 of this chapter.

(vi) An FQHC.

(vii) An SNF to its resident under §411.15(p) of this chapter, either directly (in accordance with §483.75 (k)(1)(i) of this chapter) or under an arrangement (as defined in §409.3 of this chapter) with another entity described in this paragraph.

(2) *Documentation and recordkeeping requirements* —(i) *Ordering the service.* The physician or (qualified nonphysican practitioner, as defined in paragraph (a)(3) of this section), who orders the service must maintain documentation of medical necessity in the beneficiary's medical record.

(ii) *Submitting the claim.* The entity submitting the claim must maintain the following documentation:

(A) The documentation that it receives from the ordering physician or nonphysician practitioner.

(B) The documentation that the information that it submitted with the claim accurately reflects the information it received from the ordering physician or nonphysician practitioner.

(iii) *Requesting additional information.* The entity submitting the claim may request additional diagnostic and other medical information to document that the services it bills are reasonable and necessary. If the entity requests additional documentation, it must request material relevant to the medical necessity of the specific test(s), taking into consideration current rules and regulations on patient confidentiality.

(3) *Claims review.* (i) *Documentation requirements.* Upon request by CMS, the entity submitting the claim must provide the following information:

(A) Documentation of the order for the service billed (including information sufficient to enable CMS to identify and contact the ordering physician or nonphysician practitioner).

(B) Documentation showing accurate processing of the order and submission of the claim.

(C) Diagnostic or other medical information supplied to the laboratory by the ordering physician or nonphysician practitioner, including any ICD–9–CM code or narrative description supplied.

(ii) *Services that are not reasonable and necessary.* If the documentation provided under paragraph (d) (3)(i) of this section does not demonstrate that the service is reasonable and necessary, CMS takes the following actions:

(A) Provides the ordering physician or nonphysician practitioner information sufficient to identify the claim being reviewed.

(B) Requests from the ordering physician or nonphysician practitioner those parts of a beneficiary's medical record that are relevant to the specific claim(s) being reviewed.

(C) If the ordering physician or nonphysician practitioner does not supply the documentation requested, informs the entity submitting the claim(s) that the documentation has not been supplied and denies the claim.

(iii) *Medical necessity.* The entity submitting the claim may request additional diagnostic and other medical information from the ordering physician or nonphysician practitioner to document that the services it bills are reasonable and necessary. If the entity requests additional documentation, it must

request material relevant to the medical necessity of the specific test(s), taking into consideration current rules and regulations on patient confidentiality.

(4) *Automatic denial and manual review.* (i) *General rule.* Except as provided in paragraph (d)(4)(ii) of this section, CMS does not deny a claim for services that exceed utilization parameters without reviewing all relevant documentation that is submitted with the claim (for example, justifications prepared by providers, primary and secondary diagnoses, and copies of medical records).

(ii) *Exceptions.* CMS may automatically deny a claim without manual review if a national coverage decision or LMRP specifies the circumstances under which the service is denied, or the service is specifically excluded from Medicare coverage by law.

(e) Diagnostic laboratory tests furnished in hospitals and CAHs. The provisions of paragraphs (a) and (d)(2) through (d)(4), inclusive, of this section apply to all diagnostic laboratory test furnished by hospitals and CAHs to outpatients.

[62 FR 59098, Oct. 31, 1997, as amended at 63 FR 26308, May 12, 1998; 63 FR 53307, Oct. 5, 1998; 63 FR 58906, Nov. 2, 1998; 64 FR 59440, Nov. 2, 1999; 66 FR 58809, Nov. 23, 2001; 69 FR 66421, Nov. 15, 2004]

Browse Previous | Browse Next

———————————————————————

For questions or comments regarding e-CFR editorial content, features, or design, email ecfr@nara.gov.

For questions concerning e-CFR programming and delivery issues, email webteam@gpo.gov.

Section 508 / Accessibility

Last updated: February 19, 2007

Home Page > Executive Branch > Code of Federal Regulations > Electronic Code of Federal Regulations

# Electronic Code of Federal Regulations (e-CFR)

## BETA TEST SITE

## e-CFR Data is current as of March 1, 2007

**Title 42: Public Health**
PART 411—EXCLUSIONS FROM MEDICARE AND LIMITATIONS ON MEDICARE PAYMENT
Subpart J—Financial Relationships Between Physicians and Entities Furnishing Designated Health Services

Browse Previous | Browse Next

### § 411.355   General exceptions to the referral prohibition related to both ownership/investment and compensation.

The prohibition on referrals set forth in §411.353 does not apply to the following types of services:

(a) *Physician services.* (1) Physician services as defined in §410.20(a) of this chapter that are furnished—

(i) Personally by another physician who is a member of the referring physician's group practice or is a physician in the same group practice (as defined in §411.351) as the referring physician; or

(ii) Under the supervision of another physician who is a member of the referring physician's group practice or is a physician in the same group practice (as defined at §411.351) as the referring physician, provided that the supervision complies with all other applicable Medicare payment and coverage rules for the physician services.

(2) For purposes of paragraph (a) of this section, sbull; physician services" include only those "incident to" services (as defined in §411.351) that are physician services under §410.20(a) of this chapter.

(3) All other "incident to" services (for example, diagnostic tests, physical therapy) are outside the scope of paragraph (a) of this section.

(b) *In-office ancillary services.* Services (including certain items of durable medical equipment (DME), as defined in paragraph (b)(4) of this section, and infusion pumps that are DME (including external ambulatory infusion pumps), but excluding all other DME and parenteral and enteral nutrients, equipment, and supplies (such as infusion pumps used for PEN)), that meet the following conditions:

(1) They are furnished personally by one of the following individuals:

(i) The referring physician.

(ii) A physician who is a member of the same group practice as the referring physician.

(iii) An individual who is supervised by the referring physician or, if the referring physician is in a group practice, by another physician in the group practice, provided the supervision complies with all other applicable Medicare payment and coverage rules for the services.

(2) They are furnished in one of the following locations:

(i) The same building (as defined in §411.351), but not necessarily in the same space or part of the building, in which all of the conditions of paragraph (b)(2)(i)(A), (b)(2)(i)(B), *or* (b)(2)(i)(C) of this section

EX.3

are satisfied:

(A)(*1*) The referring physician or his or her group practice (if any) has an office that is normally open to the physician's or group's patients for medical services at least 35 hours per week; *and*

(*2*) The referring physician or one or more members of the referring physician's group practice regularly practices medicine and furnishes physician services to patients at least 30 hours per week. The 30 hours must include some physician services that are unrelated to the furnishing of DHS payable by Medicare, any other Federal health care payer, or a private payer, even though the physician services may lead to the ordering of DHS; or

(B)(*1*) The patient receiving the DHS usually receives physician services from the referring physician or members of the referring physician's group practice (if any);

(*2*) The referring physician or the referring physician's group practice owns or rents an office that is normally open to the physician's or group's patients for medical services at least 8 hours per week; *and*

(*3*) The referring physician regularly practices medicine and furnishes physician services to patients at least 6 hours per week. The 6 hours must include some physician services that are unrelated to the furnishing of DHS payable by Medicare, any other Federal health care payer, or a private payer, even though the physician services may lead to the ordering of DHS; or

(C)(*1*) The referring physician is present and orders the DHS during a patient visit on the premises as set forth in paragraph (b)(2)(i)(C)(*2*) of this section *or* the referring physician or a member of the referring physician's group practice (if any) is present while the DHS is furnished during occupancy of the premises as set forth in paragraph (b)(2)(i)(C)(*2*) of this section;

(*2*) The referring physician or the referring physician's group practice owns or rents an office that is normally open to the physician's or group's patients for medical services at least 8 hours per week; *and*

(*3*) The referring physician or one or more members of the referring physician's group practice regularly practices medicine and furnishes physician services to patients at least 6 hours per week. The 6 hours must include some physician services that are unrelated to the furnishing of DHS payable by Medicare, any other Federal health care payer, or a private payer, even though the physician services may lead to the ordering of DHS.

(ii) A centralized building (as defined in §411.351) that is used by the group practice for the provision of some or all of the group practice's clinical laboratory services.

(iii) A centralized building (as defined in §411.351) that is used by the group practice for the provision of some or all of the group practice's DHS (other than clinical laboratory services).

(3) They are billed by one of the following:

(i) The physician performing or supervising the service.

(ii) The group practice of which the performing or supervising physician is a member under a billing number assigned to the group practice.

(iii) The group practice if the supervising physician is a "physician in the group practice" (as defined at §411.351) under a billing number assigned to the group practice.

(iv) An entity that is wholly owned by the performing or supervising physician or by that physician's group practice under the entity's own billing number or under a billing number assigned to the physician or group practice.

(v) An independent third party billing company acting as an agent of the physician, group practice, or entity specified in paragraphs (b)(3)(i) through (b)(3)(iv) of this section under a billing number assigned to the physician, group practice, or entity, provided the billing arrangement meets the requirements of §424.80(b)(6) of this chapter. For purposes of this paragraph (b)(3), a group practice may have, and bill

under, more than one Medicare billing number, subject to any applicable Medicare program restrictions.

(4) For purposes of paragraph (b) of this section, DME covered by the in-office ancillary services exception means canes, crutches, walkers and folding manual wheelchairs, and blood glucose monitors, that meet the following conditions:

(i) The item is one that a patient requires for the purposes of ambulating, uses in order to depart from the physician's office, or is a blood glucose monitor (including one starter set of test strips and lancets, consisting of no more than 100 of each). A blood glucose monitor may be furnished only by a physician or employee of a physician or group practice that also furnishes outpatient diabetes self-management training to the patient.

(ii) The item is furnished in a building that meets the "same building" requirements in the in-office ancillary services exception as part of the treatment for the specific condition for which the patient-physician encounter occurred.

(iii) The item is furnished personally by the physician who ordered the DME, by another physician in the group practice, or by an employee of the physician or the group practice.

(iv) A physician or group practice that furnishes the DME meets all DME supplier standards located in §424.57(c) of this chapter.

(v) The arrangement does not violate the anti-kickback statute (section 1128B(b) of the Act), or any Federal or State law or regulation governing billing or claims submission.

(vi) All other requirements of the in-office ancillary services exception in paragraph (b) of this section are met.

(5) A designated health service is "furnished" for purposes of paragraph (b) of this section in the location where the service is actually performed upon a patient or where an item is dispensed to a patient in a manner that is sufficient to meet the applicable Medicare payment and coverage rules.

(6) *Special rule for home care physicians.* In the case of a referring physician whose principal medical practice consists of treating patients in their private homes, the "same building" requirements of paragraph (b)(2)(i) of this section are met if the referring physician (or a qualified person accompanying the physician, such as a nurse or technician) provides the DHS contemporaneously with a physician service that is not a designated health service provided by the referring physician to the patient in the patient's private home. For purposes of paragraph (b)(5) of this section only, a private home does not include a nursing, long-term care, or other facility or institution, except that a patient may have a private home in an assisted living or independent living facility.

(c) *Services furnished by an organization (or its contractors or subcontractors) to enrollees.* Services furnished by an organization (or its contractors or subcontractors) to enrollees of one of the following prepaid health plans (not including services provided to enrollees in any other plan or line of business offered or administered by the same organization):

(1) An HMO or a CMP in accordance with a contract with CMS under section 1876 of the Act and part 417, subparts J through M of this chapter.

(2) A health care prepayment plan in accordance with an agreement with CMS under section 1833(a)(1)(A) of the Act and part 417, subpart U of this chapter.

(3) An organization that is receiving payments on a prepaid basis for Medicare enrollees through a demonstration project under section 402(a) of the Social Security Amendments of 1967 (42 U.S.C. 1395b–1) or under section 222(a) of the Social Security Amendments of 1972 (42 U.S.C. 1395b–1 note).

(4) A qualified HMO (within the meaning of section 1310(d) of the Public Health Service Act).

(5) A coordinated care plan (within the meaning of section 1851(a)(2)(A) of the Act) offered by an organization in accordance with a contract with CMS under section 1857 of the Act and part 422 of this

chapter.

(6) A managed care organization (MCO) contracting with a State under section 1903(m) of the Act.

(7) A prepaid inpatient health plan (PIHP) or prepaid ambulance health plan (PAHP) contracting with a State under part 438 of this chapter.

(8) A health insuring organization (HIO) contracting with a State under part 438, subpart D of this chapter.

(9) An entity operating under a demonstration project under sections 1115(a), 1915(a), 1915(b), or 1932 (a) of the Act.

(d) [Reserved]

(e) *Academic medical centers.* (1) Services provided by an academic medical center if all of the following conditions are met:

(i) The referring physician—

(A) Is a *bona fide* employee of a component of the academic medical center on a full-time or substantial part-time basis. (A "component" of an academic medical center means an affiliated medical school, faculty practice plan, hospital, teaching facility, institution of higher education, departmental professional corporation, or nonprofit support organization whose primary purpose is supporting the teaching mission of the academic medical center.) The components need not be separate legal entities;

(B) Is licensed to practice medicine in the State(s) in which he or she practices medicine;

(C) Has a *bona fide* faculty appointment at the affiliated medical school or at one or more of the educational programs at the accredited academic hospital; and

(D) Provides either substantial academic services or substantial clinical teaching services (or a combination of academic services and clinical teaching services) for which the faculty member receives compensation as part of his or her employment relationship with the academic medical center. Parties should use a reasonable and consistent method for calculating a physician's academic services and clinical teaching services. A physician will be deemed to meet this requirement if he or she spends at least 20 percent of his or her professional time or 8 hours per week providing academic services or clinical teaching services (or a combination of academic services or clinical teaching services). A physician who does not spend at least 20 percent of his or her professional time or 8 hours per week providing academic services or clinical teaching services (or a combination of academic services or clinical teaching services) is not precluded from qualifying under this paragraph (e)(1)(i)(D).

(ii) The total compensation paid by all academic medical center components to the referring physician is set in advance and, in the aggregate, does not exceed fair market value for the services provided, and is not determined in a manner that takes into account the volume or value of any referrals or other business generated by the referring physician within the academic medical center.

(iii) The academic medical center must meet all of the following conditions:

(A) All transfers of money between components of the academic medical center must directly or indirectly support the missions of teaching, indigent care, research, or community service.

(B) The relationship of the components of the academic medical center must be set forth in written agreement(s) or other written document(s) that have been adopted by the governing body of each component. If the academic medical center is one legal entity, this requirement will be satisfied if transfers of funds between components of the academic medical center are reflected in the routine financial reports covering the components.

(C) All money paid to a referring physician for research must be used solely to support *bona fide* research or teaching and must be consistent with the terms and conditions of the grant.

(iv) The referring physician's compensation arrangement does not violate the anti-kickback statute (section 1128B(b) of the Act), or any Federal or State law or regulation governing billing or claims submission.

(2) The "academic medical center" for purposes of this section consists of—

(i) An accredited medical school (including a university, when appropriate) or an accredited academic hospital (as defined at §411.355(e)(3));

(ii) One or more faculty practice plans affiliated with the medical school, the affiliated hospital(s), or the accredited academic hospital; and

(iii) One or more affiliated hospital(s) in which a majority of the physicians on the medical staff consists of physicians who are faculty members and a majority of all hospital admissions are made by physicians who are faculty members. The hospital for purposes of this paragraph (e)(2)(iii) may be the same hospital that satisfies the requirement of paragraph (e)(2)(i) of this section. For purposes of this provision, a faculty member is a physician who is either on the faculty of the affiliated medical school or on the faculty of one or more of the educational programs at the accredited academic hospital. In meeting this paragraph (e)(2)(iii), faculty from any affiliated medical school or accredited academic hospital education program may be aggregated, and residents and non-physician professionals need not be counted. Any faculty member may be counted, including courtesy and volunteer faculty.

(3) An accredited academic hospital for purposes of this section means a hospital or a health system that sponsors four or more approved medical education programs.

(f) *Implants furnished by an ASC.* Implants furnished by an ASC, including, but not limited to, cochlear implants, intraocular lenses, and other implanted prosthetics, implanted prosthetic devices, and implanted DME that meet the following conditions:

(1) The implant is implanted by the referring physician or a member of the referring physician's group practice in a Medicare-certified ASC (under part 416 of this chapter) with which the referring physician has a financial relationship.

(2) The implant is implanted in the patient during a surgical procedure paid by Medicare to the ASC as an ASC procedure under §416.65.

(3) The arrangement for the furnishing of the implant does not violate the anti-kickback statute (section 1128B(b) of the Act).

(4) All billing and claims submission for the implants does not violate any Federal or State law or regulation governing billing or claims submission.

(5) The exception set forth in this paragraph (f) does not apply to any financial relationships between the referring physician and any entity other than the ASC in which the implant is furnished to, and implanted in, the patient.

(g) *EPO and other dialysis-related drugs furnished in or by an ESRD facility.* EPO and other dialysis-related drugs that meet the following conditions:

(1) The EPO and other dialysis-related drugs are furnished in or by an ESRD facility. For purposes of this paragraph (g): "EPO and other dialysis-related drugs" means certain outpatient prescription drugs that are required for the efficacy of dialysis and identified as eligible for this exception on the List of CPT/HCPCS Codes; and "furnished" means that the EPO or dialysis-related drugs are administered to a patient in the ESRD facility, or, in the case of EPO or Aranesp (or equivalent drug identified on the List of CPT/HCPCS Codes) only, are dispensed by the ESRD facility for use at home.

(2) The arrangement for the furnishing of the EPO and other dialysis-related drugs does not violate the anti-kickback statute (section 1128B(b) of the Act).

(3) All billing and claims submission for the EPO and other dialysis-related drugs does not violate any

Federal or State law or regulation governing billing or claims submission.

(4) The exception set forth in this paragraph (g) does not apply to any financial relationship between the referring physician and any entity other than the ESRD facility that furnishes the EPO and other dialysis-related drugs to the patient.

(h) *Preventive screening tests, immunizations, and vaccines.* Preventive screening tests, immunizations, and vaccines that meet the following conditions:

(1) The preventive screening tests, immunizations, and vaccines are subject to CMS-mandated frequency limits.

(2) The arrangement for the provision of the preventive screening tests, immunizations, and vaccines does not violate the anti-kickback statute (section 1128B(b) of the Act).

(3) All billing and claims submission for the preventive screening tests, immunizations, and vaccines does not violate any Federal or State law or regulation governing billing or claims submission.

(4) The preventive screening tests, immunizations, and vaccines must be covered by Medicare and must be listed as eligible for this exception on the List of CPT/HCPCS Codes.

(i) *Eyeglasses and contact lenses following cataract surgery.* Eyeglasses and contact lenses that are covered by Medicare when furnished to patients following cataract surgery that meet the following conditions:

(1) The eyeglasses or contact lenses are provided in accordance with the coverage and payment provisions set forth in §410.36(a)(2)(ii) and §414.228 of this chapter, respectively.

(2) The arrangement for the furnishing of the eyeglasses or contact lenses does not violate the anti-kickback statute (section 1128B(b) of the Act).

(3) All billing and claims submission for the eyeglasses or contact lenses does not violate any Federal or State law or regulation governing billing or claims submission.

(j) *Intra-family rural referrals.* (1) Services provided pursuant to a referral from a referring physician to his or her immediate family member or to an entity furnishing DHS with which the immediate family member has a financial relationship, if all of the following conditions are met:

(i) The patient who is referred resides in a rural area as defined in §411.356(c)(1);

(ii) Except as provided in paragraph (j)(1)(iii) of this section, no other person or entity is available to furnish the services in a timely manner in light of the patient's condition within 25 miles of the patient's residence;

(iii) In the case of services furnished to patients where they reside (for example, home health services or in-home DME), no other person or entity is available to furnish the services in a timely manner in light of the patient's condition; and

(iv) The financial relationship does not violate the anti-kickback statute (section 1128B(b) of the Act), or any Federal or State law or regulation governing billing or claims submission;

(2) The referring physician or the immediate family member must make reasonable inquiries as to the availability of other persons or entities to furnish the DHS. However, neither the referring physician nor the immediate family member has any obligation to inquire as to the availability of persons or entities located farther than 25 miles from the patient's residence.

Browse Previous | Browse Next

For questions or comments regarding e-CFR editorial content, features, or design, email ecfr@nara.gov.

For questions concerning e-CFR programming and delivery issues, email webteam@gpo.gov.

Section 508 / Accessibility

Last updated: August 7, 2006

# Medicare Benefit Policy Manual
## Chapter 15 – Covered Medical and Other Health Services

**Table of Contents**

**(Rev. 63, 12-29-06)**

**Transmittals for Chapter 15**

Crosswalk to Old Manual

10 - Supplementary Medical Insurance (SMI) Provisions

20 - When Part B Expenses Are Incurred

    20.1 - Physician Expense for Surgery, Childbirth, and Treatment for Infertility

    20.2 - Physician Expense for Allergy Treatment

    20.3 - Artificial Limbs, Braces, and Other Custom Made Items Ordered But Not Furnished

30 - Physician Services

    30.1 - Provider-Based Physician Services

    30.2 - Teaching Physician Services

    30.3 - Interns and Residents

    30.4 - Optometrist's Services

    30.5 - Chiropractor's Services

    30.6 - Indian Health Service (IHS) Physician and Nonphysician Services

40 - Effect of Beneficiary Agreements Not to Use Medicare Coverage

    40.1 - Private Contracts Between Beneficiaries and Physicians/Practitioners

    40.2 - General Rules of Private Contracts

    40.3 - Effective Date of the Opt-Out Provision

    40.4 - Definition of Physician/Practitioner

    40.5 - When a Physician or Practitioner Opts Out of Medicare

    40.6 - When Payment May be Made to a Beneficiary for Service of an Opt-Out Physician/Practitioner

    40.7 - Definition of a Private Contract

    40.8 - Requirements of a Private Contract

    40.9 - Requirements of the Opt-Out Affidavit

    40.10 - Failure to Properly Opt Out

    40.11 - Failure to Maintain Opt-Out

Ex. 4

1. Carrier name;

2. Carrier number;

3. Quarter: (beginning and ending date); and

4. Number of "private contracting" affidavits received during report period.

For detail information: (use the following format)

| Specialty | Name/Address | PIN | UPIN | Par Status | Affidavit Receipt Date | Effective Date |
|-----------|--------------|-----|------|------------|------------------------|----------------|

**NOTE:** The "Affidavit Receipt Date" column of the report is optional. Because the affidavit receipt date may not be currently available in all systems, it may not be possible to give CMS a quarterly count of the number of private contracting affidavits received. If the carrier's system has the capability to supply CMS with the affidavit receipt date, the carrier must enter the correct date in the "Affidavit Receipt Date" column. If its system cannot supply CMS with the affidavit receipt date, it must leave the "Affidavit Receipt Date" column blank.

The carrier must sort the report data by physician/practitioner specialty.

The report is due 30 days after the end of each quarter (e.g., a report for the quarter April1, 2003, through June 30, 2003, is due July 30, 2003).

The CMS will notify the carrier if and when this report is either discontinued or put on the CROWD system.

## 50 - Drugs and Biologicals

**(Rev. 1, 10-01-03)**

**B3-2049, A3-3112.4.B, HO-230.4.B**

The Medicare program provides limited benefits for outpatient drugs. The program covers drugs that are furnished "incident to" a physician's service provided that the drugs are not usually self-administered by the patients who take them.

Generally, drugs and biologicals are covered only if all of the following requirements are met:

- They meet the definition of drugs or biologicals (see §50.1);

- They are of the type that are not usually self-administered. (see §50.2);

- They meet all the general requirements for coverage of items as incident to a physician's services (see §§50.1 and 50.3);

- They are reasonable and necessary for the diagnosis or treatment of the illness or injury for which they are administered according to accepted standards of medical practice (see §50.4);

- They are not excluded as noncovered immunizations (see §50.4.4.2); and

- They have not been determined by the FDA to be less than effective. (See §§50.4.4).

Medicare Part B does generally not cover drugs that can be self-administered, such as those in pill form, or are used for self-injection. However, the statute provides for the coverage of some self-administered drugs. Examples of self-administered drugs that are covered include blood-clotting factors, drugs used in immunosuppressive therapy, erythropoietin for dialysis patients, osteoporosis drugs for certain homebound patients, and certain oral cancer drugs. (See §110.3 for coverage of drugs, which are necessary to the effective use of Durable Medical Equipment (DME) or prosthetic devices.)

## 50.1 - Definition of Drug or Biological

**(Rev. 1, 10-01-03)**

**B3-2049.1**

Drugs and biologicals must be determined to meet the statutory definition. Under the statute §1861(t)(1), payment may be made for a drug or biological only where it is included, or approved for inclusion, in the latest official edition of the United States Pharmacopoeia National Formulary (USP-NF), the United States Pharmacopoeia-Drug Information (USD-DI), or the American Dental Association (AOA) Guide to Dental Therapeutics, except for those drugs and biologicals unfavorably evaluated in the ADA Guide to Dental Therapeutics. The inclusion of an item in the USP DI does not necessarily mean that the item is a drug or biological. The USP DI is a database of drug information developed by the U.S. Pharmacopoeia but maintained by Micromedex, which contains medically accepted uses for generic and brand name drug products. Inclusion in such reference (or approval by a hospital committee) is a necessary condition for a product to be considered a drug or biological under the Medicare program, however, it is not enough. Rather, the product must also meet all other program requirements to be determined to be a drug or biological. Combination drugs are also included in the definition of drugs if the combination itself or all of the therapeutic ingredients of the combination are included, or approved for inclusion, in any of the above drug compendia.

Drugs and biologicals are considered approved for inclusion in a compendium if approved under the established procedure by the professional organization responsible for revision of the compendium.

## 50.2 - Determining Self-Administration of Drug or Biological

**(Rev. 1, 10-01-03)**

**AB-02-072, AB-02-139, B3-2049.2**

The Medicare program provides limited benefits for outpatient prescription drugs. The program covers drugs that are furnished "incident to" a physician's service provided that the drugs are not usually self-administered by the patients who take them. Section 112 of the Benefits, Improvements & Protection Act of 2000 (BIPA) amended sections 1861(s)(2)(A) and 1861(s)(2)(B) of the Act to redefine this exclusion. The prior statutory language referred to those drugs "which cannot be self-administered." Implementation of the BIPA provision requires interpretation of the phrase "not usually self-administered by the patient".

1. Carrier Name
2. State
3. Carrier ID#
4. HCPCS
5. Descriptor
6. Effective Date of Exclusion
7. End Date of Exclusion
8. Comments

Any exclusion list not provided in the CMS mandated format will be returned for correction.

To view the presently mandated CMS format for this report, open the file located at:

http://cms.hhs.gov/manuals/pm_trans/AB02_139a.zip

## 50.3 - Incident-to Requirements

**(Rev. 1, 10-01-03)**

**B3-2049.3**

In order to meet all the general requirements for coverage under the incident-to provision, an FDA approved drug or biological must:

- Be of a form that is not usually self-administered;

- Must be furnished by a physician; and

- Must be administered by the physician, or by auxiliary personnel employed by the physician and under the physician's personal supervision.

The charge, if any, for the drug or biological must be included in the physician's bill, and the cost of the drug or biological must represent an expense to the physician. Drugs and biologicals furnished by other health professionals may also meet these requirements. (See §§170, 180, 190 and 200 for specific instructions.)

Whole blood is a biological, which cannot be self-administered and is covered when furnished incident to a physician's services. Payment may also be made for blood fractions if all coverage requirements are satisfied and the blood deductible has been met.

## 50.4 - Reasonableness and Necessity

**(Rev. 1, 10-01-03)**

**B3-2049.4**

## 50.4.1 - Approved Use of Drug

**(Rev. 1, 10-01-03)**

**B3-2049.4**

in plasma necessary for blood to clot. For purposes of Medicare Part B coverage, hemophilia encompasses the following conditions:

- Factor VIII deficiency (classic hemophilia);
- Factor IX deficiency (also termed plasma thromboplastin component (PTC) or Christmas factor deficiency); and
- Von Willebrand's disease.

Claims for blood clotting factors for hemophilia patients with these diagnoses may be covered if the patient is competent to use such factors without medical supervision.

The amount of clotting factors determined to be necessary to have on hand and thus covered under this provision is based on the historical utilization pattern or profile developed by the contractor for each patient. It is expected that the treating source, e.g., a family physician or comprehensive hemophilia diagnostic and treatment center, have such information. From this data, the contractor is able to anticipate and make reasonable projections concerning the quantity of clotting factors the patient will need over a specific period of time. Unanticipated occurrences involving extraordinary events, such as automobile accidents or inpatient hospital stays, will change this base line data and should be appropriately considered. In addition, changes in a patient's medical needs over a period of time require adjustments in the profile.

## 50.6 – Coverage of Intravenous Immune Globulin for Treatment of Primary Immune Deficiency Diseases in the Home

**(Rev. 6, 01-23-04)**

Beginning for dates of service on or after January 1, 2004, The Medicare Prescription Drug, Improvement, and Modernization Act of 2003 provides coverage of intravenous immune globulin (IVIG) for the treatment of primary immune deficiency diseases (ICD-9 diagnosis codes 279.04, 279.05, 279.06, 279.12, and 279.2) in the home. The corresponding HCPCS codes are J1563 and J1564. The Act defines "intravenous immune globulin" as an approved pooled plasma derivative for the treatment of primary immune deficiency disease. It is covered under this benefit when the patient has a diagnosed primary immune deficiency disease, it is administered in the home of a patient with a diagnosed primary immune deficiency disease, and the physician determines that administration of the derivative in the patient's home is medically appropriate. The benefit does not include coverage for items or services related to the administration of the derivative. For coverage of IVIG under this benefit, it is not necessary for the derivative to be administered through a piece of durable medical equipment.

## 60 - Services and Supplies

**(Rev. 1, 10-01-03)**

**B3-2050**

**A. Noninstitutional Setting**

For purposes of this section a noninstitutional setting means all settings other than a hospital or skilled nursing facility

Medicare pays for services and supplies (including drug and biologicals which are not usually self-administered) that are furnished incident to a physician's or other practitioner's services, are commonly included in the physician's or practitioner's bills, and for which payment is not made under a separate benefit category listed in §1861(s) of the Act. Carriers and intermediaries must not apply incident to requirements to services having their own benefit category. Rather, these services should meet the requirements of their own benefit category. For example, diagnostic tests are covered under §1861(s)(3) of the Act and are subject to their own coverage requirements. Depending on the particular tests, the supervision requirement for diagnostic tests or other services may be more or less stringent than supervision requirements for services and supplies furnished incident to physician's or other practitioner's services. Diagnostic tests need not also meet the incident to requirement in this section. Likewise, pneumococcal, influenza, and hepatitis B vaccines are covered under §1861(s)(10) of the Act and need not also meet incident to requirements. (Physician assistants, nurse practitioners, clinical nurse specialists, certified nurse midwives, clinical psychologists, clinical social workers, physical therapists and occupational therapists all have their own benefit categories and may provide services without direct physician supervision and bill directly for these services. When their services are provided as auxiliary personnel (see under direct physician supervision, they may be covered as incident to services, in which case the incident to requirements would apply.

For purposes of this section, physician means physician or other practitioner (physician, physician assistant, nurse practitioner, clinical nurse specialist, nurse midwife,  and clinical psychologist) authorized by the Act to receive payment for services incident to his or her own services.

To be covered incident to the services of a physician or other practitioner, services and supplies must be:

- An integral, although incidental, part of the physician's professional service (see §60.1);

- Commonly rendered without charge or included in the physician's bill (see §60.1A);

- Of a type that are commonly furnished in physician's offices or clinics (see §60.1A);

- Furnished by the physician or by auxiliary personnel under the physician's direct supervision (see §60.1B).

## B. Institutional Setting

Hospital services incident to physician's or other practitioner's services rendered to outpatients (including drugs and biologicals which are not usually self-administered by the patient), and partial hospitalization services incident to such services may also be covered.

The hospital's intermediary makes payment for these services under Part B to a hospital.

## 60.1 - Incident to Physician's Professional Services

**(Rev. 1, 10-01-03)**

B3-2050.1

Incident to a physician's professional services means that the services or supplies are furnished as an integral, although incidental, part of the physician's personal professional services in the course of diagnosis or treatment of an injury or illness.

### A. Commonly Furnished in Physicians' Offices

Services and supplies commonly furnished in physicians' offices are covered under the incident to provision. Where supplies are clearly of a type a physician is not expected to have on hand in his/her office or where services are of a type not considered medically appropriate to provide in the office setting, they would not be covered under the incident to provision.

Supplies usually furnished by the physician in the course of performing his/her services, e.g., gauze, ointments, bandages, and oxygen, are also covered. Charges for such services and supplies must be included in the physicians' bills. (See §50 regarding coverage of drugs and biologicals under this provision.) To be covered, supplies, including drugs and biologicals, must represent an expense to the physician or legal entity billing fir he services or supplies. For example, where a patient purchases a drug and the physician administers it, the cost of the drug is not covered. However, the administration of the drug, regardless of the source, is a service that represents an expense to the physician. Therefore, administration of the drug is payable if the drug would have been covered if the physician purchased it.

### B. Direct Personal Supervision

Coverage of services and supplies incident to the professional services of a physician in private practice is limited to situations in which there is direct physician supervision of auxiliary personnel.

Auxiliary personnel means any individual who is acting under the supervision of a physician, regardless of whether the individual is an employee, leased employee, or independent contractor of the physician, or of the legal entity that employs or contracts with the physician. Likewise, the supervising physician may be an employee, leased employee or independent contractor of the legal entity billing and receiving payment for the services or supplies.

However, the physician personally furnishing the services or supplies or supervising the auxiliary personnel furnishing the services or supplies must have a relationship with the legal entity billing and receiving payment for the services or supplies that satisfies the requirements for valid reassignment. As with the physician's personal professional services, the patient's financial liability for the incident to services or supplies is to the physician or other legal entity billing and receiving payment for the services or supplies. Therefore, the incident to services or supplies must represent an expense incurred by the physician or legal entity billing for the services or supplies.

Thus, where a physician supervises auxiliary personnel to assist him/her in rendering services to patients and includes the charges for their services in his/her own bills, the

services of such personnel are considered incident to the physician's service if there is a physician's service rendered to which the services of such personnel are an incidental part and there is direct supervision by the physician.

This does not mean, however, that to be considered incident to, each occasion of service by auxiliary personnel (or the furnishing of a supply) need also always be the occasion of the actual rendition of a personal professional service by the physician. Such a service or supply could be considered to be incident to when furnished during a course of treatment where the physician performs an initial service and subsequent services of a frequency which reflect his/her active participation in and management of the course of treatment. (However, the direct supervision requirement must still be met with respect to every nonphysician service.)

Direct supervision in the office setting does not mean that the physician must be present in the same room with his or her aide. However, the physician must be present in the office suite and immediately available to provide assistance and direction throughout the time the aide is performing services.

If auxiliary personnel perform services outside the office setting, e.g., in a patient's home or in an institution (other than hospital or SNF), their services are covered incident to a physician's service only if there is direct supervision by the physician. For example, if a nurse accompanied the physician on house calls and administered an injection, the nurse's services are covered. If the same nurse made the calls alone and administered the injection, the services are not covered (even when billed by the physician) since the physician is not providing direct supervision. Services provided by auxiliary personnel in an institution (e.g., nursing, or convalescent home) present a special problem in determining whether direct physician supervision exists. The availability of the physician by telephone and the presence of the physician somewhere in the institution does not constitute direct supervision. (See §70.3 of the Medicare National Coverage Determinations Manual for instructions used if a physician maintains an office in an institution.) For hospital patients and for SNF patients who are in a Medicare covered stay, there is no Medicare Part B coverage of the services of physician-employed auxiliary personnel as services incident to physicians' services under §1861(s)(2)(A) of the Act. Such services can be covered only under the hospital or SNF benefit and payment for such services can be made to only the hospital or SNF by a Medicare intermediary. (See §80 concerning physician supervision of technicians performing diagnostic x-ray procedures in a physician's office.)

## 60.2 - Services of Nonphysician Personnel Furnished Incident to Physician's Services

### (Rev. 1, 10-01-03)

**B3-2050.2**

In addition to coverage being available for the services of such auxiliary personnel as nurses, technicians, and therapists when furnished incident to the professional services of a physician (as discussed in §60.1), a physician may also have the services of certain nonphysician practitioners covered as services incident to a physician's professional services. These nonphysician practitioners, who are being licensed by the States under

various programs to assist or act in the place of the physician, include, for example, certified nurse midwives, clinical psychologists, clinical social workers, physician assistants, nurse practitioners, and clinical nurse specialists. (See §§150 through 200 for coverage instructions for various allied health/nonphysician practitioners' services.)

Services performed by these nonphysician practitioners incident to a physician's professional services include not only services ordinarily rendered by a physician's office staff person (e.g., medical services such as taking blood pressures and temperatures, giving injections, and changing dressings) but also services ordinarily performed by the physician such as minor surgery, setting casts or simple fractures, reading x-rays, and other activities that involve evaluation or treatment of a patient's condition.

Nonetheless, in order for services of a nonphysician practitioner to be covered as incident to the services of a physician, the services must meet all of the requirements for coverage specified in §§60 through 60.1. For example, the services must be an integral, although incidental, part of the physician's personal professional services, and they must be performed under the physician's direct supervision.

A nonphysician practitioner such as a physician assistant or a nurse practitioner may be licensed under State law to perform a specific medical procedure and may be able (see §§190 or 200, respectively) to perform the procedure without physician supervision and have the service separately covered and paid for by Medicare as a physician assistant's or nurse practitioner's service. However, in order to have that same service covered as incident to the services of a physician, it must be performed under the direct supervision of the physician as an integral part of the physician's personal in-office service. As explained in §60.1, this does not mean that each occasion of an incidental service performed by a nonphysician practitioner must always be the occasion of a service actually rendered by the physician. It does mean that there must have been a direct, personal, professional service furnished by the physician to initiate the course of treatment of which the service being performed by the nonphysician practitioner is an incidental part, and there must be subsequent services by the physician of a frequency that reflects the physician's continuing active participation in and management of the course of treatment. In addition, the physician must be physically present in the same office suite and be immediately available to render assistance if that becomes necessary.

Note also that a physician might render a physician's service that can be covered even though another service furnished by a nonphysician practitioner as incident to the physician's service might not be covered. For example, an office visit during which the physician diagnoses a medical problem and establishes a course of treatment could be covered even if, during the same visit, a nonphysician practitioner performs a noncovered service such as acupuncture.

## 60.3 - Incident to Physician's Service in Clinic

**(Rev. 1, 10-01-03)**

**B3-2050.3**

Services and supplies incident to a physician's service in a physician directed clinic or group association are generally the same as those described above.

A physician directed clinic is one where:

1. A physician (or a number of physicians) is present to perform medical (rather than administrative) services at all times the clinic is open;

2. Each patient is under the care of a clinic physician; and

3. The nonphysician services are under medical supervision.

In highly organized clinics, particularly those that are departmentalized, direct physician supervision may be the responsibility of several physicians as opposed to an individual attending physician. In this situation, medical management of all services provided in the clinic is assured. The physician ordering a particular service need not be the physician who is supervising the service. Therefore, services performed by auxiliary personnel and other aides are covered even though they are performed in another department of the clinic.

Supplies provided by the clinic during the course of treatment are also covered. When the auxiliary personnel perform services outside the clinic premises, the services are covered only if performed under the direct supervision of a clinic physician. If the clinic refers a patient for auxiliary services performed by personnel who are not supervised by clinic physicians, such services are not incident to a physician's service.

## 60.4 - Services Incident to a Physician's Service to Homebound Patients Under General Physician Supervision

**(Rev. 1, 10-01-03)**

**B3-2051**

**A. When Covered**

In some medically underserved areas there are only a few physicians available to provide services over broad geographic areas or to a large patient population. The lack of medical personnel (and, in many instances, a home health agency servicing the area) significantly reduces the availability of certain medical services to homebound patients. Some physicians and physician-directed clinics, therefore, call upon nurses and other paramedical personnel to provide these services under general (rather than direct) supervision. In some areas, such practice has tended to become the accepted method of delivery of these services.

The Senate Finance Committee Report accompanying the 1972 Amendments to the Act recommended that the direct supervision requirement of the "incident to" provision be modified to provide coverage for services provided in this manner.

Accordingly, to permit coverage of certain of these services, the direct supervision criterion in §60.2 above is **not** applicable to individual or intermittent services outlined in this section when they are performed by personnel meeting any pertinent State requirements (e.g., a nurse, technician, or physician extender) and where the criteria listed below also are met:

2049.3   Incident-to Requirements.--In order for Medicare payment to be made for a drug, the "incident to" requirements are met. "Incident to" a physician's professional service means that the services are furnished as an integral, although incidental, part of the physician's personal professional services in the course of diagnosis or treatment of an illness or injury. See §2050.1 for more detail on incident-to requirements.

In order to meet all the general requirements for coverage under the incident-to provision, an FDA approved drug or biological must be furnished by a physician and administered by him/her or by auxiliary personnel employed by him/her under his/her personal supervision. The charge, if any, for the drug or biological must be included in the physician's bill, and the cost of the drug or biological must represent an expense to the physician. Drugs and biologicals furnished by other health professionals may also meet these requirements. (See §§2154, 2156, 2158 and 2160 for specific instructions.)

2049.4   Reasonableness and Necessity.--Use of the drug or biological must be safe and effective and otherwise reasonable and necessary. (See §2303.) Drugs or biologicals approved for marketing by the Food and Drug Administration (FDA) are considered safe and effective for purposes of this requirement when used for indications specified on the labeling. Therefore, you may pay for the use of an FDA approved drug or biological, if:

   o   It was injected on or after the date of the FDA's approval;
   o   It is reasonable and necessary for the individual patient; and
   o   All other applicable coverage requirements are met.

Deny coverage for drugs and biologicals which have not received final marketing approval by the FDA unless you receive instructions from CMS to the contrary. For specific guidelines on coverage of Group C cancer drugs, see the Coverage Issues Manual.

If there is reason to question whether the FDA has approved a drug or biological for marketing, obtain satisfactory evidence of FDA's approval. Acceptable evidence includes a copy of the FDA's letter to the drug's manufacturer approving the new drug application (NDA); or listing of the drug or biological in the FDA's Approved Drug Products or FDA Drug and Device Product Approvals; or a copy of the manufacturer's package insert, approved by the FDA as part of the labeling of the drug, containing its recommended uses and dosage, as well as possible adverse reactions and recommended precautions in using it. When necessary, the RO may be able to help in obtaining information.

An unlabeled use of a drug is a use that is not included as an indication on the drug's label as approved by the FDA. FDA approved drugs used for indications other than what is indicated on the official label may be covered under Medicare if the carrier determines the use to be medically accepted, taking into consideration the major drug compendia, authoritive medical literature and/or accepted standards of medical practice. In the case of drugs used in an anti-cancer chemotherapeutic regimen, unlabeled uses are covered for a medically accepted indication as defined in §2049.4.C.

Determinations as to whether medication is reasonable and necessary for an individual patient should be made on the same basis as all other such determinations (i.e., with the advice of medical consultants and with reference to accepted standards of medical practice and the medical circumstances of the individual case). The following guidelines identify three categories with specific examples of situations in which medications would not be reasonable and necessary according to accepted standards of medical practice.

The next page is 2-18.3

EX-5

2050.    SERVICES AND SUPPLIES

Medicare pays for services and supplies (including drug and biologicals which are not usually self-administered) that are furnished incident to a physician's or other practitioner's services, are commonly included in the physician's or practitioner's bills, and for which payment is not made under a separate benefit category listed in §1861 (s) of the Act. Carriers should not apply incident to requirements to services having their own benefit category. Rather, these services should meet the requirements of their own benefit category. For example, diagnostic tests are covered under §1861 (s)(3) of the Act and are subject to the coverage requirements in §2070. Depending on the particular tests, the supervision requirement in §2070 may be more or less stringent than that discussed in §2050.1.B. Diagnostic tests need not also meet the incident to requirement in this section. Likewise, pneumococcal, influenza, and hepatitis B vaccines are covered under §1861 (s)(10) of the Act and need not also meet incident to requirements. (Physician assistants, nurse practitioners, clinical nurse specialists, certified nurse midwives, clinical psychologists, clinical social workers, physical therapists and occupational therapists all have their own benefit categories and may provide services without direct physician supervision and bill directly for these services. When their services are provided as auxiliary personnel (see §2050.1.B.) under direct physician supervision, they may be covered as incident to services, in which case the incident to requirements would apply (see §2050.2)).

Certain hospital services may also be covered as incident to a physician's services under §1861(s)(2)(B) of the Act. Payment for these services is made under Part B to a hospital by the hospital's intermediary and are not subject to the same requirements as services covered under §1861(s)(2)(A).

For purposes of this section, physician means physician or other practitioner (physician assistant, §2156; nurse practitioner, §2158; clinical nurse specialist, §2160; nurse midwife, §2154; and clinical psychologist, §2150) authorized by the Act to receive payment for services incident to his or her own services.

To be covered incident to the services of a physician, services and supplies must be:

o    An integral, although incidental, part of the physician's professional service (see §2050.1);

o    Commonly rendered without charge or included in the physician's bill (see §2050.1A);

o    Of a type that are commonly furnished in physician's offices or clinics (see §2050.1A);

o    Furnished by the physician or by auxiliary personnel under the physician's direct supervision (see §2050.1B).

2050.1    Incident to Physician's Professional Services.--Incident to a physician's professional services means that the services or supplies are furnished as an integral, although incidental, part of the physician's personal professional services in the course of diagnosis or treatment of an injury or illness.

A.    Commonly Furnished in Physicians' Offices.--Services and supplies commonly furnished in physicians' offices are covered under the incident to provision. Where supplies are clearly of a type a physician is not expected to have on hand in his/her office or where services are of a type not considered medically appropriate to provide in the office setting, they would not be covered under the incident to provision.

Supplies usually furnished by the physician in the course of performing his/her services, e.g., gauze, ointments, bandages, and oxygen, are also covered. Charges for such services and supplies must be included in the physicians' bills. (See §2049 regarding coverage of drugs and biologicals under this provision.) To be covered, supplies, including drugs and biologicals, must be an expense to the

physician or legal entity billing for the services or supplies. For example, where a patient purchases a drug and the physician administers it, the drug is not covered. However, the administration of the drug, regardless of the source, is a service that represents an expense to the physician. Therefore, administration of the drug is payable if the drug would have been covered if the physician purchased it.

    B.   <u>Direct Personal Supervision</u>.--Coverage of services and supplies incident to the professional services of a physician in private practice is limited to situations in which there is direct physician supervision of auxiliary personnel.

Auxiliary personnel means any individual who is acting under the supervision of a physician, regardless of whether the individual is an employee, leased employee, or independent contractor of the physician, or of the legal entity that employs or contracts with the physician. Likewise, the supervising physician may be an employee, leased employee or independent contractor of the legal entity billing and receiving payment for the services or supplies.

However, the physician personally furnishing the services or supplies or supervising the auxiliary personnel furnishing the services or supplies must have a relationship with the legal entity billing and receiving payment for the services or supplies that satisfies the requirements for valid reassignment in §3060. As with the physician's personal professional services, the patient's financial liability for the incident to services or supplies is to the physician or other legal entity billing and receiving payment for the services or supplies. Therefore, the incident to services or supplies must represent an expense incurred by the physician or legal entity billing for the services or supplies.

Thus, where a physician supervises auxiliary personnel to assist him/her in rendering services to patients and includes the charges for their services in his/her own bills, the services of such personnel are considered incident to the physician's service if there is a physician's service rendered to which the services of such personnel are an incidental part and there is direct supervision by the physician.

This does not mean, however, that to be considered incident to, each occasion of service by auxiliary personnel (or the furnishing of a supply) need also always be the occasion of the actual rendition of a personal professional service by the physician. Such a service or supply could be considered to be incident to when furnished during a course of treatment where the physician performs an initial service and subsequent services of a frequency which reflect his/her active participation in and management of the course of treatment. (However, the direct supervision requirement must still be met with respect to every nonphysician service.)

Direct supervision in the office setting does not mean that the physician must be present in the same room with his or her aide. However, the physician must be present in the office suite and immediately available to provide assistance and direction throughout the time the aide is performing services.

If auxiliary personnel perform services outside the office setting, e.g., in a patient's home or in an institution (other than hospital or SNF), their services are covered incident to a physician's service only if there is direct supervision by the physician. For example, if a nurse accompanied the physician on house calls and administered an injection, the nurse's services are covered. If the same nurse made the calls alone and administered the injection, the services are not covered (even when billed by the physician) since the physician is not providing direct supervision. Services provided by auxiliary personnel in an institution (e.g., nursing, or convalescent home) present a special problem in determining whether direct physician supervision exists. The availability of the physician by telephone and the presence of the physician somewhere in the institution does not constitute direct supervision. (See §45-15 of the Coverage Issues Manual for instructions used if a physician maintains an office in an institution.) For hospital patients and for SNF patients who are in a Medicare covered stay, there is no Medicare coverage of the services of physician-employed auxiliary personnel as services incident to physicians' services under §1861(s )(2)(A) of the Social

Security Act. Such services can be covered only under the hospital or SNF benefit and payment for such services can be made to only the hospital or SNF by a Medicare intermediary. For services in a hospital, see §2390. (See §2070 concerning physician supervision of technicians performing diagnostic x-ray procedures in a physician's office.)

2050.2    Services of Nonphysician Personnel Furnished Incident to Physician's Services.--In addition to coverage being available for the services of such auxiliary personnel as nurses, technicians, and therapists when furnished incident to the professional services of a physician, a physician may also have the services of certain nonphysician practitioners covered as services incident to a physician's professional services. These nonphysician practitioners, who are being licensed by the States under various programs to assist or act in the place of the physician, include, for example, certified nurse midwives, clinical psychologists, clinical social workers, physician assistants, nurse practitioners, and clinical nurse specialists. (See §§2150 through 2160 for coverage instructions for various allied health/nonphysician practitioners' services.)

Services performed by these nonphysician practitioners incident to a physician's professional services include not only services ordinarily rendered by a physician's office staff person (e.g., medical services such as taking blood pressures and temperatures, giving injections, and changing dressings) but also services ordinarily performed by the physician himself or herself such as minor surgery, setting casts or simple fractures, reading x-rays, and other activities that involve evaluation or treatment of a patient's condition.

Nonetheless, in order for services of a nonphysician practitioner to be covered as incident to the services of a physician, the services must meet all of the requirements for coverage specified in §§2050 through 2050.1. For example, the services must be an integral, although incidental, part of the physician's personal professional services, and they must be performed under the physician's direct supervision.

A nonphysician practitioner such as a physician assistant or a nurse practitioner may be licensed under State law to perform a specific medical procedure and may be able (see §§2156 or 2158, respectively) to perform the procedure without physician supervision and have the service separately covered and paid for by Medicare as a physician assistant's or nurse practitioner's service. However, in order to have that same service covered as incident to the services of a physician, it must be performed under the direct supervision of the physician as an integral part of the physician's personal in-office service. As explained in §2050.1, this does not mean that each occasion of an incidental service performed by a nonphysician practitioner must always be the occasion of a service actually rendered by the physician. It does mean that there must have been a direct, personal, professional service furnished by the physician to initiate the course of treatment of which the service being performed by the nonphysician practitioner is an incidental part, and there must be subsequent services by the physician of a frequency that reflects his or her continuing active participation in and management of the course of treatment. In addition, the physician must be physically present in the same office suite and be immediately available to render assistance if that becomes necessary.

Note also that a physician might render a physician's service that can be covered even though another service furnished by a nonphysician practitioner as incident to the physician's service might not be covered. For example, an office visit during which the physician diagnoses a medical problem and established a course of treatment could be covered even if, during the same visit, a nonphysician practitioner performs a noncovered service such as an acupuncture.

Rev. 1764                                                                                      2-21

2050.3    <u>Incident to Physician's Service in Clinic</u>.--Services and supplies incident to a physician's service in a physician directed clinic or group association are generally the same as those described above.

A physician directed clinic is one where (a) a physician (or a number of physicians) is present to perform medical (rather than administrative) services at all times the clinic is open; (b) each patient is under the care of a clinic physician; and (c) the nonphysician services are under medical supervision.

In highly organized clinics, particularly those that are departmentalized, direct physician supervision may be the responsibility of several physicians as opposed to an individual attending physician. In this situation, medical management of all services provided in the clinic is assured. The physician ordering a particular service need not be the physician who is supervising the service. Therefore, services performed by auxiliary personnel are covered even though they are performed in another department of the clinic.

Supplies provided by the clinic during the course of treatment are also covered. When the auxiliary personnel perform services outside the clinic premises, the services are covered only if performed under the direct supervision of a clinic physician. If the clinic refers a patient for auxiliary services performed by personnel who are not supervised by clinic physicians, such services are not incident to a physician's service.