PLEASE
DO NOT
STAPLE
IN THIS
AREA

CARRIER

| | PICA | | | **HEALTH INSURANCE CLAIM FORM** | PICA | |

# HEALTH INSURANCE CLAIM FORM

| 1. MEDICARE | MEDICAID | CHAMPUS | CHAMPVA | GROUP HEALTH PLAN | FECA BLK LUNG | OTHER | 1a. INSURED'S I.D. NUMBER (FOR PROGRAM IN ITEM 1) |
| (Medicare #) | (Medicaid #) | (Sponsor's SSN) | (VA File #) | (SSN or ID) | (SSN) | (ID) | |

| 2. PATIENT'S NAME (Last Name, First Name, Middle Initial) | 3. PATIENT'S BIRTH DATE / SEX | 4. INSURED'S NAME (Last Name, First Name, Middle Initial) |

MM DD YY   M   F

| 5. PATIENT'S ADDRESS (No., Street) | 6. PATIENT RELATIONSHIP TO INSURED | 7. INSURED'S ADDRESS (No., Street) |

Self   Spouse   Child   Other

| CITY | STATE | 8. PATIENT STATUS | CITY | STATE |

Single   Married   Other

ZIP CODE   TELEPHONE (Include Area Code)

Employed   Full-Time Student   Part-Time Student

ZIP CODE   TELEPHONE (INCLUDE AREA CODE)

( )

9. OTHER INSURED'S NAME (Last Name, First Name, Middle Initial)

10. IS PATIENT'S CONDITION RELATED TO:

11. INSURED'S POLICY GROUP OR FECA NUMBER

a. OTHER INSURED'S POLICY OR GROUP NUMBER

a. EMPLOYMENT? (CURRENT OR PREVIOUS)

YES   NO

a. INSURED'S DATE OF BIRTH
MM DD YY   SEX
M   F

b. OTHER INSURED'S DATE OF BIRTH
MM DD YY   SEX
M   F

b. AUTO ACCIDENT?   PLACE (State)

YES   NO

b. EMPLOYER'S NAME OR SCHOOL NAME

c. EMPLOYER'S NAME OR SCHOOL NAME

c. OTHER ACCIDENT?

YES   NO

c. INSURANCE PLAN NAME OR PROGRAM NAME

d. INSURANCE PLAN NAME OR PROGRAM NAME

10d. RESERVED FOR LOCAL USE

d. IS THERE ANOTHER HEALTH BENEFIT PLAN?

YES   NO   *If yes,* return to and complete item 9 a-d.

READ BACK OF FORM BEFORE COMPLETING & SIGNING THIS FORM.

12. PATIENT'S OR AUTHORIZED PERSON'S SIGNATURE I authorize the release of any medical or other information necessary to process this claim. I also request payment of government benefits either to myself or to the party who accepts assignment below.

SIGNED _____   DATE _____

13. INSURED'S OR AUTHORIZED PERSON'S SIGNATURE I authorize payment of medical benefits to the undersigned physician or supplier for services described below.

SIGNED _____

PATIENT AND INSURED INFORMATION

14. DATE OF CURRENT: ILLNESS (First symptom) OR
MM DD YY   INJURY (Accident) OR
PREGNANCY(LMP)

15. IF PATIENT HAS HAD SAME OR SIMILAR ILLNESS. GIVE FIRST DATE MM DD YY

16. DATES PATIENT UNABLE TO WORK IN CURRENT OCCUPATION
FROM MM DD YY   TO MM DD YY

17. NAME OF REFERRING PHYSICIAN OR OTHER SOURCE

17a. I.D. NUMBER OF REFERRING PHYSICIAN

18. HOSPITALIZATION DATES RELATED TO CURRENT SERVICES
FROM MM DD YY   TO MM DD YY

19. RESERVED FOR LOCAL USE

20. OUTSIDE LAB?   $ CHARGES

YES   NO

21. DIAGNOSIS OR NATURE OF ILLNESS OR INJURY. (RELATE ITEMS 1,2,3 OR 4 TO ITEM 24E BY LINE)

1. |_____.|_____   3. |_____.|_____

2. |_____.|_____   4. |_____.|_____

22. MEDICAID RESUBMISSION CODE   ORIGINAL REF. NO.

23. PRIOR AUTHORIZATION NUMBER

| 24. A DATE(S) OF SERVICE | | B Place of Service | C Type of Service | D PROCEDURES, SERVICES, OR SUPPLIES (Explain Unusual Circumstances) | | E DIAGNOSIS CODE | F $ CHARGES | G DAYS OR UNITS | H EPSDT Family Plan | I EMG | J COB | K RESERVED FOR LOCAL USE |
| From MM DD YY | To MM DD YY | | | CPT/HCPCS | MODIFIER | | | | | | | |
| 1 | | | | | | | | | | | | |
| 2 | | | | | | | | | | | | |
| 3 | | | | | | | | | | | | |
| 4 | | | | | | | | | | | | |
| 5 | | | | | | | | | | | | |
| 6 | | | | | | | | | | | | |

PHYSICIAN OR SUPPLIER INFORMATION

| 25. FEDERAL TAX I.D. NUMBER   SSN EIN | 26. PATIENT'S ACCOUNT NO. | 27. ACCEPT ASSIGNMENT? (For govt. claims, see back)   YES   NO | 28. TOTAL CHARGE $ | 29. AMOUNT PAID $ | 30. BALANCE DUE $ |

31. SIGNATURE OF PHYSICIAN OR SUPPLIER INCLUDING DEGREES OR CREDENTIALS (I certify that the statements on the reverse apply to this bill and are made a part thereof.)

SIGNED _____   DATE _____

32. NAME AND ADDRESS OF FACILITY WHERE SERVICES WERE RENDERED (If other than home or office)

33. PHYSICIAN'S, SUPPLIER'S BILLING NAME, ADDRESS, ZIP CODE & PHONE #

PIN# _____   GRP# _____

(APPROVED BY AMA COUNCIL ON MEDICAL SERVICE 8/88)   *PLEASE PRINT OR TYPE*

APPROVED OMB-0938-0008 FORM CMS-1500 (12/90),   FORM RRB-1500,
APPROVED OMB-1215-0055 FORM OWCP-1500,   APPROVED OMB-0720-0001 (CHAMPUS)

EX. 6

BECAUSE THIS FORM IS USED BY VARIOUS GOVERNMENT AND PRIVATE HEALTH PROGRAMS, SEE SEPARATE INSTRUCTIONS ISSUED BY APPLICABLE PROGRAMS.

NOTICE: Any person who knowingly files a statement of claim containing any misrepresentation or any false, incomplete or misleading information may be guilty of a criminal act punishable under law and may be subject to civil penalties.

## REFERS TO GOVERNMENT PROGRAMS ONLY

MEDICARE AND CHAMPUS PAYMENTS: A patient's signature requests that payment be made and authorizes release of any information necessary to process the claim and certifies that the information provided in Blocks 1 through 12 is true, accurate and complete. In the case of a Medicare claim, the patient's signature authorizes any entity to release to Medicare medical and nonmedical information, including employment status, and whether the person has employer group health insurance, liability, no-fault, worker's compensation or other insurance which is responsible to pay for the services for which the Medicare claim is made. See 42 CFR 411.24(a). If item 9 is completed, the patient's signature authorizes release of the information to the health plan or agency shown. In Medicare assigned or CHAMPUS participation cases, the physician agrees to accept the charge determination of the Medicare carrier or CHAMPUS fiscal intermediary as the full charge, and the patient is responsible only for the deductible, coinsurance and noncovered services. Coinsurance and the deductible are based upon the charge determination of the Medicare carrier or CHAMPUS fiscal intermediary if this is less than the charge submitted. CHAMPUS is not a health insurance program but makes payment for health benefits provided through certain affiliations with the Uniformed Services. Information on the patient's sponsor should be provided in those items captioned in "Insured"; i.e., items 1a, 4, 6, 7, 9, and 11.

### BLACK LUNG AND FECA CLAIMS

The provider agrees to accept the amount paid by the Government as payment in full. See Black Lung and FECA instructions regarding required procedure and diagnosis coding systems.

### SIGNATURE OF PHYSICIAN OR SUPPLIER (MEDICARE, CHAMPUS, FECA AND BLACK LUNG)

I certify that the services shown on this form were medically indicated and necessary for the health of the patient and were personally furnished by me or were furnished incident to my professional service by my employee under my immediate personal supervision, except as otherwise expressly permitted by Medicare or CHAMPUS regulations.

For services to be considered as "incident" to a physician's professional service, 1) they must be rendered under the physician's immediate personal supervision by his/her employee, 2) they must be an integral, although incidental part of a covered physician's service, 3) they must be of kinds commonly furnished in physician's offices, and 4) the services of nonphysicians must be included on the physician's bills.

For CHAMPUS claims, I further certify that I (or any employee) who rendered services am not an active duty member of the Uniformed Services or a civilian employee of the United States Government or a contract employee of the United States Government, either civilian or military (refer to 5 USC 5536). For Black-Lung claims, I further certify that the services performed were for a Black Lung-related disorder.

No Part B Medicare benefits may be paid unless this form is received as required by existing law and regulations (42 CFR 424.32).

NOTICE: Any one who misrepresents or falsifies essential information to receive payment from Federal funds requested by this form may upon conviction be subject to fine and imprisonment under applicable Federal laws.

### NOTICE TO PATIENT ABOUT THE COLLECTION AND USE OF MEDICARE, CHAMPUS, FECA, AND BLACK LUNG INFORMATION
(PRIVACY ACT STATEMENT)

We are authorized by CMS, CHAMPUS and OWCP to ask you for information needed in the administration of the Medicare, CHAMPUS, FECA, and Black Lung programs. Authority to collect information is in section 205(a), 1862, 1872 and 1874 of the Social Security Act as amended, 42 CFR 411.24(a) and 424.5(a) (6), and 44 USC 3101;41 CFR 101 et seq and 10 USC 1079 and 1086; 5 USC 8101 et seq; and 30 USC 901 et seq; 38 USC 613; E.O. 9397.

The information we obtain to complete claims under these programs is used to identify you and to determine your eligibility. It is also used to decide if the services and supplies you received are covered by these programs and to insure that proper payment is made.

The information may also be given to other providers of services, carriers, intermediaries, medical review boards, health plans, and other organizations or Federal agencies, for the effective administration of Federal provisions that require other third parties payers to pay primary to Federal program, and as otherwise necessary to administer these programs. For example, it may be necessary to disclose information about the benefits you have used to a hospital or doctor. Additional disclosures are made through routine uses for information contained in systems of records.

FOR MEDICARE CLAIMS: See the notice modifying system No. 09-70-0501, titled, 'Carrier Medicare Claims Record,' published in the Federal Register, Vol. 55 No. 177, page 37549, Wed. Sept. 12, 1990, or as updated and republished.

FOR OWCP CLAIMS: Department of Labor, Privacy Act of 1974, "Republication of Notice of Systems of Records," Federal Register Vol. 55 No. 40, Wed Feb. 28, 1990, See ESA-5, ESA-6, ESA-12, ESA-13, ESA-30, or as updated and republished.

FOR CHAMPUS CLAIMS: PRINCIPLE PURPOSE(S): To evaluate eligibility for medical care provided by civilian sources and to issue payment upon establishment of eligibility and determination that the services/supplies received are authorized by law.

ROUTINE USE(S): Information from claims and related documents may be given to the Dept. of Veterans Affairs, the Dept. of Health and Human Services and/or the Dept. of Transportation consistent with their statutory administrative responsibilities under CHAMPUS/CHAMPVA; to the Dept. of Justice for representation of the Secretary of Defense in civil actions; to the Internal Revenue Service, private collection agencies, and consumer reporting agencies in connection with recoupment claims; and to Congressional Offices in response to inquiries made at the request of the person to whom a record pertains. Appropriate disclosures may be made to other federal, state, local, foreign government agencies, private business entities, and individual providers of care, on matters relating to entitlement, claims adjudication, fraud, program abuse, utilization review, quality assurance, peer review, program integrity, third-party liability, coordination of benefits, and civil and criminal litigation related to the operation of CHAMPUS.

DISCLOSURES: Voluntary; however, failure to provide information will result in delay in payment or may result in denial of claim. With the one exception discussed below, there are no penalties under these programs for refusing to supply information. However, failure to furnish information regarding the medical services rendered or the amount charged would prevent payment of claims under these programs. Failure to furnish any other information, such as name or claim number, would delay payment of the claim. Failure to provide medical information under FECA could be deemed an obstruction.

It is mandatory that you tell us if you know that another party is responsible for paying for your treatment. Section 1128B of the Social Security Act and 31 USC 3801-3812 provide penalties for withholding this information.

You should be aware that P.L. 100-503, the "Computer Matching and Privacy Protection Act of 1988", permits the government to verify information by way of computer matches.

### MEDICAID PAYMENTS (PROVIDER CERTIFICATION)

I hereby agree to keep such records as are necessary to disclose fully the extent of services provided to individuals under the State's Title XIX plan and to furnish information regarding any payments claimed for providing such services as the State Agency or Dept. of Health and Human Services may request.

I further agree to accept, as payment in full, the amount paid by the Medicaid program for those claims submitted for payment under that program, with the exception of authorized deductible, coinsurance, co-payment or similar cost-sharing charge.

SIGNATURE OF PHYSICIAN (OR SUPPLIER): I certify that the services listed above were medically indicated and necessary to the health of this patient and were personally furnished by me or my employee under my personal direction.

NOTICE: This is to certify that the foregoing information is true, accurate and complete. I understand that payment and satisfaction of this claim will be from Federal and State funds, and that any false claims, statements, or documents, or concealment of a material fact, may be prosecuted under applicable Federal or State laws.

---

According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0938-0008. The time required to complete this information collection is estimated to average 10 minutes per response, including the time to review instructions, search existing data resources, gather the data needed, and complete and review the information collection. If you have any comments concerning the accuracy of the time estimate(s) or suggestions for improving this form, please write to: CMS, Attn: PRA Reports Clearance Officer, 7500 Security Boulevard, Baltimore, Maryland 21244-1850.

# Medicare Claims Processing Manual
## Chapter 26 - Completing and Processing
## Form CMS-1500 Data Set

**Table of Contents**
*(Rev. 1049, 09-01-06)*
*(Rev. 1058, 09-15-06)*
*(Rev. 1086, 10-27-06)*

**Transmittals for Chapter 26**

Crosswalk to Old Manuals

10 - Health Insurance Claim Form CMS-1500
    10.1 - Claims That Are Incomplete or Contain Invalid Information
    10.2 - Items 1-11 - Patient and Insured Information
    10.3 - Items 11a - 13 - Patient and Insured Information
    10.4 - Items 14-33 - Provider of Service or Supplier Information
    10.5 - Place of Service Codes (POS) and Definitions
    10.6 - Carrier Instructions for Place of Service (POS) Codes
    10.7 - Type of Service (TOS)
    10.8 - Requirements for Specialty Codes
    10.8.1 - Assigning Specialty Codes by Carriers and DMERCs
    10.8.2 - Physician Specialty Codes
    10.8.3 - Nonphysician Practitioner, Supplier, and Provider Specialty Codes
    10.9 - Obtaining Copies of the Form CMS-1500
    10.10 - Miles/Times/Units/Services (MTUS)
        10.10.1 - Methodology for Coding Number of Services, MTUS Count and
MTUS Indicator Fields
20 - Patient's Request for Medicare Payment Form CMS-1490S
30 - Printing Standards and Print File Specifications Form CMS-1500
    *Exhibit 1 - Form CMS-1500 (12/90) User Print File Specifications*
    *Exhibit 2 - Form CMS-1500 (08/05) User Print File Specifications*

EX. 7

## 10 - Health Insurance Claim Form CMS-1500
*(Rev. 1058, Issued: 09-15-06; Effective: 01-01-07, Implementation: 01-02-07)*

The Form CMS-1500 (Health Insurance Claim Form) is sometimes referred to as the AMA (American Medical Association) form. The Form CMS-1500 is the prescribed form for claims prepared and submitted by physicians or suppliers (except for ambulance suppliers), whether or not the claims are assigned. It can be purchased in any version required i.e., single sheet, snap-out, continuous, etc. To purchase them from the U.S. Government Printing Office, call (202) 512-1800.

There are currently two versions of the Form CMS-1500. The current approved version of the form as of 2005 is the Form CMS-1500 (12/90). The current version is approved under the Office of Management and Budget (OMB) collection 0938-0008. The *revised* version of the form *is* Form CMS-1500 (08/05) and is *approved under the OMB collection 0938-0999.* The current claim form was revised to accommodate the implementation of the National Provider Identifier (NPI), which is scheduled for completion of the implementation in May 2007.

*Between January 1, 2007, and March 31, 2007, either version of the Form CMS-1500 will be accepted by Medicare contractors.* Therefore, you will find information within this chapter that applies to both claim forms. The differences between the two forms will be noted within the body of the text that describes each of the items/boxes/fields of the Form CMS-1500. In addition to the text within the chapter, there are two exhibits at the end of this chapter that provide the print file specifications for each form. Exhibit 1 is the print file specification layout for the current Form CMS-1500 (12-90) and Exhibit 2 is the print file specification layout for the Form CMS-1500 (08-05).

The Form CMS-1500 answers the needs of many health insurers. It is the basic form prescribed by CMS for the Medicare and Medicaid programs for claims from physicians and suppliers. It has also been adopted by the *TRICARE Program* and has received the approval of the American Medical Association (AMA) Council on Medical Services.

There are a number of Part B services that have special limitations on payments or that require special methods of benefit computation. Carriers should monitor their processing systems to insure that they recognize the procedure codes that involve services with special payment limitations or calculation requirements. They should be able to identify separately billed procedure codes for physician services which are actually part of a global procedure code to prevent a greater payment than if the procedure were billed globally.

The following instructions must be completed or are required for a Medicare claim. Carriers should provide information on completing the Form CMS-1500 to all physicians and suppliers in their area at least once a year.

Providers may use these instructions *to complete* this form. The Form CMS-1500 has space for physicians and suppliers to provide information on other health insurance. This information can be used by carriers to determine whether the Medicare patient has other coverage that must be billed prior to Medicare payment, or whether there is *another insurer to which Medicare can forward billing and payment data following adjudication if the provider is a physician or supplier that participates in Medicare.* (See Pub 100-05,

Medicare Secondary Payer Manual, Chapter 3, and Chapter 28 *of* this manual). Providers and suppliers must report 8-digit dates in all date of birth fields (items 3, 9b, and 11a), and either 6-digit or 8-digit dates in all other date fields (items 11b, 12, 14, 16, 18, 19, 24a, and 31).

Providers and suppliers have the option of entering either a 6 or 8-digit date in items 11b, 14, 16, 18, 19, or 24a. However, if a provider of service or supplier chooses to enter 8-digit dates for items 11b, 14, 16, 18, 19, or 24a, he or she must enter 8-digit dates for all these fields. For instance, a provider of service or supplier will not be permitted to enter 8-digit dates for items 11b, 14, 16, 18, 19 and a 6-digit date for item 24a. The same applies to providers of service and suppliers who choose to submit 6-digit dates too. Items 12 and 31 are exempt from this requirement.

| Legend | Description |
|--------|-------------|
| MM | Month (e.g., December = 12) |
| DD | Day (e.g., Dec15 = 15) |
| YY | 2 position Year (e.g., 1998 = 98) |
| CCYY | 4 position Year (e.g., 1998 = 1998) |
| (MM \| DD \| YY) or (MM \| DD \| CCYY) | A space must be reported between month, day, and year (e.g., 12 \| 15 \| 98 or 12 \| 15 \| 1998). This space is delineated by a dotted vertical line on the Form CMS-1500) |
| (MMDDYY) or (MMDDCCYY) | No space must be reported between month, day, and year (e.g., 121598 or 12151998). The date must be recorded as one continuous number. |

## 10.1 – Claims That are Incomplete or Contain Invalid Information

**(Rev. 145, 04-23-04)**

If a claim is submitted with incomplete or invalid information, it may be returned to the submitter as unprocessable. See Chapter 1 for definitions and instructions concerning the handling of incomplete or invalid claims.

## 10.2 - Items 1-11 - Patient and Insured Information

**(Rev. 317, Issued 10-22-04, Effective/Implementation: N/A)**

**Item 1 -** Show the type of health insurance coverage applicable to this claim by checking the appropriate box, e.g., if a Medicare claim is being filed, check the Medicare box.

**Item 1a -** Enter the patient's Medicare Health Insurance Claim Number (HICN) whether Medicare is the primary or secondary payer. This is a required field.

**Item 2** - Enter the patient's last name, first name, and middle initial, if any, as shown on the patient's Medicare card. This is a required field.

**Item 3** - Enter the patient's 8-digit birth date (MM | DD | CCYY) and sex.

**Item 4** - If there is insurance primary to Medicare, either through the patient's or spouse's employment or any other source, list the name of the insured here. When the insured and the patient are the same, enter the word SAME. If Medicare is primary, leave blank.

**Item 5** - Enter the patient's mailing address and telephone number. On the first line enter the street address; the second line, the city and state; the third line, the ZIP code and phone number.

**Item 6 -** Check the appropriate box for patient's relationship to insured when item 4 is completed.

**Item 7 -** Enter the insured's address and telephone number. When the address is the same as the patient's, enter the word SAME. Complete this item only when items 4, 6, and 11 are completed.

**Item 8 -** Check the appropriate box for the patient's marital status and whether employed or a student.

**Item 9 -** Enter the last name, first name, and middle initial of the enrollee in a Medigap policy if it is different from that shown in item 2. Otherwise, enter the word SAME. If no Medigap benefits are assigned, leave blank. **This field may be used in the future for supplemental insurance plans.**

**NOTE:** Only Participating Physicians and Suppliers are to complete item 9 and its subdivisions and only when the Beneficiary wishes to assign his/her benefits under a MEDIGAP policy to the Participating Physician or Supplier.

Participating physicians and suppliers must enter information required in item 9 and its subdivisions if requested by the beneficiary. Participating physicians/suppliers sign an agreement with Medicare to accept assignment of Medicare benefits for **all** Medicare patients. A claim for which a beneficiary elects to assign his/her benefits under a Medigap policy to a participating physician/supplier is called a mandated Medigap transfer. (See chapter 28.)

**Medigap -** Medigap policy meets the statutory definition of a "Medicare supplemental policy" contained in §1882(g)(1) of title XVIII of the Social Security Act (the Act) and the definition contained in the NAIC Model Regulation that is incorporated by reference to the statute. It is a health insurance policy or other health benefit plan offered by a private entity to those persons entitled to Medicare benefits and is specifically designed to supplement Medicare benefits. It fills in some of the "gaps" in Medicare coverage by providing payment for some of the charges for which Medicare does not have responsibility due to the applicability of deductibles, coinsurance amounts, or other limitations imposed by Medicare. It does not include limited benefit coverage available to Medicare beneficiaries such as "specified disease" or "hospital indemnity" coverage. Also, it explicitly excludes a policy or plan offered by an employer to employees or former employees, as well as that offered by a labor organization to members or former members.

Do not list other supplemental coverage in item 9 and its subdivisions at the time a Medicare claim is filed. Other supplemental claims are forwarded automatically to the private insurer if the private insurer contracts with the carrier to send Medicare claim information electronically. If there is no such contract, the beneficiary must file his/her own supplemental claim.

**Item 9a -** Enter the policy and/or group number of the Medigap insured preceded by MEDIGAP, MG, or MGAP.

**NOTE:** Item 9d must be completed if the provider enters a policy and/or group number in item 9a.

**Item 9b -** Enter the Medigap insured's 8-digit birth date (MM | DD | CCYY) and sex.

**Item 9c -** Leave blank if a Medigap PayerID is entered in item 9d. Otherwise, enter the claims processing address of the Medigap insurer. Use an abbreviated street address, two-letter postal code, and ZIP code copied from the Medigap insured's Medigap identification card. For example:

>     1257 Anywhere Street
>     Baltimore, MD 21204

is shown as "1257 Anywhere St. MD 21204."

**Item 9d -** Enter the 9-digit PAYERID number of the Medigap insurer. If no PAYERID number exists, then enter the Medigap insurance program or plan name.

If the beneficiary wants Medicare payment data forwarded to a Medigap insurer under a mandated Medigap transfer, the participating provider of service or supplier must accurately complete all of the information in items 9, 9a, 9b, and 9d. Otherwise, the Medicare carrier cannot forward the claim information to the Medigap insurer.

**Items 10a through 10c -** Check "YES" or "NO" to indicate whether employment, auto liability, or other accident involvement applies to one or more of the services described in item 24. Enter the State postal code. Any item checked "YES" indicates there may be other insurance primary to Medicare. Identify primary insurance information in item 11.

**Item 10d -** Use this item exclusively for Medicaid (MCD) information. If the patient is entitled to Medicaid, enter the patient's Medicaid number preceded by MCD.

**Item 11 -** THIS ITEM MUST BE COMPLETED, IT IS A REQUIRED FIELD. BY COMPLETING THIS ITEM, THE PHYSICIAN/SUPPLIER ACKNOWLEDGES HAVING MADE A GOOD FAITH EFFORT TO DETERMINE WHETHER MEDICARE IS THE PRIMARY OR SECONDARY PAYER.

If there is insurance primary to Medicare, enter the insured's policy or group number and proceed to items 11a - 11c. Items 4, 6, and 7 must also be completed.

**NOTE:** Enter the appropriate information in item 11c if insurance primary to Medicare is indicated in item 11.

If there is no insurance primary to Medicare, enter the word "NONE" and proceed to item 12.

If the insured reports a terminating event with regard to insurance which had been primary to Medicare (e.g., insured retired), enter the word "NONE" and proceed to item 11b.

If a lab has collected previously and retained MSP information for a beneficiary, the lab may use that information for billing purposes of the non-face-to-face service. If the lab has no MSP information for the beneficiary, the lab will enter the word "None" in Block 11 of Form CMS-1500, when submitting a claim for payment of a reference lab service. Where there has been no face-to-face encounter with the beneficiary, the claim will then follow the normal claims process. When a lab has a face-to-face encounter with a beneficiary, the lab is expected to collect the MSP information and bill accordingly.

**Insurance Primary to Medicare -** Circumstances under which Medicare payment may be secondary to other insurance include:

- Group Health Plan Coverage
  - o Working Aged;
  - o Disability (Large Group Health Plan); and
  - o End Stage Renal Disease;
- No Fault and/or Other Liability; and
- Work-Related Illness/Injury:
  - o Workers' Compensation;
  - o Black Lung; and
  - o Veterans Benefits.

**NOTE:** For a paper claim to be considered for Medicare secondary payer benefits, a copy of the primary payer's explanation of benefits (EOB) notice must be forwarded along with the claim form. (See Pub. 100-05, Medicare Secondary Payer Manual, chapter 3.)

## 10.3 - Items 11a - 13 - Patient and Insured Information

### (Rev. 317, Issued 10-22-04, Effective/Implementation: N/A)

**Item 11a -** Enter the insured's 8-digit birth date (MM | DD | CCYY) and sex if different from item 3.

**Item 11b -** Enter employer's name, if applicable. If there is a change in the insured's insurance status, e.g., retired, enter either a 6-digit (MM | DD | YY) or 8-digit (MM | DD | CCYY) retirement date preceded by the word "RETIRED."

**Item 11c -** Enter the 9-digit PAYERID number of the primary insurer. If no PAYERID number exists, then enter the **complete** primary payer's program or plan name. If the primary payer's EOB does not contain the claims processing address, record the primary payer's claims processing address directly on the EOB. This is required if there is insurance primary to Medicare that is indicated in item 11.

**Item 11d -** Leave blank. Not required by Medicare.

**Item 12** - The patient or authorized representative must sign and enter either a 6-digit date (MM | DD | YY), 8-digit date (MM | DD | CCYY), or an alpha-numeric date (e.g., January 1, 1998) unless the signature is on file. In lieu of signing the claim, the patient may sign a statement to be retained in the provider, physician, or supplier file in accordance with Chapter 1, "General Billing Requirements." If the patient is physically or mentally unable to sign, a representative specified in Chapter 1, "General Billing Requirements" may sign on the patient's behalf. In this event, the statement's signature line must indicate the patient's name followed by "by" the representative's name, address, relationship to the patient, and the reason the patient cannot sign. The authorization is effective indefinitely unless patient or the patient's representative revokes this arrangement.

**NOTE:** This can be "Signature on File" and/or a computer generated signature.

The patient's signature authorizes release of medical information necessary to process the claim. It also authorizes payment of benefits to the provider of service or supplier when the provider of service or supplier accepts assignment on the claim.

**Signature by Mark (X)** - When an illiterate or physically handicapped enrollee signs by mark, a witness must enter his/her name and address next to the mark.

**Item 13** - The signature in this item authorizes payment of mandated Medigap benefits to the participating physician or supplier if required Medigap information is included in item 9 and its subdivisions. The patient or his/her authorized representative signs this item or the signature must be on file as a separate Medigap authorization. The Medigap assignment on file in the participating provider of service/supplier's office must be insurer specific. It may state that the authorization applies to all occasions of service until it is revoked.

**NOTE:** This can be "Signature on File" signature and/or a computer generated signature.

## 10.4 - Items 14-33 - Provider of Service or Supplier Information

*(Rev. 1058, Issued: 09-15-06; Effective: 01-01-07, Implementation: 01-02-07)*

**Reminder: For date fields other than date of birth, all fields shall be one or the other format, 6-digit: (MM | DD | YY) or 8-digit: (MM | DD | CCYY). Intermixing the two formats on the claim is not allowed.**

**Item 14** - Enter either an 8-digit (MM | DD | CCYY) or 6-digit (MM | DD | YY) date of current illness, injury, or pregnancy. For chiropractic services, enter an 8-digit (MM | DD | CCYY) or 6-digit (MM | DD | YY) date of the initiation of the course of treatment and enter an 8-digit (MM | DD | CCYY) or 6-digit (MM | DD | YY) date in item 19.

**Item 15** - Leave blank. Not required by Medicare.

**Item 16** - If the patient is employed and is unable to work in his/her current occupation, enter an 8-digit (MM | DD | CCYY) or 6-digit (MM | DD | YY) date when patient is unable to work. An entry in this field may indicate employment related insurance coverage.

**Item 17** - Enter the name of the referring or ordering physician if the service or item was ordered or referred by a physician.

The term "physician" when used within the meaning of §1861(r) of the Act and used in connection with performing any function or action refers to:

1. A doctor of medicine or osteopathy legally authorized to practice medicine and surgery by the State in which he/she performs such function or action;

2. A doctor of dental surgery or dental medicine who is legally authorized to practice dentistry by the State in which he/she performs such functions and who is acting within the scope of his/her license when performing such functions;

3. A doctor of podiatric medicine for purposes of §§(k), (m), (p)(1), and (s) and §§1814(a), 1832(a)(2)(F)(ii), and 1835 of the Act, but only with respect to functions which he/she is legally authorized to perform as such by the State in which he/she performs them;

4. A doctor of optometry, but only with respect to the provision of items or services described in §1861(s) of the Act which he/she is legally authorized to perform as a doctor of optometry by the State in which he/she performs them; or

5. A chiropractor who is licensed as such by a State (or in a State which does not license chiropractors as such), and is legally authorized to perform the services of a chiropractor in the jurisdiction in which he/she performs such services, and who meets uniform minimum standards specified by the Secretary, but only for purposes of §§1861(s)(1) and 1861(s)(2)(A) of the Act, and only with respect to treatment by means of manual manipulation of the spine (to correct a subluxation). For the purposes of §1862(a)(4) of the Act and subject to the limitations and conditions provided above, chiropractor includes a doctor of one of the arts specified in the statute and legally authorized to practice such art in the country in which the inpatient hospital services (referred to in §1862(a)(4) of the Act) are furnished.

**Referring physician** - is a physician who requests an item or service for the beneficiary for which payment may be made under the Medicare program.

**Ordering physician** - is a physician or, when appropriate, a non-physician practitioner who orders non-physician services for the patient. See Pub 100-02, Medicare Benefit Policy Manual, chapter 15 for non-physician practitioner rules. Examples of services that might be ordered include diagnostic laboratory tests, clinical laboratory tests, pharmaceutical services, durable medical equipment, and services incident to that physician's or non-physician practitioner's service.

The ordering/referring requirement became effective January 1, 1992, and is required by §1833(q) of the Act. **All claims** for Medicare covered services and items that are the result of a physician's order or referral shall include the ordering/referring physician's name. See Items 17a and 17b below for further guidance on reporting the referring/ordering provider's UPIN and/or NPI. The following services/situations require the submission of the referring/ordering provider information:

- Medicare covered services and items that are the result of a physician's order or referral;

- Parenteral and enteral nutrition;

- Immunosuppressive drug claims;
- Hepatitis B claims;
- Diagnostic laboratory services;
- Diagnostic radiology services;
- Portable x-ray services;
- Consultative services;
- Durable medical equipment;
- When the ordering physician is also the performing physician (as often is the case with in-office clinical laboratory tests);
- When a service is incident to the service of a physician or non-physician practitioner, the name of the physician or non-physician practitioner who performs the initial service and orders the non-physician service must appear in item 17;
- When a physician extender or other limited licensed practitioner refers a patient for consultative service, submit the name of the physician who is supervising the limited licensed practitioner;

**Item 17a –** Enter the CMS assigned UPIN of the referring/ordering physician listed in item 17. The UPIN may be reported on the Form CMS-1500 until May 22, 2007, and MUST be reported if an NPI is not available.

**NOTE:** Field 17a and/or 17b is required when a service was ordered or referred by a physician. Effective May 23, 2007, and later, 17a is not to be reported but 17b MUST be reported when a service was ordered or referred by a physician.

When a claim involves multiple referring and/or ordering physicians, a separate Form CMS-1500 shall be used for each ordering/referring physician. All physicians who order or refer Medicare beneficiaries or services must report either an NPI or UPIN or both prior to May 23, 2007. After that date, an NPI (but not a UPIN) must be reported even though they may never bill Medicare directly. A physician who has not been assigned a UPIN shall contact the Medicare carrier. Refer to Pub 100-08, Chapter 14, Section 14.6 for additional information regarding UPINs.

**Item 17b Form CMS-1500 (08-05) –** Enter the NPI of the referring/ordering physician listed in item 17 as soon as it is available. The NPI may be reported on the Form CMS-1500 (08-05) as early as *January 1, 2007.*

**NOTE:** Field 17a and/or 17b is required when a service was ordered or referred by a physician. Effective May 23, 2007, and later, 17a is not to be reported but 17b MUST be reported when a service was ordered or referred by a physician.

**Item 18 -** Enter either an 8-digit (MM | DD | CCYY) or a 6-digit (MM | DD | YY) date when a medical service is furnished as a result of, or subsequent to, a related hospitalization.

**Item 19** – Enter either a 6-digit (MM | DD | YY) or an 8-digit (MM | DD | CCYY) date patient was last seen and the UPIN (NPI when it becomes effective) of his/her attending physician when a physician providing routine foot care submits claims.

For physical therapy, occupational therapy or speech-language pathology services, effective for claims with dates of service on or after June 6, 2005, the date last seen and the UPIN/NPI of an ordering/referring/attending/certifying physician or non-physician practitioner are not required. If this information is submitted voluntarily, it must be correct or it will cause rejection or denial of the claim. However, when the therapy service is provided incident to the services of a physician or nonphysician practitioner, then incident to policies continue to apply. For example, for identification of the ordering physician who provided the initial service, see Item 17 and 17a, and for the identification of the supervisor, see item 24K of this section.

Enter either a 6-digit (MM | DD | YY) or an 8-digit (MM | DD | CCYY) x-ray date for chiropractor services (if an x-ray, rather than a physical examination was the method used to demonstrate the subluxation). By entering an x-ray date and the initiation date for course of chiropractic treatment in item 14, the chiropractor is certifying that all the relevant information requirements (including level of subluxation) of Pub. 100-02, Medicare Benefit Policy Manual, chapter 15, are on file, along with the appropriate x-ray and all are available for carrier review.

Enter the drug's name and dosage when submitting a claim for Not Otherwise Classified (NOC) drugs.

Enter a concise description of an "unlisted procedure code" or an NOC code if one can be given within the confines of this box. Otherwise an attachment shall be submitted with the claim.

Enter all applicable modifiers when modifier -99 (multiple modifiers) is entered in item 24d. If modifier -99 is entered on multiple line items of a single claim form, all applicable modifiers for each line item containing a -99 modifier should be listed as follows: 1=(mod), where the number 1 represents the line item and "mod" represents all modifiers applicable to the referenced line item.

Enter the statement "Homebound" when an independent laboratory renders an EKG tracing or obtains a specimen from a homebound or institutionalized patient. (See Pub. 100-02, Medicare Benefit Policy Manual, Chapter 15, "Covered Medical and Other Health Services," and Pub. 100-04, Medicare Claims Processing Manual, Chapter 16, "Laboratory Services From Independent Labs, Physicians and Providers," and Pub. 100-01, Medicare General Information, Eligibility, and Entitlement Manual, Chapter 5, "Definitions," respectively for the definition of "homebound" and a more complete definition of a medically necessary laboratory service to a homebound or an institutional patient.)

Enter the statement, "Patient refuses to assign benefits" when the beneficiary absolutely refuses to assign benefits to a *non-participating physician/supplier who accepts assignment on a claim. In this case, payment can only be made directly to the beneficiary.*

Enter the statement, "Testing for hearing aid" when billing services involving the testing of a hearing aid(s) is used to obtain intentional denials when other payers are involved.

When dental examinations are billed, enter the specific surgery for which the exam is being performed.

Enter the specific name and dosage amount when low osmolar contrast material is billed, but only if HCPCS codes do not cover them.

Enter a 6-digit (MM | DD | YY) or an 8-digit (MM | DD | CCYY) assumed and/or relinquished date for a global surgery claim when providers share post-operative care.

Enter demonstration ID number "30" for all national emphysema treatment trial claims.

Enter the PIN (or NPI when effective) of the physician who is performing a purchased interpretation of a diagnostic test. (See Pub. 100-04, Chapter 1, Section 30.2.9.1 for additional information.)

Method II suppliers shall enter the most current HCT value for the injection of Aranesp for ESRD beneficiaries on dialysis. (See Pub. 100-04, Chapter 8, Section 60.7.2.)

**Item 20 -** Complete this item when billing for diagnostic tests subject to purchase price limitations. Enter the purchase price under charges if the "yes" block is checked. A "yes" check indicates that an entity other than the entity billing for the service performed the diagnostic test. A "no" check indicates "no purchased tests are included on the claim." When "yes" is annotated, item 32 shall be completed. When billing for multiple purchased diagnostic tests, each test shall be submitted on a separate claim Form CMS-1500. Multiple purchased tests may be submitted on the ASC X12 837 electronic format as long as appropriate line level information is submitted when services are rendered at different service facility locations. See chapter 1.

**NOTE:** This is a required field when billing for diagnostic tests subject to purchase price limitations.

**Item 21 -** Enter the patient's diagnosis/condition. With the exception of claims submitted by ambulance suppliers (specialty type 59), all physician and nonphysician specialties (i.e., PA, NP, CNS, CRNA) use an ICD-9-CM code number and code to the highest level of specificity for the date of service. Enter up to four diagnoses in priority order. All narrative diagnoses for nonphysician specialties shall be submitted on an attachment.

**Item 22 -** Leave blank. Not required by Medicare.

**Item 23 -** Enter the Quality Improvement Organization (QIO) prior authorization number for those procedures requiring QIO prior approval.

Enter the Investigational Device Exemption (IDE) number when an investigational device is used in an FDA-approved clinical trial. Post Market Approval number should also be placed here when applicable.

For physicians performing care plan oversight services, enter the 6-digit Medicare provider number (or NPI when effective) of the home health agency (HHA) or hospice when CPT code G0181 (HH) or G0182 (Hospice) is billed.

Enter the 10-digit Clinical Laboratory Improvement Act (CLIA) certification number for laboratory services billed by an entity performing CLIA covered procedures.

When a physician provides services to a beneficiary residing in a SNF and the services were rendered to a SNF beneficiary outside of the SNF, the physician shall enter the Medicare facility provider number of the SNF in item 23.

**NOTE:** Item 23 can contain only one condition. Any additional conditions should be reported on a separate Form CMS-1500.

**Item 24 (Form CMS-1500 (08-05)** – The six service lines in section 24 have been divided horizontally to accommodate submission of both the NPI and legacy identifier during the NPI transition and to accommodate the submission of supplemental information to support the billed service. The top portion in each of the six service lines is shaded and is the location for reporting supplemental information. It is not intended to allow the billing of 12 service lines. At this time, the shaded area *in 24a through 24h* is not used by Medicare. Future guidance will be provided on when and how to use this shaded area for the submission of Medicare claims.

**Item 24A -** Enter a 6-digit or 8-digit (MMDDCCYY) date for each procedure, service, or supply. When "from" and "to" dates are shown for a series of identical services, enter the number of days or units in column G. This is a required field. Return as unprocessable if a date of service extends more than 1 day and a valid "to" date is not present.

**Item 24B -** Enter the appropriate place of service code(s) from the list provided in Section 10.5. Identify the location, using a place of service code, for each item used or service performed. This is a required field.

**NOTE:** When a service is rendered to a hospital inpatient, use the "inpatient hospital" code.

**Item 24C -** Medicare providers are not required to complete this item.

**Item 24D -** Enter the procedures, services, or supplies using the CMS Healthcare Common Procedure Coding System (HCPCS) code. When applicable, show HCPCS code modifiers with the HCPCS code. The Form CMS-1500 (08-05) has the ability to capture up to four modifiers.

Enter the specific procedure code without a narrative description. However, when reporting an "unlisted procedure code" or a "not otherwise classified" (NOC) code, include a narrative description in item 19 if a coherent description can be given within the confines of that box. Otherwise, an attachment shall be submitted with the claim. This is a required field.

Return as unprocessable if an "unlisted procedure code" or an (NOC) code is indicated in item 24d, but an accompanying narrative is not present in item 19 or on an attachment.

**Item 24E -** Enter the diagnosis code reference number as shown in item 21 to relate the date of service and the procedures performed to the primary diagnosis. Enter only one reference number per line item. When multiple services are performed, enter the primary reference number for each service, either a 1, or a 2, or a 3, or a 4. This is a required field.

If a situation arises where two or more diagnoses are required for a procedure code (e.g., pap smears), the provider shall reference only one of the diagnoses in item 21.

**Item 24F-** Enter the charge for each listed service.

**Item 24G -** Enter the number of days or units. This field is most commonly used for multiple visits, units of supplies, anesthesia minutes, or oxygen volume. If only one service is performed, the numeral 1 must be entered.

Some services require that the actual number or quantity billed be clearly indicated on the claim form (e.g., multiple ostomy or urinary supplies, medication dosages, or allergy testing procedures). When multiple services are provided, enter the actual number provided.

For anesthesia, show the elapsed time (minutes) in item 24g. Convert hours into minutes and enter the total minutes required for this procedure.

For instructions on submitting units for oxygen claims, see chapter 20, section 130.6 of this manual.

**NOTE:** This field should contain at least 1day or unit. The carrier should program their system to automatically default "1" unit when the information in this field is missing to avoid returning as unprocessable.

**Item 24H -** Leave blank. Not required by Medicare.

**Item 24I Form CMS-1500 (12-90) -** Leave blank. Not required by Medicare.

**Item 24I Form CMS-1500 (08-05)** – Enter the ID qualifier 1C in the shaded portion.

**Item 24J Form CMS-1500 (12-90) -** Leave blank. Not required by Medicare.

**Item 24J Form CMS-1500 (08-05)** – Prior to May 23, 2007, enter the rendering provider's PIN in the shaded portion. In the case of a service provided incident to the service of a physician or non-physician practitioner, when the person who ordered the service is not supervising, enter the PIN of the supervisor in the shaded portion.

Effective May 23, 2007 and later, do not use the shaded portion. Beginning no earlier than *January 1, 2007*, enter the rendering provider's NPI number in the lower portion. In the case of a service provided incident to the service of a physician or non-physician practitioner, when the person who ordered the service is not supervising, enter the NPI of the supervisor in the lower portion.

**Item 24K Form CMS-1500 (12-90) -** Enter the PIN of the performing provider of service/supplier if the provider is a member of a group practice. When several different providers of service or suppliers within a group are billing on the same Form CMS-1500, show the individual PIN in the corresponding line item. In the case of a service provided incident to the service of a physician or non-physician practitioner, when the person who ordered the service is not supervising, enter the PIN of the supervisor in item 24k.

**Item 24K Form CMS-1500 (08-05)** – There is no Item 24K on this version.

**Item 25 -** Enter the provider of service or supplier Federal Tax ID (Employer Identification Number) or Social Security Number. The participating provider of service or supplier Federal Tax ID number is required for a mandated Medigap transfer.

**Item 26 -** Enter the patient's account number assigned by the provider's of service or supplier's accounting system. This field is optional to assist the provider in patient

identification.  As a service, any account numbers entered here will be returned to the provider.

**Item 27** - Check the appropriate block to indicate whether the provider of service or supplier accepts assignment of Medicare benefits.  If Medigap is indicated in item 9 and Medigap payment authorization is given in item 13, the provider of service or supplier shall also be a Medicare participating provider of service or supplier and accept assignment of Medicare benefits for all covered charges for all patients.

The following providers of service/suppliers and claims can only be paid on an assignment basis:

- Clinical diagnostic laboratory services;

- Physician services to individuals dually entitled to Medicare and Medicaid;

- Participating physician/supplier services;

- Services of physician assistants, nurse practitioners, clinical nurse specialists, nurse midwives, certified registered nurse anesthetists, clinical psychologists, and clinical social workers;

- Ambulatory surgical center services for covered ASC procedures;

- Home dialysis supplies and equipment paid under Method II;

- Ambulance services;

- Drugs and biologicals; and

- Simplified Billing Roster for influenza virus vaccine and pneumococcal vaccine.

**Item 28** - Enter total charges for the services (i.e., total of all charges in item 24f).

**Item 29** - Enter the total amount the patient paid on the covered services only.

**Item 30** - Leave blank.  Not required by Medicare.

**Item 31** - Enter the signature of provider of service or supplier, or his/her representative, and either the 6-digit date (MM | DD | YY), 8-digit date (MM | DD | CCYY), or alpha-numeric date (e.g., January 1, 1998) the form was signed.

In the case of a service that is provided incident to the service of a physician or non-physician practitioner, when the ordering physician or non-physician practitioner is directly supervising the service as in 42 CFR 410.32, the signature of the ordering physician or non-physician practitioner shall be entered in item 31.  When the ordering physician or non-physician practitioner is not supervising the service, then enter the signature of the physician or non-physician practitioner providing the direct supervision in item 31.

**NOTE:** This is a required field, however the claim can be processed if the following is true.  If a physician, supplier, or authorized person's signature is missing, but the signature is on file; or if any authorization is attached to the claim or if the signature field has "Signature on File" and/or a computer generated signature.

**Item 32 Form CMS-1500 (12-90) -** Enter the name and address, and ZIP code of the facility if the services were furnished in a hospital, clinic, laboratory, or facility other than the patient's home or physician's office. Effective for claims received on or after April 1, 2004, *enter* the name, address, and zip code of the service location for all services other than those furnished in place of service home – 12.

Effective for claims received on or after April 1, 2004, on the Form CMS-1500, only one name, address and zip code may be entered in the block. If additional entries are needed, separate claim forms shall be submitted.

Providers of service (namely physicians) shall identify the supplier's name, address, ZIP code and PIN when billing for purchased diagnostic tests. When more than one supplier is used, a separate Form CMS-1500 *shall* be used to bill for each supplier.

For foreign claims, only the enrollee can file for Part B benefits rendered outside of the United States. These claims will not include a valid ZIP code. When a claim is received for these services on a beneficiary submitted Form CMS-1490S, before the claim is entered in the system, it should be determined if it is a foreign claim. If it is a foreign claim, follow instructions in chapter 1 for disposition of the claim. The carrier processing the foreign claim will have to make necessary accommodations to verify that the claim is not returned as unprocessable due to the lack of a ZIP code.

For durable medical, orthotic, and prosthetic claims, the name, address, or PIN of the location where the order was accepted must be entered (DMERC only).

This field is required. When more than one supplier is used, a separate Form CMS-1500 *shall* be used to bill for each supplier.

This item is completed whether the supplier's personnel performs the work at the physician's office or at another location.

If a modifier is billed, indicating the service was rendered in a Health Professional Shortage Area (HPSA) or Physician Scarcity Area (PSA), the physical location where the service was rendered shall be entered if other than home.

If the supplier is a certified mammography screening center, enter the 6-digit FDA approved certification number.

Complete this item for all laboratory work performed outside a physician's office. If an independent laboratory is billing, enter the place where the test was performed, and the PIN.

**Item 32 Form CMS-1500 (08-05) -** Enter the name and address, and ZIP code of the facility if the services were furnished in a hospital, clinic, laboratory, or facility other than the patient's home or physician's office. Effective for claims received on or after April 1, 2004, *enter* the name, address, and zip code of the service location for all services other than those furnished in place of service home – 12. Effective for claims received on or after April 1, 2004, on the Form CMS-1500, only one name, address and zip code may be entered in the block. If additional entries are needed, separate claim forms shall be submitted.

Providers of service (namely physicians) shall identify the supplier's name, address, and ZIP code when billing for purchased diagnostic tests. When more than one supplier is used, a separate Form CMS-1500 *shall* be used to bill for each supplier.

For foreign claims, only the enrollee can file for Part B benefits rendered outside of the United States. These claims will not include a valid ZIP code. When a claim is received for these services on a beneficiary submitted Form CMS-1490S, before the claim is entered in the system, it should be determined if it is a foreign claim. If it is a foreign claim, follow instructions in chapter 1 for disposition of the claim. The carrier processing the foreign claim will have to make necessary accommodations to verify that the claim is not returned as unprocessable due to the lack of a ZIP code.

For durable medical, orthotic, and prosthetic claims, the name and address of the location where the order was accepted must be entered (DMERC only). This field is required. When more than one supplier is used, a separate Form CMS-1500 *shall* be used to bill for each supplier. This item is completed whether the supplier's personnel performs the work at the physician's office or at another location.

If a modifier is billed, indicating the service was rendered in a Health Professional Shortage Area (HPSA) or Physician Scarcity Area (PSA), the physical location where the service was rendered shall be entered if other than home.

*If the supplier is a certified mammography screening center, enter the 6-digit FDA approved certification number.*

Complete this item for all laboratory work performed outside a physician's office. If an independent laboratory is billing, enter the place where the test was performed.

**Item 32a Form CMS-1500 (08-05)** – Enter the NPI of the service facility as soon as it is available. The NPI may be reported on the Form CMS-1500 (08-05) as early as *January 1, 2007, and must be reported May 23, 2007, and later.*

**Item 32b Form CMS-1500 (08-05)** - Enter the ID qualifier 1C followed by one blank space and then the PIN of the service facility. Effective May 23, 2007, and later, 32b is not to be reported.

Providers of service (namely physicians) shall identify the supplier's PIN when billing for purchased diagnostic tests.

For durable medical, orthotic, and prosthetic claims, enter the PIN (of the location where the order was accepted) if the name and address was not provided in item 32 (DMERC only).

**Item 33 -** Enter the provider of service/supplier's billing name, address, ZIP code, and telephone number. This is a required field.

**Item 33a Form CMS-1500 (08-05)** - Effective May 23, 2007, and later, you MUST enter the NPI of the billing provider or group. The NPI may be reported on the Form CMS-1500 (08-05) as early as *January 1, 2007.* This is a required field.

**Item 33b Form CMS-1500 (08-05)** - Enter the ID qualifier 1C followed by one blank space and then the PIN of the billing provider or group. Effective May 23, 2007, and

later, 33b is not to be reported.  Suppliers billing the DMERC will use the National Supplier Clearinghouse (NSC) number in this item.

## 10.5 - Place of Service Codes (POS) and Definitions

*(Rev. 1049, Issued: 09-01-06, Effective: 07-01-06, Implementation: 01-02-07)*

- HIPAA

  o  The Health Insurance Portability and Accountability Act of 1996 (HIPAA) became effective October 16, 2003, for all covered entities.  Medicare is a covered entity under HIPAA.

  o  The final rule, "Health Insurance Reform: Standards for Electronic Transactions," published in the **Federal Register**, August 17, 2000, adopts the standards to be used under HIPAA and names the implementation guides to be used for these standards.  The ASC X12N 837 professional is the standard to be used for transmitting health care claims electronically, and its implementation guide requires the use of POS codes from the National POS code set, currently maintained by CMS.

  o  As a covered entity, Medicare must use the POS codes from the National POS code set for processing its electronically submitted claims.  Medicare must also recognize as valid POS codes from the POS code set when these codes appear on such a claim.

  o  Medicare must recognize and accept POS codes from the National POS code set in terms of HIPAA compliance.  Note special considerations for Homeless Shelter (code 04) as well as Indian Health Service (codes 05, 06) and Tribal 638 (codes 07, 08) settings, described below.  Where there is no national policy for a given POS code, carriers may work with their carrier medical directors to develop local policy regarding the services payable in a given setting, and this could include creating a crosswalk to an existing setting if desired.  However, carriers must pay for the services at either the facility or the nonfacility rate as designated below.  In addition, carriers, when developing policy, must ensure that they continue to pay appropriate rates for services rendered in the new setting; if they choose to create a crosswalk from one setting to another, they must crosswalk a facility rate designated code to another facility rate designated code, and a nonfacility rate designated code to another nonfacility rate designated code.  For previously issued POS codes for which a crosswalk was mandated, and for which no other national Medicare directive has been issued, carriers may elect to continue to use the crosswalk or develop local policy regarding the services payable in the setting, including another crosswalk, if appropriate.  If a carrier develops local policy for these settings, but later receives specific national instructions for these codes, the carriers shall defer to and comply with the newer instructions.  (**Note**:  While, effective January 1, 2003, codes 03 School, 04 Homeless Shelter, and 20 Urgent Care became part of the National POS code set and

however, we would probably want to consider doing a comparative study of health outcomes of beneficiaries who have been screened by both physician and non-physician practitioners who have performed these examinations.

Such a study would mean that a number of physician and non-physician practitioners would have to collect and report data to us on their Medicare patients for a certain period of time, which could be burdensome for them. We may be interested in doing a study in this area in the future if we had any credible evidence of a serious problem in this area, but, at this time, we do not believe a study is necessary.

*Result of Evaluation of Comments*

We are adopting our proposal to allow certain non-physician practitioners to perform screening flexible sigmoidoscopies.

*C. Services and Supplies Incident to a Physician's Professional Services: Conditions*

Section 1861(s)(2)(A) of the Act authorizes coverage of services and supplies (including drugs and biologicals that are not usually self-administered by the patient) furnished incident to a physician's service. These drugs and biologicals are commonly furnished in physicians' offices without charge or included in the physicians' bills. This statutory "incident to" benefit differs from the "incident to" benefit in the hospital setting as set forth in section 1861(s)(2)(B) of the Act, which authorizes coverage of hospital services (including drugs and biologicals which are not usually self-administered by the patient) incident to a physician's service furnished to outpatients and partial hospitalization services furnished to outpatients incident to a physician's service. This provision only addresses coverage of "incident to" services under section 1861(s)(2)(A) of the Act. In addition, the statute provides Medicare coverage of services incident to practitioners other than physicians.

The Medicare Carriers Manual currently requires that the physician (or other practitioner) be either the employer of the auxiliary personnel or be an employee of the same entity that employs the auxiliary personnel. In the August 2, 2001 rule, we proposed to revise § 410.26 to codify our existing policy outlined in section 2050 of the manual. Specifically, we proposed to codify the definitions of auxiliary personnel, direct supervision, independent contractor, leased employment, non-institutional setting, practitioner, and services and supplies

for purposes of services provided incident to a physician's service.

In addition, we proposed to allow auxiliary personnel to provide services incident to the services of physicians (or other practitioners) who supervise them, regardless of the employment relationship of the physician (or other practitioner) to the entity that employed the auxiliary personnel.

All commenters supported the proposal. Their specific comments are addressed below.

*Comment:* Commenters noted three errors in the proposed text of the regulation. First, in the definition of auxiliary personnel set forth in § 410.26(a)(1), after the phrase "under the supervision of a physician," the term "(or other practitioner)" was omitted. Second, in the definition of services and supplies set forth in § 410.26(a)(7), the phrase "(including drugs and biologicals that, as determined in accordance with regulations, cannot be self-administered)" should be changed to "(including drugs and biologicals which are not usually self-administered by the patient)" in accordance with section 112 of the BIPA, which amended sections 1861(s)(2)(A) and (B) of the Act. Third, in the supervision requirement set forth in § 410.26(b)(5), the word "direct" was omitted.

*Response:* We agree with these comments, and we have corrected these errors.

*Comment:* One commenter requested that independent contractor physicians also be recognized as employees under the reassignment policy set forth in section 3060 of the Medicare Carrier Manual.

*Response:* As stated in the August 2, 2001 rule, this proposal only applies to the incident to policy. Furthermore, we are not defining or re-defining the term employment. Instead, we proposed to permit physicians (or other practitioners) to directly supervise auxiliary personnel regardless of the employment relationship of the physicians (or other practitioners) with the entity that hired the auxiliary personnel. In order to bill and receive payment from Medicare under this policy, all other applicable requirements must also be met. For example, the service must be medically reasonable and necessary, and appropriate reassignment must be executed.

*Comment:* One commenter suggested using in § 410.26(b) all of the terms defined in § 410.26(a) or deleting the terms not used in § 410.26(b).

*Response:* We found one term—leased employment—that was not used in § 410.26(b). However, we will not

eliminate this term because it is used to define the term auxiliary personnel.

*Comment:* Several commenters requested that we clarify and distinguish between the physician (or other practitioner) ordering the incident to service and the physician (or other practitioner) supervising the auxiliary personnel who perform the incident to service. They stated that confusion exists as to whose Medicare Part B billing number should be used on the claim form.

*Response:* Inherent in the definition of an incident to service is the requirement that the incident to service be furnished incident to a professional service of a physician (or other practitioner). When a claim is submitted to Medicare under the billing number of a physician (or other practitioner) for an incident to service, the physician is stating that he or she either performed the service or directly supervised the auxiliary personnel performing the service. Accordingly, the Medicare billing number of the ordering physician (or other practitioner) should not be used if that person did not directly supervise the auxiliary personnel. We added language to the supervision requirement set forth in § 410.26(b)(5) to reflect this clarification.

*Comment:* One commenter pointed out that the claim form currently requires the physician (or other practitioner) to certify that he or she personally supervised the employee. Therefore, the commenter requested that we update the claim form to reflect the proposed regulations.

*Response:* We plan to update not only the claim form but also section 2050 of the Medicare Carriers Manual to reflect the new regulations.

*Comment:* A few commenters noted that the individual does not always receive an IRS–1099 form under an independent contractor arrangement. Instead, when a clinic, for example, contracts with an entity that has hired individuals to be furnished to the clinic, then the entity (and not the individual) receives the IRS–1099 form.

*Response:* We agree with these commenters. Therefore, we have added language to the definition of an independent contractor set forth in § 410.26(a)(3) to reflect this practice. However, we again emphasize that the applicable reassignment rules must also be met and that this incident to policy does not in any way alter the current requirements for valid reassignment.

*Comment:* One commenter encouraged us to specify in the regulations the acceptability of forms (other than the IRS W–2 form) that the Internal Revenue Service recognizes as

*EX.8*

**55268**    **Federal Register** / Vol. 66, No. 212 / Thursday, November 1, 2001 / Rules and Regulations

proof of employment, such as the Payroll Agent arrangement where IRS forms 2678 and 1997C are used instead.

*Response:* Under our proposal, the employment relationship is irrelevant to whether a physician (or other practitioner) can effectively furnish direct supervision of the auxiliary staff. Therefore, we decline to include language that may define or re-define the term employment.

*Comment:* One commenter suggested that we also include Ambulatory Surgical Centers (ASCs) and Community Mental Health Clinics (CMHCs) in the definition of a non-institutional setting because Medicare Part B payments for services provided in these settings are paid through the facility relative value units (RVUs) rather than the non-facility RVUs.

*Response:* The definition of a non-institutional setting is not derived from the definition of a facility used to determine the site of service and the application of the facility or non-facility RVUs. Because section 1861(s)(2)(B) of the Act authorizes payment for hospital incident to services, section 1861(s)(2)(A) of the Act cannot authorize payment for hospital incident to services. This provision is reiterated in § 411.15(m)(2). Similarly, § 411.15(p)(2)(ii) specifically excludes payment for incident to services in skilled nursing facilities (SNFs). Consequently, we defined non-institutional settings as all settings except hospitals and SNFs, and we do not plan to define ASCs and CMHCs as institutional settings.

*Comment:* Many commenters wanted us to restrict the definition of auxiliary personnel so that only certain individuals may perform a given incident to service. For example, they want us to mandate that only audiologists may perform cochlear implant rehabilitation services as incident to services. Likewise, they want us to permit only physical or occupational therapists to perform physical or occupational therapy as incident to services. In support, they noted that section 4541(b) of the BBA amended section 1862(a)(20) of the Act and required that physical or occupational therapy furnished as an incident to service meet the same requirements outlined in the physical or occupational therapy benefit set forth in sections 1861(g) and (p) of the Act.

*Response:* We have not further clarified who may serve as auxiliary personnel for a particular incident to service because the scope of practice of the auxiliary personnel and the supervising physician (or other practitioner) is determined by State law.

We deliberately used the term any individual so that the physician (or other practitioner), under his or her discretion and license, may use the service of anyone ranging from another physician to a medical assistant. In addition, it is impossible to exhaustively list all incident to services and those specific auxiliary personnel who may perform each service.

*Comment:* Many commenters wanted us to re-emphasize that incident to services set forth in section 1861(s)(2)(A) of the Act do not include Medicare benefits separately and independently listed in the Act, such as diagnostic services set forth in section 1861(s)(3). Some even requested that we not permit these separately and independently listed services to be rendered as incident to services.

*Response:* We realize, as did the Congress with the enactment of section 4541(b) of the BBA, that many services—even those that are separately and independently listed—can be furnished as incident to services. However, this fact of medical practice is not inconsistent with our policy. We maintain that a separately and independently listed service can be furnished as an incident to service but is not required to be furnished as an incident to service. Furthermore, even if a separately and independently listed service is provided as an incident to service, the specific requirements of that separately and independently listed service must be met. For instance, a diagnostic test under section 1861(s)(3) may be furnished as an incident to service. Nevertheless, it must also meet the requirements of the diagnostic test benefit set forth in § 410.32. Namely, the test must be ordered by the treating practitioner, and it must be supervised by a physician. Thus, if a test requires a higher level of physician supervision than direct supervision, then that higher level of supervision must exist even if the test is furnished as an incident to service. Accordingly, we decline to prohibit a separately and independently listed service from being rendered as an incident to service. Instead, we reiterate that a separately and independently listed service need not meet the requirements of an incident to service.

*Comment:* Recognizing that this proposal affords flexibility in the way physicians (or other practitioners) are hired by an office or clinic, one commenter requested that non-physician practitioners be permitted to stand as *locum tenens* (taking the place of) for other non-physician practitioners as well.

*Response:* This proposed rule does not alter in any way the current *locum tenens* policy.

*Result of Evaluation of Comments*

We are finalizing our proposed revisions to § 410.26 with the corrections noted above.

*D. Anesthesia Services*

We generally use the 1988 American Society of Anesthesiologists' (ASA) Relative Value Guide as the basis for the uniform relative value guide. This guide is used in all carrier localities to determine payment for anesthesia services furnished by physicians under Medicare Part B. We proposed using the ASA base unit values from the 1999 guide beginning in CY 2002 for eight codes with ASA base unit values that were different from CMS's values (specifically, CPT codes 00810; 00902; 01150; 01214; 01432; 01440; 01770; and 01921). These are older codes and, while we accepted the ASA base unit value initially, the ASA has changed this base unit subsequently and no additional adjustment was made by us to the base unit. For CPT codes 00142 and 00147, we proposed maintaining the current base unit values although they differed from the ASA values because values for these two codes were established under the "inherent reasonableness" process in 1987.

*Comment:* The ASA identified additional CPT codes 00548, 00700, 00800, and 01916 with different base unit values in the most current ASA guide from our base unit values.

*Response:* We are accepting the ASA's comments subject to the following clarification. In all, 12 codes were presented where the ASA base unit differs from our base unit. Of these, code 01921, which appeared on the list in the August 2, 2001 proposed rule, will be deleted in 2002. Since this code has been deleted and will no longer be used, we will not assign base units to it and, as a result, only 11 codes will be considered.

These additional four codes were added to CPT before CY 2000. New and revised codes starting in CY 2000 and for subsequent years are evaluated on a code-specific basis under our usual process after we receive recommendations from the RUC. Thus, because we review the RUC recommendations and may make changes based on them, there could be differences between the ASA guide and our base unit values beginning in 2000. If the RUC or other commenters recommend and we agree to a base unit different from what ASA recommends, we will use that value and not the ASA