JANICE P. KIM         3436
Kaimuki Business Plaza
3615 Harding Avenue, Suite 206
Honolulu, Hawaii 96816
Telephone: (808) 732-0522
Facsimile: (808) 735-0459
kimj054@hawaii.rr.com

ARLEEN D. JOUXSON         7223
RAFAEL G. DEL CASTILLO    6909
JOUXSON-MEYERS & DEL CASTILLO
Attorneys at Law, A Limited Liability Law Company
302 California Avenue, Suite 209
Wahiawa, Hawaii 96786
Telephone: (808) 621-8806
Fax: (808) 422-8772
rdelcastillo@physicianslawfirm.com

Attorneys for James Lockyer, M.D.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. JAMES LOCKYER, M.D. AND JAMES LOCKYER, M.D., in his own behalf,<br><br>          Plaintiffs,<br><br>vs.<br><br>HAWAI'I PACIFIC HEALTH; KAUAI MEDICAL CLINIC; WILCOX MEMORIAL HOSPITAL; WILCOX HEALTH SYSTEM; AND WILLIAM A. EVSLIN, M.D. AKA | CIVIL NO. CV 04-00596 ACK LEK (Federal and State - Qui Tam)<br><br>PLAINTIFF JAMES LOCKYER, M.D.'S CONCISE STATEMENT OF FACTS; EXHIBITS P1, 2, P5-P8 (EXTRACTED PORTIONS OF SUPPORTING EXHIBITS, DECLARATIONS, AND EXCERPTS FROM DEFENDANTS' MOVING DOCUMENTS); CERTIFICATE OF SERVICE<br><br>HEARING<br><br>Date:   March 27, 2007<br>Time:   10:30 A.M. |

| | | |
|---|---|---|
| LEE A. EVSLIN, M.D. | ) | Trial Date:  September 18, 2007 |
|         Defendants. | ) | Judge:       Honorable Alan C. Kay |
| _____ | ) | |

PLAINTIFF JAMES LOCKYER, M.D.'S CONCISE STATEMENT OF FACTS

Comes now Plaintiff JAMES LOCKYER, M.D., by and through his attorneys, Janice P. Kim, and Jouxson-Meyers & del Castillo pursuant to Local Rule 56.1, and submits the following facts pertinent to Defendants Hawai`i Pacific Health, Kauai Medical Clinic, Wilcox Memorial Hospital And Wilcox Health System's Motion For Summary Judgment.  Attached are the extracted portions of the relevant Exhibits, Declarations, and Excerpts from Defendants' Moving Papers, highlighted pursuant to LR56.1(c).

      1.     Plaintiff-Relator, James Lockyer, M.D. ("Dr. Lockyer") was employed by Kauai Medical Clinic (KMC) as a physician in the Internal Medicine department. **Lockyer Decl at ¶ 5.**

      2.     Kauai Medical Clinic (KMC) is an outpatient medical clinic, near to but not adjoining Wilcox Memorial Hospital, in Lihue, Kauai. **Lockyer Decl at ¶ 4.**

      3.     KMC submitted 359 claims to Medicare and other insurers under Dr. Lockyer's personal medical identity for provision of chemotherapy to

patients by chemo nurses in the Chemo Suite.  **Exhibit 2 to this Concise Statement (from Plaintiffs' Disclosure submitted under seal.**

4. The patients identified in the 359 claims were in many cases Dr. Lockyer's patients, nor had he ever treated them. **Exhibit 2.**

5. Medicare Conditions Coverage

   a. A physician may bill under his/her provider number for services or supplies he/she personally performs or were performed under his/her direct supervision as defined under § 410.32(b)(3)(ii), which provides: "Direct supervision in the office setting means the physician must be present in the office suite and immediately available to furnish assistance and direction throughout the performance of the procedure." **EXHIBIT 1 at 2;** *see also*, **Memorandum in Support of HPH Motion For Summary Judgment, Filed December 22, 2006 at 10, 18 ("Defense Memo"); Bookbinder Decl ¶ 7.c.**

   b. Medicare regulations govern services and supplies provided "incident to" a physician's professional services under 42 C.F.R. §410.26.  **EXHIBIT 1 at 2; Defense Memo at 10.**

   c. The Medicare Carriers Manual contains the same requirement at § 2050.1B.  **Defense Memo at 18.**

        d.      Stark law and the Stark regulations require compliance with the direct supervision rule of 42 C.F.R. §410.26.  **EXHIBIT 1 at 2-3.**

        e.      These "incident to" rules cited by the parties applied during the entire relevant period of this litigation.  **Defense Memo at 18.**

        f.      Medicare does not cover claims for the administration of chemotherapy and related services unless the supervising physician is present in the office suite throughout the entire procedure.  **EXHIBIT 1 at 2; 42 C.F.R. § 410.32(b)(3)(ii); Defense Memo at 18.**

        g.      There can be no assurance a physician who is unaware he/she is designated as a supervising physician will remain present throughout the administration of the chemotherapy or other services.  **EXHIBIT 1 at 1.**

        h.      A supervising physician must certify on the claim form that he/she was present throughout the procedure.  **EXHIBIT 1 at 3.**

        i.      If the physician arrives in the suite after drug administration procedures have begun, or leaves the suite for lunch, to conduct hospital rounds, or for other reasons, Medicare does not cover any drugs and drug administration services that were furnished in whole or part during the absence of the supervising physician.  **EXHIBIT 1 at 1; Lockyer Decl. at ¶ 8; Braun Decl. at ¶ 34; Netzer Decl. at ¶ 20.**

6. Chemotherapy Was Administered Without a Physician Present

    a. The KMC chemotherapy room Suite was usually open from 7:00 am to 4:30 p.m., and thus the hours of operation did not coincide with the hours that physicians were physically present. **Newbold Decl. at ¶¶ 6. h., j.**

    b. The internal medicine physicians usually did not start seeing patients in their offices in the clinic until 8:30 or 9:00 in the morning because they usually had duties in the hospital before that **Newbold Decl. at ¶ 6.i.**

    c. The Internal Medicine Department was closed daily for lunch from noon until 2:00 p.m. during which time the physicians were absent for various reasons. **Newbold Decl. at ¶ k.**

    d. The chemotherapy suite did not close for lunch as patients might be in mid treatment at lunchtime whereas, and they broke for lunch between noon and 2:00 pm. **Newbold Decl. at ¶ j.**

    e. There was no Chemo Suite schedule assigning a physician to supervise the nurses in the Chemo Suite. **Newbold Decl. at ¶ 8.**

    f. No one notified the physicians that they were assigned to supervise the chemotherapy on any particular day, nor did they agree to

supervise the chemotherapy room. **Lockyer Decl at ¶ 21; Newbold Decl at ¶ 4, 5; Braun Decl at ¶; Netzer Decl at ¶**

        g.    No one ever discussed ahead of time with the Internal Medicine physicians that they were designated the supervising physician for chemotherapy administration for the day. **Lockyer Decl at ¶ ; Newbold Decl at ¶ 4,5; Braun Decl at ¶¶ 31-32; Netzer Decl at ¶¶ 17-18.**

        h.    The Internal Medicine Department physicians did not understand Defendant Evslin's request that they "sign off" on chemotherapy nurse notes and lab results to be a request or assignment that they supervise chemotherapy administration. **Braun Decl. at ¶ 16; Lockyer Decl. at ¶¶ 21-22; Netzer Decl. at ¶ 10.**

        i.    The Internal Medicine Department physicians never certified that they provided supervision for the chemotherapy room on a claim or for purposes of a claim. **Braun Decl. at ¶ 37; Lockyer Decl. at ¶ 34; Netzer Decl. at ¶ 23.**

        j.    The Internal Medicine Department physicians dispute all of the oncology nurses' statements declaring that they were assigned to supervise the chemotherapy room. **Lockyer Decl. at ¶¶ 7.b, c, d, g, h; Netzer Decl. at ¶¶ 28, 29, 31 .**

6

   k. Dr. Lockyer's medical assistant, who kept his schedule, and knew where he was and where he was supposed to be, disputes the oncology nurses' statements declaring that Dr. Lockyer was assigned to supervise the chemotherapy room.  **Newbold Decl. at ¶ 4.**

   l. Defendant Evslin refused Dr. Lockyer's requests to review all of his claims and receipts in August 2000 and thereafter although Dr. Lockyer made repeated requests.  **Lockyer Decl. at ¶ 39**

 7. Proof the Nurses Were Qualified is Essential if the Medicare's Incident To Rules are to be applied:

   a. From the beginning of 2002 at least early 2003, Defendant KMC did not have an oncologist on staff.  **Braun Decl at ¶¶ 12-14.**

   b. The nurses assigned to the KMC Oncology Department routinely mixed hazardous and toxic chemicals into chemotherapy agents and injected or infused them into cancer patients when an oncologist was not present.  **Defense Exhibits 3 ¶ 6, 5 ¶ 6.**

   c. Nurses mixing and injecting or infusing chemotherapy agents MUST be qualified if no oncologist is present to personally supervise.  **Bookbinder Decl at ¶ 10.**

  d. Without consulting a physician, the nurses were making decisions whether to administer chemotherapy based upon lab reports which the Internal Medicine Department physicians were unwilling to sign off on. **Braun Decl. at ¶ 19; Lockyer Decl. at ¶ 17.**

  e. The Internal Medicine Department physicians refused to continue signing off on nursing notes and lab results after a few attempts. **Braun Decl. at ¶ 20 ; Lockyer Decl. at ¶¶ 18-19.**

  f. By October 2003, Defendants were still running the chemotherapy administration without regard to whether any physicians were present on the KMC second floor. **Lockyer Decl. at ¶¶ 24-25.**

8. It was clear Dr. Lockyer's Inquiries Related to Possible Fraud

  a. Dr. Lockyer requested a financial audit of all claims and receipts. **Lockyer Decl. at ¶¶ 36, 40.**

  b. Defendant Evslin had reason to know that Dr. Lockyer was talking to his KMC colleagues about the need to have an audit. **Lockyer Decl. at ¶ 41.**

  c. Dr. Lockyer had reason to suspect Defendant Evslin was involved in fraudulent conduct with health care claims when Defendant Evslin refused to permit Dr. Lockyer to review the claims

8

he was submitting under Dr. Lockyer's provider number.  **Lockyer Decl. at ¶ 39.**

   d. Dr. Lockyer's suspicions were further justified as he learned from physician after physician that they were not permitted to review their specific claims and related transactions and there were thus no checks and balances on Defendants Evslin and KMC. **Lockyer Decl. at ¶ 41.**

   e. Dr. Lockyer was presented with strong in February 2002 confirming his suspicions that Defendants Evslin and KMC were engaged in fraudulent conduct with health care claims.  **Lockyer Decl. at ¶**

DATED: Honolulu, Hawaii, March 9, 2007

          /s/ Rafael del Castillo
          JANICE P. KIM
          ARLEEN D. JOUXSON
          RAFAEL G. DEL CASTILLO

          Attorneys for Plaintiff
          JAMES LOCKYER, M.D.