JANICE P. KIM  3436
Kaimuki Business Plaza
3615 Harding Avenue, #206
Honolulu, Hawaii 96816
Telephone No. (808) 732-0522
Facsimile No. (808) 735-0459
kimj054@hawaii.rr.com

ARLEEN D. JOUXSON 7223-0
RAFAEL G. DEL CASTILLO 6909-0
JOUXSON-MEYERS & DEL CASTILLO
Attorneys at Law, A Limited Liability Law Company
302 California Avenue, Suite 209
Wahiawa, Hawaii 96786
Telephone: (808) 621-8806
Fax: (808) 422-8772
rafa@rafael1224.clearwire.net

Attorneys for Plaintiff
JAMES LOCKYER, M.D.

**ORIGINAL**

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

MAR 09 2007

at 9 o'clock and 35 min. P M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. JAMES LOCKYER, M.D., STATE OF HAWAII, ex rel. JAMES LOCKYER, M.D. and JAMES LOCKYER, M.D., in his own behalf;<br><br>Plaintiffs,<br><br>vs.<br><br>HAWAI'I PACIFIC HEALTH; KAUAI MEDICAL CLINIC; WILCOX MEMORIAL HOSPITAL; WILCOX HEALTH SYSTEM; and WILLIAM A. | CIVIL NO. CV04 00596 ACK/LEK<br>(Federal and State - Qui Tam)<br><br>PLAINTIFF'S JAMES LOCKYER, M.D. CONCISE STATEMENT OF FACTS IN SUPPORT OF HIS MEMORANDUM IN OPPOSITION TO DEFENDANT LEE A. EVSLIN, M. D.'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF LOCKYER'S SECOND, THIRD AND FOURTH CLAIMS FOR RELIEF FILED DECEMBER 22, 2006; DECLARATION OF JANICE |



| | |
|---|---|
| EVSLIN, M.D. aka LEE A. EVSLIN, M.D.;<br><br>            Defendants. | ) P. KIM; DECLARATION OF<br>) MICHAEL S. BRAUN, M.D.;<br>) DECLARATION R. CRAIG<br>) NETZER, M.D.; LAWRENCE R.<br>) RAITHAUS, M.D.; REPORT OF<br>) TERRY S. COLEMAN;<br>) DECLARATION OF JAMES<br>  LOCKYER; EXHIBITS "1" - "15"<br>  CERTIFICATE OF SERVICE |

DATE: March 27, 2007
TIME: 10:30 a.m.
JUDGE: Alan C. Kay

TRIAL: September 18, 2007

**PLAINTIFF'S JAMES LOCKER, M.D. CONCISE STATEMENT OF FACTS IN SUPPORT OF HIS MEMORANDUM IN OPPOSITION TO DEFENDANT LEE A. EVSLIN, M.D.'S SUMMARY JUDGMENT ON PLAINTIFF LOCKYER'S SECOND, THIRD AND FOURTH CLAIMS FOR <u>RELIEF FILED DECEMBER 22, 2007</u>**

Pursuant to Rule 56.1 of the Local Rules of Practice for the United States District Court for the District of Hawaii, Plaintiff JAMES LOCKYER, M.D., ("Dr. Lockyer") submits this concise statement of material facts in support of his Memorandum in Opposition to Defendant LEE A. EVSLIN, M.D.'S Motion For Summary Judgment on Plaintiff Lockyer's Second, Third and Fourth Claims for Relief filed December 22, 2006.

//

//

FACTS

1. Kauai Medical Clinic (KMC) employed James Lockyer as an employee-physician from 12/1/99 until his resignation 6/30/04;
   *Agree with Defendant Evslin's Evidentiary Support*

2. KMC was James Lockyer's employer;
   *Agree with Defendant Evslin's Evidenciary Support*

3. Defendant Evslin was James Lockyer's de facto employer exerting dominance and control of decisions at KMC;
   *Camden Report Exhibit 1, Minutes Exhibit 15, Braun Decl . ¶ 7, 26, 27, 28, Netzer Decl. ¶ 12, 13, Raithaus Decl. ¶ 5, 6,7, Exhibit 14, Birchard*

4. Defendant Evslin served as KMC's CEO from 1996 until 9/05, and as CEO of Wilcox Memorial Hospital 1/03 until 9/05;
   *Agree with Evslin's Evidenciary Support*

5. Dr. Lockyer began demanding access to his actual billings and receipts for Medicare and other insurers in August of 2000;
   *Lockyer Decl. ¶ 37, 39, 40*

6. Defendant Evslin denied Dr. Lockyer access to this information; told him it was impossible for to get that information;
   *Lockyer Decl. ¶ 38*

7. On December 2001, Dr. Lockyer encouraged his Internal Medicine colleagues to hire a CPA to do a complete financial audit of KMC billings and receipts;
   *Lockyer Decl. ¶ 44; Braun Decl. ¶ 25*

8. Had Lockyer obtained his billing information in 2000 or 2001 it would have shown that Dr. Lockyer's UPIN had been used to file claims with Medicare for chemotherapy as early as January 12, 2000 up until July of 2003;
   *Exhibit 2, redacted to exclude names of patients*

9. In total from 2000 until 2003 at KMC submitted 571 false claims to Medicare under Dr. Lockyer's UPIN;
   *Exhibit 2, redacted to exclude names of patients.*

10. Dr. Lockyer kept his Day Sheets of his daily appointment schedules that did not have the names of patients listed in his billing;
*Exhibit 8, Exempler*

11. KMC never assigned Dr. Lockyer to be a supervising physician for services in the chemotherapy suite and Dr. Lockyer never accepted such an assignment nor was he aware of that responsibility;
*Lockyer Decl. ¶ 7(b), 8*

12. Terry Coleman Expert in Medicare Claims opined that if the employer submits claims for supervised services the physician must be aware that he performing those supervised services or the claim for such services is a false claim;
*Coleman Report (c)*

13. Dr. Lockyer's Employment agreement specifies that his professional services are those assigned by the clinic;
*Exhibit 4 at 1*

14. Ken Shimonishi KMC's head of Accounting confirmed that doctors were charged for drugs and administration of chemotherapy and that those charges were then deducted because there were not providing professional services;
*Exhibit 3 ¶ 10*

15. On at lease 3 occasions Dr. Lockyer left the KMC clinic and KMC billed Medicare as if he were the supervising physician for chemotherapy patients;
*Exhibit 5, redacted to exclude names of patients.*

16. In and around the time that Dr. Lockyer began asking for his billing records KMC and HPH were negotiating their merger;
*Lockyer Decl. ¶ 6, 37, 39*

17. On December 21, 2001 KMC and HPH merged and Defendant Evslin gained a substantial personal benefit in that his salary increased from $182,007 to $350.369 per year
*Exhibit 7*

2

18. Within a few months of Dr. Lockyer's investigation into KMC's billing Defendant Evslin began his harassment of Dr. Lockyer.
*Lockyer Decl. ¶ 36*

19. Unfounded complaints about Dr. Lockyer not answering pages were made and responded to by Dr. Lockyer;
*Exhibit 9*

20. Untrue accusations were made that Dr. Lockyer refused to be available to another physician when he was on call at the hospital.
*Exhibit 10*

21. Unfair allegations were made about Dr. Lockyer having charts in his office while on vacation when the problems were caused by multiple nurses being assigned within one week to assist Dr. Lockyer and messages of pages not being returned.
*Exhibit 11*

22. Dr. Lockyer was required to go through a file review for compliance with Medicare coding which revealed that the services Dr. Lockyer provided were well documents and reported correctly.
*Exhibit 12*

23. Despite allegations that Dr. Lockyer's patient were kept waiting a study done showed averaged wait times of 15 minutes.
*Exhibit 13*

24. Around the time that Defendant Evslin was threatening Dr. Lockyer with termination he approached the Internal Medicine Department to ask that they sign chemotherapy charts and the doctors refused.
*Braun Decl. ¶ 15, 16, 17, 18, 19, 23, Lockyer Decl. ¶ 11, 14, 16, 17, 18*

25. Dr. Braun a member of the Executive Committee recalls that Defendant Evslin made repeated attempts to terminate Dr. Lockyer's contract or to force Dr. Lockyer to resign up through 2004.
*Braun Decl. 25, 26, 27, 28, Netzer Decl. ¶ 12, 13, 15*

3

26. Dr. Lockyer resigned on June 30, 2004,
    *Agree with Evslin's Evidenciary Support*

27. Records of the Executive Committee and the Salary and Finance Committee throughout the time that Defendant Evslin was harassing Dr. Lockyer reveal that Defendant Evslin chaired the meeting and created the minutes of the meetings.
    *Exhibit 15*

DATED: Honolulu, Hawaii, March 9, 2007.

*/s/ Janice Kim*

JANICE P. KIM
ARLENE D. JOUXSON
RAFAEL G. DEL CASTILLO
Attorneys for Plaintiff
JAMES LOCKYER, M.D.