IN THE UNITED STATED DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. JAMES LOCKYER, M.D. AND JAMES LOCKYER, M.D., in his own behalf,<br><br>　　　　Plaintiffs,<br><br>vs.<br><br>HAWAI'I PACIFIC HEALTH; KAUAI MEDICAL CLINIC; WILCOX MEMORIAL HOSPITAL; WILCOX HEALTH SYSTEM; AND WILLIAM A. EVSLIN, M.D. AKA LEE A. EVSLIN, M.D.<br>　　　　Defendants. | CIVIL NO. CV 04-00596 ACK LEK<br>(Federal and State - Qui Tam)<br><br>DECLARATION OF R. CRAIG NETZER, M.D.; EXHIBITS N1-N5<br><br><br>HEARING<br><br>Date:　March 27, 2007<br>Time:　10:30 A.M.<br><br>Trial Date:　September 18, 2007<br>Judge:　Honorable Alan C. Kay |

## DECLARATION OF R. CRAIG NETZER, M.D.

I, R. CRAIG NETZER, M.D., do hereby declare that the following facts are based on personal knowledge, and that I am competent to so testify:

　　1.　I am a physician licensed to practice medicine in the State of Hawai`i, and am over 18 years of age.

　　2.　I am a resident of the Island of Kauai.

　　3.　I hold dual board certifications: one in internal medicine and one in family practice.

　　4.　I was employed by Kauai Medical Clinic ("KMC") from July 2002 to October 2004.

12. I also mentioned that Dr. Evslin repeatedly attempted to fire Dr. Lockyer or force him to resign without any legitimate grounds. I was present for at least one Internal Medicine meeting in April 2004 at which Dr. Evslin lobbied for Dr. Lockyer's contract to be terminated.

13. I was outraged at the April 2004 meeting because Dr. Evslin misrepresented to my internal medicine colleagues that I had called for the meeting, which was materially false, because Dr. Evslin had called the meeting. He had approached me by stating that there were some unaddressed concerns in the Internal Medicine Department, but did not specify the nature of the concerns. I responded that departmental concerns should be addressed at a Departmental meeting. Dr. Evslin then called the meeting, but excluded Dr. Lockyer, and attempted to persuade the Department members to call for Dr. Lockyer's contract to be terminated.

14. The members of the Department rejected Dr. Evslin's attempts to terminate Dr. Lockyer's employment on more than one occasion.

15. Never during the time I was employed by KMC did Dr. Evslin present any trustworthy grounds for terminating Dr. Lockyer.

16. I was never asked to supervise the administration of chemotherapy in the oncology suite at KMC, nor did I ever accept such an assignment.

covered the chemotherapy suite." I do not know what Nurse Carter meant by the term "covered," but whatever she may have meant, I did not "cover" the chemotherapy suite.

32. I dispute the allegation in Nurse Sally Diana's Declaration, attached hereto as Exhibit N5, that I was ever assigned by KMC administration "in advance to cover the chemotherapy suite." I do not know what Nurse Diana meant by the term "cover," but whatever she meant, no one ever asked me in advance to "cover" the chemotherapy suite.

33. No one ever had my permission to say that I covered the chemotherapy suite or to use my provider number to submit claims for the administration of chemotherapy.

I, R. CRAIG NETZER, M.D., do declare under penalty of law that the forgoing is true and correct.

DATED: Honolulu, Hawai`i, March ___, 2007

_____
R. CRAIG NETZER, M.D.