## AFFIDAVIT OF KEN SHIMONISHI

STATE OF HAWAII            )
                           )  SS.
CITY AND COUNTY OF LIHUE   )

KEN SHIMONISHI, being first duly sworn upon oath, deposes and says as follows:

1.  I am currently employed by Hawaii Pacific Health as the Financial Planning Manager at Kauai Medical Clinic ("KMC"). I have been employed by Hawaii Pacific Health since December 2001, when it merged with Kauai Medical Clinic. From May 1, 1996 to December 2001, I was employed as the head of the Accounting Department for KMC. In my position, among other duties, I am responsible for compiling physician billing and salary information, including physician's charges for services provided, the amount of payment received by KMC for the physician's services, the physician's salary pursuant to the salary formula, the salary amount used to determine the physician's last paycheck and other relevant information needed to determine the physician's salary. I create spreadsheets that reflect all of the above information and provide the information on a monthly basis to Dr. Lee Evslin, President/CEO of KMC and Gail Lerch, Vice President of Human Resources for Hawaii Pacific Health for their review. I make this affidavit based on my personal knowledge except as otherwise noted.

2.  Dr. James Lockyer entered into an employment agreement with KMC on March 1, 2000 ("Employment Agreement"), which sets forth a salary formula and a process by which Dr. Lockyer's salary will be paid.

49092.1/276.010 (WORD)     EXHIBIT 3

7.  The next column on Exhibit 3 is entitled "Less Additional Costs." Each physician is allocated a certain level of support (e.g., one nurse). A positive number in the column represents charges to a physician for certain overhead expenses that are above and beyond those provided by KMC and attributable to the way the physician practices and consumes resources. A negative number in the column (demonstrated by parenthesis around the number) represents payment received by KMC based on facility fee charged to a patient in relation to a certain procedure performed by that physician. Since the Less Additional Costs column represents overhead costs charged to the physician or revenue from the physician's services, KMC subtracts or adds the amount in the Less Additional Costs column from or to the physician's Actual Receipts.

8.  Column C entitled "Less Chemo Receipts," subtracts the full amount of receipts for chemotherapy drugs and their administration. That is appropriate because the clinic incurs significant costs in obtaining and administering those drugs; it would not be appropriate to ignore those costs in calculating a physician's compensation.

9.  Column D is the sum of Columns A through C and represents the gross receipts that are then multiplied by the physician's percentage of receipts identified in Exhibit A to the Employment Agreement. KMC takes 50% of the Receipts Less Cost pursuant to the salary formula (if the Actual Receipts were less than $350,000) and adds to that number the Chemo Share to determine the "Salary Per Scale," which is set forth in Column F. The "Salary per Scale" represents the physician's annual salary based upon the last twelve months of receipts.

10. Column E is a small portion of the chemotherapy drug and administration receipts. Under a strict reading of the Employment Agreement, Column E should not be included in the calculation because it is not received "on account of professional services

3

rendered" by the physician. It customarily is included, however, and was included in Dr. Lockyer's case. The amount represents an attempt to identify and allocate the acquisition and overhead costs associated with the chemotherapy unit, with a fraction of what remains going to the physician.

11.     Pursuant to the employment agreement, KMC pays its physicians based on 95% of the amount derived from the salary formula. Thus, KMC calculates 95% of the Salary Per Scale amount, which is identified in the spreadsheet on Exhibit 3 in Column G as "Salary per Formula 95%."

12.     Column H in the spreadsheet on Exhibit 3 for January 31, 2001 is entitled "Salary @ PPE 01/27," and for March 31, 2001 is entitled "Salary @ PPE 04/07." This column represents the annual salary that the physician's most recent paycheck was based upon.

13.     Column I on Exhibit 3 entitled "Adj. to 95th percentile" sets forth any overpayment or underpayment that will be made to the physician if KMC continued to pay the physician at the Salary @ PPE amount rather than the Salary Per Scale amount and that physician's receipts remained the same. In other words, the "Adj. to 95th percentile" column represents the difference between the Salary per Scale (the physicians annual salary based on the most recent 12 months of receipts) and the Salary @ PPE (the amount the physician's last paycheck was based upon). If a negative number appears in the "Adj. to 95th percentile" column (demonstrated by parenthesis around the number) it means that the physician will be overpaid if KMC continues to pay the physician at the previous salary amount rather than the new salary calculation and that physician's actual receipts do not increase. Pursuant to the employment contract, the physician's salary (and paycheck) is reduced the next month to compensate for the overpayment.

4