reply to opp by USA.doc

Of Counsel:
ROBBINS & ASSOCIATES
Attorneys at Law
A Law Corporation

| | |
|---|---|
| KENNETH S. ROBBINS | 1000-0 |
| JOHN-ANDERSON L. MEYER | 8541-0 |

2200 Davies Pacific Center
841 Bishop Street
Honolulu, Hawaii  96813
Telephone:  (808) 524-2355
Facsimile:  (808) 526-0290
Email:  defend@robbinsandassociates.net

DAVIS WRIGHT TREMAINE LLP            CIVIL NO. CV04-00596 ACK KSC

EDWIN D. RAUZI            4292-0
1501 4th Avenue, Suite 2600
Seattle, Washington  98101
Telephone:  (206) 622-3150
Facsimile:  (206) 628-7699
Email:  edrauzi@dwt.com

PATTON BOGGS LLP

HARRY R. SILVER
2550 M Street NW
Washington, D.C.  20037
Telephone:  (202) 457-6453
Facsimile:  (202) 457-6315
Email:  hsilver@pattonboggs.com

Attorneys for Defendants
HAWAI`I PACIFIC HEALTH,
KAUAI MEDICAL CLINIC, WILCOX MEMORIAL
HOSPITAL and WILCOX HEALTH SYSTEM

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. JAMES LOCKYER, M.D., STATE OF HAWAII, ex rel. JAMES LOCKYER, M.D. and JAMES LOCKYER, M.D., in his own behalf,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>HAWAI`I PACIFIC HEALTH; KAUAI MEDICAL CLINIC; WILCOX MEMORIAL HOSPITAL; WILCOX HEALTH SYSTEM; and WILLIAM A. EVSLIN, M.D. aka LEE A. EVSLIN, M.D.,<br><br>　　　　　Defendants. | CIVIL NO. CV04-00596 ACK KSC<br>(Federal and State - Qui Tam)<br><br>DEFENDANTS HAWAI`I PACIFIC HEALTH, KAUAI MEDICAL CLINIC, WILCOX MEMORIAL HOSPITAL AND WILCOX HEALTH SYSTEM'S REPLY TO PLAINTIFF UNITED STATES OF AMERICA'S MEMORANDUM IN OPPOSITION TO DEFENDANTS HAWAI`I PACIFIC HEALTH'S, KAUAI MEDICAL CLINIC'S, WILCOX MEMORIAL HOSPITAL'S , AND WILCOX HEALTH SYSTEM'S MOTION FOR SUMMARY JUDGMENT; DECLARATION OF KENNETH S. ROBBINS, ESQ.; EXHIBIT "33"; CERTIFICATE OF SERVICE<br><br>HEARING<br>DATE:　March 27, 2007<br>TIME:　10:30 a.m.<br>JUDGE:　Alan C. Kay<br><br>TRIAL:　9/18/07<br>JUDGE:　Alan C. Kay |

DEFENDANTS HAWAI`I PACIFIC HEALTH, KAUAI MEDICAL CLINIC, WILCOX MEMORIAL HOSPITAL AND WILCOX HEALTH SYSTEM'S REPLY TO PLAINTIFF UNITED STATES OF AMERICA'S MEMORANDUM IN OPPOSITION TO DEFENDANTS HAWAI`I PACIFIC HEALTH'S, KAUAI MEDICAL CLINIC'S, WILCOX MEMORIAL HOSPITAL'S , AND WILCOX HEALTH SYSTEM'S MOTION FOR SUMMARY JUDGMENT

The Opposition of the United States to the HPH Defendants' Motion for Summary Judgment is based entirely on alleged ethical violations in connection with email communications with employees of the Center for Medicare and Medicaid Services ("CMS"), the agency that administers the Medicare program. Specifically, the government seeks to have the email communications stricken and counsel for the HPH Defendants disqualified. Significantly, however, the government does not take issue with the substance of the interpretation of the regulations expressed in those emails by CMS employee Dorothy Shannon.

For the reasons that follow, the HPH Defendants deny that their counsel engaged in any unethical conduct under any applicable rules. And for the reasons set forth in Ms. Shannon's email, as well those set forth in the HPH Defendants' Reply to Plaintiff Lockyer, the HPH Defendants' Motion for Summary Judgment should be granted.

## I.     INTRODUCTION

The government contends that the HPH Defendants' "sole and determinative basis" for their legal argument is an interpretation of an e-mail from Dorothy Shannon of CMS. The HPH Defendants' Motion for Summary Judgment, however, relies on the Medicare regulations set forth at 42 C.F.R. § 410.26 governing "incident to" billing, the preamble to the 2001 final rule implementing changes to 42 C.F.R. § 410.26, the Medicare Carriers Manual, and guidance from

Noridian, the carrier serving Hawaii and administering KMC's claims. The policy guidance provided by Dorothy Shannon of CMS is merely confirmation of the proper interpretation of the laws and regulations governing "incident to" billing.

Counsel for the HPH Defendants properly communicated with CMS for an interpretation of CMS policy and violated no ethical rules in doing so. Therefore, the e-mail from Dorothy Shannon should not be stricken and should remain in the record. Additionally, none of the actions taken by any of HPH Defendants' attorneys constituted professional misconduct.

## II.   FACTUAL BACKGROUND

The United States presents only a portion of the story in its opposition brief and mischaracterizes the nature of HPH Defendants' counsel's inquiry to CMS. As the government has stated, on February 23, 2006, the HPH Defendants' counsel, Mr. Rauzi and Kenneth Robbins, met with counsel for Relator Lockyer and Assistant United States Attorney Harry Yee. At that meeting, characterized as a disclosure meeting by the government, Plaintiffs stated their position, which did not correspond to the HPH Defendants' understanding of the applicable regulatory scheme.

In an effort to ensure that the HPH Defendants' understanding of the applicable rules was not mistaken, Mr. Rauzi contacted Terrence Kay on April 17, 2006 by email requesting assistance. (*Email string d:4/18/06, attached as Exhibit*

3

*"A" to Rauzi Decl.*, attached hereto as Ex. 33[1].)  Mr. Rauzi clearly indicates that he is a lawyer involved in a case which "involves the assertion that only an oncologist must provide 'incident to' supervision of chemotherapy services provided by oncology nurses in a rural group medical practice setting." (*Id.*)  Mr. Rauzi states that he is seeking CMS' assistance because the assertion "seems contrary to everything that I can find, both in theory and in practice." (*Id.*)

Mr. Rauzi made it clear to Mr. Kay that there was ongoing litigation.  In his email response, Mr. Kay asked "who is making the assertion?" (*Id.*)  In response, Mr. Rauzi stated that "the Assistant U.S. Attorney for Hawaii has intervened in a whistleblower case brought by a former physician employee of the group medical practice." (*Id.*)  Mr. Rauzi wrote that he was contacting CMS to clarify policy, especially in light of other guidance that he had read.  Mr. Kay responded on April 18, 2006, that he would "be happy to talk about general policies but would not want to discuss the details of a specific case". (*Id.*)  Mr. Rauzi agreed to limit the discussion to matters of policy. (*Id.*)

On April 21, 2006, Mr. Rauzi followed up and sent another email stating, as Mr. Kay had instructed him to do, that he was seeking guidance on general

---

[1] For the convenience of the Court, HPH Defendants have continued numbering the exhibits in sequence, continuing the sequentially numbered exhibits attached to HPH Defendants' Reply to Relator' Opposition.  All references herein to Exhibits 1 through 21 refer to the exhibits attached to HPH's Motion for Summary Judgment, filed December 22, 2006.

policies, not on a specific case. (*Rauzi Decl. Ex. A*, Ex. 7A.) The government has taken Mr. Rauzi's statement that he was seeking policy guidance as evidence that Mr. Rauzi mischaracterized the reason he was seeking advice (Opposition at 8-9), when Mr. Rauzi was only doing what Mr. Kay had instructed him to do.

**III.   ARGUMENT**

     A. Ethics Rules Permit Direct Communication with Government <u>Employees</u>

Rule 4.2 of the Hawaii Rules of Professional Conduct governs communications with persons represented by counsel. Rule 4.2 states:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer <u>or it is authorized by law to do so</u>.

Rule 4.2 (emphasis added).

Importantly, Comment [1] to Rule 4.2 clarifies that: "Communications authorized by law include, for example, the right of a party to a controversy with a government agency to speak with government officials about the matter."

Additionally, Comment [4] provides:

> In the case of an organization, this rule prohibits communications by a lawyer for another person or entity concerning the matter in representation with persons having a managerial responsibility on behalf of the organization, and <u>with any other person</u> whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or <u>whose statement may constitute an admission on the part of the organization.</u> If an agent or employee of the organization is represented in the matter by his or her own counsel, the consent by that counsel to a

5

> communication will be sufficient for purposes of this rule. Compare HRPC 3.4(h).

(emphasis added). Neither Mr. Kay nor Ms. Shannon has the authority to bind the government, or even their agency. *Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 384 (1947); *Thomas v. Immigration and Naturalization Service,* 35 F.3d 1332, 1338 (9th Cir. 1994).

Many other states agree that communication with Government officials is proper and does not require prior consent of the Government's counsel. The District of Columbia Bar is of particular significance because D.C. courts frequently hear cases involving disputes with government agencies and/or challenges to government policy. Rule 4.2(d) of the District of Columbia Rules of Professional Conduct states:

> This Rule does not prohibit communication by a lawyer with government officials who have the authority to redress the grievances of the lawyer's client, whether or not those grievances or the lawyer's communications relate to matters that are the subject of the representation, provided that in the event of such communications the disclosures specified in (b) are made to the government official to whom the communication is made.

Rule 4.2(d). Paragraph (b) requires that a lawyer disclose to the employee the lawyer's identity and the fact that the lawyer represents a party with a claim against the employee's employer.

Communications with those in government having the authority to redress a grievance are permissible without prior consent of the lawyer representing the

6

government.  *See* D.C. Rule of Professional Conduct 4.2, Comment [6].  The special exception for communications with government officials "is intended to provide lawyers access to decision makers in government with respect to genuine grievances, such as to present the view that the government's basic policy position with respect to a dispute is faulty, or that government personnel are conducting themselves improperly with respect to aspects of the dispute."  D.C. Rules of Professional Conduct 4.2, Comment [7].

The rationale underlying this Rule is set forth in Opinion No. 280, Inquiry No. 97-9-43 (Mar. 18, 1998),  which involved the question of whether, under Rule 4.2[d], an attorney representing a party in a licensing dispute may communicate directly with the officials on the licensing board without first obtaining consent of the board's lawyer.  The Bar concluded that such communications would not violate the ethics rule.  *Id.*  According to the opinion, the drafters of Rule 4.2(d) determined that many important considerations differ when the government is the opposing party.  First, the concerns of Rule 4.2 in protecting a lay person with less or no legal knowledge is not fully applicable in the governmental context because government officials are sufficiently capable of resisting legal or policy arguments and are competent to decided whether to communicate with opposing counsel without having an attorney present.  *Id.*

Second, the government represents the public and accordingly the government must advance the public interest. *Id.* "Permitting direct communication with government officials -- 'those who are best versed in the competing policy considerations and most experienced in analyzing, choosing among, and reconciling' a variety of public interests -- facilitates such a result." *Id.* (*citing* Yellow Cover Legislative History at 188).

Third, prohibitions on contacting government officials may infringe on First Amendment rights to petition the government for redress of grievances. *Id.* at 188-189. Such factors led the D.C. Bar's Ethics Committee to determine that communications by a lawyer with members of the licensing board to discuss the conclusion reached in a particular matter, and the alleged improper conduct of governmental personnel, are permissible under ethics rules.

Other jurisdictions have found an exception to the ethics rule requiring consent of an adversary lawyer to communicate with a client when that client is a government agency. For example, the State Bar of California included in the very language of its rule on communications with a represented party that the rule shall not prohibit communications with a public officer, board, committee, or body. *See* California Rule of Professional Conduct 2-100(C)(1).

The Disciplinary Commission of the Alabama State Bar concluded that an attorney may communicate directly with members of a government board to

discuss settlement of a pending lawsuit without the consent or approval of the attorney representing the board. *See* Alabama State Bar Opinion No. 2003-02 (Sept. 18, 2003). Like Hawaii's Rules of Professional Responsibility, Rule 4.2 of the Alabama Rules of Professional Conduct contains an "authorized by law" exception. *Id.* The Comment to Alabama Rules of Professional Conduct 4.2 uses the same language as the Hawaii Rule stating that communications authorized by law "include, for example, the right of a party to a controversy with a government agency to speak with government officials about the matter." *Id.* The Disciplinary Commission of the Alabama State Bar based its decision on the right of citizens under the First Amendment to petition for redress of grievances. *Id.* There, the Disciplinary Commission also found support for its conclusion in legal ethics treatises, the ABA Model Rules of Professional Conduct, state and federal case law, and other states' versions of the rules of professional conduct. *Id.*[2]

Similarly, the Utah Ethics Advisory Opinion Committee affirmed its prior conclusion that, under Rule 4.2 of the Utah Rules of Professional Conduct, a

---

[2] *See* The Law of Lawyering, Hazard & Hodes, Second Edition, Prentice Hall (1990) § 4.2:109; Modern Legal Ethics, Charles W. Wolfram, West Publishing Co. (1986) § 11.6.2, p. 614, n. 58; Annotated Model Rules of Professional Conduct, Fifth Edition, American Bar Association (2002) p. 427; *Camden v. Maryland*, 910 F. Supp. 1115, 1118 (D. Md. 1996); *Am. Canoe Ass'n, Inc. v. City of St. Albans*, 18 F. Supp. 2d 620, 621-22 (S.D.W.Va. 1998); *Norflok S. Ry. Co. v. Thompson*, 430 S.E.2d 371 (Ga. Ct. App. 1933); *Wilkerson v. Brown*, 995 P.2d 393 (Kan. App. 2d 1999).

lawyer representing a private party may directly contact a governmental official about the matter involving the lawyer's client, even though the government agency is known to be represented by counsel.  Utah Ethics Advisory Opinion Committee, Opinion No. 115R (July 29, 1994).  The Utah Ethics Advisory Opinion Committee concluded that private parties should not be restricted from their inherent and constitutional rights to approach government officials, but that an attorney representing such a private party must inform the government official that there is a pending dispute with the agency involving his client.  *Id.*  The Utah Ethics Advisory Opinion Committee based its decision on "sound public policy that properly weighs the government-access rights of the public, vis-à-vis the rights of the class of government attorneys."  *Id*.

Other jurisdictions take a more limited view, but nonetheless permit an attorney for a private party to contact government officials without prior consent of counsel to discuss policy matters or to contact governmental officials without prior consent of counsel where the official does not have authority to settle the litigation.  The North Carolina State Bar has opined that "[r]outine communications on general policy issues or administrative matters would not require prior approval from government counsel."  North Carolina, 2005 Formal Ethics Opinion 5 (July 21, 2006).  The Ohio Bar concluded that a government "party" is "an employee, public official or public body with authority to bind the government to settle a

litigable matter, or whose act or omission gave rise to the matter." Ohio, Opinion 92-7 (Apr. 10, 1992). Therefore, communications with government employees without the authority to bind the government to settle are permissible without the consent of the attorney representing the government. *Id.* As set forth below, in accordance with the conclusions of numerous jurisdictions, counsel for HPH Defendants abided by their ethical obligations.

### B. Applying the Facts, HPH Defendants Committed No Ethical Violation and the United States' Requested Sanctions Are Wholly Inappropriate

Mr. Rauzi's communications do not violate Hawaii Rule of Professional Conduct 4.2. Mr. Rauzi fully disclosed to Mr. Kay that he was a lawyer representing a client adverse to the government in a whistleblower case. Moreover, Mr. Rauzi merely sought guidance from the government agency responsible for administering the "incident to" rules on its policy on behalf of his clients, HPH Defendants. HPH Defendants have a protected right to approach the government agency setting policy to determine the correct interpretation of that policy. Neither Mr. Kay nor Dorothy Shannon has the authority to bind the government in a settlement. Therefore, in accordance with other jurisdictions, including the District of Columbia, whose Bar is well-acquainted with litigation involving government agencies, Mr. Rauzi's actions should not constitute a violation of Hawaii Rules of Professional Conduct.

Even if the communications were to violate Rule 4.2, the communications most certainly do not constitute conduct involving dishonesty, fraud, deceit or misrepresentation in light of Mr. Rauzi's full disclosure. Accordingly, the use of the email communications as Exhibits cannot be the basis of an assertion that HPH Defendants' other attorneys, Kenneth S. Robbins, Harry R. Silver and Larry Freedman, are violating Rule 8.4(a) or (c).

The Government's suggestion that an appropriate sanction would be both the disqualification of counsel and the striking of the email communications with CMS as allegedly obtained by fraud is unwarranted. Even if this Court were to find that Mr. Rauzi should have obtained prior consent from the Assistant U.S. Attorney, the requested sanctions would be greatly disproportionate to any conduct on the part of HPH Defendants' counsel. In *Palmer v. Pioneer Inn Assocs., Ltd.*, 338 F.3d 981, 982 (9th Cir. 2003), the Ninth Circuit reversed a trial court's decision to exclude affidavit testimony because the attorney engaged in *ex parte* contact with the defendant employer's worker. Originally, the trial court had denied the motion to disqualify the attorney, but had sanctioned the attorney by fining him and excluding the affidavit based on its interpretation of ABA Model Rule 4.2. *Id.* at 985. Subsequently, the Nevada Supreme Court adopted the managing-speaking agent test for determining which employee constitutes a "party" for purposes of the

prohibition on *ex parte* contacts between an attorney and the other party's employees. *Id.* at 987.

In light of the test and the evidence that the witness could not bind the employer, the Ninth Circuit found that the district court should not have sanctioned the attorney by excluding the affidavit or imposing monetary sanctions. *Id.* at 989. Even where the trial court believed there was a violation of ethics law, it did not disqualify the attorney; thus, disqualification is not warranted here. Certainly, where there has been no violation of any ethics rules, it is inappropriate to preclude the communication. *See also Curley v. N. Am. Man Boy Love Ass'n*, No. 00-10956, 2003 U.S. Dist. LEXIS 12482 (D. Mass. Mar. 31, 2003) (denying motion to strike materials where the court determined there was no violation of Massachusetts Rule of Professional Conduct 4.2).

Similarly, in *United States v. Grass*, 239 F. Supp. 2d 535, 539-46 (M.D. Pa. 2003), the court denied a motion to suppress tapes where the *ex parte* contact was authorized by law and thus did not violate the Pennsylvania Rules of Professional Conduct. Further, even assuming the attorney's conduct violated the ethical rules, the court determined that suppression was an inappropriate remedy. *Id.* at 546-49.

Additionally, the only case cited by the United States in support of its request for sanctions, *Camden v. Maryland*, 910 F. Supp. 1115, 1118 n.8 (D. Md. 1996), specifically recognizes an exception to Rule 4.2's prohibition against *ex*

13

*parte* contacts by a lawyer with the employee of a represented party, where the employee is a government official and the party is a government entity. There, the Maryland district court specifically stated: "Insofar as a party's right to speak with government officials about a controversy is concerned, Rule 4.2 has been interpreted uniformly to be inapplicable." *Id.* (citing 2 Geoffrey C. Hazard, Jr. & W. William Hodes, The Law of Lawyering § 4.2:109 (2d ed. Supps. 1991 & 1994); Charles W. Wolfram, Modern Legal Ethics § 11.6.2 (1986)). Furthermore, *Camden* not only addressed the no-contact rule under Rule 4.2 in the context of a corporate client, not a governmental agency client, but it also involved contacts that knowingly invaded attorney client privilege, which is absolutely irrelevant in this litigation. Therefore, *Camden*'s determinations as to appropriate sanctions are inapposite.

In summary, the determinations of multiple jurisdictions' ethics committees, the analysis set forth in leading treatises on legal ethics, and case law support the finding that counsel for HPH Defendants fully complied with their legal obligations in communicating with CMS about policy matters while also disclosing the representation of a client in litigation adverse to the United States. Because Mr. Rauzi's email communication did not violate Rule 4.2 and because Mr. Rauzi made full disclosures, counsel for HPH Defendants also did not violate Rule 8.4(a) or (c). The United States' requested sanctions are wholly unwarranted.

## IV.   CONCLUSION

For all the foregoing reasons and those articulated in the memorandum in support of motion for summary judgment, HPH Defendants request that this court grant its motion for summary judgment and deny any request for sanctions.

DATED: Honolulu, Hawaii, March 16, 2007

/s/ Kenneth S. Robbins
KENNETH S. ROBBINS
JOHN-ANDERSON L. MEYER

Attorneys for Defendants
HAWAI`I PACIFIC HEALTH, KAUAI
MEDICAL CLINIC, WILCOX
MEMORIAL HOSPITAL AND
WILCOX HEALTH SYSTEM

Civil No. CV04-00596 ACK KSC; <u>USA, ex rel. Lockyer, et al. v. Hawaii Pacific Health, et al.</u>; DEFENDANTS HAWAI`I PACIFIC HEALTH, KAUAI MEDICAL CLINIC, WILCOX MEMORIAL HOSPITAL AND WILCOX HEALTH SYSTEM'S REPLY TO PLAINTIFF UNITED STATES OF AMERICA'S MEMORANDUM IN OPPOSITION TO DEFENDANTS HAWAI`I PACIFIC HEALTH'S, KAUAI MEDICAL CLINIC'S, WILCOX MEMORIAL HOSPITAL'S, AND WILCOX HEALTH SYSTEM'S MOTION FOR SUMMARY JUDGMENT