STARN ● O'TOOLE ● MARCUS & FISHER
A Law Corporation

SHARON V. LOVEJOY          5083-0
STEPHANIE THOMPSON      8399-0
Pacific Guardian Center, Makai Tower
733 Bishop Street, Suite 1900
Honolulu, Hawaii 96813
Telephone No. (808) 537-6100
Facsimile No. (808) 537-5434
slovejoy@starnlaw.com
sthompson@starnlaw.com

Attorneys for Defendant
LEE A. EVSLIN, M.D.

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. JAMES LOCKYER, M.D., STATE OF HAWAII, ex rel. JAMES LOCKYER, M.D. and JAMES LOCKYER, M.D., in his own behalf;<br><br>Plaintiffs,<br><br>vs.<br><br>HAWAII PACIFIC HEALTH; KAUAI MEDICAL CLINIC; WILCOX MEMORIAL HOSPITAL; WILCOX HEALTH SYSTEM; and WILLIAM A. EVSLIN, M.D. aka LEE A. EVSLIN, M.D.;<br><br>Defendants. | CIVIL NO. CV 04-00596 ACK LEK (Federal and State – Qui Tam)<br><br>DEFENDANT LEE A. EVSLIN, M.D.'S **REPLY TO PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT LEE A. EVSLIN'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF LOCKYER'S SECOND, THIRD AND FOURTH CLAIMS FOR RELIEF;** EXHIBITS "59"-"60"; DECLARATION OF MARY G. PIXLER, M.D.; DECLARATION OF KEN SHIMONISHI; CERTIFICATE OF COMPLIANCE; CERTIFICATE OF SERVICE. |

62886

|  | **HEARING:**<br>**DATE:** **March 27, 2007**<br>**TIME:** **10:30 a.m.**<br>**JUDGE:** **Hon. Alan C. Kay**<br><br>TRIAL DATE: September 18, 2007 |
|---|---|

**DEFENDANT LEE A. EVSLIN, M.D.'S REPLY TO PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT LEE A. EVSLIN'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF LOCKYER'S SECOND, THIRD AND FOURTH CLAIMS FOR RELIEF**

**I.   INTRODUCTION**

Plaintiff Lockyer has had 3 months to create a story in response to Dr. Evslin's motion for summary judgment. While showing some creativity, his "blunderbuss"[1] effort to oppose the motion falls far from the mark. In an effort to create a genuine issue of material fact to defeat summary judgment, Plaintiff's story, put together with 20/20 hindsight, is in some key respects only that—a story based on distortions, half-truths, and contradictions. While Dr. Evslin could, and if necessary, will, reveal Plaintiff's "facts" for the falsity they are,[2] that is not

---

[1] As an aside, a "blunderbuss" is a muzzle-loading predecessor of the shotgun. "By its nature, the blunderbuss is not a very precise weapon. Although it was sometimes used in a military setting, it was more effective when the goal was not to hit a specific target, but rather any one of multiple targets, such as for crowd control. During combat, the blunderbuss was a very unpredictable weapon; it could hit an entire group of enemy soldiers or miss them all. The blunderbuss thus became a byword for inaccurate marksmanship in any field." *Crystal Reference Encyclopedia,* Reference.com. http://www.reference.com/browse/crystal/4165 10 Mar. 2007. The term has been used by at least one court to describe the practice of spewing the issues with shards of half-truths, invective misstatements and outright contradictions, in the hopes that something may stick. *Mruz v. Caring, Inc.*, 991 F.Supp. 701, 711 (D.N.J. 1998).

[2]   For example, the statements about refusals to provide documentation to physicians can also be easily rebutted. *See* Shimonishi Decl., attached hereto. Further, Plaintiffs claim Defendants admit false claims by reference to Mr. Shimonishi's Declaration. As Plaintiffs well know, the statement to which they refer—regarding pay for chemotherapy charges—does not relate to

necessary or appropriate here. Plaintiff simply offers no specific, admissible evidence to support the essential elements of his claims. Absent that showing, all other tangential alleged facts are immaterial.[3]

Based on the applicable law, Plaintiff has failed to make a sufficient showing by admissible evidence on the following key elements of this case, on which Plaintiff will bear the burden of proof at trial:

(1) That Dr. Evslin was Dr. Lockyer's employer;

(2) That Dr. Lockyer engaged in "protected activity;"

(3) That Defendants knew Lockyer was engaged in "protected activity"; and

(4) That Defendants *retaliated* against Dr. Lockyer **because of** alleged "protected activity"[4].

As the opponent to the motion for summary judgment, Dr. Lockyer was required to "tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of [his] contention that a dispute exists" regarding a material fact that would "affect the outcome of the suit under the

---

medicare/medicaid billing, but rather to how compensation for such charges are determined in the employment context.

[3] Dr. Evslin will file a separate motion to strike portions of the "evidence" submitted by Dr. Lockyer, asking the Court to disregard those portions of Dr. Lockyer's declaration that contradict his prior sworn testimony or statements in this case. By addressing any of the submissions here, Dr. Evslin does not waive his position that the submissions are not properly evidence that can create a genuine issue of material fact.

[4] Indeed, Plaintiffs have not presented sufficient evidence to meet their burden of proof that there was any retaliation at all.

62886   2

governing law." *See U.S. ex rel. Englund v. Los Angeles Co.,* 2006 WL 3097941 * 4 (E.D. Cal. 2006). Uncorroborated allegations and self-serving testimony, like much of the evidence provided by Plaintiff, will not create a genuine issue of material fact. *See Villiarmo v. Aloha Island Air, Inc.,* 281 F.3d 1054, 1061 (9th Cir. 2002).

No genuine issues of material fact exist relating to Plaintiff Lockyer's Second, Third and Fourth claims for relief. As a result, Dr. Evslin is entitled to summary judgment as a matter of law.

## II. DISCUSSION

### A. Plaintiff Has Not Created a Material Fact Regarding Dr. Evslin as Dr. Lockyer's Employer.

It is undisputed that KMC employed Dr. Lockyer. *Pl. Stmt. of Facts at ¶ 1.* In the face of the strong case law that prohibits treating an individual supervisor or officer as an employer under 31 U.S.C. §3730(h), Plaintiff tries, but fails, to create a material issue of fact by claiming Dr. Evslin was Dr. Lockyer's *de facto* employer. Plaintiff relies on the *single case* from the District of New Jersey, *Mruz v. Caring, Inc.,* 991 F.Supp. 701 (D.N.J. 1998) that recognizes this concept.

The *de facto* employer concept created by the *Mruz* court has not been adopted by any circuit. It is a position that has "little or no support in the case law." *U.S. ex rel. Harris v. EPS, Inc.,* Slip Copy 2006 WL 1348173 at *7 (D. Vt. 2006), citing *U.S. ex rel. Siewick v. Jamieson Sci. And Eng'g, Inc.,* 332 F.3d 738,

740 (D.C. Cir. 2003) ("'The principle [that an individual does not qualify as an 'employer'] applies with no less force when an individual has a significant ownership interest in the corporation and substantially controls its actions.'").

Even if this court were to follow *Mruz,* Plaintiffs have not raised a material issue of fact.  The purported "evidence" of Dr. Evslin's *de facto* status is conclusory and contradictory – void of the required substance and specificity necessary to create a genuine issue of fact.

### 1.  The Facts In *Mruz* Are Inapposite To The Present Case.

Plaintiff grossly overstates any factual similarities in *Mruz* to the present case. *Mruz v. Caring, Inc.*, 991 F.Supp. 701 (D. N.J. 1998). The facts in *Mruz* are markedly different than this case.

In *Mruz*, the court recognized the FCA does not extend to "corporate supervisors or president of defendant [corporation]", but allowed claims to go forward against a single director (while dismissing 3 others). *Id.* at 709.  The Court held the one defendant might be considered a *de facto* employer because she "chose the board members" of the various corporate defendants (*Id.* at 704) and personally benefited from her extensive dominance of her position by "secretly us[ing] corporate funds to pay for her personal expenses." *U.S. ex rel. Overton v. Bd. of Commissioners of Rio Blanco Co.*, 2006 WL 2844264 *4 (D. Colo. 2006) (refusing to extend liability to the individual corporate official).

Here, there is no suggestion of the level of dominance and personal gain as was evident in *Mruz*. Dr. Evslin did not dominate or dictate the actions of the corporate defendants, and did not control the affairs of the corporations or do anything improper or "secret" for his personal gain. *See, e.g. Declaration of Mary Pixler, M.D.* ("*Pixler Decl.*"), ¶¶ 20, 24, attached hereto; *Williamson Decl.*, ¶¶ 20, 21, attached to Dr. Evslin's Motion for Partial Summary Judgment (hereinafter "Evslin's Motion"); *Exhs*. 1-2 attached to Evslin's Motion.

### 2. Plaintiff's Evidence Conclusively Proves Dr. Evslin Was Not Dr. Lockyer's *de facto* Employer.

Plaintiff's own exhibits and declarant submissions make clear that Dr. Evslin was not a *de facto* employer.

Despite the limitation of Dr. Evslin's power, authority, and actions, including regarding hiring, firing and setting salaries of physicians (*see* Evslin Exhs. 1- 2; attached to Evslin Motion.), Plaintiff claims Dr. Evslin dominated KMC's meetings to the extent that he "controlled the outcomes." *Memo in Opp.* at pp. 14-15. Yet, Plaintiff's own evidence shows that Dr. Evslin did not control decision-making:

- Dr. Braun declares that on at least "two occasions" "the members [of the committee and department] **refused** [Dr. Evslin's effort to terminate Dr. Lockyer] by a majority vote." *Braun Decl.*, ¶ 27, *Memo in Opp.* (emph. added).

- Dr. Netzer declares that "members of the Department **rejected Dr. Evlsin's attempts** to terminate Dr. Lockyer's employment on more than one occasion." *Netzer Declaration,* ¶ 14, *Memo in Opp.* (emph. added).

- Plaintiff maintains that the internists met at a restaurant at which time Dr. Lockyer suggested an audit, but the internists decided not to make the request. *Exh. 59* ¶ 44. This example evidences the willingness and ability of the internal medicine physicians to (1) meet outside the alleged "control" of Dr. Evslin, and (2) reach a consensus among them without any direct input by Dr. Evslin.

- Plaintiff claims that when asked by Dr. Evslin to "cover" the chemo administration and "sign off" on chemo charts and patients, both Drs. Lockyer and Braun **refused**. *See Exh.* 59, ¶¶ 14, 18, *Braun Decl.,* ¶¶ 16-20, *Netzer Decl.* ¶ 10.

- The Executive Committee meeting minutes attached as exhibits by both Plaintiff and Dr. Evslin conclusively show that the committee acted on its own, and was not controlled or dominated in its decisions by Dr. Evlsin.[5] *See Exhs.* 11-22, attached to Evslin's Motion; *Exh. 15*, to *Memo in Opp.*

These examples directly contradict Plaintiff's assertion of Dr. Evslin's dominance and control at KMC.

Plaintiff's assertion that Dr. Evslin's signature on most of Dr. Lockyer's disciplinary paperwork evidences his "centralized control of KMC" is conclusory and ignores work allocations. Further, if such were the case, then Dr. Williamson, not Dr. Evslin, would be the *de facto* employer from 2002 until 2004, when the majority of disciplinary actions and reductions in salary took place—which is not the case either. *See, Exhs.* "34"-"46" attached to Evslin's Motion.

Plaintiff's assertions based on the Camden Report, as excerpted by Plaintiff,

---

[5] Drs. Braun and Netzer's cannot be heard to challenge the veracity of the Executive Committee or other meeting minutes where they participated in and did not challenge the accuracy of the minutes. *See Exh. 15 to Memo. in Opp.* Unless objected to, corporate minutes are presumptively valid. *Gustavson v. C.I.R.*, T.C. Memo. 1965-107 (T.C. 1965) ("Corporate minutes are prima facie evidence of the transactions recorded therein.") *citing 32A C.J.S Evidence* § 767(----).

are likewise contradictory and inadequate. First, the Camden Report does not stand for the proposition Plaintiffs attribute to it. A simple reading makes clear the report does not say power is concentrated with the CEO. Second, the report is from 1999—before the HPH merger in 2001. It cannot address the corporate structure and atmosphere during most of the time relevant to Plaintiff's claims. Third, the Report endorses the appointment of CEOs at both the hospital and clinic, cites the delegation of responsibility to departmental chairs as being "too large" rather than too restricted, and advocates setting higher expectations of staff by the administration while instituting stricter controls on accountability of department chairs. *Exh. 1*, *Memo in Opp*. Read in its totality, the inefficiencies cited in the report were not due to some autocratic inclinations by the CEO, as Plaintiff alleges, but were due instead to the general malaise of "finger-pointing," lack of interest, and accountability among the employees and departmental chairs at KMC.

Because Dr. Evslin was not Dr. Lockyer's employer, Dr. Lockyer' §3730(h) claims fail as a matter of law.

### B. Because Dr. Evslin Was Not Dr. Lockyer's Employer, Plaintiff's Claims Under The HWPA Likewise Fail As A Matter Of Law.

Plaintiffs do not contest that Dr. Evslin must be found to be Dr. Lockyer's employer to prevail against Dr. Evslin on the HWPA claims (the State of Hawai`i's analogue to § 3730(h) of the FCA). As discussed above, Dr. Evslin was not Dr. Lockyer's employer. Therefore, as a matter of law, and for the reasons stated in

62886                                                                                                           7

Dr. Evslin's moving papers, Plaintiff cannot prevail on their HWPA and common law claims.

### C. Plaintiff Has Not Presented a Genuine Issue of Material Fact Sufficient to Defeat Summary Judgment on His Claims for Wrongful Termination and Retaliation.

To defeat a motion for summary judgment, Plaintiff must sufficiently establish "the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Here, Plaintiff Lockyer fails to show there is a material issue of fact that defeats summary judgment against him on his claims for retaliation and wrongful termination under the FCA, HWPA and the common law.

#### 1. Dr. Lockyer was not investigating fraud against the government.

Despite Plaintiff Lockyer's argument to the contrary, for whistleblower protection under the FCA, Plaintiff Lockyer must prove that he was "trying to recover money ***for the government***" or investigating fraud ***against the government.*** That alone is "protected conduct" under the FCA. *U.S. ex rel Hopper v. Anton,* 91 F.3d 1261, 1269 (9th Cir. 1996). Investigating something that ultimately leads to the discovery of a false claim is not enough.

Plaintiff offers no evidence and does not argue that his purported investigatory actions meet this standard. In fact, the record is distinctly void of any such allegations. Nowhere does Plaintiff suggest that he, "in good faith believe[d] .

62886                                   8


. . that the employer [was] possibly committing fraud against the government." *Moore v. California Inst. of Tech.,* 91 F.3d 838, 845 (9th Cir. 2002). ("[A]n employee engages in protected activity where (1) the employee in good faith believes, and (2) a reasonable employee in the same or similar circumstances might believe, that the employer is possibly committing fraud **against the government**.") *Id.* (emph. added). Lockyer's alleged investigatory actions related to his belief he was under-compensated:

- Amended Complaint: Plaintiff admits believing his compensation to be inaccurately reported, and so he requested a review of the finances. *First Am. Complaint,* f:02/02/07.

- Disclosure: Plaintiff admits that his investigatory actions were "to establish whether pay reductions imposed upon him were accurate and reasonable according to his employment contract," *Disclosure,* at ¶¶ 2, 4, ***not*** to establish fraudulent billing practices to the government by KMC or Dr. Evslin.

- Lockyer Deposition: When asked what the purpose was for asking for billing documents, Dr. Lockyer responded "Because I didn't think it was accurate." Q: You didn't think your pay was accurate? A: No – I mean yes." *Exh.* 4, at 19-23, attached to HPH's Motion for summary judgment. When asked if he conducted any investigation regarding the suspect compensation figures, Plaintiff replied, "I'm not an investigator." *Exh.* 53, at 46-47.

- Lockyer's first request to KMC for receipts and billing backup documentation,[6] makes clear that his concern and investigation was for Plaintiff's

---

[6] When Dr. Lockyer first requested back-up documentation from KMC regarding his billings is disputed—Lockyer first testified at deposition that it was in or about December 2001, and after consideration of the Motion claims it was August 2000. *Exh.* 25 is the first request KMC received—in June 2002. *Shimonishi Decl,* attached hereto. Dr. Lockyer now says August 2000, but previously testified (several times) it was approximately December 2001. : "I believe December 2001." When asked who he asked about documents in December 2001, Dr.

"reduc[tion] in salary[.]" *Exh.* 25 to Evlsin's Motion. Lockyer again made this clear in his letter demanding arbitration wherein he sought to resolve issues "relating to his production and compensation." *Exh.* 28 to Evslin's Motion. Lockyer cannot now be heard to change his story.

Plaintiff's argues he "was engaged in protected activity by investigating billing practices at KMC" and because the bills necessarily implicated Medicare, Plaintiff concludes that he was engaged in a protected activity. *Memo in Opp*. at p. 17. This is circular reasoning unsupported by the law. If that were the standard, then any individual engaged in investigating claims against the government, by necessity, engages in protected conduct under the FCA. Plaintiff correctly points out (at p. 20), such is not the case. *See e.g. Zahodnick v. International Business machines Corp.,* 135 F.3d 911 (4th Cir. 1998) (a concern and investigation over billing does not establish conduct "in furtherance of" a FCA claim); *see also U.S. ex rel. Luckey v. Baxter Healthcare,* 2 F.Supp.2d 1034 (N.D. Ill. 1998) (lab employee's investigations into allegedly inadequate testing procedures was not protected conduct even though it implicated federally funded institutions and certifications); *Brandon v. Anesthesia & Pain Mgmt. Assoc. Ltd.*, 277 F.3d 936 (7th Cir. 2002) (Plaintiff allegations regarding about "improper" and "illegal"

---

Lockyer responded: "I appealed to my colleagues. . . . [Drs.] Pixler, McKnight, Duvauchelle, Diaz, Sutherland and Braun." *Exh*.59, at 92 l. 22-25 and 93 l. 1-17.

Plaintiff cannot create a genuine issue of material fact by contradicting prior deposition testimony. Hambleton Bros. Lumber Co. v. Balkin Enterprises, Inc., 397 F.3d 1217, 1225 (9th Cir. 2005); Sea-Land Service, Inc. v. Lozen Intern., LLC., 285 F.3d 808, 820-21 (9th Cir. 2002).

Medicare billing practices reported to shareholders was not "protected activity").

It is obvious then, by Plaintiff's own testimony and evidence that Plaintiff was not and did not believe that he was engaged in investigatory actions relating to the FCA, or actions that reasonably could have lead to an action for false claims against the government.

### 2. Plaintiff Does Not Have Sufficient, Specific Evidence To Support That Defendants Knew Plaintiff Was Engaged In Protected Activity.

Plaintiff has presented no facts to sustain the second essential element for a retaliation claim under the FCA—that Defendants were "aware that the employee [was] investigating" fraud against the government. *Hopper,* 91 F.3d at 1269. Dr. Lockyer testified in deposition as to what he says he requested—billing records to determine the accuracy of his compensation. Dr. Lockyer's testimony is referenced in note 5, above. He further testified:

> Q: Okay. Did you specifically ask Doctor Evslin for financial audit?
> A: I pointed out that my billings were usually twice what was coming in, and that didn't seem to make sense, . . . . I said **but I've been here over a year,** surely, you could collate the invoice with the receipt. And he told me that was impossible.
> Q: At that time did you take it any further with anyone else?
> A: No.
> Q: Did you put that request in writing or that position in writing at the time?
> A: No.
> Q: Did you do anything else with your desire at that time to get, have a financial audit done or to get backup financial documents relative to your pay?
> A: Answer we had a meeting.
> Q: . . . you had the meeting with the internists, you talked with Doctor Evslin. Did you do anything else around that time? And I think it was around

62886                                   11

December-ish of '01?
    A: Yes.
    Q: Anything else you did on that issue?
    A: No.

*Exh. 59, at.* 95 l. 24 to 96 l. 19.   Using the dates to which Dr. Lockyer testified in his deposition, as we must,[7] Plaintiffs do not create a material issue of fact regarding Defendants' knowledge of his protected activity. Lockyer simply cannot show that his employer was *aware* he was engaged in protected activity.

Plaintiff asserts that the threatened termination in April 2002 "provides a strong inference" that KMC had already begun its retaliation for Plaintiff's protected conduct. Plaintiff mistakenly relies on *McKenzie v. BellSouth Telecommunications, Inc.* to support his position.[8] *Id.* 299 F.3d 508 (6th Cir. 2000). *McKenzie* actually supports **Defendants'** position that they were not aware of Plaintiff's alleged protected conduct.   In *McKenzie*, the plaintiff discovered fraudulent billing charges made to the government.   "[S]he began complaining to her supervisors . . . about these practices . . . and continued to do so until she left her position on disability status in [1992]." *Id.* 219 F.3d at 512. "On one occasion, McKenzie showed her supervisor a newspaper article describing a similar fraud

---

[7] *See Pfingston v. Ronan Engineering Co.*, 284 F.3d 999 (9th Cir. 2002).
[8] Plaintiff  also relies on *Sweeney v. Manorcare Health Services Inc.* 2005 WL 4030950 (W.D. Wash.2005) in support of his allegation that Defendants "knew" of Plaintiff's investigation under the FCA. The Plaintiff in *Sweeney* did not plead retaliation under the FCA.  The *Sweeney* Court does not opine on the requisite language and/or showing for establishing the second element for a claim of retaliation under the FCA as it was not before the court.

[and *qui tam*] action being pursued in Florida." *Id.* The district court concluded that there was no "protected activity" in Plaintiff's continued complaints backed by showing the newspaper article, nor in her refusals to "falsify repair records." *Id.* The Sixth Circuit reconfirmed that protected activity "must allege fraud on the government." *Id. at* 516. The court held that despite her conduct described above, Plaintiff "has not taken action in furtherance of a *qui tam* action under the FCA." *Id.* The court further explained that "[e]ven assuming that McKenzie engaged in protected activity by her refusal to falsify repair records, there is no evidence that [Defendants] had reason to believe" that she was engaging in protected conduct." *Id.* at 518. The court held that Plaintiff "provided **no evidence** raising a genuine issue of material fact that [Defendants were] . . . on notice[.]" *Id.*; *U.S. ex rel. Ramseyer v. Century Healthcare Corp.* 90 F.3d 1514 (10th Cir. 1996) (Plaintiff's continued communication to her superiors regarding the company's improper practices under Medicare was not protected activity, nor was it conduct sufficient to put the defendants on notice); *Luckey,* 183 F.3d at 733 ("An employer is entitled to treat a suggestion for improvement as what it purports to be rather than as a precursor to litigation.")

Plaintiff here provides no evidence that even approaches that considered and rejected by the *McKenzie* Court. As such, Plaintiff fails to establish, yet again, another requisite element in his claim.

62886                                    13

### 3. There Is No Causal Connection Between Plaintiff's Alleged Protected Activities And Any Alleged Retaliatory Act By Dr. Evslin.

Plaintiff also fails to provide sufficient evidence to support a finding that Defendants' alleged retaliatory actions were "motivated at least in part by the employee's engaging in protected activity." *McKenzie,* 219 F.3d at 518. He claims the reductions in his pay and disciplinary actions were in retaliation for his requests for billing backup documentation. *Am. Complaint,* ¶¶ 37, 38, 41. He suggests that the timing of these actions is sufficient to establish the requisite causal connection. *Memo in Opp.* p. 22. Plaintiff's own prior sworn statements and exhibits show ***the alleged retaliatory action began before*** the alleged investigatory action (and Defendants' knowledge of purported investigatory action). The first reduction in Dr. Lockyer's pay occurred in June 2001—before Dr. Lockyer first requested billing records. A timeline reflecting this and other key employment events relative to Dr. Lockyer's compensation is attached as Exhibit 60.

Plaintiff cannot rely on the August 2000 date because it contradicts his prior sworn testimony in his deposition. *See Exh.* 58; *Pfingston v. Ronan Engineering Co.,* 284 F.3d 999 (9th Cir. 2002)

No evidence of a causal connection between legitimately administered disciplinary actions and Plaintiff's requests exists sufficient to defeat summary judgment.

### D. PLAINTIFF'S CLAIMS FOR PUNITIVE DAMAGES FAILS AS A MATTER OF LAW

Plaintiff does not contend that his claim for punitive damages fails as a matter of law. There being no genuine issue of material fact, Defendants are entitled to summary judgment as to Plaintiffs' Fourth Claim for Relief.

### IV. CONCLUSION

For the foregoing reasons, Defendant Evslin respectfully requests that this Court grant his motion for partial summary judgment.

DATED:   Honolulu, Hawaii, March 16, 2007.

   /s/  Stephanie Thompson
SHARON V. LOVEJOY
STEPHANIE E.W. THOMPSON
Attorneys for Defendant
LEE A. EVSLIN, M.D.

---

CIVIL NO. CV 04-00596 ACK LEK, *US ex rel Lockyer v. HPH, et. al.*
DEFENDANT LEE A. EVSLIN, M.D.'S REPLY TO PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFF LOCKYER'S SECOND, THIRD AND FOURTH CLAIMS FOR RELIEF.