IN THE UNITED STATED DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. JAMES LOCKYER, M.D. AND JAMES LOCKYER, M.D., in his own behalf,<br><br>          Plaintiffs,<br>vs.<br><br>HAWAI'I PACIFIC HEALTH; KAUAI MEDICAL CLINIC; WILCOX MEMORIAL HOSPITAL; WILCOX HEALTH SYSTEM; AND WILLIAM A. EVSLIN, M.D. AKA LEE A. EVSLIN, M.D.<br>          Defendants.<br>_____ | CIVIL NO. CV 04-00596 ACK LEK<br>(Federal and State - Qui Tam)<br><br>DECLARATION OF JAMES LOCKYER, M.D.; EXHIBITS L5-L6<br><br><br><br><br>HEARING<br><br>Date:     March 27, 2007<br>Time:    10:30 A.M.<br><br>Trial Date:   September 18, 2007<br>Judge:    Honorable Alan C. Kay |

DECLARATION OF JAMES LOCKYER, M.D.

I, JAMES LOCKYER, M.D., hereby declare:

   1.   I am a physician licensed to practice medicine in the states of Hawai`i, and am over 18 years of age.

   2.   I am a resident of the Kapaa, Island of Kauai, and I make this declaration in support of Plaintiff Lockyer's Opposition to Defendants Hawaii Pacific Health, Kauai Medical Clinic, Wilcox Hospital, and Wilcox Health System's Motion for Summary Judgment.

   3.   Attached as Exhibit L5 are true and correct copies of some of the call schedules for the internal medicine doctors.  The call schedules in Exhibit

L5 were for coverage of Wilcox Memorial Hospital. These call schedules for coverage of Wilcox Memorial Hospital were the only call schedules we had for the internal medicine department while I was employed by KMC. I was never informed that being on call for the hospital on call schedules such as those in Exhibit L5 included covering the chemotherapy suite.

4. If in fact I really was "on call" for the chemotherapy suite at the same time that I was "on call" for the hospital, it would have been absurd because I was frequently called to the ER when I was on call for the Hospital, and was not present in the KMC clinic during much, if not all, of those days. It was common for my assistant, Christine, to cancel a half or a whole day of appointments when I was "on call" for the Hospital because I was unable to leave the patients I was attending in the Hospital.

5. I recall that on occasion I was left charts to sign for the chemotherapy suite on days when I was in the emergency room or the hospital for the majority of the day. I therefore was not in the Internal Medicine Department adjacent to the oncology suite. Several times I signed the charts. I objected to Defendant Evslin about this and eventually refused to sign charts from the chemotherapy room.

6. Included on the call schedules attached as Exhibit L5 are the

following doctors who were independent doctors not part of the KMC internal medicine department whose offices were not in the KMC building but were in some cases miles away:

>  Dr. Kheng
>
>  Dr. Duvauchelle (after 2002)
>
>  Dr. Harrison
>
>  Dr. Flora
>
>  Dr. Pixler (after 2002)

  7. I assigned KMC the right to receive payments from Medicare that were for my services. I did not give KMC the right to bill under my UPIN for services I never rendered or could never truthfully certify as having been rendered under my direct supervision.

  8. I was never part of any "pod" with Dr. Pixler or Dr. Duvauchelle nor was I ever made aware that Dr. Pixler had created 3 such pods to cover for internal medicine.

  9. I did on occasion sign charts for the chemotherapy suite in total perhaps 6 or 7 times that I am aware of at this time, and did respond to an emergency in that suite on one occasion that I can recall. In that emergency situation a nurse came to my office suite and told me that a patient's blood pressure

had dropped precipitously, and that there was no doctor covering the chemotherapy suite. She asked me to please look at the patient. I did so.

      10.    I evaluated the chemotherapy patient referred to in paragraph 9 above, and then decided he needed to go to the emergency room. I personally wheeled him to the emergency room which was located in another building across the parking lot at the Wilcox Memorial Hospital. I was not "assigned" on that date to cover the chemotherapy suite.

      11.    I do not know how long the nurse from the chemotherapy suite referred to in paragraph 9 had been looking for a doctor before she found me. My suite is two separate corridors away from the chemotherapy suite. The nurse would have had to pass at least four other doctor's office suites before she came to mine.

      12.    Attached as Exhibit L6 is a list of the claims Defendants submitted to Medicare using my UPIN number without my permission, for chemotherapy and related services for which I did not provide, and would not have provided, supervision due to safety and other professional concerns, not the least of which was the fact that I was not informed when or even that the services were

taking place and may well have not been present in the KMC Clinic building as I have previously stated above.

   I, JAMES LOCKYER, M.D., do declare under penalty of law that the forgoing is true and correct.

   DATED: Honolulu, Hawai`i, March 26, 2007

         */s/ James Lockyer*
         JAMES LOCKYER, M.D.

5