IN THE UNITED STATED DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. JAMES LOCKYER, M.D. AND JAMES LOCKYER, M.D., in his own behalf,<br><br>       Plaintiffs,<br>vs.<br><br>HAWAI'I PACIFIC HEALTH; KAUAI MEDICAL CLINIC; WILCOX MEMORIAL HOSPITAL; WILCOX HEALTH SYSTEM; AND WILLIAM A. EVSLIN, M.D. AKA LEE A. EVSLIN, M.D.<br>       Defendants. | CIVIL NO. CV 04-00596 ACK LEK<br>(Federal and State - Qui Tam)<br><br>DECLARATION OF TERRY S. COLEMAN<br><br><br><br>HEARING<br>Date:   March 27, 2007<br>Time:   10:30 A.M.<br><br>Trial Date:   September 18, 2007<br>Judge:   Honorable Alan C. Kay |

**DECLARATION OF TERRY S. COLEMAN**

I, Terry S. Coleman, declare as follows:

1. I have submitted a Report of Expert Witness in this case. My qualifications as an expert in the Medicare rules are detailed in that report. I am submitting this declaration in response to the Report of Expert Witness submitted by Todd A. Rodriguez.

2. Mr. Rodriguez suggests that no individual physician needs to be designated as a supervising physician in a multi-physician clinic setting because the clinic setting, in which some physician is presumably always present, is similar to the hospital setting, with respect to which Medicare does not require the designation of a supervising physician. The Medicare rules governing these two settings are, however, completely different. In the hospital setting, the rules simply assume that supervision exists. See, e.g., Medicare Benefit Policy Manual, Ch. 6, § 20.4.

Bills submitted by hospitals to Medicare do not have to identify a supervising physician. In the physician-office or clinic setting, however, the name of a supervising physician must appear on the claim form if the supervising physician is different from the ordering physician. See, e.g., 66 Fed. Reg. 55246, 55267 (Nov. 1, 2001). Supervision responsibilities in the clinic setting may be shared by more than one physician, but there must be actual supervision and a supervisor must be identified on the claim form. In the hospital setting, Medicare presumes that supervision exists whether in reality it does or does not.

    3. Mr. Rodriguez suggests that the Medicare supervision rules are satisfied if there is at least one physician in the office suite at all times. That is not correct because that interpretation is not consistent with the requirement that the supervising physician be identified on the claim form submitted to Medicare. The specific supervising physician identified on the claim form must have been present in the office suite and immediately available to provide assistance during every one of the procedures listed on the claim form. Nothing in the Medicare policy relating to supervision in "highly organized clinics" cited by Mr. Rodriguez exempts such clinics from the requirement to identify a supervising physician on the claim form. Chemotherapy consists of a number of discrete procedures that may in the aggregate cover several hours for a particular patient. For example, there could be a 30-minute infusion of an anti-nausea drug, followed by a 3-minute intravenous "push" of a chemotherapy drug, followed by a 60-minute infusion of a different chemotherapy drug, followed by still further procedures. Each of these elements is typically considered a different procedure and is reflected on the Medicare claim form as a separate procedure. Accordingly, the physician identified on the claim form as the supervising physician must have been present in the office suite and immediately available to provide assistance during at least part of the time for every one of the listed procedures (with other

physicians supervising for any remainder of the time for every listed procedure). If a clinic simply picked any physician to be shown on the claim form as the supervising physician, there is no assurance that that specific physician was present in the office suite and immediately available to provide assistance during every one of the listed procedures. If the physician identified on the claim form left the office suite for lunch or other reasons, the physician would not have supervised procedures that entirely took place during his or her absence, and the identification of that physician on the claim form as the supervising physician with respect to those procedures would be false.

4. Mr. Rodriguez states that the physician identified by an employer clinic on the claim form as the supervising physician is not required to know that he or she was designated by the clinic as the supervising physician for the procedures billed in that claim. I believe that conclusion is not correct for both practical and legal reasons. First, it is necessary that the physician identified as the supervising physician must have been present in the office suite and immediately available to provide assistance during every one of the procedures listed on the claim form. If the employer clinic simply identifies one of its physicians as the supervising physician without that physician's knowledge, the physician will not know that he or she must be present and immediately available to provide assistance during every procedure listed in the claim, and the clinic, in preparing and submitting the claim, will not know whether the selected physician was in fact present and immediately available to provide assistance during every listed procedure. Second, the supervising physician certifies that the services listed on the claim form were medically necessary and furnished in accordance with the Medicare rules on incident-to services. While the rules permit submission of claims showing "signature on file" (or equivalent), the certification that is considered made when a claim is submitted is still the

personal certification of the physician whose name appears as the supervising physician. If a physician personally furnishes a service and allows the employer to submit a claim for the service with a "signature on file" notation, the physician is implicitly agreeing that the certification embodied in the claim is correct. But if the physician is not aware that he or she was furnishing a service, there is in my opinion no basis for the employer to assert that the physician has made a personal certification that the service was medically necessary and furnished in compliance with Medicare's rules.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 26, 2007, in Washington, D.C.

*Terry S. Coleman*