# Exhibit "A"

Case 1:04-cv-00596-ACK-KSC     Document 197-2     Filed 03/27/2007     Page 1 of 4

**From:** Kim, Paul W. [mailto:pwkim@ober.com]
**Sent:** Tuesday, March 13, 2007 12:05 PM
**To:** Shannon, Dorothy A. (CMS/CMM); Kay, Terrence L. (CMS/CMM)
**Subject:** FW: I need your/CMS's help,
**Importance:** High

1. Terry and Dorothy:

Heard that you folks "lawyered" up! :) Anywho, thought I'd send you a courtesy copy of an email exchange below that I received yesterday from the attorneys who are involved in this case. With the tons of emails that ya'll get every hour, it probably just got forgotten. Please feel free to call or email me if you have any questions. Rather, if you wish, please let me know whom at CMS/OGC should be contacted instead. As I've told Dr. Shannon, my friend Harry Silver of Patton Boggs represents the clinic in this case. He would like to clear up this misunderstanding as soon as possible so that he can focus on the merits of this case.

Thanks,

PK

The information in this electronic transmission is confidential and intended only for the addressee. Any use or disclosure by any other person is unlawful. This information is protected under attorney-client and attorney work product privileges. If you receive this electronic transmission in error, please notify us immediately by telephone (410-685-1120), and delete this message without making a copy.

---

**From:** Rauzi, Edwin [mailto:edrauzi@dwt.com]
**Sent:** Tuesday, April 18, 2006 7:04 AM
**To:** Kay, Terrence L. (CMS/CMM)
**Subject:** RE: I need your/CMS's help,

Thank you, I appreciate it very much, and will limit the discussion to matters of policy.

I will call you at 10 a.m. EDT/7 a.m. PDT on Friday.

-----Original Message-----
**From:** Kay, Terrence L. (CMS/CMM) [mailto:Terrence.Kay@cms.hhs.gov]
**Sent:** Tuesday, April 18, 2006 10:01 AM
**To:** Rauzi, Edwin
**Subject:** RE: I need your/CMS's help,

I'd be happy to talk about general policies but would not want to discuss the details of a specific case

---

**From:** Rauzi, Edwin [mailto:edrauzi@dwt.com]
**Sent:** Monday, April 17, 2006 4:39 PM
**To:** Kay, Terrence L. (CMS/CMM)
**Subject:** RE: I need your/CMS's help,

# Exhibit "A"

No, it is much worse. In the hypothetical situation that I would like to discuss, the Assistant U.S. Attorney for Hawaii has intervened in a whistleblower case brought by a former physician employee of the group medical practice. The physician employee was supposed to "supervise" or "cover" the chemotherapy suite on a few days when the only oncologist on Kauai was either off-island or the group was between oncologists. He now wants $5 million dollars for the claims that were submitted using his UPIN as the supervising physician.

I believe the Relator is accurate when he states that (a) the claims were not for his patient; (b) he didn't see the patient; (c) he did not order the CBC to determine whether the white blood count was high enough; (d) he didn't order the chemotherapy, yet claims for chemo drugs, chemo administration/infusion, a CBC and an occasional E&M were ordered using his UPIN.

One of the reasons that I thought to contact you is that the scenario is somewhat similar to one of the scenarios that Alice Gosfield described to you in her letter after the 2002 fee schedule regs were published (i.e., the part about atypical claims being associated with a physician). I attach a copy in case Ms. Gosfield has written you more than one letter. ;-)

I can understand the policy decision to require the UPIN of the supervising physician to be included on the claim form, but the Relator and the AUSA seem to ascribe a greater level of involvement by and responsibility for the supervising physician than what the rules seem to require. The AUSA has told us that chemotherapy cannot be provided unless the oncologist is next door and reads the CBC the day of the chemo. That does not sound like it is appropriate or even possible in a rural setting.

I am telling you this because you have a good reputation and I don't want to create problems for you without disclosing that they may be looming. Still, I really hope I can find someone to lend whatever assistance is appropriate because the AUSA seems convinced that he's found "Al Capone" and that it is a moral outrage to contemplate that chemotherapy will be provided without an oncologist on site that day. The Relator even claims that epogen shots given by nurses to non-chemo patients are false claims. The AUSA is really coming down hard on the Clinic, saying (in essence) that "there can be no defense for such egregious behavior that risked the lives of vulnerable patients." I think that some/much/all of his outrage is based on an interpretation of CMS's rules that are not correct.

May I still call?

>-----Original Message-----
**From:** Kay, Terrence L. (CMS/CMM) [mailto:Terrence.Kay@cms.hhs.gov]
**Sent:** Monday, April 17, 2006 12:57 PM
**To:** Rauzi, Edwin
**Subject:** RE: I need your/CMS's help,

would be happy to. I was out all of last week so am catching up. I would best be able to focus on this if we talked Friday morning at 10am. Is that soon enough?

Also, who is making the assertion? Is there a local carrier policy that allegedly affects this?

---

**From:** Rauzi, Edwin [mailto:edrauzi@dwt.com]
**Sent:** Monday, April 17, 2006 3:23 PM
**To:** Kay, Terrence L. (CMS/CMM)

**Subject:** I need your/CMS's help,

but it's a long story. Is there a time that I can call? It involves the assertion that only an oncologist must provide "incident to" supervision of chemotherapy services provided by oncology nurses in a rural group medical practice setting. It seems contrary to everything that I can find, both in theory and in practice.s

I am just another lawyer, but I have spoken to you once or twice at the Reimbursement Seminar in Baltimore, and I recall that you were helpful in the past.

Is there any chance I can schedule a time to call? I am not seeking to waste your time on a trivial matter--it is important.

Thanks.

Confidentiality Notice: This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.

DISCLAIMER:
This e-mail message contains confidential, privileged information intended solely for the addressee. Please do not read, copy, or disseminate it unless you are the addressee. If you have received it in error, please call us (collect) at (202) 457-6000 and ask to speak with the message sender. Also, we would appreciate your forwarding the message back to us and deleting it from your system. Thank you.

This e-mail and all other electronic (including voice) communications from the sender's firm are for informational purposes only. No such communication is intended by the sender to constitute either an electronic record or an electronic signature, or to constitute any agreement by the sender to conduct a transaction by electronic means. Any such intention or agreement is hereby expressly disclaimed unless otherwise specifically indicated. To learn more about our firm, please visit our website at http://www.pattonboggs.com.