JANICE P. KIM            3436
Kaimuki Business Plaza
3615 Harding Avenue, Suite 206
Honolulu, Hawaii 96816
Telephone: (808) 732-0522
Facsimile: (808) 735-0459
kimj054@hawaii.rr.com

ARLEEN D. JOUXSON        7223
RAFAEL G. DEL CASTILLO   6909
JOUXSON-MEYERS & DEL CASTILLO
Attorneys at Law, A Limited Liability Law Company
302 California Avenue, Suite 209
Wahiawa, Hawaii 96786
Telephone: (808) 621-8806
Fax: (808) 422-8772
rdelcastillo@physicianslawfirm.com

Attorneys for James Lockyer, M.D.

IN THE UNITED STATED DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. JAMES LOCKYER, M.D. AND JAMES LOCKYER, M.D., in his own behalf,<br><br>        Plaintiffs,<br><br>vs.<br><br><br><br><br>HAWAI'I PACIFIC HEALTH; KAUAI MEDICAL CLINIC; WILCOX MEMORIAL HOSPITAL; WILCOX HEALTH SYSTEM; AND | ) CIVIL NO. CV 04-00596 ACK LEK<br>)  (Federal and State - Qui Tam)<br>)<br>) PLAINTIFF JAMES LOCKYER,<br>) M.D.'S, MEMORANDUM IN<br>) OPPOSITION TO DEFENDANT<br>) LEE A. EVSLIN, M.D.'S MOTION<br>) TO STRIKE HEARSAY AND<br>) OTHER IMPROPER TESTIMONY;<br>) DECLARATION OF JAMES<br>) LOCKYER, M.D.; DECLARATION<br>) OF RAFAEL DEL CASTILLO;<br>) DECLARATION OF THOMAS A.<br>) LOUDAT, PhD.; EXHIBITS 1-2;<br>) CERTIFICATE OF SERVICE<br>)<br>) <u>HEARING</u><br>) |

| | | |
|---|---|---|
| WILLIAM A. EVSLIN, M.D. AKA | ) | Date: March 27, 2007 |
| LEE A. EVSLIN, M.D. | ) | Time: 10:30 A.M. |
|     Defendants. | ) | |
| _____ | ) | Trial Date: September 18, 2007 |
| | | Judge: Honorable Alan C. Kay |

PLAINTIFF JAMES LOCKYER, M.D.'S,
MEMORANDUM IN OPPOSITION TO DEFENDANT LEE A. EVSLIN, M.D.'S
MOTION TO STRIKE HEARSAY AND OTHER IMPROPER TESTIMONY

Plaintiff JAMES LOCKYER, M.D., respectfully requests that this Court enter an order DENYING Defendant Lee A. Evslin, M.D.'s Motion to Strike Hearsay and Other Improper Testimony, filed March 19, 2007. The Camden Group's Organizational Assessment Report is attached in its entirety as Exhibit 1. It is, on its face a management report for KMC because the Motion seeks to remove from consideration material facts and evidence which they have failed to show would not be admissible into evidence at trial.

The Camden Group's Organizational Assessment Report is attached in its entirety as Exhibit 1. It is, on its face a management report for KMC. The Camden Group was hired by KMC as evidenced by KMC's Minutes of the Board of Directors. The Minutes indicate that KMC paid the Camden Group approximately 180,000 dollars. (Minutes Exhibit 2) The Minutes of the KMC Board of Directors were produced as official business records of KMC and attest circumstantially to the authenticity of the Camden Group Report.

2

The information contained in the report was obtained from employees of KMC (Exhibit 1 Camden) in their official capacity and done for the purpose of a management review which KMC relied upon as evidenced by KMC's own minutes. Dr. Lockyer received a copy of the report when Mary Pixler, a member of the Executive Committee, (Pixler Decl at ¶ 19) vacated her offices and left the report along with other KMC records. (Lockyer Decl).

Defendant Evslin now asks that this Court consider the report inadmissible as unauthentic even though by their own records KMC cites the Camden Group work in its Board of Directors' Minutes, the report was kept by a member of the Executive Committee, Dr. Mary Pixler, KMC paid the Camden Group and relied upon the findings by Camden to make business decisions.

> **FRE Rule 104. Preliminary Questions**
>
> **Questions of Admissibility Generally . Preliminary questions concerning the …admissibility of evidence shall be determined by the court…In making its determination it is not bound by the rules of evidence ...**
>
> **FRE Rule 901 Requirement of Authentication or Identification**
> **(a) General Provision. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.**
> **(b) Illustrations. By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule.**
>
> **…(b)(4) Distinctive Characteristics and the Like.**
> **Appearance, content, substance, internal patterns or other**

**distinctive characteristics, taken in conjunction with circumstances.**

This subdivision of the rule authorizes authentication of a piece of evidence by showing it possesses information or features that are reasonably uniquely identifiable and traceable to a particular source, either by themselves or in conjunction with other evidence. This method is referred to as "authentication by circumstantial evidence." Under this rule Courts have recognized documents in a variety of circumstances so long as all of the circumstances taken as a whole would support its authenticity. *U.S. v Smith*, 609 F.2d 1294, 5 Fed. R. Evid. Serv. 477 (9th Cir. 1979) (a hotel record of the defendant's registration was authenticated by the defendant's presence at a meeting in the hotel and by the use of a name and address on the register); *Alexander Dawson, Inc. v. N.L.R.B.*, 586 F.2d 1300, 3 Fed. R. Evid. Serv. 780 (9th Cir. 1978)(even though there was no testimony or evidence of a chain of custody offered to authenticate job application forms, they were authenticated because they had been taken from the company premises.); *U.S. v. Luschen*, 614 F. 2d 1164, 5 Fed. R. Evid. Serv. 696 (8th Cir. 1980)( a notebook was properly authenticated by the correspondence of dates and events involved in the case; *U.S. v Wilson*, 532 F. 2d. 641, 1 Fed. R. Evid. Serv. 222 (8th Cir. 1976) (a notebook containing a distinctive code was properly authenticated.)

In this case the document content itself is distinct. It describes its purpose and cites directly to individuals actually employed by KMC and describes the

4

Kauai Medical Clinic which was a one of a kind unique entity.  The Camden Group, who authored the document, is mentioned in the Board of Directors Minutes as having been hired to do consulting work for KMC. The report was found in the records of Mary Pixler, an Executive committee member for KMC. The Board of Directors Minutes verify that KMC paid Camden for the work.  In short the unique characteristics of this report and the circumstances surrounding it authenticate the report on its face.

THE CAMDEN REPORT AND THE STATEMENTS OF EMPLOYEES USED TO COMPILE THE REPORT ARE NOT HEARSAY UNDER RULE 801(d)(2)

> **Rule 801 (d) Statements which are not hearsay.  A statement is not hearsay if –**
>
> **(2)…The statement is offered against a party and is …(D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship…**

The Camden Report lists the various physicians and employees of KMC interviewed for the compilation of the report. The list includes their job functions at the time of their interviews.  All of the individuals listed had existing relationships with KMC and were interviewed regarding matters within the scope of their employment.  Similarly, Camden Group was compiling this report as part of its scope of employment for KMC.  Defendant Evslin's argument that the Camden Report does not analyze other KMC records only goes to the issue of

5

weight to be given the report. Nowhere in Defendant Evslin's moving papers does Defendant claim that the report is inauthentic or based upon statements of persons not in the employ of KMC or acting outside the scope of their employment. At this point the Defendant asks the Court to weigh the report against minutes of other KMC committees, a function which should be left to the jury.

In the alternative Dr. Lockyer proposes that the Camden Report should be received as a business records under Rule 803:

> **FRE Rule 803 Hearsay Exceptions; Availability of Declarant Immaterial**
>
> **The following are not excluded by the hearsay rule…**
>
> (6) **Records of Regularly Conducted Activity. A … report, in any form, of … conditions, opinions…made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the report…all as shown by the testimony of the custodian or other qualified witness.**

A witness does not have to be the custodian of documents offered into evidence to establish Rule 803(6)'s foundational requirements. *United States v. Ray*, 930 F.2d 1368, 1370 (9th Cir. 1991); see also *Bergen v. F/V St. Patrick*, 816 F.2d 1345, 1353 (9th Cir. 1987), modified on other grounds, 866 F.2d 318 (9th Cir.), cert. denied, 493 U.S. 871 (1989). "The phrase 'other qualified witness' is

broadly interpreted to require only that the witness understand the record-keeping system." *Ray*, 930 F.2d at 1370.

In this case Dr. Lockyer will testify that he became the custodian of Dr. Mary Pixler's records after she left KMC. Dr. Lockyer does not have to have direct personal firsthand knowledge of the facts reported in the Camden Report, or of the making of the report or any of the steps involved in the creation or maintenance of this report. See *Conoco Inc. v. Department of Energy*, 99 F.3d 387, 45 F.R. Evid. Serv. 1286 (Fed. Cir. 1996). In *U.S. v. Childs*, 5 F.3d 1328, 37 Fed. R. Evid. Serv. 1344 (9th Cir. 1993) the Court held that third party business records are admissible if the sponsoring business relies on them to do business and had substantial interest in their accuracy. The circumstances supported the conclusion that the records were trustworthy. Several circuits have held that exhibits can be admitted as business records of an entity, even when that entity was not the maker of those records, so long as the other requirements of Rule 803(6) are met and the circumstances indicate the records are trustworthy. See, e.g., *United States v. Doe*, 960 F.2d 221, 223 (1st Cir. 1992) (upholding admission of pistol invoice as a business record of the sports shop which received the invoice where witness testified that he received the invoice and that he relied on "'documents such as those,' in his business to show 'acquisition' of the pistol."); *United States v. Parker*, 749 F.2d 628, 633 (11th Cir. 1984) (upholding admission

of customs certificate for liquor as a business record of a distilling company) ("That the witness and his company had neither prepared the certificate nor had first-hand knowledge of the preparation does not contravene Rule 803(6)."); *Mississippi River Grain Elevator, Inc. v. Bartlett & Co., Grain*, 659 F.2d 1314, 1318-19 (5th Cir. 1981) (upholding admission of grain weight certificates prepared by government entities as business records of private grain company).

## THE MATTERS RAISED BY DEFENDANT EVSLIN AS EITHER HEARSAY OR LACKING FOUNDATION ARE MATTERS OF WEIGHT AND CREDIBILITY WHEN EXAMINED AGAINST OTHER RULES OF EVIDENCE ALLOWING THE TESTIMONY OR INFERENCES TO BE DRAWN IN DR. LOCKYER'S FAVOR

1. Statements that Defendant Evslin would not like or permit financial audit.

Doctor Lockyer offers evidence in various forms by KMC physicians that Defendant Evslin exerted control and dominance over the operations of KMC. The belief that Defendant Evslin would not allow a financial audit or investigation into the financial billings and receipts of KMC attests to the state of mind of the doctors at KMC. This it is not hearsay under Rule 803(3).

2. Statement the Defendant Evslin denied Dr. Lockyer access to his billing records and information.

Dr. Lockyer's testimony on this point is based upon his direct personal experience of having asked for and been told by Defendant Evslin that it was "impossible" to obtain that information. (Lockyer Decl (to Opposition) at ¶ 36).

This statement is offered against a party and is the party's own statement. Rule 801(d)(2) Admission by a Party Opponent.

3. Statement that Defendant Evslin knowingly or had been personally involved in the unauthorized use of doctors UPIN numbers for chemotherapy treatments

1) Defendant Evslin denied Dr. Lockyer access to his billing and receipts - Rule 801(d)(2) Admission by Party Opponent, based upon Rule 602 Personal Knowledge of Dr. Lockyer; 2) Defendant Evslin approached the internal medicine department and tried to force internal medicine doctors to sign chemotherapy room charts accusing them of not being team players when they refused (Braun Decl at ¶ 15 , Lockyer Decl at ¶¶ 9-18)- Rule 801(d)(2) Admission by Party Opponent, based upon Rule 602 Personal Knowledge of Doctors present when this happened, Rule 701 Opinion Testimony of Lay Witness, Rule 803(3) State of Mind; 3) Dominated KMC committees per the testimony of witnesses present at the meetings (Braun Decl. 26-27,28; Netzer Decl 12-15; Raithaus Decl 5-7) - Rule 701 Opinion Testimony by Lay Witnesses rationally within their perceptions, Rule 803(3) State of Mind; 4) Was perceived by other doctors as not willing to allow a financial audits. Rule 803(3); 5) Was found by the Camden Group to have day to day management of KMC – See discussion above. Taken as a whole this inference is drawn from admissible evidence.

4. Statements that Defendant Evslin attempted to fire Lockyer or force him to resign without any legitimate ground.

Declarations of doctors present at meetings are based upon personal perception, knowledge of the circumstances of those meetings and helpful to the jury - Rule 602, Rule 701, Rule 803(3); The Report and Declaration of Dr. Thomas Loudat opines that KMC collections for Dr. Lockyer plummeted 31% in 2003 and that the annualized billings for that year showed an upward trend in production, Rule 702 . This testimony contradicts the claim of Defendant Evslin and others that Dr. Lockyer was unproductive in the year before he left KMC.

5. Statement that Defendant Evslin dominated employment and staffing decisions.

See comments to # 2, 3 and 4 above.

6. Exhibit 1 Camden Group Report

See discussion above re Camden Group Report.

7. Defendant Evslin falsified minutes or voting results.

The Declaration of Dr. Braun based upon his personal knowledge was that he had attended meetings where no minutes were produced by Defendant Evslin to record the results of those meetings or the discussions. (Braun Decl at ¶¶ 27-28); Rule 602. This is a matter of weight for the jury.

8. Production of false claim information would have interfered with merger with HPH

This is an inference drawn from refusal of Defendant Evslin to allow Dr. Lockyer access to his actual billing and receipts. See above. In addition, the personal benefit Defendant Evslin received from the merger in the form of an increased salary.  (Plaintiff's Opposition to Evslin Motion for Summary Judgment Exhibit 7).  The clear false claims filings by KMC as verified by Dr. Lockyer, Dr. Braun, Dr. Jonathan Cho and Terry Coleman and all other witnesses who have declared that there was no assigned physician supervising the chemotherapy suite when the oncologists were not present.

9.  Misdirection of revenues by Defendant Evslin

See discussion of 3-8.  Inferences drawn from the evidence.

10. Statement of Netzer that he was aware of attempt by Evslin to force Internal Medicine department to sign chemotherapy charts.

This event is supported by Declarations of Braun and Lockyer,   these events did in fact take place.

11. Dr. Lockyer's attendance at meetings regarding the merger of HPH and KMC and perception that the voting was incorrectly tabulated.

This is based upon his personal knowledge attending the meetings and his perception of the voting and Dr. Lockyer's inquiries as to the actual vote of various physicians.   (Lockyer Decl at ¶ 6); Rule 602 and 701.

11

12. Statements that Beth Carlozzi incorrectly declared that Dr. Lockyer covered the chemotherapy suite.

This information is based upon Dr. Lockyer's personal knowledge of his "assignments" or lack thereof so that any statement by any nurse would be untrue and speculation. It would only be proper to infer that the *nurse* believed that doctors were assigned to the chemotherapy suite. To have made these statements it is not necessary that Dr. Lockyer know the names of nurses in the chemotherapy suite.

13. Information regarding Dr. Gelmann

This information was based upon Dr.Lockyer's review of Dr. Gelmann's declaration which clearly describes a practice dissimilar from that at KMC of which Dr. Lockyer would have personal knowledge. (Lockyer Decl at ¶ 9).

14. Dr. Pixler's statements regarding Dr. Lockyer's practice
This information is presented as 803(3) information.

15. Statements by Christina Newbold regarding coding sheets.
Based upon her Declaration nurse Newbold was the nurse working with Dr. Lockyer and would have personal knowledge of the coding sheets for his practice.

Defendant attempts to focus the attention of this Court on portions of declarations without regard to the entirety of the evidence presented to defeat the Motion for Summary Judgment. What remains are disputed facts from which a

reasonable jury could find that Defendant Evslin was a de facto employer, who retaliated against Dr. Lockyer in a number of ways and did ultimately control and dominate KMC.

DATED:   Honolulu, Hawaii, March 26, 2007

                                          /s/ Rafael del Castillo

                                       JANICE P. KIM
                                       ARLEEN D. JOUXSON
                                       RAFAEL G. DEL CASTILLO

                                       Attorneys for Plaintiff
                                       JAMES LOCKYER, M.D.