EDWARD H. KUBO, JR.  2499
United States Attorney
District of Hawaii
HARRY YEE  3790
Assistant U.S. Attorney
300 Ala Moana Boulevard
Room 6-100
Honolulu, Hawaii 96850
Telephone:  (808) 541-2850
Facsimile:  (808) 541-3752
Email: Harry.Yee@usdoj.gov
Attorneys for United States of America

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, ex rel. JAMES LOCKYER, M.D., STATE OF HAWAII, ex rel. JAMES LOCKYER, M.D. and JAMES LOCKYER, M.D., in his own behalf;<br><br>            Plaintiffs,<br>     vs.<br><br>HAWAI'I PACIFIC HEALTH; KAUAI MEDICAL CLINIC; WILCOX MEMORIAL HOSPITAL; WILCOX HEALTH SYSTEM; and WILLIAM A. EVSLIN, M.D. AKA LEE A. EVSLIN, M.D.,<br><br>            Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL NO. O4 00596 ACK KSC<br>(Federal and State - Qui Tam)<br><br><br><br><br><br><br><br><br><br><br><br><br><br>DATE:  May 7, 2007<br>TIME:  9:30 A.M.<br>HONORABLE ALAN C. KAY |

TABLE OF CONTENTS AND TABLE OF AUTHORITIES

UNITED STATES OF AMERICA'S OPPOSITION
TO DEFENDANTS HAWAI'I PACIFIC HEALTH, KAUAI MEDICAL CLINIC,
WILCOX MEMORIAL HOSPITAL AND WILCOX HEALTH SYSTEM'S MOTION
TO DISMISS FIFTH AND SIXTH CLAIMS OF FIRST AMENDED COMPLAINT

DECLARATION OF HARRY YEE AND EXHIBITS "A" AND "B"

CERTIFICATE OF SERVICE

UNITED STATES OF AMERICA'S OPPOSITION
TO DEFENDANTS HAWAI'I PACIFIC HEALTH, KAUAI MEDICAL CLINIC,
WILCOX MEMORIAL HOSPITAL AND WILCOX HEALTH SYSTEM'S MOTION
<u>TO DISMISS FIFTH AND SIXTH CLAIMS OF FIRST AMENDED COMPLAINT</u>

## **INTRODUCTION**

This motion seeks dismissal of two amended counts added to this complaint on February 2, 2007 by stipulation of the parties. The information and allegations in the two counts arise from Defendant HPH's incomplete self disclosure of false billings from 2000-2004 by nurses for Evaluation and Management (aka E&M codes 99211 - 99215), which can only be billed by physicians. In addition, these false billings duplicated billings for chemotherapy services already billed to Medicare, which were the subject of this qui tam action.

These false billings under E&M codes 99211-99215 and resulting claims to Medicare were therefore overpayments to the Defendant HPH/KMC; payments were made for physician, physician's assistant, and nurse practitioner[1] services set out in 42 C.F.R. §§ 415.55 and 415.102, when in fact physicians, physician's assistant, and nurse practitioners were not providing those services. No payments are allowed for nurse's services billed as

---

[1] In the Medicare regulation under 42 CFR there is a clear distinct between "physician's assistant" or "nurse practitioner" licensed to prescribed medication, diagnose, and treat patients like a doctor versus the "oncology nurses" employed by KMC in the chemotherapy suite.

physician, physician's assistant, or nurse practitioner services under E&M codes.  Defendant HPH has acknowledged this improper billing practice but subsequently refused to make complete disclosure in violation of 31 U.S.C. 3729(a).

The Defendants now ask the court to dismiss those claims, even before the relator and the United States have a fair opportunity to investigate the full scope of the Defendants' wrongdoing.  This is unsupportable under both the False Claims Act and the Federal Rules of Civil Procedure, and the instant motion should be denied.

**DISCUSSION**

**I.    UNDERLYING FACTS**

On February 23, 2006, the United States, Plaintiff/Relator's counsel (Janice P. Kim, Arlene D. Jouxson, and Rafael G. Del Castillo), Defendant HPH's counsel (Edwin D. Rauzi and Kenneth S. Robbins), Defendant HPH's senior management met as part of the disclosure process to discuss in detail the False Claims Act ("FCA") claims and the Qui Tam complaint.

Between, February 23, 2006 and May 16, 2006, Mr. Rauzi and/or Mr. Robbins arranged a second meeting on May 16, 2006, with counsel for the United States.

On May 16, 2006 Mr. Rauzi, Mr. Robbins, and counsel for the United States met for a second time, but without

Plaintiff/Relator's counsel.  At this meeting, Mr. Robbins stated that he was further disclosing on the part of Defendant HPH, a number of physician billed office visits performed by nurses billed as *"Evaluation and Management" (E&M Codes 999211-99215)* codes possibly in violation of the Medicare Rules.  These billings were identified during the course of an independent audit being performed regarding the False Claims Act violations alleged in this case.  It was acknowledged that these may not be proper billings because only a physician providing a service of evaluation or management may use this code to bill.  On that day, Defendant HPH through Mr. Robbins was requested to turn over any records of these claims and improper billings.  Mr. Robbins requested additional time to provide further information on these newly disclosed false billings.  Mr. Robbins did not disclose that these improper billings may be related to the false claims in this case.

On December 5, 2006, Mr. Robbins and his new co-counsel, Mr. Harry Silver and Mr. Lawrence Freedman, met again with the United States without Plaintiff/Relator's counsel to further discuss the False Claims Act violations.  During the course of that meeting, Mr. Freedman brought up the subject of other possible inappropriate billings, which he reluctantly acknowledged had not been previously disclosed by Mr. Robbins.

4

However, Mr. Freedman further disclosed that the inappropriate billings for physician office visits (E&M Code 99211) by nurses were billed in addition to chemotherapy services already billed by physicians provided by nurses alleged as violations of the FCA in this case.  Since it was Defendant HPH's defense as to the pending FCA allegations that the chemotherapy services did not have to be supervised by physicians and that no physicians actually saw any patients during their chemotherapy services, Mr. Freedman conceded that the improper billings were by and for E&M services provided by the oncology nurses in the chemotherapy suite for the same patient-encounter also generated billings for chemotherapy administration.[2]  It was further confirmed these improper billings were discovered as a result of an on-going audit being performed regarding the False Claims Act violations alleged in this case.  On that day, Mr. Freedman was requested to have Defendant HPH turn over any records of these claims and improper, the audit report, and provide written confirmation of the disclosure.  Mr. Freedman requested additional time to respond to these requests.

     On January 5, 2007 Mr. Freedman confirmed in an email the disclosure he made at the meeting on December 5, 2006.  As

_____

[2] January 5, 2007 email from Laurence Freedman to Harry Yee Exhibit "A" to the Declaration of Harry Yee.

result of this disclosure and lack of further cooperation by Defendant HPH on this issue the United States was compelled to move this Court to amend the existing complaint on January 8, 2007.

On January 23, 2007, the Audit Section of the Office of the Inspector General, U.S. Department of Health and Human Services performed an initial analysis of claims information limited to the year 2000 to provide a sample of the number of possible inappropriate billings for physician office visits (E&M - Code 99211-99215) by nurses at the same time they were providing and billing for chemotherapy services.[3]  This analysis took 1319 claims previously identified for chemotherapy services during the year 2000 then identified and matched 768 corresponding E&M code (code 99211-99215) billings by date and patient.  Further analysis of the matched 768 E&M code billings revealed that 735 of those E&M code billings also had the same provider (physician) numbers as the chemotherapy billings.

II.  **MOTION TO DISMISS STANDARD**

　　A.　**Fed. R. Civ. P. 12(b) Allows Dismissal of Only Those Claims For Which Legal Relief is Impossible**

Under Fed. R. Civ. P. 12(b)(6), in determining whether a motion to dismiss for failure to state a claim upon which

---

[3] Exhibit "B" to the Declaration of Harry Yee

relief can be granted, the court must accept as true the plaintiff's allegations contained in the complaint and view them in a light most favorable to the plaintiff.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Wileman Bros. & Elliott, Inc. v. Giannini, 909 F.2d 332, 334 (9th Cir. 1990); Shah v. County of Los Angeles, 797 F.2d 743, 745 (9th Cir. 1986).

Thus, the complaint must stand unless it appears beyond doubt that the plaintiff has alleged no facts that would entitle him to relief.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990).  "A complaint may be dismissed as a matter of law for one of two reasons: (1) lack of a cognizable legal theory, or; (2) insufficient facts under a cognizable legal theory." Balistreri, 901 F.2d at 699; Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir. 1984).

In essence, as the Ninth Circuit has stated, "[t]he issue is not whether a plaintiff's success on the merits is likely but rather whether the claimant is entitled to proceed beyond the threshold in attempting to establish his claims." De La Cruz v. Tormey, 582 F.2d 45, 48 (9th Cir. 1978), cert. denied, 441 U.S. 965 (1979).  The court "must determine whether or not it appears to a certainty under existing law that no relief can be

granted under any set of facts that might be proved in support of plaintiffs' claims." Id.

**B.    Fraud Need Only be Pled With Particularity Sufficient to Apprise the Defendant of the General Fraudulent Scheme**

In the case of claims based on a theory of fraud, Federal Rule of Civil Procedure 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). Under Ninth Circuit law, "Rule 9(b) requires particularized allegations of the circumstances constituting fraud." Decker v. GlenFed, Inc., 42 F.3d 1541, 1547-48 (9th Cir.1994) (en banc). The plaintiff must, in her pleading, include the time, place, and nature of the alleged fraud, and "mere conclusory allegations of fraud are insufficient" to satisfy this requirement. Id. Therefore, a plaintiff must plead more than neutral facts to identify the transaction. Id. The plaintiff must also "set forth what is false or misleading about a statement, and why it is false." Id.

It should be noted that Rule 9(b) itself does not set forth a standard for determining when an allegation is sufficiently "particular," and courts have declined to establish a hard and fast rule for what a complaint must allege to comply with the requirements of Rule 9(b). Aldridge v. Lily-Tulip,

8

Inc., 741 F. Supp. 906, 913 (S.D. Ga. 1990), aff'd in part and
rev'd in part on other grounds, 953 F. 2d 587 (11th Cir. 1992),
citing Durham v. Business Management Associates, 847 F.2d 1505
(11th Cir. 1988).  Rather, Rule 9(b) should be interpreted to be
consistent with its clear intent "is to eliminate fraud actions
in which all the facts are learned through discovery after the
complaint is filed."  Friedlander v. Nims, 755 F.2d 810, 813 n.3
(11th Cir. 1985).

    The rule's purpose "is to ensure that allegations are
specific enough to provide defendants sufficient notice of the
acts complained of and to enable them to prepare an effective
response and defense, to eliminate those complaints filed as a
pretext for the discovery of unknown wrongs, and to protect
defendants from unfounded charges of wrongdoing that injure their
reputations and goodwill."  SEC v. Digital Lightwave, Inc., 196
F.R.D. 698, 701 (M.D. Fla. 2000), quoting SEC v. Physicians
Guardian, 72 F.Supp.2d 1342, 1352 (M.D. Fla. 1999).

        Dismissals under Rule 9(b) are thus highly disfavored,
being tantamount to a dismissal under rule 12(b)(6). Lovelace v.
Software Spectrum Inc., 78 F.3d 1015 (5th Cir. 1996); In re
United States Abatement Corp., 39 F.3d 556, 558 (5th Cir. 1994);
accord, Blackston v. State of Alabama, 30 F.3d 117, 120 (11th
Cir. 1994).  Such a dismissal constitutes "a severe sanction"

9

which is "justified when a party chooses to disregard the sound and proper directions of the district court." <u>Friedlander</u>, 755 F.2d at 813.

>    **C.    Rule 9(b) as Applied to Claims under the False Claims Act Does Not Require Pleading Specific Intent to Defraud.**

Notwithstanding the general provisions of Rule 9(b), there is no requirement to plead that Defendant HPH/KMC had specific intent to defraud under the False Claims act both as a matter of law and as a matter of the policy considerations underlying that statute.

The False Claims Act's relevant provisions at U.S. Code chapter 31, section 3729 specifically state:

>    (b)    Knowing and knowingly defined.--For purposes of this section, the terms "knowing" and "knowingly" mean that a person, with respect to information--
>
>    (1)    has actual knowledge of the information;
>
>    (2)    acts in deliberate ignorance of the truth or falsity of the information; or
>
>    (3)    acts in reckless disregard of the truth or falsity of the information, **and no proof of specific intent to defraud is required.** [Emphasis Added]

This law embodies revisions made to the FCA by the United States Congress in 1986 with the expressed intent "to encourage more private enforcement suits." S. Rep. 99-345, 99th Cong., 2d Sess. 1, 23-24, reprinted in 1986 U.S.C.C.A.N. 5266, 5288-89.  At

the same time, it clarified that *specific intent to defraud need not be proven*.  That amendment not only realized the value of relaxed pleading requirements under the Act designed to recoup improper claims for federal program funds, but also the need to facilitate and encourage the private whistleblowers whose claims play a vital role in the statute's function.  Those very plaintiff/relators were unlikely to possess all of the information and evidence essential to prove corporate fraud against the government, so stringent application of Rule 9(b) pleading requirements would essentially gut the statute from the outset.

At the same time, such pleadings would be proven by information largely, if not exclusively, in the hands of the very parties defrauding the government, for it is their corporate records which establish all of the details of the false claims submitted to the relevant federal agency.  To allow the defendant to conceal his own fraud through the rules of liberal pleading would not only defeat the intent of the statute, but defy all logic.  Congress therefore acted to reduce the obstacles to whistleblowers' access to federal court, in order to benefit the taxpayers who have been wronged.

III. **PLAINTIFF/RELATORS HAVE SUFFICIENTLY PLED**
     **THE CLAIMS AGAINST THE DEFENDANTS UNDER**
     **THE FCA, WHICH CLAIMS SHOULD NOT BE DISMISSED**

   A.   **Defendants Are On Notice and Have Full Control**
        **of the Evidence Necessary to Establish the Nature**
        **of Their Violations Under the False Claims Act**

     In the case at bar, the two counts in question adequately

state the nature and focus of the fraudulent activity engaged in

by the Defendants which violates the FCA:

                    FIFTH CLAIM FOR RELIEF
          (VIOLATIONS OF FEDERAL FALSE CLAIMS ACT, inter alia,
                        31 U.S.C. § 3729)

     54.  During the period from approximately 2000-2004,
Defendants HPH and KMG submitted false billings and/or statements
for office visits for multiple patients, which duplicated
previously identified false billings by physicians for medical
services rendered by nurses.  These false billings and/or false
statements were in violation of 31 U.S.C. § 3729, the False
Claims Act.

                    SIXTH CLAIM FOR RELIEF
          (VIOLATIONS OF FEDERAL FALSE CLAIMS ACT,
                    31 U.S.C. § 3729, et seq.)

     55.  During the period from approximately 2000-2004,
Defendants HPH and KMG submitted false statements and/or billings
for office visits for multiple patients with physicians for
medical services rendered by nurses.  These false billings and/or
false statements were in violation of 31 U.S.C. § 3729, the False
Claims Act.

     The Defendants are adequately placed on notice that their

billing practice for physician office within the years 2000-2004

involving claims made for medical treatments at Kauai Medical

Clinic's chemotherapy suite by oncology nurses were false claims

on the government.  Specifically, the claims include charges to federal programs for services not rendered in a manner consistent with federal regulations and therefore constituted improper charges to the government.

Moreover, the very basis for that complaint is information obtained directly from the Defendant HPH's counsel in discussions held subsequent to filing the complaint pursuant to 31 U.S.C. 3729.  The information was provided by Defendant HPH's counsel in two meetings and an e-mail, which shows that the factual information regarding the claims is both within their knowledge and control.  In addition, Defendant HPH's counsel has demonstrated a disregard for the statutory requirements of complete and good faith disclosure under 31 U.S.C. 3729(a)[4] , by equivocation, delay, and attempted retraction.

Indeed, the Defendants themselves admit to being on notice of the false claims involved because they have retained a private

_____

[4] 3729. False claims (a) Liability for certain acts.---

**(A) the person committing the violation of this subsection furnished officials of the United States responsible for investigating false claims violations with all information known to such person about the violation within 30 days after the date on which the defendant first obtained the information;**

**(B) such person fully cooperated with any Government investigation of such violation; and**

audit firm to review the false claims data and during the course
of that audit discovered these improper E&M code 99211-99215
billings.  At this point in the litigation, the relator is not in
a position to provide more detailed evidence concerning each of
the false claims asserted in the complaint, because the
Defendants have not provided any further disclosure of the audit
or any resulting reports nor have Plaintiffs' begun any discovery
on these two counts.

     In fact at this point in the case, the Defendants are the
only party in the litigation with the evidentiary means to
establish the claims asserted herein:  the relator is a third
party who never had access to the Defendants corporate and
financial  records which describe all of the transactions in
issue.  Unlike typical fraud cases, where the plaintiff is the
defrauded party and is thus knowledgeable of each of the elements
of the cause of action (e.g., the exact misrepresentation; who
made the misrepresentation; where it was made; whether there was
reliance; whether reliance was reasonable; and whether there was
damage), whistleblowers filing qui tam cases are not the primary
victims of the defendant's acts, nor are they the parties to whom
the false statement was made.  Rather, they are representatives
suing on behalf of the United States.  Often, if not usually,
such whistleblowers know only those parts of a defendant's

conduct to which they have been privy.  That is certainly the case before the court in this action.

Nor is the United States Government in any better position to assert full evidentiary bases for the allegations of the complaint prior to initiating discovery.  It has only limited records based on what the Defendants submitted in their claims for payment.  Such records must be compared with a wide base of other corporate records, such as personnel records, attendance and patient records, etc., to determine the full extent of the false claims made by the Defendant which are recoverable under the False Claims Act (31 U.S.C. 3729).

The information which will establish the government's claims is not only in possession of Defendant HPH/KMC, but it is or has been analyzed by an independent auditor, who conducted at the bidding of HPH an audit to identify all the specific claims in question as double billings and false billings for services provided by nurses without supervision.  This is irrefutable evidence that HPH is on notice of the claims in the case, and is fully aware of the evidentiary basis for the claims.  For the Defendant to now ask the court to dismiss those claims based on the notion that HPH lacks that notice is contradictory at best.

**B.    Pleadings Which Provide General Notice of the Fraudulent Acts Involved Under the FCA May Not be Dismissed for Lack of Particularity**

The prevailing law regarding FCA claims such as those at bar is that in such instances, a complaint such as that filed in the instant action meets all the requirements of FRCP Rules 9 and 12. For example, the district court in <u>United States ex rel. Thompson v. Columbia/HCA Healthcare Corp</u>, 20 F.Supp.2d 1017, 1049 (S.D. Tex. 1998), rejected the argument that the relator had to enumerate every false claim submitted to the government. Rather, the court held that a description of the "nature of the fraudulent scheme" satisfied Rule 9(b):

> The basic framework, procedures, the nature of the fraudulent scheme, and the financial arrangements and inducements among the parties that give rise to the Relator's belief that fraud has occurred have been alleged with specificity; Plaintiffs are entitled to discovery before being required to list every false claim, its dates, the individuals responsible, and why each patient was not eligible for Medicare.

<u>Id.</u> at 1049.

The court recognized the significance of a defendant's knowledge of the transactions in issue. <u>U.S. ex rel. Mikes v. Strauss</u>, 853 F.Supp. 115, 119 (S.D.N.Y. 1994), <u>citing</u> <u>Davse v. Schuldt</u>, 894 F.2d 170 (5th Cir. 1990); <u>Steiner v. Southmark</u>, 734 F.Supp. 269, 273 (N.D. Tex. 1990); <u>Cincinnati Gas & Electric Co. v. General Electric Co.,</u> 656 F.Supp. 49, 76 (S.D. Ohio 1986).

Rule 9(b) does not require specificity of pleading in those cases where the facts underlying the claims are within the defendant's control. "'[I]n cases of corporate fraud, the plaintiffs cannot be expected to have personal knowledge of the facts constituting the wrongdoing.'" <u>Pharmacare v. Caremark</u>, 965 F.Supp. 1411, 1419 n.17 (D. Hawaii 1996), <u>quoting</u> <u>Wool v. Tandem Computers, Inc.</u>, 818 F.2d 1433, 1439 (9th Cir. 1987).

The holding in <u>United States ex rel. Thompson v. Columbia/HCA Healthcare Corp</u>, has been affirmed by other courts considering FCA claims which have held that Rule 9's pleading strictures should not be a shield to FCA claims. "[S]trict enforcement of Rule 9 would frustrate the purpose of the FCA, so courts allow an exception whereby a plaintiff can plead information that may be available only through discovery." <u>United States ex rel. Butler v. Magellan Health Services, Inc.</u>, 74 F.Supp.2d 1201, 1215 (M.D. Fla. 1999) (citations omitted). "To approach the issue otherwise would allow the more sophisticated to escape liability under a False Claims case due to the complexity of their scheme and their deviousness in escaping detection." <u>United States ex rel. Johnson v. Shell Oil Company</u>, 183 F.R.D. 204, 207 (E.D. Tex. 1998).

The District of Hawaii itself in <u>United States ex rel. McCarthy v. Straub Clinic and Hosp., Inc.,</u> 140 F.Supp.2d 1062,

1068 (D. Haw. 2001), accepted the holding in Johnson when it denied a motion to dismiss FCA claims even though "the Complaint discusses mostly common practices rather than specific dates and times of the submission of false claims," because the plaintiffs "provided Defendants with sufficient specificity to show that they were 'insiders,' privy to the alleged fraud, and to alert Defendants against what they must defend themselves."

The court thus recognized that in FCA cases, where the defendant has managed to make wrongful claims against federal funding sources through its own internal operations, it is improper to allow that defendant press that "insider" advantage against relators prior to discovery, when all parties have yet to gain access to the facts. A complaint which gives the defendant general notice of the fraudulent scheme complained of is sufficient, and even essential, to the FCA's statutory mechanism for protecting the federal government against corporate fraud.

Accord, United States ex rel. Johnson v. Shell Oil Co., 183 F.R.D., 204, 206 (E.D. Tex. 1998) (relators not required to allege detailed times, locations, exact contents, and persons involved in each and every fraudulent statement pleaded); United States ex rel. Thompson v. Columbia HCA Healthcare Corp., 20 F.Supp.2d 1017, 1049 (S.D. Tex. 1998)(rejecting argument that the relator had to enumerate every false claim submitted to the

government; pleading need only describe the "nature of the fraudulent scheme;" Rule 9(b) dismissal improper); <u>United States ex rel. Downy v. Corning, Inc.</u>, 118 F.Supp.2d 1160, 1173 (D.N.M. 2000)(FCA complaint which described the general scheme of fraudulent claims for medical tests was sufficient even without particulars of each fraudulent act; relator must be allowed discovery to establish particulars of each fraudulent act); <u>United States ex rel. Franklin v. Parke-Davis</u>, 147 F.Supp.2d 39 (D. Mass. 2001)(relator alleging drug manufacturer violated the FCA by promoting its drugs for non-FDA-approved purposes sufficiently pleaded claims by describing "the basic scheme of fraud or the identification of certain instances of fraudulent conduct").

    <u>See also</u>, <u>United States ex rel. Poque v. American Healthcorp, Inc.</u>, 977 F.Supp. 1329, 1333 (M.D. Tenn. 1997) (complaint alleging contractual relationships between doctors and hospitals constituted a kickback scheme that resulted in the filing of Medicare claims held sufficient under Rule 9 even though no specific dates or employees were identified; basic fraud scheme was sufficiently set out to provide defendant notice).

    The circumstances of the case *sub judice* require precisely the same legal analysis outlined in those cases discussed above.

**C.   Even if Rule 9(b) Were Applicable to FCA Claims,
       the Intent of the Rule is Satisfied in this Case**

Even if Rule 9(b) were applicable to the FCA in theory, the underlying intent of the rule is fully consistent with the aims of that law; the rule cannot be used to subvert a specific federal claim.

In fact, where Rule 9(b) is applied to cases in which the defendant/defrauding party is in control of the evidentiary basis for claims in the case, Rule 9(b) is substantially relaxed.  See, e.g., Hill v. Morehouse Medical Associates, Inc., 2003 WL 22019936 (11th Cir. 2003);  In re Craftmatic Securities Litigation, 890 F.2d 628, 645 (3rd Cir. 1990);  Michaels Building Co. v. Ameritrust Co., 848 F.2d 674, 680 (6th Cir. 1988); Moore v. Kayport Package Express, Inc., 885 F.2d 531, 540 (9th Cir. 1989).

Thus, in a case where the plaintiff alleged that he received fraudulent correspondence from the defendant "from time to time during the next several years," the Court held that Rule 9(b) was satisfied.  Durham v. Business Management Associates, 847 F.2d 1505, 1511-12 (11th Cir. 1988), citing Seville Industrial Mach. v. Southmost Mach., 742 F.2d 786, 791 (3d Cir. 1984), cert. denied, 469 U.S. 1211 (1985).  Where a complaint identified customers who were defrauded, the scheme, the time frame, and the

20

reasons the conduct was fraudulent, Rule 9(b) was satisfied:  It was "not fatal to the complaint that it [did] not describe in detail a single specific transaction ... by customer, amount, and precise method." Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1998), superseded by statue on other grounds, Wenger v. Lumisy, Inc. 2 F.Supp.2d 1231 (N.D. Cal. 1998).

Similarly, in evaluating a complaint alleging illegal kickbacks, a Northern District of Georgia decision found Rule 9(b) not to require unreasonable detail:  "Failure to state the dates and times of receipt of kickbacks is not fatal to the complaint, as the defendants have been apprised of the nature of the action against them, and are therefore on notice of sufficient allegations upon which to mount a defense." Georgia Gulf Corp. v. Ward, 701 F.Supp. 1556, 1560 (N.D. Ga. 1987).

The Defendants herein hold all of the information necessary to prove the charges in the complaint, and they are the only party in that position in the litigation.  To at once hold all of that information, and then deny knowledge of it by asserting that it cannot understand the claims in the complaint, is an abuse of Rule 9(b) and asks the court for an interpretation of that rule which defies its purpose.

## CONCLUSION

The United States respectfully requests that the Defendants Motion to Dismiss be denied with prejudice.

DATED:  April 19, 2007, at Honolulu, Hawaii.

EDWARD H. KUBO, JR.
United States Attorney
District of Hawaii

/s/ Harry Yee

By_____
  HARRY YEE
  Assistant U.S. Attorney

Attorneys for United States
of America

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, ex | ) | CIVIL NO. O4 00596 ACK KSC |
| rel. JAMES LOCKYER, M.D., | ) | (Federal and State - Qui Tam) |
| STATE OF HAWAII, ex rel. | ) | |
| JAMES LOCKYER, M.D. and JAMES | ) | |
| LOCKYER, M.D., in his own | ) | CERTIFICATE OF SERVICE |
| behalf; | ) | |
| | ) | |
| Plaintiffs, | ) | |
| vs. | ) | |
| HAWAI'I PACIFIC HEALTH; | ) | |
| KAUAI MEDICAL CLINIC; WILCOX | ) | |
| MEMORIAL HOSPITAL; WILCOX | ) | |
| HEALTH SYSTEM; and WILLIAM | ) | |
| A. EVSLIN, M.D. AKA LEE A. | ) | |
| EVSLIN, M.D., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that, on the date and by the method
of service noted below, a true and correct copy of the foregoing
was served on the following at their last known addresses:

    Served Electronically through CM/ECF:   April 19, 2007

    Kenneth S. Robbins          krobbins@robbinsandassociates.net

    Harry R. Silver             hsilver@pattonboggs.com

    Laurence J. Freedman        lfreedman@pattonboggs.com

    Stephanie E.W. Thompson     sthompson@starnlaw.com

    Sharon V. Lovejoy           slovejoy@starnlaw.com

    Janice P. Kim               kimj054@hawaii.rr.com

Rafael G. del Castillo     rafa@hawaii.rr.com


<u>Served by First Class Mail</u>:                    April 19, 2007

Edwin D. Rauzi
Davies Wright Tremaine LLP
1501 4th Avenue, Suite 2600
Seattle, WA  98101

Arleen D. Jouxson
Jouxson-Meyers & Del Castillo LLLC
302 California Ave, Ste 209
Wahiawa, HI 96786

Clarissa Y. Malinao
Robbins & Associates
Davies Pacific Center
841 Bishop St, Ste 2200
Honolulu, HI 96813

Clyde Wm. Matsui
Matsui Chung Sumida & Tsuchiyama
737 Bishop St, Ste 1400
Honolulu, HI 96813

John-Anderson L. Meyer
Robbins & Associates
Davies Pacific Center
841 Bishop St, Ste 2200
Honolulu, HI 96813

        DATED:  April 19, 2007, at Honolulu, Hawaii.

                              EDWARD H. KUBO, JR.
                              United States Attorney
                              District of Hawaii

                              /s/ Harry Yee
                              By_____
                                 HARRY YEE
                                 Assistant U.S. Attorney

                              Attorneys for United States
                              of America

2