reply mtn dismiss 5th & 6th claims of 1st amd cmplt

Of Counsel:
ROBBINS & ASSOCIATES
Attorneys at Law
A Law Corporation

| | |
|---|---|
| KENNETH S. ROBBINS | 1000-0 |
| JOHN-ANDERSON L. MEYER | 8541-0 |
| SERGIO RUFO | 8211-0 |

2200 Davies Pacific Center
841 Bishop Street
Honolulu, Hawaii 96813
Telephone: (808) 524-2355
Facsimile: (808) 526-0290
Email: defend@robbinsandassociates.net

DAVIS WRIGHT TREMAINE LLP         CIVIL NO. CV04-00596 ACK KSC

EDWIN D. RAUZI            4292-0
1501 4th Avenue, Suite 2600
Seattle, Washington 98101
Telephone: (206) 622-3150
Facsimile: (206) 628-7699
Email: edrauzi@dwt.com

PATTON BOGGS LLP

HARRY R. SILVER
LAURENCE J. FREEDMAN
2550 M Street NW
Washington, D.C. 20037
Telephone: (202) 457-6453
Facsimile: (202) 457-6315
Email: hsilver@pattonboggs.com

Attorneys for Defendants
HAWAI`I PACIFIC HEALTH,
KAUAI MEDICAL CLINIC, WILCOX MEMORIAL
HOSPITAL and WILCOX HEALTH SYSTEM

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. JAMES LOCKYER, M.D., STATE OF HAWAII, ex rel. JAMES LOCKYER, M.D. and JAMES LOCKYER, M.D., in his own behalf,<br><br>        Plaintiffs,<br><br>    v.<br><br>HAWAI`I PACIFIC HEALTH; KAUAI MEDICAL CLINIC; WILCOX MEMORIAL HOSPITAL; WILCOX HEALTH SYSTEM; and WILLIAM A. EVSLIN, M.D. aka LEE A. EVSLIN, M.D.,<br><br>        Defendants. | CIVIL NO. CV04-00596 ACK KSC<br>(Federal and State - Qui Tam)<br><br>DEFENDANTS HAWAI`I PACIFIC HEALTH, KAUAI MEDICAL CLINIC, WILCOX MEMORIAL HOSPITAL AND WILCOX HEALTH SYSTEM'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FIFTH AND SIXTH CLAIMS OF FIRST AMENDED COMPLAINT; CERTIFICATE OF SERVICE<br><br><u>HEARING</u><br>DATE:   May 7, 2007<br>TIME:   9:30 a.m.<br>JUDGE:  Alan C. Kay<br><br>TRIAL: 9/18/07<br>JUDGE:  Alan C. Kay |

DEFENDANTS HAWAI`I PACIFIC HEALTH, KAUAI MEDICAL CLINIC, WILCOX MEMORIAL HOSPITAL AND WILCOX HEALTH SYSTEM'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FIFTH AND SIXTH CLAIMS OF FIRST AMENDED COMPLAINT

COME NOW Defendants Hawai'i Pacific Health, Kauai Medical Clinic, Wilcox Memorial Hospital and Wilcox Health System (collectively, the "HPH Defendants"), by and through their undersigned counsel, and file this Reply Memorandum in Support of their Motion to Dismiss Fifth and Sixth Claims of First Amended Complaint.

2

**I.    Introduction**

As the United States' description of the "underlying facts" in its opposition ("Opp'n") makes clear, the Fifth and Sixth Claims of the First Amended Complaint are inappropriately based on settlement conferences with HPH Defendants' counsel in violation of Federal Rule of Evidence 408.  Specifically, the United States admits that the allegations in the Fifth and Sixth Claims are based on discussions that occurred during a settlement meeting on May 16, 2006 and a subsequent settlement meeting on December 5, 2006.  Not only does the Government improperly use those discussions as the basis for its First Amended Complaint, the Government also completely mischaracterizes communications by HPH Defendants' counsel as confirmation of fraudulent billings.  See Opp'n Ex. A.

As is evident from the email from Larry Freedman dated December January 5, 2007, attached as Exhibit A to Plaintiff's opposition, counsel for HPH Defendants indicated on December 5, 2006 that certain billings "were not necessarily appropriate" but that, because "[i]t is way more complicated than . . . anticipated to identify and apply the complex Medicare payment rules applicable to CPT code 99211 claims for outpatient services in the infusion suite", HPH Defendants were still conducting an analysis.  Opp'n Ex. A.  This is in no way an acknowledgement of improper billing, as the United States asserts, nor is it an

3

acknowledgement that any possible improper billings would constitute fraud under the False Claims Act. Opp'n at 3-5.

Then, just days later, and before HPH Defendants could complete their analysis, the Government moved to amend the Complaint to add two additional counts on January 8, 2007. In fact, the Government moved to amend the Complaint before it had even begun any audit or investigation into any alleged false billing on the part of HPH Defendants as to CPT code 99211. Opp'n at 6 (stating that the Audit Section of the Office of Inspector General performed an initial analysis of claims on January 23, 2007 – over two weeks after filing the motion to amend the complaint).

The First Amended Complaint neither identifies false claims allegedly submitted by HPH Defendants, nor articulates a legal basis for the counts asserted against HPH Defendants. HPH Defendants should not be forced to guess at the Government's theory of liability, which is totally absent from the First Amended Complaint. The Fifth and Sixth Claims for Relief should therefore be dismissed for failure to comply with Rule 9(b).

## II. The Government Fails to Assert the Who, What, When, Where and How of Any Alleged Fraud

As HPH Defendants pointed out in their Motion to Dismiss, a complaint asserting fraud must set forth "the who, what, when, where, and how" of the wrongdoing charged. Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th

Cir. 2003). The Government seems to contend that it is sufficient notice to make the broad allegation that any billings for the years 2000 to 2004 made for medical treatments at Kauai Medical Clinic's chemotherapy suite by oncology nurses <u>may</u> constitute false claims. Opp'n at 12-13. Such conclusory allegations are not supported by any alleged facts.

The Government's analysis in Exhibit B does not remedy this deficiency. "[A] plaintiff must set forth <u>more</u> than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false." <u>Vess</u>, 317 F.3d at 1106. The Government has failed to indicate how the claims listed on Exhibit B constitute fraudulent billings under any law or regulation that would result in liability under the False Claims Act.

When the Government fails to plead what statements are false or fraudulent and why or how these statements are fraudulent, the claims should be dismissed under Rule 9(b). <u>See</u> <u>United States ex rel. Wilkens v. N. Am. Constr. Corp.</u>, 173 F. Supp. 2d 601, 631-37 (S.D. Tex. 2001) (where government intervened in a False Claims Act suit, court granted motion to dismiss in part because certain allegations failed to satisfy the particularity requirements of Rule 9(b)). From the minimal information set forth in the Fifth and Sixth Claims, HPH Defendants simply do not have enough information about any alleged misconduct to be able to properly

defend themselves. See Bly-Magee v. California, 236 F.3d 1014, 1019 (9th Cir. 2001) ("allegations of fraud must be 'specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong.'").

**III.    Failure to Plead a Legal Theory Should Result in Dismissal**

It is well established that "[f]ailure to delineate a cognizable legal theory should result in dismissal." Young Bros., Ltd. v. Int'l Longshore & Warehouse Union, Local 142, 250 F. Supp. 2d 1244, 1247 (D. Haw. 2003); Pascual v. Matsumara, 165 F. Supp. 2d 1149, 1150 (D. Haw. 2001). The relator in an action under the False Claims Act bears the burden of proving "all essential elements of the cause of action." 31 U.S.C. § 3731(c); Harrison v. Westinghouse Savannah River Co., 352 F.3d 908, 923 (4th Cir. 2003). One of these elements is that the claim must be false. United States ex rel. Local 342 Plumbers & Steamfitters v. Dan Caputo Co., 321 F.3d 926, 933 (9th Cir. 2003) ("For a false claim suit to succeed, the plaintiff must show that the claim was false, that is, contrary to an existing state of things."). "Claims are not 'false' under the FCA unless they are furnished in violation of some controlling rule, regulation or standard." United States v. Prabhu, 442 F. Supp. 2d 1008, 1026 (D. Nev. 2006); see also Hochman v. Nackman, 145 F.3d 1069, 1073-74 (9th Cir. 1998).

6

Throughout the First Amended Complaint, the United States never once asserts which statute or regulation HPH Defendants supposedly violated.[1] Instead, the Government vaguely states in its opposition brief that the allegedly fraudulent claims "include charges to federal programs for services not rendered in a manner consistent with federal regulations". Opp'n at 13. In the absence of an allegation that HPH Defendants violated some law, rule or regulation, the Government has failed to state a claim upon which relief can be granted.

Additionally, while the False Claims Act does not require proof of specific intent to defraud the government, it does require that a defendant have "actual knowledge of the information," or that a defendant act "in deliberate ignorance of the truth or falsity of the information." 31 U.S.C. § 3729(b). The Government never alleges in the Fifth or Sixth Claims for Relief that HPH Defendants had the requisite scienter for liability under the False Claims Act. As the Government has failed to even allege the necessary elements of a claim under the False Claims Act, the Fifth and Sixth Counts for Relief should be dismissed at this stage.

---

[1] In the Government's opposition brief, the only cited legal authority regarding Medicare billing is 42 C.F.R. §§ 415.55 and 415.102. Neither of these provisions appears to bear on the propriety of CPT code 99211 billing, nor does the Government explain the applicability of these provisions to its allegations of fraud under the False Claims Act.

## IV. The Government Cannot Hide Behind Its Argument That Plaintiffs Did Not Have a "Fair Opportunity to Investigate"

### A. The Government Has the Power to Investigate Prior to Bringing a Claim

The Government should not be allowed to skirt the requirements of Rule 9(b) by claiming that "the relator and the United States have [not had] a fair opportunity to investigate the full scope of the Defendants' wrongdoing." Opp'n at 3. First of all, the relator is the purported whistleblower in this action and is supposed to bring alleged false claims to the attention of the United States. 31 U.S.C. §§ 3730(b), 3730(e)(4)(B). As discussed in more detail below, to the extent the relator has no knowledge of the Fifth and Sixth Claims herein, he must be dismissed from this action.

More to the point, the Attorney General may bring a civil action under the False Claims Act after the Government has diligently investigated a possible violation. 31 U.S.C. § 3730(a). Here, the United States failed to employ its investigatory powers, under 31 U.S.C. § 3733, prior to precipitously moving to amend the complaint. The Government's argument that it was "compelled to move this Court to amend the existing complaint" because of alleged "lack of further cooperation" (Opp'n at 6) is therefore specious.

The Government's response indicates that it has conducted no investigation to substantiate its allegations even though it had the authority to do so. Where a

8

plaintiff is in the position to obtain the necessary information and fails to do so, that plaintiff cannot rely on the argument that he is entitled to lenient application of Rule 9(b) because information supporting the claims is in the possession of the defendant. United States ex rel. Lee v. SmithKline Beecham, Inc., 245 F.3d 1048, 1052 (9th Cir. 2001) (where the relator worked as a supervisor for over twenty years, was knowledgeable about the tests allegedly falsified, and was employed by the defendant when he filed his action under the False Claims Act, the relator was not entitled to lenient application of Rule 9(b)). In that situation, the plaintiff "has no legitimate excuse for filing a vague complaint that does not assert particular details to support its allegations of fraud." Id. Similarly, the United States is not entitled to lenient application of Rule 9(b). In rushing to file an amended complaint prior to an investigation, the Government has failed to articulate any facts against which HPH Defendants can defend themselves. See Bly-Magee v. California, 236 F.3d at 1018. The Government has no excuse for its failure to comply with Rule 9(b).

> **B.    The Relator Is Not the Original Source for the Fifth and Sixth Claims and Is Not Entitled to Pursue Them**

In any event, there is no dispute that the Relator is not the original source of the allegations contained in the Fifth and Sixth Claims. Under the recently decided U.S. Supreme Court case, Rockwell Int'l Corp. v. United States, 127 S. Ct. 1397 (2007), the Relator has no right or interest in the allegations contained in the Fifth

9

and Sixth Claims, has no right to pursue these allegations, and is not a party as to these claims. While this issue may more properly be the subject of a separate Motion to Dismiss, to the extent the Government has raised the Relator's lack of opportunity to investigate this claim, and given the fact that the Relator has filed a joinder to the Government's Opposition, the Relator's lack of standing should, at least, be mentioned at this time.

Under section 3730(b), a person may bring an action for violation of the False Claims Act on behalf of the United States; however, that person must be an "original source" of the information. 31 U.S.C. § 3730(b); 3730(e)(4)(B); Rockwell, 127 S. Ct. at 1403. An "original source" is "an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information." 31 U.S.C. § 3730(e)(4)(B); Rockwell, 127 S. Ct. at 1405.

When a complaint is amended, "new allegations regarding a fundamentally different fraudulent scheme require reevaluation of the court's jurisdiction." Id. at 1408. Just because a relator may have been an original source with respect to some claims, does not mean that he is the original source as to all claims. Id. at 1410.

As the Government admits in its opposition brief, it first learned of the purportedly fraudulent billing practices through settlement discussions, not from the relator. Opp'n at 13. Additionally, the Government states that "the relator is a third party who never had access to the Defendants corporate and financial records which describe all the transactions in issue." Opp'n at 14. Accordingly, the Relator cannot be an "original source" of the information which resulted in the Fifth and Sixth Claims. As a result, the Relator lacks the jurisdictional prerequisites for suit and the remaining Fifth and Sixth Claims can only be pursued by the Attorney General. Rockwell, 127 S. Ct. at 1411.

## V.  The Government Improperly Used Settlement Conference Discussions as a Basis for the Fifth and Sixth Claims

As the United States admits, "the very basis for that complaint is information obtained directly from the Defendant HPH's counsel in discussions held subsequent to filing the complaint pursuant to 31 U.S.C. 3729." Opp'n at 13. These discussions were explicitly subject to Federal Rule of Evidence 408. Rule 408 states:

> (a) Prohibited uses.—Evidence of the following is not admissible on behalf of any party, when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction:
>
> (1) furnishing or offering or promising to furnish or accepting or offering or promising to accept a valuable consideration in compromising or attempting to compromise the claim ; and

> (2) conduct or statements made in compromise negotiations regarding the claim, except when offered in a criminal case and the negotiations related to a claim by a public office or agency in the exercise of regulatory, investigative, or enforcement authority.

Fed. R. Evid. 408.

"Although this is a rule of evidence, courts have routinely granted motions to strike allegations in pleadings that fall within the scope of Rule 408." United States ex rel. Alsaker v. Centracare Health Sys., Inc., No. Civ. 99-106, 2002 WL 1285089, at *2 (D. Minn. June 5, 2002); Austin v. Cornell Univ., 891 F. Supp. 740, 750-51 (N.D.N.Y. 1995), abrogated on other grounds by Walsh v. City of Auburn, 942 F. Supp. 788, 797 n.5 (N.D.N.Y. 1996); Kelly v. L.L. Cool J., 145 F.R.D. 32, 40 (S.D.N.Y. 1992); Braman v. Woodfield Gardens Assocs., Realcorp Investors I, 715 F. Supp. 226, 230 (N.D. Ill. 1989). Admitting statements made in settlement meetings would undermine the purpose of Rule 408: to encourage settlements. Braman, 715 F. Supp. at 230; Central Soya Co. v. Epstein Fisheries, Inc., 676 F.2d 939, 944 (7th Cir. 1982) ("The fear is that settlement negotiations will be inhibited if the parties know that their statements may later be used as admissions of liability."). Thus, in Alsaker, the court struck paragraphs from an amended complaint that alleged that, during a settlement meeting, counsel for defendants admitted that billing practices were deficient and conceded that there were issues regarding the reimbursability of claims. 2002 WL 1285089, at *2.

12

Similarly, the United States is improperly using discussions that occurred in settlement meetings in connection with the litigation to support its claims that HPH Defendants' violated the False Claims Act. Worse yet, the Government has twisted HPH Defendants' communications about a good faith investigation into its billing practices into an alleged confession of some sort of fraud. The Government's conclusory assumptions are unfounded, unsubstantiated, and violate Rule 408.

**VI.   Conclusion**

For the foregoing reasons, as well as those set forth in HPH Defendants' motion to dismiss, HPH Defendants' motion to dismiss should be granted.

DATED: Honolulu, Hawaii, April 26, 2007.

/s/ Kenneth S. Robbins
KENNETH S. ROBBINS
JOHN-ANDERSON L. MEYER
SERGIO RUFO

Attorneys for Defendants
HAWAI`I PACIFIC HEALTH, KAUAI MEDICAL CLINIC, WILCOX MEMORIAL HOSPITAL AND WILCOX HEALTH SYSTEM