IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, ex ) <br> rel. JAMES LOCKYER; STATE OF ) <br> HAWAII, ex rel. JAMES LOCKYER; ) <br> and JAMES LOCKYER, in his own ) <br> behalf, ) <br> ) <br>       Plaintiffs, ) <br> ) <br>   v. ) <br> ) <br> HAWAII PACIFIC HEALTH; KAUAI ) <br> MEDICAL CLINIC; WILCOX ) <br> MEMORIAL HOSPITAL; WILCOX ) <br> HEALTH SYSTEM; and WILLIAM A. ) <br> EVSLIN, M.D., aka LEE A. ) <br> EVSLIN, M.D., ) <br> ) <br>       Defendants. ) <br> _____) | Civ. No. 04-00596 ACK-LEK |

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS THE FIFTH AND SIXTH CLAIMS OF THE FIRST AMENDED COMPLAINT WITHOUT PREJUDICE AND GRANTING PLAINTIFFS LEAVE TO AMEND**

PROCEDURAL BACKGROUND

Qui tam relator James Lockyer ("Lockyer") filed a Complaint under Seal on October 1, 2004, on behalf of the United States alleging that Defendants Hawaii Pacific Health ("HPH"), Kauai Medical Clinic ("KMC"), Wilcox Memorial Hospital, Wilcox Health Systems (collectively, "HPH Defendants"), and Lee A. Evslin violated the federal False Claims Act, 31 U.S.C. § 3729 et

1

seq., and the Hawaii False Claims Act codified at Hawaii Revised Statutes § 661-2. In addition, Lockyer alleged that Defendants improperly retaliated against him for opposing and reporting such improper practices.

The United States Attorney for the District of Hawaii intervened in the case on behalf of the United States on January 27, 2006.

On March 27, 2007, the Court heard the HPH Defendants' and Defendant Evslin's Motions for Summary Judgment on the original Complaint filed December 22, 2006. On April 16, 2007, the Court issued an Order granting the HPH Defendants' and Defendant Evslin's Motions for Summary Judgment on the original Complaint (Counts I through IV).

On February 2, 2007, Plaintiffs filed a First Amended Complaint adding the Fifth and Sixth Claims for Relief under the Federal False Claims Act. The Fifth Claim for Relief states in its entirety:

> During the period from approximately 2000-2004, Defendants HPH and KMG [sic] submitted false billings and/or statements for office visits for multiple patients, which duplicated previously identified false billings by physicians for medical services rendered by nurses. These false billings and/or false statements were in violation of 31 U.S.C. § 3729, the False Claims Act.

First Amended Complaint at ¶ 54. The Sixth Claim for Relief states:

> During the period from approximately 2000-2004, Defendants HPH and KMG [sic] submitted false statements and/or billings

2

>     for office visits for multiple patients with physicians for
>     medical services rendered by nurses.  These false billings
>     and/or false statements were in violation of 31 U.S.C. §
>     3729, the False Claims Act.

First Amended Complaint at ¶ 55.

On February 20, 2007, HPH Defendants filed a Motion to Dismiss the Fifth and Sixth Claims of the First Amended Complaint ("Motion"). The same day, Defendant Evslin joined the HPH Defendants' Motion to Dismiss.

On April 19, 2007, Plaintiff United States of America filed an Opposition to HPH Defendants' Motion ("Opposition"). Plaintiff Lockyer filed a Substantive Joinder in Plaintiff United States' Opposition on April 24, 2007.

On April 26, 2007, the HPH Defendants filed a Reply ("Reply").

A hearing on the Defendants' Motion to Dismiss the Fifth and Sixth Claims of the First Amended Complaint was held on May 7, 2007 at 9:30 a.m..

## FACTUAL BACKGROUND[1]

The Court presented the facts that gave rise to the original Complaint in great detail in the preceding Order.  The following factual allegations are pertinent to the instant Motion to Dismiss the Fifth and Sixth Claims of the First Amended

---

[1] The facts as recited in this Order are for the purpose of disposing of this motion and are not to be construed as findings of fact that the parties may rely on in future proceedings in this case.

Complaint.

On February 23, 2006, the United States' counsel, Plaintiff Lockyer's counsel (Janice Kim, Arlene Jouxson, and Rafael Del Castillo), HPH Defendants' counsel (Edwin Rauzi and Kenneth Robbins), and persons from HPH Defendants' management met to discuss Plaintiff Lockyer's qui tam complaint and the False Claims Act ("FCA") claims. See U.S. Opp. at p. 3. Plaintiff United States characterizes the meeting as "part of the disclosure process." Id.

HPH Defendants' counsel arranged a second meeting with counsel for the United States on May 16, 2006. Plaintiff Lockyer's counsel was not present at this meeting.[2] HPH Defendants characterize this meeting as a settlement meeting. See HPH Reply at p. 3. According to Plaintiff United States, Mr. Robbins stated that he was further disclosing a number of office visits billed as "Evaluation and Management" ("EM" Codes 99211-99215) that possibly violated the Medicare Rules, because the office visits were performed by nurses rather than physicians. See U.S. Opp. at p. 4. These billings were identified in the course of an independent audit that was being conducted regarding the allegations of FCA violations in this case. Id.

On December 5, 2006, another meeting was held between

---

[2] Nor does it appear that Defendant Evslin's counsel was present at any of the meetings.

4

the United States and HPH Defendants' counsel, including Harry Silver and Laurence Freedman.  Plaintiff Lockyer's counsel was not present. Id.  Plaintiff United States asserts the meeting was "to further discuss the False Claims Act violations." Id.  HPH Defendants characterize the meeting as a "subsequent settlement meeting."  See HPH Reply at p. 3.  At this meeting, Mr. Freedman disclosed additional billings for physician office visits (EM Code 99211) that may have improperly duplicated billings for chemotherapy services.  See U.S. Opp. at p. 5.

On January 8, 2007, the United States moved to amend the Complaint to add the Fifth and Sixth Claims for relief.  HPH Defendants argue they had not finished completing their analysis, and that the United States moved to amend the complaint before the United States had begun any investigation into the HPH Defendants' practices with respect to billing code 99211.  Id.  On January 23, 2007 the Audit Section of the Office of Inspector General, U.S. Department of Health and Human Services performed an analysis of a sample of 1319 KMC chemotherapy claims from the year 2000 and identified 768 billings under EM codes that corresponded to chemotherapy claims by date and patient.  See U.S. Opp. at p. 6.  On January 31, 2007, all parties stipulated to Plaintiffs' filing of an amended complaint.  The United States filed the First Amended Complaint adding the Fifth and Sixth Claims on February 2, 2007.

**STANDARD**

**I.   Motion to Dismiss under Federal Rule of Civil Procedure 9(b)**

Federal Rule of Civil Procedure 9(b) requires "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). "Rule 9(b) requires particularized allegations of the circumstances constituting fraud." In re. GlenFed, Inc. Securities Litigation, 42 F.3d 1541, 1547-48 (9th Cir. 1994) (en banc). Rule 9(b) requires the pleading to provide an "account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007). "Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003). Plaintiffs may not simply plead neutral facts to identify the transaction, but rather, the plaintiffs must also set forth what is false or misleading about a statement, and why it is false. See GlenFed, 42 F.3d at 1548.

A motion to dismiss a claim grounded in fraud for failure to plead with particularity under Rule 9(b) is the functional equivalent of a motion to dismiss under Fed. R. Civ. P. 12(b)(6). See Vess, 317 F.3d at 1107. Thus, "[a]s with Rule 12(b)(6) dismissals, dismissals for failure to comply with Rule

6

9(b) should ordinarily be without prejudice. Leave to amend should be granted if it appears at all possible that the plaintiff can correct the defect." Id.

## DISCUSSION

**I. Whether the Fifth and Sixth Claims of the First Amended Complaint Comply with the Requirements of Rule 9(b)**

**A. The Ninth Circuit standard for Rule 9(b) in FCA cases**

In the Ninth Circuit, "[c]omplaints brought under the [False Claims Act] must fulfill the requirements of Rule 9(b)." United States ex rel. Lee v. SmithKline Beecham, Inc., 245 F.3d 1048, 1051 (9th Cir. 2001). (citing Bly-Magee v. State of California, 236 F.3d 1014, 1018 (9th Cir. 2001)). Rule 9(b) applies because "[t]he FCA is an anti-fraud statute." Bly-Magee, 236 F.3d at 1018. To this end, claims under the False Claims Act must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so they can defend against the charge and not just deny that they have done anything wrong." Id. (citing Neubronner v. Milken, 6 F.3d 666, 672 (9th Cir. 1993)). The Ninth Circuit has observed that qui tam suits are meant to encourage insiders privy to fraud to blow the whistle, and that such insiders should have adequate information to comply with 9(b). Id. at 1019.

Plaintiffs argue that to satisfy 9(b), the pleadings need only contain a description of the "nature of the fraudulent

scheme," citing United States ex rel. Thompson v. Columbia/HCA Healthcare Corp., 20 F. Supp. 2d 1017, 1049 (S.D. Tex. 1998). However, the standard articulated by the district court in the Northern District of Texas is not controlling in the Ninth Circuit.  Nor has the Ninth Circuit adopted the Thompson court's approach to the requirements of 9(b).  The Court disagrees with the United States' assertion that the District of Hawaii adopted the holding of Thompson in United States ex rel. McCarthy v. Straub Clinic and Hospital, Inc., 140 F. Supp. 2d 1062 , 1068 (D. Haw. 2001).  The court in McCarthy did not mention Thompson, but applies the Ninth Circuit's standard as set forth in In re GlenFed, 42 F.3d at 1547-48, requiring particularized allegations of the circumstances of the fraud. McCarthy, 140 F. Supp. 2d at 1066.  The court in McCarthy denied dismissal of the complaint because it gave sufficient detail of the fraud alleged, including: the names of employees at Straub who allegedly committed or aided the fraud, how the allegedly false claims were submitted, when and how frequently the allegedly false claims were submitted, and specific examples of false claims.  Id. at 1068.  The Court does not suggest that the United States needs to enumerate specific details for every single false claim submitted, but a particularized pleading requires more than conclusory statements describing, in general terms, the "nature of the fraudulent scheme."

The United States argues in the alternative that it should be entitled to a relaxed application of 9(b) because the information about the fraud is in the exclusive possession of the Defendants. The United States cites Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1439 (9th Cir. 1987), which recognized an exception to the 9(b) requirement for pleading with particularity in securities fraud cases where the plaintiff cannot be expected to have personal knowledge of the facts constituting wrongdoing. This exception does not apply to the claims in this case. First, Wool's relaxed pleading exception for securities fraud cases was superceded by passage of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), which imposed heightened pleading requirements for securities fraud actions. 15 U.S.C. § 78u-4(b)(1); see e.g., Hockey v. Medhekar, 30 F. Supp. 2d 1209, 1215 (N.D. Cal. 1998)(recognizing that Wool's pleading exception was superceded by PSLRA). Furthermore, the Wool exception was used specifically in the context of securities fraud litigation, and has not been applied in this Circuit to relax the pleading requirements in the context of an FCA claim.

Finally, the rationale behind the Wool exception does not apply here because the United States admits it possesses some "records based on what the Defendants submitted in their claims for payment." See U.S. Opp. at p. 15. While the United States argues that it needs other records in the possession of

Defendants to determine the full extent of the alleged false claims made, the United States has sufficient information to make a particularized pleading for the purposes of 9(b). For example, the United States conducted an audit of a sample of KMC's billings in which it analyzed and correlated billing codes, provider numbers, and dates. Id. at p. 6. In addition, the United States provides voluminous detailed spreadsheets with itemized claim numbers, dates, payment amounts, provider numbers, diagnoses, and billing codes, which it claims reveals the alleged false claims underlying the Fifth and Sixth Claims of the First Amended Complaint.[3] Id. at Exh. "B." Sufficient information can be gleaned from records to which the United States has access to plead claims under the FCA with particularity. Contrary to what the United States asserts, the Defendants are not the sole keepers of all the information required to plead its claims.

In sum, the 9(b) requirements for particularized pleading apply without modification or relaxation to the Fifth and Sixth Claims of the First Amended Complaint.

   **B.   The Fifth and Sixth Claims of the First Amended Complaint fail to satisfy Rule 9(b)**

The United States' Fifth and Sixth Claims for relief do

---

[3] This reference to matters outside the pleadings does not convert the Motion to a Motion for Summary Judgment. The Court notes that because the Parties included exhibits and evidence beyond the pleadings, the Court could convert the instant Motion to a Motion for Summary Judgment. The Court declines to do so.

not set forth particularized allegations of the circumstances constituting fraud.  The Plaintiffs' Opposition and Joinder provide some additional clarification of the allegations: Count V alleges that some billings under EM code 99211 may have improperly duplicated billing for chemotherapy services; Count VI alleges that certain office visits billed under "evaluation and management" codes (EM codes 99211-99215) may have violated Medicare payment rules because the visits were performed by nurses rather than physicians.  See U.S. Opp. at p. 2; Lockyer Joinder at p. 3. Little else, however, in the way of particularized averments or circumstances have been asserted even in Plaintiffs' Opposition.

The claims do not explain what is misleading about the billings or why they constitute false claims.  In its Opposition, the United States argues that "payments were made for physician, physician's assistant, and nurse practitioner services set out in 42 C.F.R. §§ 415.55 and 415.102, when in fact physicians, physician's assistant, and nurse practitioners were not providing those services.  No payments are allowed for nurse's services billed as physician, physician's assistant, or nurse practitioner services under E&M codes." See U.S. Opp. at 2-3.  This statement needs clarification and is not tied to specific factual allegations.  Furthermore, nowhere does the First Amended Complaint itself identify the regulatory provision that makes it

a false claim to bill for a nurse's services under certain EM codes. Nor does the United States identify specific billings that were submitted for services that were never provided or billed under the wrong code. The Fifth and Sixth Claims do not identify the content of the bills or claims that were allegedly false, or describe the "previously identified false billings" that are allegedly duplicated. The Opposition suggests that because the audit revealed that certain billing codes matched other codes from certain patients on certain dates, these billing claims must be false and fraudulent. See U.S. Opp. at pp. 5-6. The First Amended Complaint, however, does not explain the nature of the services at issue or the reason why having two billing codes for one patient on one day constitutes a false claim. Without explaining the basis for the conclusion that such billing practices constituted false claims, the Fifth and Sixth Claims of the First Amended Complaint fail to meet the requirements of Rule 9(b).

The claims do not specifically allege when the false claims arose or were submitted, only that they occurred "[d]uring the time period from approximately 2000-2004." First Amended Complaint ¶¶ 54, 55. The United States provides a spreadsheet that it claims shows that "EM codes 99212, 99213, and 99215 were improperly billed for chemotherapy." See Suppl. Decl. Harry Yee at ¶ 2; Suppl. Exh. "B." While the spreadsheet provides pages of

12

data including dates and billing codes, the United States does not specifically point to any dates where specific instances of improper billing allegedly occurred in the Fifth and Sixth Claims for relief.

The United States does not identify which persons were engaged in the allegedly fraudulent billing. The First Amended Complaint states generally that HPH and KMC (mistakenly identified as "KMG") were the actors in these circumstances. The claims do not identify which practitioners carried out the services that were billed improperly, whose provider numbers were used to bill services that were not rendered, which patients received the services that were allegedly double-billed, or which employees participated in the coding and billing for HPH and KMC. Thus, the United States has failed to identify the "who" necessary to plead with particularity.

In this case, a pleading that meets the requirements of Rule 9(b) might, for example, (1) identify specific examples of billings or statements that typify the alleged false claims for the Fifth and Sixth Claims for relief; (2) identify the legal provision(s) that are violated by Defendants' billings or statements; (3) describe the content of the billings, such as specific provider numbers and billing codes, that demonstrate how the relevant legal provision was violated; (4) identify who was party to the alleged false claims, such as who was responsible

13

for coding or billing at KMC/HPH or who participated in submitting the false claims; and (5) identify specific dates on which instances of false claims occurred, the time-span, and the frequency of the occurrences.

      The Court concludes that the Fifth and Sixth Claims of the First Amended Complaint are not pled with sufficient particularity to meet the requirements of Rule 9(b). The Court grants Defendants' Motion to Dismiss the Complaint under Rule 9(b), and the dismissal is without prejudice. Because it appears that the pleading can be cured by the allegation of additional facts, the United States is granted leave to amend the complaint.

## II. Whether the Fifth and Sixth Claims of the First Amended Complaint Are Barred by Federal Rule of Evidence 408

      In their Reply, Defendants argue that the United States improperly used information disclosed in settlement discussions as a basis for the Fifth and Sixth Claims of the First Amended Complaint in violation of Federal Rule of Evidence 408. The Court will not address this argument, however, because it was not raised in Defendants' Motion or in the United States' Opposition. The local rules state, "A reply must respond only to arguments raised in the opposition. Any arguments raised for the first time in the reply shall be disregarded."[4] LR 7.4.

---

[4] Similarly, the Defendants raised in their Reply the argument that the Court has no jurisdiction over the Fifth and Sixth Claims with respect to Plaintiff-Relator Lockyer following Rockwell v. International Corp. v. United States, 127 S. Ct.

Moreover, it is unclear from the pleadings whether the discussions out of which the Fifth and Sixth Claims arose were settlement discussions or not. A determination of whether Federal Rule of Evidence 408 would bar the claims may require an evidentiary hearing as to the nature of the relevant discussions, and such evidence is not before the Court in the instant Motion.[5]

**CONCLUSION**

For the foregoing reasons, the Court:

(1) GRANTS Defendants' Motion to Dismiss the Fifth and Sixth Claims of the First Amended Complaint. The Fifth and Sixth Claims are not pled with sufficient particularity to meet the requirements of Fed. R. Civ. P. 9(b) and are dismissed without prejudice. The Court does not reach the issue of whether the Fifth and Sixth Claims are barred by Federal Rule of Evidence

---

1397, 1411 (2007). Under Fed. Rule Civ. P. 12(h)(3), the Court may inquire in to the issue of subject matter jurisdiction, sua sponte, at any point in the pendency of the action. Nevertheless, the Court refrains from addressing the issue of jurisdiction over Lockyer with respect to Claims Five and Six at this time to permit the Plaintiffs the opportunity to brief the issue for the Court.

[5] The preliminary factual determination of whether evidence is admissible under Rule 408 is determined by the court under Rule 104(a). See Pierce v. F.R. Tripler & Co., 955 F.2d 820, 827 (2d Cir. 1992)(citing Mundy v. Household Finance Corp., 885 F.2d 542, 546-47 (9th Cir. 1989)(upholding district court's determination of whether offer was within scope of Rule 408)); see also Charles Alan Wright & Kenneth W. Graham, Jr., 23 Federal Practice and Procedure: Evidence § 5315 (1980); 2 Weinstein's Federal Evidence at § 408.02[2] (2d ed. 1999).

408.

(2) GRANTS Plaintiffs leave to amend the First Amended Complaint. Plaintiffs have sixty (60) days to file their Second Amended Complaint, after which the claims will be barred.

IT IS SO ORDERED.

DATED, HONOLULU, HAWAII, May 8, 2007.



_____
Alan C. Kay
Sr. United States District Judge

UNITED STATES ex rel. LOCKYER v. HAWAII PACIFIC HEALTH, et al., Civ. No. 04-00596 ACK-LEK, ORDER GRANTING DEFENDANTS' MOTION TO DISMISS THE FIFTH AND SIXTH CLAIMS OF THE FIRST AMENDED COMPLAINT WITHOUT PREJUDICE AND GRANTING PLAINTIFFS LEAVE TO AMEND.